**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **THE OSAGE TRIBE OF INDIANS OF OKLAHOMA,** | **Filed Electronically 12/22/2004** |
| **Plaintiff,** | |
| **v.** | **Case No. 00-169L** **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**JOINT STATUS REPORT**
**PURSUANT TO COURT'S ORDER OF OCTOBER 22, 2004**

In accordance with this Court's October 22 and December 3, 2004 Orders, Plaintiff Osage Tribe and Defendant United States hereby submit this Joint Status Report. This report updates the Court regarding the components of the known universe of documents relating to the case and the status of ongoing document production activities. As the Court directed, the parties provide this information with respect to each category of documents described in the March 26, 2004, Order, as well as each new cache of documents that parties have identified since the Court issued that Order. For each group of documents, the report addresses the location and estimated number of boxes containing documents relevant to this litigation, the status of scanning and/or copying and coding of documents Plaintiff has identified for production, and the status and method of privilege review Defendant has conducted. In addition, this report outlines the new responsibilities and deadlines to which the parties have agreed. This report is current through at least November 30, 2004, and such other later dates as specifically set forth below.

## A. Documents in the Custody of the Department of the Interior

**Parties' Statement**

The Court based its March 26, 2004 Order in part on the Declaration of Abraham E. Haspel, Ph.D., Assistant Secretary of the United States Department of the Interior ("DOI" or "Interior"), dated March 4, 2004 ("Haspel Declaration"), which was attached to Defendant's Response to the Court's Draft Order of February 17, 2004. The Haspel Declaration stated that, except for "additional pertinent records that may still be at the Osage Agency in Pawhuska, OK, and the Eastern Oklahoma Regional Office ("EORO") in Muskogee, OK," Interior's "records indicate that there are approximately 9,200 boxes of records in DOI legal custody that may contain pertinent Osage trust documents." *Id*., paragraph 3. Of these boxes, Dr. Haspel indicated that about 5,600 were located at the Office of Trust Records ("OTR") of DOI in Albuquerque, New Mexico, and were comprised of almost 400 Osage Agency boxes, 600 EORO boxes, and 4,600 Bureau of Indian Affairs ("BIA") Central Office records. *Id.* The remaining 3,600 boxes were located at the Federal Record Centers ("FRC") in Lee's Summit, Missouri, and Lenexa, Kansas (now called the American Indian Records Repository ("AIRR").[1] The records at the FRCs consisted of 1,250 Osage Agency boxes and 2,350 BIA Central Office boxes. *Id.*

### 1. Box Inventory Search System ("BISS") Index and Completed Privilege Information

Generally, Paragraph 1 of the March 26 Order required Defendant (1) to deliver BISS indices of documents relevant to this case at OTR and the FRCs to Plaintiff and (2) to provide Plaintiff with completed privilege information identified in the Haspel Declaration. Each is discussed in more detail below.

---

[1] All records described in the Haspel Declaration that were in Lee's Summit have subsequently been transferred to the AIRR in Lenexa.

***a. BISS Indices***

**Parties'Statement**

Paragraph 1 of the March 26 Order required Defendant to deliver to Plaintiff on or before April 9, 2004, the BISS indices for all boxes in DOI's custody at the FRCs at Lenexa and Lee's Summit, and at the OTR in Albuquerque, New Mexico. On April 9, 2004, Defendant submitted to the Tribe "Defendant's Notice of Service of Material Specified in Paragraph 1 of the Order of March 26, 2004" ("Paragraph 1 Notice"), which was accompanied by three compact disks ("CDs") containing BISS indices of boxes that were located at the FRCs or OTR. One CD labeled "Office of Trust Records" and dated March 29, 2004, contains records located at OTR and states that it contains "Total Boxes: 4716."[2] A second CD dated February 12, 2004, contains the BISS indices of the BIA's 390 Osage Agency records maintained at OTR.[3] The third CD dated February 23, 2004 contains BISS indices for documents that "do or may relate to" Plaintiff from BIA Osage Agency and Eastern Region documents located at either "the FRC at Lee's Summit or at OTR."[4] The third CD does not indicate the number of boxes that are indexed on it.

The indices that Defendant provided on April 9, 2004 were a "snapshot" of the records at OTR or Lenexa on the date those indices were compiled. DOI's indexing and additional BISS searches of the documents at OTR and the FRCs resulted in the identification and indexing of 845 more boxes than Dr. Haspel had indentified in his declaration, raising his total figure to 10,045 boxes. All of these 845 boxes were in the K-series of accessions.[5]

---

2 Paragraph 1 Notice at p. 2.

3 *Id.*

4 *Id.*

5 On page 2 of the April 30, 2004 "Defendant's Notice of Completion of Privilege Reviews and Availability of Access to Osage Trust Records" ("April 30 Notice"), Defendant

Since that time, the parties have identified, subject to later verification, some 5,700 boxes in six other accessions, identified as INT, DEN, FTW, ITA, KAN, AND SUI. The parties have referred to these as the Phase II boxes in the inspection conducted jointly by the Osage Tribe with other litigating tribes.

DOI has also received at the AIRR (Lenexa) this past Fall approximately 12,000 boxes of documents from ITAD, which DOI will begin indexing in the BISS beginning in early 2005. DOI currently has a contracting team of approximately 150 people at Lenexa indexing folders into the BISS.

On December 14, 2004, DOI personnel notified the Attorneys of Record that approximately 1,300 boxes of DOI documents were found in OTR warehouse storage in Albuquerque. As a result, these boxes have not been indexed into the BISS. 557 of these un-indexed BIA Central Office Records from the K-series and INT accessions will remain at OTR for Plaintiff's review. Defendant has moved the remaining some 750 boxes to the AIRR where DOI contractors will index them into the BISS. Defendant cannot rule out the possibility of DOI personnel identifying other relevant boxes at OTR.

A particularly important cache of documents relevant to tranche one of this case, the work papers for the Arthur Anderson Report for Plaintiff, is located at a private storage facility in Phoenix, Arizona. These documents also are not in the BISS. Who has legal custody of these documents, DOI or Arthur Andersen, is an unresolved issue. The parties agree that Defendant will coordinate Plaintiff's access to, review of, and scanning of these documents with Arthur Andersen.

