**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: March 14, 2005 |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANTS' MEMORANDUM IN SUPPORT OF
ITS PROPOSED AMENDED SCHEDULING ORDER

Defendant submits this memorandum in support of its Proposed Amended Scheduling Order (filed herewith). Despite their efforts to meet, confer, and exchange drafts of the proposed amended scheduling order, Plaintiff and Defendant were unable to agree on a joint revised scheduling proposal. Hence, they are filing separate revised proposals. As explained below, the parties have fundamental differences about the best and most efficient approach for redefining and narrowing Tranche I.

Defendant proposes to redefine Tranche I by focusing on all trust fund mismanagement claims associated with the recorded transactions in particular accounts[1/] for a narrowly framed time period, *i.e.*, 1984 to 1995. Defendant's approach allows the parties to bring a discrete portion of the case to a final and orderly conclusion, thereby avoiding piece-meal litigation over the same set of facts, legal standards,[2/] and documents. It is eminently sensible for the Court and the parties to address, in one tranche, all of Plaintiff's claims and grounds for relief that arise

[1/] Through the Office of Historical Trust Accounting (OHTA) for the Department of the Interior (DOI or Interior), Defendant intends to provide Plaintiff, by Thursday, June 16, 2005, with a statement and database of transactions for specific accounts. This database is essentially a a compilation of transactions extracted from several Interior accounting systems and the Arthur Andersen prepared Reconciliation Project into one database. The database is intended to provide the parties and the Court with a common factual platform from which to litigate, settle, or otherwise resolve Plaintiff's claims regarding those transactions.

[2/] The legal standards applicable to an abbreviated time period are likely to be more common throughout that time period than throughout the entire 1972-1992 period proposed by Plaintiff, because of changes over time in applicable legal standards.

from a fixed set of transactions in a known and discrete set of accounts, rather than for the Court and the parties to revisit those same transactions multiple times in separate tranches. Through Defendant's approach, the Court will be able to bring closure to the status of those accounts and transactions or the specified time-frame by conducting one trial to resolve all of Plaintiff's grounds for relief arising out of specific transactions in specific accounts. By contrast, because the parties would address the funds mismanagement claims in separate consecutive phases of the case, Plaintiff's approach leaves unresolved, for the foreseeable future, the status of the accounts for those time periods and the continued relevance of the documents associated with those periods.

Under its approach, Defendant's proposed time period starts on November 5, 1984, and ends on September 30, 1995. Defendant derived the November 1984 starting date by calculating six years prior to the date of enactment of the Act of Nov. 5, 1990, Pub. L. No. 101-512, Tit. 104 Stat. 1930. The Court of Appeals for the Federal Circuit recently held that this Act and subsequent Interior appropriation acts prevent trust fund claims from accruing until the claimant receives a "meaningful accounting." *See Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1348 (Fed. Cir. 2004). Both of the parties in that case have petitioned for *certiorari* in the Supreme Court. In the event that the Supreme Court grants *certiorari* and the United States prevails, those of Plaintiff's claims that pre-date November 5, 1984 would likely be significantly narrowed. Defendant based the September 1995 ending date on the requirement under 25 U.S.C. § 4044 (American Indian Trust Fund Management Reform Act or 1994 Trust Reform Act), that the Secretary of the Interior prepared a report for certain tribal trust fund accounts that sets out a "balance reconciled as of September 30, 1995." In Defendant's view, using this statutorily derived ending date minimizes the additional accounting work that the parties must undertake to identify and understand the account transactions (i.e., credit and debit transactions) that Plaintiff

is challenging as being contrary to law.[3]

Also, under Defendant's approach, Plaintiff has to identify its issues and claims with specificity by April 14, 2005. In delineating this deadline, Defendant has retained the concept of—and expanded upon—the Court's requirement in its Order dated July 22, 2004, that Plaintiff state, with particularity and at the earliest opportunity, the issues and claims to be resolved at trial. Defendant's deadline proposal serves several critical functions here: (1) it delineates and establishes the Court's subject matter jurisdiction over this case; (2) it focuses the scope of discovery and the triable issues in the case; and (3) it provides Defendant with a reasonable opportunity to prepare an adequate defense to Plaintiff's specifically stated issues and claims. The Federal Circuit's recent opinion in *Fisher v. United States*, ____F.3d ____ (Fed. Cir. 2005) (March 7, 2005), makes clear that this Court should not permit Plaintiff to delay or otherwise extend the deadline for articulating its claims and the legal and factual bases for those claims.[4] Rather, the Court should advance that deadline, as Defendant has proposed, as one means of efficiently preparing this case for trial.

