**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: March 23, 2005 |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS SECOND PROPOSED AMENDED SCHEDULING ORDER**

Defendant submits this memorandum in support of its Second Proposed Amended Scheduling Order (filed herewith). Despite efforts to meet, confer, and exchange their second draft amended scheduling proposals, Plaintiff and Defendant were unable to agree on a jointly proposed revised scheduling order for submission to the Court. Hence, they are filing separate revised proposals. As explained below, the parties differ in their proposed scheduling orders about the scope of Plaintiff's claims that are properly included in this case and about the best and most efficient approach for redefining and narrowing Tranche I of the case.

## I. THE SCOPE OF THIS CASE AND OF TRANCHE I SHOULD BE LIMITED TO THE TRUST FUNDS MISMANAGEMENT CLAIMS ALLEGED BY PLAINTIFF IN THE CASE.

As this Court is aware, Plaintiff has two cases pending before the Court of Federal Claims: this case, which is based on the alleged mismanagement of Plaintiff's trust funds by the Department of the Interior (Interior), and Case No. 99-550L (Fed. Cl. filed Aug. 2, 1999), which is based on Interior's alleged mismanagement of Plaintiff's oil, gas, and other resources. By order of the Court, Plaintiff's two cases are not consolidated.

Plaintiff and Defendant disagree about the scope of Plaintiff's claims that are properly a part of this case and, therefore, are appropriately included for litigation in Tranche I, as opposed to being a part of Case No. 99-550L. As explained below, Plaintiff's scheduling proposal expands the litigation in this case to include claims that are and should remain a part of Case No. 99-550L. Plaintiff's proposal is inappropriate and should be rejected.

Interior's management of Plaintiff's trust funds and trust assets—including the oil and gas resources—can be seen as a continuum that begins with Plaintiff's assets being made productive through an appropriate leasing program and ends with Interior's disbursement of monies from Plaintiff's trust fund accounts. Plaintiff misplaces the correct starting point for the litigation of this case by proposing to litigate in Tranche I the issue of the pricing of its primary asset, *i.e.*, oil. More specifically, Plaintiff proposes to litigate in Tranche I the claim that Interior did not collect the proper amount of royalties for Plaintiff's crude oil in accordance with the oil leases approved by the agency.[1/] In short, Plaintiff seeks to try in this case a claim that properly belongs in Case No. 99-550L.

Based on its reading of the complaint in this case and the Third Amended Complaint in Case No. 99-550L (filed on October 20, 2004), Defendant understands the correct demarcation between the issues and claims in this case from those in Case No. 99-550L. In particular, Defendant understands that this case involves Interior's alleged mismanagement of Plaintiff's trust funds so that, in Defendant's view, the litigation should start—and proceed from—the point of the lease payments reaching Interior. Litigation of Tranche I from this starting point precludes adoption of Plaintiff's claims relating to failure to collect the proper royalty amount. The Tribe's claim that Interior mismanaged its trust funds cannot extend logically to include lease monies that Interior has never received and, therefore, never managed.

Plaintiff's pleadings in Case No. 99-550L, as well as this case, belie the litigation approach that it has laid out in its scheduling proposal for Tranche I of this case. In the original complaint for Case No. 99-550L (Def. Ex. 1), Plaintiff described the nature of that action as one for money damages for underpayment of royalties and failure to collect (*id.* ¶ 4), and it claimed that Defendant failed to collect royalty income based on the highest posted price (*id.* ¶¶ 12-14, 18, 21-23). In

---

[1/] Plaintiff presumably would also proceed to litigate trust fund mismanagement claims, such as whether Interior deposited the collected funds in a timely basis and whether Interior properly invested funds in Plaintiff's account.

marked contrast, Plaintiff described the nature of this case as "an action for money damages for breach of fiduciary duty in the mismanagement of tribal trust funds and for failure to account." Compl. No. 00-169L, ¶ 4.[2/] As Defendant noted above, trust funds cannot be mismanaged if they were not received into a trust fund account. Nor can there be a failure to account, with respect to monies not received into the account.

Shortly after the filing of this case in 2000, Plaintiff filed a motion to amend and consolidate this case with Case No. 99-550L. In briefing that motion, Plaintiff plainly distinguished between the issues and claims in Case No. 99-550L (*i.e.*, the "pricing" case) from those in this one. In Plaintiff's words, Case No. 99-550 involved

> Plaintiff's claim that the Defendant breached its fiduciary duty to Plaintiff and mismanagement of Plaintiff's trust by not collecting the proper royalty amount on oil produced and sold from lands held in trust by the Defendant for the benefit of Plaintiff. This issue includes both the amount of production and price obtained.