---

adjusts the number of responsive boxes at OTR and the FRCs from 9,200 in the Haspel Declaration to 10,045, identifying 845 additional boxes.

In sum, since the March 26 Order, Defendant has identified more than 19,845 additional boxes of documents located at OTR and the FRCs that are in the custody of DOI. Over 13,300 of these additional boxes are not yet in the BISS. These new caches of documents are discussed in more detail below.

**Plaintiff's Statement**

The BISS is the "search tool" DOJ provides to Plaintiff to aid in identifying documents at OTR or AIRR to prove its claims. Unlike the reconciliation database utilized in the Arthur Andersen reconciliation project, the BISS broadly describes folder names and provides general clues as to the location of Plaintiff's trust records, but it does not have document level search capacity. Also, there are inconsistencies in the descriptions of files in the database, making searches and finding relevant documents extremely difficult. Plaintiff's continues to experience numerous problems with the BISS and has been in regular dialogue with Defendant officials to improve the system.

Without consultation with Plaintiff, Defendant made changes in early June 2004 to the ArchivalWare software tool that Plaintiff must use to search the BISS indices. Those changes prevent Plaintiff from counting the number of boxes that contain information responsive to a given search of the indices. Instead, the revised version of this software gives Plaintiff a "file count" that counts the total number of responsive files in all boxes in the BISS indices at that time. The new software, however, can only count up to 99,000 files, i.e., any file count in excess of 99,000 is reported as 99,000. Thus, Plaintiff loses any file/box combinations in excess of the 99,000 file maximum allowed by the new software with each search. Plaintiff has been unable to solve this problem by trying different search criteria to avoid triggering the 99,000 maximum file count.

In some cases, boxes at OTR have been assigned duplicate box numbers. To date, Plaintiff has identified over 241 instances where this has occurred. Plaintiff has provided this information to Defendant and requested an explanation. Plaintiff understands that Defendant is still researching the issue.

**Defendant's Statement**

Defendant provides separate subheadings to address the different issues that Plaintiff raises in its Additional Statement on this portion of the Joint Report.

(1) ArchivalWare

ArchivalWare was software developed for non-litigation purposes for researchers to identify inactive BIA records at OTR and AIRR. It was not designed at the time of, or for the purpose of discovery in, the instant case. Defendant agrees that a box count would be a useful research tool but at this time it is not known if a future upgrade can permit box counts.

(2) Duplicate Box Numbers

Defendant has reviewed the first two pages of the list and has found only one instance where two boxes had the same box number in the BISS. In this instance, each identical box number had a unique OST-number, such that each box is easily identifiable. Separately, Defendant has run a search of the BISS database for duplicate entries in the OST number field and has found 33 instances of duplicate entries. Defendant's initial review of this list suggests that this list of 33 duplicate entries reflects double entries in the BISS for the same box, not two separate boxes with a duplicate entry in the BISS. Defendant will further review this list and the list provided by plaintiff, but it does not appear that this is a problem.

(3) "Pass-Through" Boxes

Plaintiff's Statement above also indicates that it does not know from which accessions the "pass-through" boxes came. Although somewhat out of order from the outline of the March 26 Order, Defendant presents this explanation of the "pass-through" group.

Throughout the course of the Joint Discovery Project and upon those Plaintiffs' several requests, Defendant has made additional boxes available for Plaintiffs' inspection that had not been designated in either Phase I or Phase II of the JDP (the "pass-through" boxes). These pass-through boxes were originally designated for inspection through the Jicarilla-Laguna inspection and span various record groups including Central Office accessions. Where the Jicarilla-Laguna plaintiffs had made designations or were presented boxes that were later observed by them to be also of interest to the Joint Discovery plaintiffs, those boxes would be subsequently presented to the JDP reviewers as well. The Court is reminded that the JDP and the Jicarilla-Laguna inspections were all conducted for all the tribal Plaintiffs by the Osage Tribe's expert, Mr. Jim Parris.

b. ***Privilege Reviews and Privilege Logs***

**Parties' Statement**

Paragraph 1 of the Court's March 26, 2004 Order also required Defendant to designate for Plaintiff the 3450 boxes it had identified in the Haspel Declaration as privilege and confidentiality reviewed and to provide Plaintiff with a log of any such documents. Paragraph 1 does not establish a date certain for production of the completed privilege and confidentiality logs.

In his Declaration, Haspel referred to "privilege review" as both Defendant's review for purposes of determining attorney-client and attorney work product privileges and Defendant's review for purposes of determining confidentiality under the Indian Mineral Development Act,

the Trade Secrets Act, and other pertinent regulations.[6] The latter review for these documents is now referred to as "confidentiality" review. Defendant no longer considers "privileged" to include documents protected by the Privacy Act, the Indian Mineral Development Act, the Trade Secrets Act or others acts or regulations. Defendant now means "privileged" to encompass "traditional" privileges, i.e., attorney-client, attorney work product, and deliberative process.

In the April 9 Paragraph 1 Notice, Defendant provided a privilege and confidentiality log for "2800+ boxes of the 4,716 boxes" on one of the BISS Index CDs of OTR documents.[7] This log makes claims of both privilege and confidentiality. Defendant further explains in the Paragraph 1 Notice that it will complete privilege reviews and logs for 390 Osage Agency boxes "in accordance with other provisions of the Court's Order of March 26, 2004."[8]

That April 30 Notice stated that Defendant had completed privilege reviews of the following documents at OTR: (a) all 390 boxes of Osage BIA records ("G06 boxes"); (b) all 600 BIA Eastern Oklahoma Regional Office boxes ("G00 boxes"); (c) and all but 300 boxes of the 4,716 BIA Central Office boxes ("K50 boxes" or "K51 boxes" or "OST boxes"). The "privilege review" of these boxes, however, is the preliminary review performed by a contractor and/or DOI and does not include final privilege or confidentiality reviews for the Defendant.