As the Court can see, Defendant's proposed revised scheduling order provides for the

---

[3] If the Court deems it appropriate, it can sharpen the focus of the Tranche I litigation further by adopting the 1992 ending date of the Arthur Andersen-prepared reconciliation project (*i.e.*, employ a 1984-1992 time frame).

[4] In *Fisher*, the Federal Circuit overruled *Gollehon Farming v. United States*, 207 F.3d 1373, 1378-80 (Fed. Cir. 2000), which held that determining whether a source is money-mandating is a two-step process. Under *Gollehon*, as a first step to establish jurisdiction, a plaintiff only had to make a non-frivolous allegation that the statute was money-mandating. *Fisher*, slip. op. at 7. As a second step, the case could later be dismissed if the court lacked jurisdiction because the statute on its merits did not provide for a money-mandating remedy. *Id.* at 8. In *Fisher*, however, the Federal Circuit stated that the money-mandating issue should be resolved, not in two steps, but rather in a single step at the outset of the case. The Court held that, when a complaint is filed under the Tucker Act, the "trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte* . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating." *Id.* at 9. The Court held that a trial court's determination at the outset that a source is money-mandating will control for whether a court has subject matter jurisdiction and subsequently for whether the statute is money-mandating based on the source's merits. *Id.*

completion of fact discovery, the briefing of dispositive motions, and the conclusion of expert discovery, in 2006. While Plaintiff's scheduling proposal offers earlier deadlines for the conclusion of discovery and the initiation of dispositive motions practice for Tranche I, Plaintiff's proposal is ultimately near-sighted because it effectively splits Plaintiff's claims between two or more tranches; complicates the entry of a final judgment for Tranche I; permits Plaintiff to litigate the same account transactions, based on separate grounds for relief, in subsequent tranches; and results in an extended schedule for the resolution, *in toto*, of Plaintiff's funds mismanagement claims.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General

By:

s/ Brett D. Burton
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

Martin J. LaLonde
John H. Martin
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior

Jason R. Baron
Director of Litigation
Office of General Counsel
National Archives and Records Administration
8601 Adelphi Road

MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**(PROPOSED) AMENDED SCHEDULING ORDER**

Pursuant to Rule 16(b) of the Rules of the United States Court of Federal Claims (RCFC), the Court held a status conference on the record with the parties on March 15, 2005, to review the parties' separate proposals to amend the Court's July 22, 2004 Order scheduling discovery, and to discuss any outstanding issues with the parties. This Order supersedes the July 22, 2004 Order.

The Court will decide this case in two tranches. The first tranche ("Tranche I") will consist of Plaintiff's trust fund mismanagement claims for trust fund account transactions from November 5, 1984[1] to September 30, 1995[2]. Tranche I will not include Plaintiff's 1873-1883 escrow claims, Plaintiff's Indian Claims Commission judgment claim in the 1950s, and any potential claims concerning Tribal IIM accounts. The second tranche ("Tranche II") of the case will encompass all outstanding issues for other time periods. Discovery with respect to Tranche II is not governed by this Order and shall be addressed separately by the parties and the Court after trial or settlement of Tranche I.

Defendant has stated its intention to provide Plaintiff with a statement and database of transactions by Thursday, June 16, 2005. Defendant has represented that it is compiling and providing data to Plaintiff about Plaintiff's account transactions, for the period from November 5, 1984, to September 30, 1995, and that it is doing so on a voluntary basis, to the extent feasible,

[1] This start date is six years prior to the date of enactment of the Act of Nov. 5, 1990, Pub. L. No. 101-512, Tit. I, 104 Stat. 1930 (the Department of the Interior and Related Agencies Appropriations Act of 1990). The Court notes that the Federal Circuit held that this Act and subsequent DOI appropriation Acts do not toll the statute of limitations on trust fund claims, and that they prevent trust fund claims from accruing until the claimant receives a "meaningful accounting." See Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1348 (Fed. Cir. 2004). On November 24, 2004, and January 7, 2005, the parties in that case filed petitions for certiorari in the Supreme Court. In the event of no further judicial review, the Court and the parties may revise the schedule accordingly.