*See* Plaintiff's Motion to Amend and Consolidate and Brief in Support, May 1, 2000, at 2 (Def. Ex. 2). As to this case (Case No. 00-169L), Plaintiff stated that

> the Defendant has, to the detriment of Plaintiff, further mismanaged Plaintiff's trust money assets, composed primarily of oil royalties, by not prudently and properly accounting for the money paid into the U.S. Treasury and investing the same (as required by federal law) for the benefit of Plaintiff.

*Id.* Further, Plaintiff explained that Case No. 99-550 "directly relates to Defendant's failure to properly collect royalty for oil[,] and Case No. 00-169L relates to Defendant's mismanagement of the oil royalty money that was collected, as well as other assets of the Osage." *Id.* The Court initially issued an Order consolidating the cases, but, upon Defendant's motion for reconsideration, it vacated its consolidation order. *See* Order, (September 14, 2000) (Def. Ex. 3).

In October 2004, Plaintiff filed a third amended complaint in Case No. 99-550L, in which Plaintiff made clear, once again, that it is bringing its claims for undervaluation of royalties in that

---

[2/] In the Complaint in this case, Plaintiff did refer to "failure to obtain the price required to be paid the Osage for royalty under terms of said oil and gas leases," but this allegation does not constitute the thrust of this case, whereas it is the primary claim in Case No. 99-550L.

case, not in the one before this Court. *See* 3rd Amended Compl. (Oct. 24, 2005) (Def. Ex. 4). In the third amended complaint, Plaintiff explained, in some detail, Defendant's role in issuing and collecting on oil and gas mining leases for portions of the Osage mineral estate. *Id.* ¶¶ 11-15. Also, Plaintiff averred that Defendant had failed to collect the appropriate royalties for crude oil produced during calendar year 1995, and that Defendant "as trustee, has made crude oil royalty underpayments with respect to other oil and gas leases and other periods." *Id.* ¶¶ 25, 28. Additionally, Plaintiff claimed that it "has been damaged by not receiving payments under the oil and gas mining leases that the United States, as trustee, issued for the benefit of the Osage Tribe and should have collected but did not collect."[3/] *Id.* ¶ 30.

In a status report filed on February 11, 2005, Plaintiff defined the relevant issues in Case No. 99-550L, as including the extent to which the "United States, as trustee, damaged the Osage Nation by failing to collect payments under oil and gas mining leases that the United States issued for the benefit of the Osage Nation." *See* Amended Joint Preliminary Status Report, *Osage Tribe v. United States*, No. 99-550L (Feb. 11, 2005) (Def. Ex. 5) at 5. Later in this same report, Plaintiff described this case (No. 00-169L) as "involving Osage claims for federal mismanagement of tribal trust funds." Id. at 1.

Apart from the matter of litigating the same issues and claims in two different cases before two different judges of the same Court, Plaintiff's expansive litigation approach and scheduling proposal are completely inconsistent and irreconcilable with the Court's express desire and directive that the parties redefine and narrow the scope of the claims to be tried in Tranche I. Expanding the scope of the case to include claims from Case No. 99-550L for the alleged underpayment of royalties or failure to collect would not only require additional fact and expert witnesses and documents but also involve additional, distinct legal issues. Addressing and adjudicating these additional factual

---

[3/] Defendant intends to challenge the alleged failure to collect and pricing claims as being time-barred, among other defenses, as part of its motion practice in Case No. 99-550L. It makes little sense to conduct simultaneous or duplicative briefing in this case.

and legal matters is not possible within the time frame that this Court wishes to adopt for the trial of Tranche I.[4]

## II. THE COURT SHOULD ADOPT DEFENDANT'S SCHEDULING PROPOSAL AND SCHEDULE FOR PROCEEDING WITH THE TRANCHE I FUNDS MISMANAGEMENT CLAIMS

Defendant proposes that Tranche I consist of all of Plaintiff's trust fund mismanagement claims for transactions in Account number PL7386706 and its predecessor Account number 7386, for the period January 1, 1995, to February 28, 1999. Defendant's approach enjoys the advantage of allowing the parties to focus on (1) the accounts that contain most of the money generated from the Tribe's trust assets, *i.e.*, the accounts to which oil and gas revenue and royalty was deposited, and (2) on a specific period of time. Defendant's approach not only will help focus discovery efforts by focusing on relatively recent time periods, but it will also bring finality to claims involving the management of those accounts and transactions for that specific time period.