**Plaintiff's Statement**

Defendant has been given more than reasonable time to produce a final privilege and confidentiality log for documents in the 3,450 boxes Haspel declared were complete in March.

---

[6] *Id.*

[7] Paragraph 1 Notice at p. 2.

[8] *Id.* at 3.

**Defendant's Statement**

Defendant will be unable to reconsider Interior's privilege assertions until Defendant actually receives and reviews scanned images of documents designated as privileged by Interior. Defendant also notes that Interior does not give any special priority to scanning privilege designated documents. Rather, Interior scans documents in the order in which they are placed in a given box. In addition, earlier on in the scanning process, Interior did not scan privilege designated boxes. Accordingly, Defendant will have to locate and scan certain privilege designated boxes.

**2. Office of Trust Records Documents**

***a. Privilege Review and Access***

**Parties' Statement**

Paragraph 2 of the March 26, 2004 Order required Defendant to complete privilege and confidentiality reviews for all boxes located at OTR and provide Plaintiff with access to all boxes at OTR on or before May 28, 2004 as privilege reviews are completed. The parties agree that "all boxes" means the 5,600 boxes at OTR identified in the Haspel Declaration. Paragraph 2 further provided that, as Defendant completes the privilege and confidentiality reviews for the remaining 2150 boxes, it must provide Plaintiff with a log of any documents it designates as privileged or confidential.

Paragraph 2 of the March 26 Order further required that Plaintiff review the BISS indices and divide into three equal groups the approximately 2,150 boxes at OTR that had not undergone privilege review. Plaintiff was directed to provide Defendant with three lists of boxes indicating the order and priority that Plaintiff wanted Defendant to conduct privilege reviews and subsequently make the boxes available in Plaintiff's preferred order. Paragraph 2 of the March

26 Order directed that Plaintiff's three lists would be due on April 20, 2004, April 30, 2004, and May 11, 2004, respectively. Plaintiff provided its notices to Defendant on April 22, 2004, April 28, 2004, and May 11, 2004, asking for privilege reviews for three groups of 717 boxes each in accordance with the order in which the boxes were listed on the compact disks of the BISS indices that Defendant had furnished the Tribe. Because the third CD with a BISS index Defendant provided Plaintiff did not distinguish OTR boxes from FRC documents, Plaintiff could only distinguish 5,106 of the 10,045 boxes as located at OTR.

In the April 30 Notice, Defendant states that it had completed privilege reviews of the following documents at OTR: (a) all 390 boxes of Osage BIA records ("G06 boxes"); (b) all 600 BIA Eastern Oklahoma Regional Office boxes ("G00 boxes"); (c) and all but 300 boxes of the 4,716 BIA Central Office boxes ("K50 boxes" or "K51 boxes" or "OST boxes"). Defendant also informed the Tribe in the April 30 Notice that it could have access to any of these documents on or after May 10, 2004.

**Plaintiff's Statement**

Defendant has not completed final privilege and confidentiality reviews of any of the documents at this facility. There is no reason Defendant could not complete privilege and confidentiality reviews of the boxes Haspel identified in March. Defendant United States has differentiated DOI reviews from DOJ reviews, without clarifying the position of the United States.

Defendant has hired contractors to conduct a preliminary privilege review of these documents before they are produced to Plaintiff. After it creates a scanned image of documents identified by the contractors as privileged, DOI will conduct its own review of these preliminary privilege claims. After it receives the results of DOI's adjustments, if any, to the contractor's

preliminary determinations, DOJ will make final privilege and confidentiality determinations for all documents.

DOJ will not begin its final privilege and confidentiality review, however, until DOI completes its own review and, in addition, provides DOJ with scanned copies of the documents for which privilege is claimed.

**Defendant's Statement**

Both paragraphs 1 and 4 of the March 26 Order require that Defendant provide Plaintiff with privilege logs as Defendant completed privilege reviews. On May 18, 2004, during Plaintiff's inspection at the AIRR, Defendant provided Plaintiff with a draft privilege log from the Solicitor's Office's review of Osage documents conducted in March and April 2004. On August 23, 2004, Defendant submitted to the Tribe its Notice of Service of Privilege Logs for Osage Documents Located at Lenexa, Kansas. With that notice Defendant submitted two versions of the privilege log from the Solicitor's Office's review at AIRR. The first version of the privilege log (AIRR-Lenexa Records Only, June 2, 2004) (38 pages) mirrored the draft log provided on May 18, 2004, only edited for grammar and style. The log entries on the first version were listed in the same sequence as they appeared on the draft log. The second version of the privilege log (AIRR - Lenexa Records Only, Grouped by Accession, August, 2004) (46 pages) was comprised of the same log entries as the first version, however, the entries were sorted in ascending order by accession as requested by Plaintiff. .

Finally, on October 1, 2004, Defendant submitted to the Tribe its Notice of Service of Draft Privilege Logs for Office of Trust Records Documents (Joint Review and Osage Specific Reviews), which included two draft privilege review logs from the Office of the Solicitor's review of OTR documents in Albuquerque, NM. The first privilege log (Osage-Joint Review

Privilege Log, September 28, 2004)(34 pages), was prepared from certain boxes designated by the Plaintiff for inspection as part of their joint review. The second privilege log ("Osage-Albuquerque Privilege Log") (11 pages), was prepared from boxes designated by the Plaintiff for inspection as part of its Osage-specific review at OTR in Albuquerque, NM.

The October 1, 2004 Notice indicated that these were draft logs and suggested a process for addressing privilege assertions that had been made by the Solicitor's Office. Essentially, Defendant requested that Plaintiff review the draft logs; identify by document number, the privilege assertions with which the Tribe disagrees, if any; and supply the Defendant with the basis for Plaintiff's disagreement. Defendant would then reconsider whether to continue or withdraw its assertion of privilege. Defendant, however, will be unable to reconsider Interior's privilege assertions until Defendant actually receives and reviews scanned images of documents designated as privileged by Interior. Defendant also notes that Interior does not give any special priority to scanning privilege designated documents. Rather, Interior scans documents in the order in which they are placed in a given box. In addition, earlier on in the scanning process, Interior did not scan privilege designated boxes. Accordingly, Defendant will have to locate and scan certain privilege designated boxes.