[2] Pursuant to 25 U.S.C. § 4044, the Secretary of the Interior has prepared a report for each tribal trust fund account that sets out a "balance reconciled as of September 30, 1995."

and for the purpose of focusing the scope of the litigation of Tranche I. Defendant has described its statement and account database as including historical transactions from the Arthur Andersen LLP Reconciliation Project and Department of the Interior ("DOI") accounting systems.[3]

The parties shall complete discovery on Tranche I issues according to the following schedule:

1. Initial Identification of Issues. In order to focus discovery efforts and to ensure that the Court has subject matter jurisdiction over Plaintiff's claims under applicable law, Plaintiff shall provide a written statement to Defendant and to the Court identifying claims and issues to be resolved at trial, on or before Thursday, April 14, 2005. The memorandum shall include the following for each trust fund mismanagement claim:

   a. A concise description of the claim;
   b. A concise factual description of specific actions or conduct supporting each claim, including a description of specific accounts and/or transactions;
   c. The date or time periods when the action or conduct occurred;
   d. A description of the nature and amount of the damages suffered;
   e. An identification of the books of account or other records the Plaintiff has relied upon, or intends to rely upon, to prove the actions or conduct; and
   f. The specific statutory and regulatory basis for each claim, including the existence of any money-mandating legal requirements.

   Plaintiff shall supplement or modify the information above in accordance with RCFC 26(e).

2. Fact Discovery. All fact discovery, including all fact depositions, shall conclude on or before Thursday, December 15, 2005. In order to achieve this deadline, the parties shall make witnesses available at reasonably convenient times and locations and times. The parties are reminded that the rules of the court contemplate the use of depositions at trial for testimonial purposes in certain circumstances "as though the witness were then present and testifying." See RCFC 32(a).

   a. Defendant's Document Production to Plaintiff. Document production shall proceed as follows:

      1. Plaintiff shall designate any and all boxes its desires to inspect, and make final requests for production of documents, on or before Thursday, April 14, 2005.

      2. Defendant shall start making the boxes responsive to subparagraph 2(a)(1)

[3] DOI utilized different accounting systems for different periods of time: the Arthur Andersen LLP Reconciliation statements, which were based on Interior's original ledger system (July 1, 1972 to September 30, 1993); the Trust Funds Management System (October 1, 1993-March 31, 1995); Omni Trust ES (April 1, 1995 to February 28, 1999); and the Trust Funds Accounting System (March 1, 1999 – present).

above, available to Plaintiff for its inspection, on a rolling basis, on or before Monday, May 16, 2005.

3. Plaintiff's inspection of the designated boxes and documents shall be completed, on or before Thursday, July 13, 2005.

4. Defendant shall produce the document images, designated during the May-July, 2005, inspection, to Plaintiff on a rolling basis, starting on or before Thursday, August 17, 2005, and concluding by December 15, 2005.

b. Plaintiff's Document Production to Defendant. Document production shall proceed as follows:

1. Defendant shall make final requests for production of documents on or before Thursday, April 14, 2005.

2. Plaintiff shall start making documents responsive to subparagraph 2(b)(1), available to Defendant for its inspection, on or before Monday, May 16, 2005.

3. Defendant's inspection of documents shall be completed, on or before Thursday, July 13, 2005.

4. Plaintiff shall produce the designated document images to Defendant on a rolling basis, starting on or before Thursday, August 17, 2005, unless the parties agree to an alternative arrangement whereby Defendant will image Plaintiff's responsive records.

c. Cost Sharing. The parties shall share costs for scanning and coding documents in accordance with the parties' written agreement. In the event the parties cannot agree on a cost-sharing arrangement, the parties shall inform the Court so that the Court can schedule a briefing on cost-sharing, if the Court deems it appropriate.

3. Dispositive Motions. The parties shall file any dispositive motions on or before Thursday, March 30, 2006.

4. Expert Discovery. The first round of expert discovery, including the exchange of expert reports and excepting only the completion of expert depositions, shall be completed according to the following schedule.

a. If the parties file dispositive motions, then they shall complete their expert discovery within 120 days after the Court rules on the dispositive motions. Plaintiff shall complete its expert reports within 60 days after the Court rules on the dispositive motions, and Defendant shall complete its expert reports within 120 days after the Court rules on the dispositive motions.

b. If the parties do not file dispositive motions, then they shall complete their expert discovery by Friday, July 28, 2006. Plaintiff shall complete its expert reports by Monday, May 29, 2006, and Defendant shall complete its expert report by Friday, July 28, 2006.

5. Expert Depositions. All depositions of experts shall be completed within 30 days after Defendant produces its expert reports to Plaintiff.

6. Post-Discovery Conference. A post-discovery conference will be conducted within 30 days after the conclusion of expert discovery to address the matters specified in RCFC Appendix A ¶ 11.