Under Defendant's approach, Plaintiff is required to provide information early in the schedule related to the bases of its claims sufficient to allow the parties to address, well in advance of trial, whether the Court has jurisdiction over Plaintiff's claims. Soon after the close of factual discovery, Plaintiff will have to provide further information regarding its claims, including specifying the transactions within the accounts that form the bases of its claim, to enable the parties to refine their trial preparation efforts.

Defendant has chosen the proposed January 1, 1995-February 28, 1999 time period with care and for good reason. The January 1, 1995 date follows the enactment of the American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412, Oct. 25, 1994, 108 Stat. 4239,

---

[4] In Defendant's view, if this Court were to decide to include Plaintiff's claim about the alleged failure to collect the proper royalty amount or other asset mismanagement claims in this case, the parties and the Court would have to further and substantially revise the current proposed litigation and schedule for Tranche I. Additionally, they would have to address substantive case management and judicial efficiency issues, such as how to proceed in this case in light of Case No. 99-550L. Among other options, the Court may consider whether to stay the litigation of this case pending the resolution of Case No. 99-550L, if Plaintiff wishes to proceed to litigate its trust asset pricing and mismanagement claims before addressing its trust funds mismanagement claims.

(codified in 25 U.S.C. §§ 161a-162a, 4001 et seq. (1994)). Thus, the parties and the Court can focus on a specific legal framework for Tribal trust money management. The February 28, 1999 date tracks Interior's conversion to the Trust Funds Accounting System (TFAS), which occurred on March 1, 1999.[5/] Thus, the parties are able to target not only on a discrete period of time, but also two databases (as opposed to three databases). Overall, given the recent nature of the time period, the parties will enjoy readier access to documents and fact witnesses who have knowledge of Interior's funds management practices during the relevant time frame.

## III. PLAINTIFF'S PROPOSED METHODOLOGY IS ILL-SUITED FOR ADDRESSING THE TRUST FUNDS MISMANAGEMENT ISSUES AND CLAIMS IN THIS CASE.

Plaintiff's proposed draft scheduling order, which Plaintiff's counsel shared with Defendant's counsel earlier today, proffers an alternative way of evaluating its claims, *i.e.*, one that starts with sample leases. After considering this approach, Defendant is of the view that starting with a lease would be appropriate if the parties were addressing Plaintiff's claims of undervaluation of royalties. It is not the best starting point, however, for Plaintiff's trust fund mismanagement claims. As to these latter claims, focusing on individual transactions or a series of transactions within a designated account offers a far better basis for addressing the claims. Indeed, Plaintiff's proposed methodology of starting with leases will not assist the parties in evaluating investment claims because investment transactions are not associated with particular leases.

Plaintiff proposes that sample leases be chosen for the time periods of January 1976, June 1979, December 1980, January 1986, June 1989, and December 1990. To the extent that this proposal transcends time periods and statutory and regulatory frameworks, it is directly contrary to the Court's suggestion at the last status conference that the parties pick a time period that is within one statutory or regulatory framework. Further, as Defendants explained in its memorandum in support of its first proposed amended scheduling order filed on March 14, 2005, Tranche I should

---

[5/] Prior to that time, DOI utilized the Trust Funds Management System (October 1, 1993-March 31, 1995) and Omni Trust ES (April 1, 1995 to February 28, 1999).

focus on the period post-dating November 5, 1984, due to the uncertainty related to the petition for certiorari for *Shoshone-Arapaho v. United States*, 364 F.3d 1339 (Fed. Cir. 2004). Finally, it is likely to take much more time for the parties to locate the documents and witnesses for these earlier time periods. [6]

For all the foregoing reasons, Defendant recommends that the Court adopt the attached scheduling order.

Respectfully submitted this 23rd day of March, 2005,

THOMAS L. SANSONETTI
Assistant Attorney General

By:

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

John H. Martin
Martin J. LaLonde
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor

Jason R. Baron
Director of Litigation
Office of General Counsel

[6] In addition, the Court should reject Plaintiff's time frames for production of documents, particularly related to the production of privileged documents. On at least two occasions, Plaintiff has already agreed to an approach for resolving issues related to withheld privileged records. Moreover, the Court should, in its scheduling order, address the issue of cost sharing for document productions.

Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

National Archives and Records Administration
8601 Adelphi Road
Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627