***b. Status of Plaintiff's Document Review at OTR***

**Parties' Statement**

The parties separate their joint discussion into three different portions based on the different document inspections at OTR

**<u>BIA Central Office Boxes at OTR</u>**

There has been extensive discovery by the Osage Tribe and other litigating Tribes of boxes of BIA Central Office records that were not contemplated by the parties or this Court at the

time of the March 26 Order. Paragraph 2 of that Order only contemplated about 2,150 boxes for privilege review and tribal inspection, including the Osage-specific collections.

Beginning on May 23, 2004, through October 30, 2004, the Osage Tribe joined with the Warm Springs and Blackfeet Tribes in a joint review of the 4,600 BIA Central Office records (that endeavor hereinafter referenced as the "Joint Discovery Project" or "JDP"). Because not all of the 4,600 Central Office boxes contain records responsive to any of the Joint Discovery plaintiff Tribes, the parties agreed that it would be more efficient for the JDP Tribes, including Plaintiff, to designate for their inspection specific boxes from the Central Office accessions. Defendant understands that those three Tribes designated 1,503 boxes from accessions "K00," "K01," "K50," and "OST" (also known as the "Phase I" designations).

Shortly after this review began, Plaintiff learned that additional BIA Central office accessions, not previously identified in the Haspel Declaration, this Court's March 26, 2004 Order, or the BISS indices, were located at OTR.[9] During the document review at OTR, Defendant identified a second cache of documents that were not described in the Haspel Declaration, this Court's March 26, 2004 Order, or the BISS indices. The Jicarilla Apache Tribe and the Laguna Pueblo originally designated these so-called "pass through" documents for inspection and, thereafter, Defendant made these documents available to Plaintiff.[10] Plaintiff does not know the total number of such boxes that were made available. However, Plaintiff has

---

[9] The 4,600 boxes of BIA Central Office records identified in the Haspel Declaration consist of accessions GOO and GO6. The additional BIA Central Office records identified in June 2004 come from accessions INT, DEN, FTW, ITA, KAN, and SUI. (Defendant refers to as "Phase II" of the JDP.) Defendant refers to the review of the BIA Central Office records described in the Haspel Declaration as the "Phase I" review.

[10] Defendant refers to these boxes as "pass-through" boxes.

reviewed 823 such boxes and has completed its review of all such boxes identified to date by Defendant.

On June 15, 2004, Defendant conferred with the Joint Discovery plaintiffs and the parties agreed that additional Central Office accessions, not previously identified in either the Haspel Declaration March 26 Order or in the BISS indices would also be included in the JDP. Between June 18 and June 30, 2004, these three Tribes designated 1, 355 boxes from Phase II accessions for review. None of the Phase II boxes had theretofore been reviewed for privilege. Defendant commenced privilege review of the Phase II designations on July 9, 2004, and began including those boxes in the ongoing, rolling inspection beginning on July 12, 2004.

Plaintiff, through the Joint Discovery Project, has reviewed a total of 2,427 Central Office boxes at OTR, of which 1,271 are from Phase I and 1,156 are from Phase II.

**Eastern Oklahoma Regional Office and Osage Agency Boxes**

On August 20, 2004, the parties conferred and agreed that Plaintiff would begin inspecting the G00 and G06 boxes ("Osage-specific" boxes) beginning at the conclusion of the Joint Discovery Project, which was then projected to end on September 30, 2004. Although the JDP continued for almost an additional month, Plaintiff dispatched a separate review team to inspect the Osage-specific boxes at the OTR Renaissance facility beginning on October 6, 2004 and extending through October 27, 2004. Defendant understands that Plaintiff reviewed 701 of the 994 Osage-specific boxes identified in the BISS indices and the March 26 Order. Plaintiff has designated records for imaging in 153 of these boxes. Defendant understands that Plaintiff has concluded its inspection of these records.

In addition, Plaintiff inspected 81 of the Osage-specific boxes as part of the Joint Discovery Project. On August 18, 2004, the Jicarilla and Laguna Tribes[11] joined the JDP. These Tribes had designated for their inspection some G00 and G06 boxes. Defendant presented these boxes not only to Jicarilla-Laguna, but also to the Osage Tribe through the Joint Discovery Project.

**Other ("Pass Through") Boxes**

Throughout the course of the JDP and upon Plaintiffs' several requests, Defendant has made additional boxes available for Plaintiffs' inspection that had not been designated in either Phase I or Phase II of the JDP (the "pass-through" boxes). These pass-through boxes were originally designated for inspection through the Jicarilla-Laguna inspection and span various record groups including Central Office accessions. Where the Jicarilla-Laguna plaintiffs had made designations or were presented boxes that were later observed by them to be also of interest to the Joint Discovery plaintiffs, those boxes would be subsequently presented to the JDP reviewers as well. Plaintiff has reviewed a total of 823 pass-through boxes.

In summary, Plaintiff has reviewed the following numbers of boxes at OTR-Albuquerque:

| | |
|---|---|
| Central Office Boxes-Phase I | 1,271 |
| Central Office Boxes-Phase II | 1,156 |
| Osage-specific Boxes | 782 |
| Pass-through Boxes | 823 |

[11] Jicarilla Apache Nation v. United States, No. 02-225, CFC, and Pueblo of Laguna v. United States, No. 02-226, CFC. The Jicarilla and Laguna Tribes also conducted an inspection with a separate review team of boxes that were not of interest to the other JDP Tribes. This Jicarilla-Laguna-specific document inspection has run concurrently with the JDP in the OTR Hawkins facility since July 19, 2004.

TOTAL OTR Boxes Inspected 4,032

### c. *Status of Scanning and Coding at OTR*

**Parties' Statement**

During its review of OTR documents, Plaintiff marked a number of documents for production. Defendant intends to produce these documents on a rolling basis. To date, however, Plaintiff has not received scanned or hard copies of any of these documents.

With regard to coding, Defendant's coding provides four categories of information for each document: 1) accession number; 2) box number; 3) document date; and 4) document type. Plaintiff has requested that Defendant add specific form identification, where appropriate, for the fourth field. Defendant is considering this request.

Defendant created the coding process without consultation with Plaintiff. Plaintiff has requested that Defendant consult with Plaintiff before making changes to the coding system.

Plaintiff very recently has requested that Defendant explore options for prioritizing the scanning of tranche one documents in this case. The parties will continue discussions on this issue.

**Defendant's Statement**

Through November 29, 2004, Defendant had contracted with four scanners and nine coders at the OTR to assist with the production of Osage and other tribes' documents. In the five weeks beginning October 25 through the week beginning November 22, has averaged scanning and coding 27 boxes per week or 14,150 images (pages) per week. Since that date, Defendant has increased the number of scanners to eight and the number of coders to twenty-four. Defendant has no information at this time about the scanning progress since November 27. As of

December 10, 2004, DOI's OTR scanning contractors had completed first preparing and coding a total of 1,032 boxes of tribally-earmarked boxes (with widely varying amounts of documents in each box) from the JDP and the Jicarilla-Laguna inspection and had scanned 888 of those boxes, leaving 144 boxes of that portion to be scanned. The result as of December 10 was 188,345 scanned images (pages). The preppers and coders were continuing into another portion of the JDP and Jicarilla-Laguna boxes.

As the Court heard in the informal status conference on December 14, Defendant has proposed to Plaintiff that moving the G00 and G06 boxes the Osage Tribe has marked at OTR for reproduction to the AIRR scanning operation in order to begin immediate scanning and coding of the Osage-specific boxes still held voluntarily by Interior at OTR at the Tribe's request. . Plaintiff and Defendant are expecting to continue discussions to resolve this issue.

Defendant intends to produce these documents on a rolling basis.

Defendant cannot agree to the conditions Plaintiff has proposed because Defendant has only learned the counter-offer this date and requires additional authority and time before a final position can be determined.

**Plaintiff's Statement**

The process for scanning and coding documents Plaintiff has identified for production is far too slow. Even at the quickened rate of 14,150 pages a week, it would take Defendant over 35 weeks, or nearly 9 months, to complete scanning of the Osage documents identified at OTR so far, and only if Osage documents were being scanned.

Plaintiff has negotiated with Defendant regarding the movement of boxes between facilities. As a condition of moving these documents, Plaintiff sought Defendant's agreement to

preserve these and all other Osage trust documents as trustee for Plaintiff. Plaintiff also sought Defendant's agreement to notify Plaintiff in writing of these and all other boxes that may be relevant to this case prior to the moving of those documents to AIRR reject, and to immediately notify Plaintiff of the intentional or accidental destruction of these or other Osage trust records that may be relevant to this case during the pendency of this case. Defendant is considering these conditions, so the parties have not been able to reach agreement on this issue.

***d. Deadlines and Responsibilities***

**Plaintiff's Statement**

Paragraph 1: BISS Indices

Plaintiff believes Defendant should have a deadline to identify all boxes of documents relevant to this case that are located at OTR facilities in Albuquerque and index those boxes into the BISS. Based on the record to date, the records at OTR are historical records, not boxes shipped from BIA or other agencies in the regular course of business. Plaintiff believes that March 1, 2005 is an appropriate deadline. Without such a deadline, Plaintiff faces a trial date without the opportunity to review Osage trust records that may be relevant to this case.

Paragraph 1: Privilege Logs

Plaintiff believes that Defendant's April 9 privilege and confidentiality log and subsequent draft logs are sufficient to satisfy the 3,450 boxes Haspel identified has complete. Plaintiff is willing to accept those non-April 9 logs as "confidential" until DOJ completes final confidentiality reviews.

Paragraph 2: OTR Privilege Reviews

Plaintiff recommends that Defendant quicken the privilege and confidentiality review process by having DOJ attorneys review DOI or DOI contractor determinations on a regular

basis before the scanning and coding process begins. Waiting until scanning and coding is complete greatly slows the review process.

Paragraph 2: Scanning and Coding

With the increased team scanners and coders, Plaintiff believes 6 months is an appropriate deadline for Defendant to complete production of the OTR material Plaintiff has identified to date.

**Defendant's Statement**

Defendant will begin rolling production of OTR scanned and coded documents by December 30, 2004. Defendant anticipates that it will complete coding and scanning of OTR documents within 38 weeks if all documents remain in Albuquerque. Defendant notes, however, that it cannot establish a final production date with certainty due to many factors, including the volume of documents, competing interests of multiple litigating Tribes, obligations in other court orders, logistical issues related to storage and staging of boxes, and budgeting for litigation support at Interior.

Defendant refers to its statement in section A.2.a. of this Report.

**3. Federal Records Center (AIRR) Documents**

***a. Privilege Review and Access***

**Parties' Statement**

Paragraph 3 of the March 26 Order required that Defendant complete privilege and confidentiality reviews for all of the 3600 boxes identified in the Haspel Declaration as located at the FRCs in Lee's Summit and Lenexa and to provide Plaintiff with rolling access to those boxes by June 15, 2004. With respect to 3,084 boxes, Defendant states that it will privilege review

these documents promptly with respect to any which Plaintiff requests access to these documents.

With respect to remaining 1,295 boxes at Lenexa FRC, Defendant has hired contractors to make preliminary privilege determinations with respect to the documents in those boxes. As described above, however, those preliminary determinations will be further reviewed by attorneys at DOI and ultimately by attorneys at DOJ, who reserve the right to make all final determinations of privilege and confidentiality for the Defendant.

The parties have agreed that Defendant will turn over to Plaintiff immediately a large number of these scanned images, which contain no privileged documents, with Plaintiff agreeing to accept them all as marked "Confidential" in conformance with the Court's Protective Order until such later time as Defendant can complete a page-by-page review for confidentiality and withdraw any qualifying documents as no longer confidential. Even if marked confidential, however, the parties are free to make use of the document in this case so long as it would be filed under seal. In order to prevent unnecessary filings under seal, Defendant has agreed to perform a prompt confidentiality review of any documents Plaintiff intends to attach to a pleading.

**Plaintiff's Statement**

Plaintiff restates its position in Section 2.a. above.

**Defendant's Statement**

Defendant refers to its previous statement in section A.2.a. of this Report.

***b.. Status of Plaintiff's Document Review at FRC***

**Parties' Statement**

Paragraph 3 of the March 26 Order further required that Plaintiff review the BISS indices and divide into four equal groups the approximately 3,600 boxes at OTR that had not undergone

privilege review. Plaintiff was directed to provide Defendant with four lists of boxes indicating the order and priority that Plaintiff wanted Defendant to conduct privilege reviews and subsequently make the boxes available in Plaintiff's preferred order. Paragraph 3 also directed that Plaintiff's four lists would be due on April 20, 2004, April 30, 2004, May 11, 2004, and May 21, 2004, respectively. Plaintiff provided notices to Defendant on April 22, 2004, April 28, 2004, and May 11, 2004, asking for privilege reviews for three groups of 900 boxes each in accordance only with the order in which the boxes were listed on the compact disks of the BISS index that Defendant had furnished the Tribe. Defendant cannot locate the fourth required notice as to the last 900 boxes.

Paragraph 3 of the March 26 Order also required that Defendant allow Plaintiff with access to the documents on a rolling basis as privilege reviews were completed. On April 30, 2004, Defendant submitted to the Tribe Defendant's Notice of Completion of Privilege Reviews and Availability of Access to Osage Trust Records. The April 30, 2004 Notice stated that Defendant had completed privilege reviews of the following documents at the AIRR: (a) all 1,255 boxes of G06 records formerly held at the FRC in Lee's Summit, MO); and (b) approximately 350 of the 3,084 boxes of G00 records formerly at Lee's Summit. The April 30, 2004 Notice also informed the Tribe that it could have access to any of these documents on or after May 10, 2004, and set out basic inspection protocols (see note 2, above).

Defendant, in the Status Conference on October 21, 2004, corrected its April 30, 2004 Notice with respect to the AIRR documents by stating that the total number of boxes privilege reviewed was 1,294 (790 Osage Agency (G06) boxes and 344 Muskogee Regional Office (G00) boxes). The April 30, 2004 Notice also stated that Defendant did not conduct a privilege review of the balance of the G00 and G06 boxes because Defendant found, upon further research and

inspection, that those boxes contained records pertaining to tribes other than Osage, or contained documents wholly unrelated to trust funds or assets. However, Defendant stated that it would complete privilege reviews and make boxes available to Plaintiff upon specific requests.

On or about May 10, 2004, Plaintiff informed Defendant that it intended to inspect records in Lenexa beginning Monday, May 17, 2004. From May 18 until May 20, 2004, Plaintiff inspected 141 boxes at AIRR identified in the Haspel Declaration. Plaintiff resumed its AIRR inspection on November 9, 2004. From November 8 until December 17, 2004, Plaintiff has selected documents from 1,139 boxes.

### *c. Status of Scanning and Coding at AIRR*

**Parties' Statement**

Plaintiff earmarked documents for production from 33 boxes during its May 18-20, 2004 inspection. Defendant has completed scanning and coding all of those approximately 10,000 documents containing some 27,000 pages. Defendant can serve immediately three of five parts of this document production upon the agreement by Plaintiff to a blanket confidentiality designation, which Plaintiff has agreed to in this Joint Report. To date, however, Plaintiff has not received scanned or hard copies of any of these documents.

Defendant is currently coding boxes that Plaintiffs completed selected between November 9 and December 17, 2004. Defendant has coded 56,000 images from 18 boxes of these documents during the period since November 12. Defendant has scanned 31,500 images from 7 of these 18 boxes. This work has been completed by four contract employees, but the contractor will increase the number of scanners and coders, subject to funding.

The parties have agreed that Defendant will produce and Plaintiff will accept these scanned and coded images marked "Confidential" immediately. At a later time, Defendant can

complete its final reviews for confidentiality and indicate to Plaintiff which documents are actually subject to confidentiality claims.

**Plaintiff's Statement**

Plaintiff restates its position in Section 2.c. above, less the second paragraph of that subsection.

**Defendant's Comments**

[ Defendant restates its position in section A.2.c. of this report.

***d. Deadlines and Responsibilities***

**Plaintiff's Statement**

Paragraph 3: AIRR Privilege Reviews

Plaintiff restates its position in Section 2.c. above that addresses OTR privilege and confidentiality reviews.

Paragraph 3: Scanning and Coding

With the increased team scanners and coders, Plaintiff believes 6 months is an appropriate deadline for Defendant to complete production of the AIRR material Plaintiff has identified to date.

**Defendant's Statement**

Plaintiff has completed inspection and designation of documents for scanning and coding at AIRR. .Defendant has begun scanning and coding designated documents. For progress on this effort, Defendant refers to its Statement in section A.3.c.. Defendant cannot establish a final production date with certainty due to many factors, including an unknown volume of documents, competing interests of multiple litigating Tribes, obligations in other court orders, logistical

issues related to storage and staging of boxes, and budgeting for litigation support at Interior. In addition, as set out below, approximately 12,000 ITAD boxes recently acquired by Interior, have yet to be accessioned into the BISS system.

**4. Privilege Logs**

**Parties' Statement**

Paragraph 4 of the March 26 Order requires Defendant to provide Plaintiff with a privilege and confidentiality log for all files and documents it deems privileged or confidential as it completes those reviews. There is no date certain that Defendant must provide these final logs.

Defendant has withdrawn a number of initial claims of privilege.

**a. Status**

**Plaintiff's Statement**

As discussed above, Defendant has not provided Plaintiff with a final privilege and confidentiality log for any of the documents at OTR or AIRR. This in spite of the March Haspel Declaraton in which Haspel identifies 3,450 boxes for which Defendant United States has completed privilege and confidentiality reviews. Defendant has had adequate time to complete final logs for all the 9200 boxes identified in the Haspel Declaration.

**Defendant's Statement**

Defendant refers to its statement in section A.2.a. of this Report.

Defendant intends to assert appropriate privileges in this case on a document-by-document basis. If the privilege assertions are challenged, the parties should brief the issue to the Court.

Defendant points out that in the hundreds of pages and images of documents being discovered in this case, a truly miniscule number now are claimed to be privileged. Defendant

fully expects that, when it can get the scanned images itself to actually review documents on which its initial reviewers asserted privilege during the hard-copy privilege review, many of the privilege assertions will be withdrawn.

**b. Deadlines and Responsibilities**

**Plaintiff's Statement**

Plaintiff believes 8 weeks is an appropriate deadline for Defendant to produce logs for the balance of the boxes not identified by Haspel that Plaintiff has identified at OTR and AIRR to date. The parties can seek to resolve informally as Defendant produces logs.

**Defendant's Statement**

The parties will resolve privilege disagreements on a rolling basis as scanned documents become available during the production process. Within 30 days of receipt of images designated as privileged by Interior and disputed by Plaintiffs, Defendant will take a final position on the assertion of privilege and communicate this to Plaintiff in writing.

Defendant also refers to it statement in section A.2.c. of this Report.

**B. Documents in the Custody of the Indian Trust Accounting Division**

**Parties' Statement**

Prior to the issuance of the March 26, 2004 Order, Defendant had identified sixteen boxes of material in the possession of ITAD that relate to Plaintiff. Under that Order, on or before May 28, 2004, Defendant was required to scan to disc, conduct privilege reviews, and produce to Plaintiff all of these materials. By Order dated June 2, 2004, the Court granted Defendant's request to extend that deadline to June 3, 2004.

On June 3, 2004, Defendant submitted to the Tribe its Notice of Service of Osage Documents from ITAD and produced to Plaintiff 13 compact disks ("CDs"), containing 4,274

documents with 11,106 images of documents. Defendant did not assert a claim of privilege or confidentiality for any of these documents.

**1. New Cache of ITAD Documents**

**Defendant's Statement**

As set out in more detail below, prior to August 2004, ITAD had approximately 15,000 boxes of materials containing tribal records, which were subsequently shipped to NARA and the AIRR. ITAD still has physical custody of approximately 3,763 additional boxes relating to settled or closed cases with particular Tribes. These boxes primarily contain copies of source documents used by ITAD employees in performing work for particular cases.

Defendant has recently obtained a November 30, 2004, inventory from ITAD for the 3,763 boxes still remaining at ITAD that contain copies of source documents for closed or settled cases. This inventory has field information such as Tribe, Docket number, and box description and box number. This inventory, however, does not specifically list the Osage Tribe and it is highly unlikely that boxes referenced in the inventory contain copies of source documents relating to the Tribe. On December 21, 2004, Defendant submitted to the Tribe its Notice of Service of ITAD Inventories and produced to Plaintiff one CD containing an inventory of the 3,763 boxes still in the custody of ITAD.

This CD also contains an inventory of documents maintained at ITAD as of June 30, 2004 (referred to as "6300WAREHSE" on the CD). This inventory contains field information such as Tribe code, control number, docket number, and description. This inventory, however, was only based on the labels of information on the outside of the boxes at ITAD and does not indicate which of the boxes have been sent to the AIRR or to NARA.

Plaintiff will be able to most efficiently access ITAD documents at the AIRR after they have been entered into the BISS system. Defendant proposes that any inspections of ITAD documents occur after all ITAD documents are entered into the BISS and Defendant has completed privilege reviews

**Plaintiff's Statement**

Plaintiff received Defendant's Notice on December 21, 2004, and has not had the opportunity to review the inventory on CD.

## C. Documents at the Custody of the National Archives and Records Administration

**Parties' Statement**

Under the March 26, 2004 Order, Plaintiff was required to determine whether NARA possesses documents relevant to the present litigation. Upon a showing that NARA possesses such documents, the Court and the parties were to develop a procedure for documents production. Plaintiff filed its Motion for Production of documents from NARA on April 29, 2004. The Court denied this motion during a status conference on May 12, 2004.

Defendant previously served on Plaintiff two sets of finding aids for records specifically identified as Osage tribe-related in the legal custody of NARA.[12] These finding aids included a 131 page inventory of Osage Agency holdings in NARA's Southwest Regional Archives in Ft. Worth, Texas.

### 1. New Cache of NARA Documents

**Defendant's Statement**

[12] *See* Defs.' Notice of Service of Finding Aids from NARA (April 27, 2004) and Defs.' Notice of Service of Supplemental Finding Aids from NARA (May 5, 2004) ("NARA Supp. Finding Aids").

As of September 24, 2004, NARA received 3,732 boxes of Indian accounting records from GSA's ITAD facility in Lanham, Maryland. These boxes contain documents that are in the legal custody of NARA, within Records Group (RG) 411 and RG 217. (See Paragraph 5 of NARA Supp. Finding Aids.) These boxes along with the remainder of RG 411 and RG 217 are currently housed at NARA's headquarters facilities in College Park, Maryland. Based on NARA's inspection of the materials as part of the move, some of the older records received from ITAD may be in need of conservation or preservation work before they may be further accessed; however, to the extent currently practicable, NARA staff is willing to assist Plaintiff's representatives in their review of the RG 411 and RG 217 collections for Osage records based on available finding aids.

NARA has made plans to undertake the interfiling of historical settled Indian account claims contained in the boxes received from ITAD back into the original series of Settled Indian Accounts presently held by NARA in its College Park headquarters. During this process, both the names of tribes associated with specific claims, and the new box number for each account, will be captured as additional fields on a spreadsheet database that NARA received from ITAD relating to the original boxes. (The ITAD spreadsheet containing accounts returned to NARA includes 114,397 items; the spreadsheet is not currently broken down by tribe.) NARA intends to assign student interns to this project, and estimates that it will take the students at least until the end of the 3rd fiscal quarter of 2005 to complete this process.

Defendant states that there are also a large number of records within NARA's Record Group 75, comprising records of the Bureau of Indian Affairs. This Record Group is known to contain Osage Tribe-related records. RG 75 contains General Correspondence records grouped into three major time periods (for which the filing systems are different). Seventeen boxes of

microfilm records of the Osage Agency dating from 1824 to 1880 exist. A second group of "Letters Received," dating from 1881 to 1907, is known to contain some Osage documents; however, this group is filed in numerical order and is accessible by the use of a corresponding register giving headings for individual tribes and a cross-table of numerical references. A third collection of records dating from 1907 also contains general correspondence files, which can be accessed by name of Indian agency. It is to be noted, however, that the three referenced "General Correspondence" collections above represent only a subset of the entirety of NARA's holdings under RG 75. RG 75 is housed at NARA's Main Archives building in downtown Washington, D.C., and is accessible there with the use of finding aids and with the assistance of NARA staff.

Defendant cannot rule out the possibility that additional Osage related records are found within a dozen or more additional Department of the Interior and other agency Record Groups (e.g., RG 49, Bureau of Land Management; RG 22, Fish and Wildlife Service, RG 115, Bureau of Reclamation; RG 79, National Park Service; RG 60, Bureau of Mines; RG 114, Soil and Conservation Service; RG 279, Record of the Indian Claims Commission; RG 513, Indian Health Service; RG 48, Records of the Secretary of the Interior; and in various military record groups). Again, NARA staff stands ready to assist plaintiffs in narrowing the universe of possible records to access after consulting applicable finding aids.

**Plaintiff's Statement**

In addition to the NARA facilities located in Fort Worth, College Park, and Washington, D.C., Plaintiff understands that there are relevant documents at a NARA-affiliated archive of the Oklahoma Historical Society in Oklahoma City, Oklahoma. Plaintiff intends to begin review of documents at these locations in the near future (the exact date depends upon completion of review of boxes at OTR and AIRR that are available) and complete this before March 15, 2004.

**D. Documents in the Custody of the Treasury**

**Parties Statement**

The March 26 Order states that, after Plaintiff completes its review of DOI boxes, it must contact the Court to schedule a status call if Plaintiff believes Treasury possesses non-duplicative relevant documents. Plaintiff has not completed its DOI review. Treasury has offered to respond to Plaintiff's written inquiries concerning the general nature, availability, and location of Treasury's tribal trust-fund related records.

**E. Corps of Engineers**

**Parties' Statement**

As stated above, the Corps has land records relating to Corps condemnation projects. The Corps created five lakes wholly or partially in Osage County through condemnation proceedings which impacted some Osage mineral interests. The Corps made payments to the Osage tribal trust account as a part of these proceedings. Defendant is aware of approximately 96 feet of files relating to these condemnation proceedings. Plaintiff has very recently requested that Defendant provide an index or other finding aid for these documents. Defendant will respond to Plaintiff's request.

**F. New Cache of Documents at the EORO and the Osage Agency**

**Defendant's Statement**

Defendant states that the Eastern Oklahoma Regional Office in Muskogee, OK ("EORO") has the following collections related to the Osage Tribe: two boxes of general materials, such as annual reports on Osage mineral production produced by the Osage Agency; and five boxes of documents related to pending or past administrative appeals. These seven

boxes contain duplicate documents from the Osage Agency or other offices, except for the original appeal document in each administrative appeal file.

Defendant has also identified the following collection of documents at the Osage Agency Office in Pawhuska, Oklahoma:

Oil and gas leases

Expired: 12 linear feet (a linear foot is approximately equivalent to one "box")

Active: 207 feet

Active awaiting action: 6 feet

Gas contracts: 18 feet

Corporate documents (corporate bonds, certificates): 30 feet

Accounting information (oil and gas collections): 129 boxes, 70 of which will be shipped to Lenexa.[13]

Defendant proposes to a provide access to active trust records at BIA Regional and Agency offices, as follows. Defendant will provide to Plaintiff any existing indices or inventories of relevant active files at the BIA offices or, if none exist, will create a general index or inventory of relevant files for Plaintiff's review. The indices or inventories will provide a basic description, location, and approximate volume of relevant records. Based on the indices or inventories, Plaintiff would be able to indicate which files Defendant should scan, code and produce. Defendant would code and scan the selected files in their entirety thereby eliminating the time-consuming steps of Defendant's initial privilege review before Plaintiff's inspection. Defendant would instead conduct its privilege review from the scanned images and produce the scanned documents and privilege logs where appropriate. Defendant submits that this process

13 October 20, 2004 Joint Status Report.

would more expeditiously provide Plaintiff with these kinds of records while minimizing any disruption of the daily operations of the BIA offices using their active files.

This process does not preclude Plaintiff from making site visits to supplement or clarify the information the described process provides.

**Plaintiff's Statement**

Plaintiff has no specific knowledge of the number of boxes at these locations.

Plaintiff plans to take the deposition of a person identified by Defendant as knowledgeable about trust records systems at the Osage Agency and Muskogee Region and begin review of Osage Agency records in Pawhuska, Oklahoma. Defendant states that Plaintiff, by its original attorney of record, Mr. Brickell, has already conducted such a deposition at the Agency on September 11, 2002.

Plaintiff is considering Defendant's proposal described above.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General

By:

s/ Wilson K. Pipestem by s/ Brett D. Burton_
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
Attorney for Plaintiff

s/ R. Anthony Rogers by s/ Brett D. Burton__
R. ANTHONY ROGERS
Attorney of Record for Defendant
BRETT D. BURTON
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0483
Fax: (202) 514-8865 or 305-0506
Attorneys for Defendant

Of Counsel for Defendant:

Stephen L. Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of Interior
MS 6456
Washington, D.C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Jason R. Baron
Director of Litigation
Office of General Counsel
National Archives and Records Administration
8601 Adelphi Road
Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Alan R. Woodcock
Field Solicitor
Office of the Field Solicitor
U.S. Department of the Interior
Tulsa, Oklahoma 74145
7906 East 33rd Street
Suite 100
Telephone: (918) 669-7730
Fax: (918) 669-7736

Michael Davidson
Attorney
Financial Management Services
U.S. Department of the Treasury
401 – 143rd Street, Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627