UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, Plaintiff, | ) | |
| vs. | ) | No. 99-550 L |
| UNITED STATES OF AMERICA, by and through THE DEPARTMENT AND SECRETARY OF THE INTERIOR and BUREAU OF INDIAN AFFAIRS, Defendant. | ) | FILED AUG 2 1999 |

COMPLAINT

**Jurisdiction**

1. This action is filed pursuant to 28 U.S.C. § 1491 and 28 U.S.C. § 1505, the due process clause of the Fifth Amendment and equal protection clause of the Fourteenth Amendment to the United States Constitution.

**Parties**

2. The Plaintiff, the Osage Nation, or Tribe of Indians of the State of Oklahoma ("Osage"), is a federally recognized Indian tribe.

3. The Defendant is the United States of America ("United States").

**Nature of the Action**

4. This is an action for money damages for underpayment of oil royalties, an accounting, and for declaratory and or injunctive relief, related to the loss of trust funds and property rights owned by the Plaintiff that were and are being lost by the United States by failing to collect and account for revenues from the production of oil on Osage land, including failing to obtain or assist the Plaintiff in obtaining the highest price that could have been and could be obtained from the sale

**Defendant's Exhibit 1**

of oil produced from the Osage mineral estate located in Osage County, Oklahoma, which mineral(s) are held in trust by the United States for the benefit of the Osage.

**Contractual Basis for Damages**

5. Article 1 and 10 of the United States Treaty with the Osage dated November 10, 1808, states:

> Art. 1. The United States being anxious to promote peace, friendship and intercourse with the Osage tribes, to afford them every assistance in their power, . . .
>
> Art. 10. The United States receive the Great and Little Osage nations into their friendship and under their protection; and the said nations, on their part, declare that they will consider themselves under the protection of no other power whatsoever, disclaiming all right to cede, sell or in any manner transfer their lands to any foreign power, or to citizens of the United States or inhabitants of Louisiana, unless duly authorised by the President of the United States to make the said purchase or accept the said cession on behalf of the government.

and Article X of the United States Treaty with the Osage Indians dated September 29, 1865, states:

> The Osages acknowledge their dependence on the government of the United States, and invoke its protection and care; they desire peace, and promise to abstain from war, and commit no depredations on either citizens or Indians; . . .

**Statutory Basis for Damages**

6. By Act of June 28, 1906, Chapter 3572, 34 Stat. 539; Act of March 31, 1921, Chapter 120, 41 Stat. 1249; Act of March 2, 1929, Chapter 493, 45 Stat. 1478; Act of June 24, 1938, Chapter 645, 52 Stat. 1034; Act of July 25, 1947, Chapter 334, 61 Stat. 459; Act of October 6, 1964, 78 Stat. 1008; and Act of October 21, 1978, 92 Stat. 1660, title and/or control and the rights and responsibilities appurtenant to ownership to the Osage mineral estate in Oklahoma have been continuously, at all times relevant to this case, and is currently vested in the United States in trust for the benefit of the Osage Tribe:

(a) Act of June 28, 1906, Ch. 3572, 34 Stat. 539 at 542, Sec. 2, seventh paragraph: . . . *And provided further*, That nothing herein shall authorize the sale of the oil, gas, coal, or other minerals covered by said lands, said minerals being reserved to the use of the tribe for a period of twenty-five years, and the royalty to be paid to said tribe as hereinafter provided; . . .

(b) Act of June 28, 1906, Ch. 3572, 34 Stat. 539 at 543, Sec. 3. That the oil, gas, coal or other minerals covered by the lands for the selection and division of which provision is herein made are hereby reserved to the Osage tribe for a period of twenty-five years from and after the eighth day of April, nineteen hundred and six; . . .

(c) Act of June 28, 1906, Ch. 3572, 34 St. 539 at 544, Sec. 4. That all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States for the period of twenty-five years from and after the first day of January, nineteen hundred and seven, except as herein provided;

(d) Act of March 31, 1921, Ch. 120, 41 Stat. 1249 at 1250, Sec. 3. That all members of the Osage Tribe of Indians are hereby declared to be citizens of the United States, but this shall not affect their interest in tribal property or the control of the United States over such property as is now or may hereafter be provided by law; . . .

(e) Act of March 31, 1929, Ch. 493, 45 Stat. 1478 at 1479. . . . The lands, moneys, and other properties now or hereafter held in trust or under the supervision of the United States for the Osage Tribe of Indians, the members thereof, or their heirs and assigns, shall continue subject to such trust and supervision until January 1, 1959, unless otherwise provided by Act of Congress.

(f) Act of June 24, 1938, Ch. 645, 52 Stat. 1034 at 1035, Sec. 3. . . . The lands, moneys, and other properties now or hereafter held in trust or under the supervision of the United States for the Osage Tribe of Indians, the members thereof, or their heirs and assigns, shall continue subject to such trusts and supervision until January 1, 1984, unless otherwise provided by Act of Congress. . . .

(g) Act of October 21, 1978, 92 Stat. 1606 at 1606, Sec. 2(a). The first paragraph of section 3 of the Act of June 24, 1938 (52 Stat. 1034, 1035), as amended, extending the mineral estate reserved to the Osage Tribe by the Act of June 26, 1906 (34 Stat. 539), is further amended by striking the phrase "until the eighth day of April, 1983, and thereafter until otherwise provided by Act of Congress" and substituting, in lieu thereof, the phrase "in perpetuity".

7. The above statutes also provide for the management of the Osage mineral estate by the Secretary of the Interior ("Secretary") for the United States:

(a) Act of June 28, 1906, Cha. 3572, 34 Stat. 539 at 543, Sec. 3. . . . leases for all oil, gas, and other minerals, covered by selections and division of land herein provided for, may be made by the Osage tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe; *Provided*, That the royalties to be paid to the Osage tribe under any mineral lease so made shall be determined by the President of the United States. . . .

(b) Act of March 31, 1921, Ch. 120, 41 Stat. 1249 at 1249. . . .the Secretary of the Interior and the Osage Council are hereby authorized and directed to offer for lease for oil and gas purposes all of the remaining portion of the unleased Osage land prior to April 8, 1931, offering the same annually at the rate of not less than one-tenth of the unleased area.

(c) Act of March 2, 1929, Ch. 493, 45 Stat. 1478 at 1479. . . . The Secretary of the Interior and the Osage tribal council are hereby authorized and directed to offer for lease for oil, gas, and other mining purposes any unleased portion of said land in such quantities and at such times as may be deemed for the best interest of the Osage Tribe of Indians: *Provided*, That not less than twenty-five thousand acres shall be offered for lease for oil and gas mining purposes during any one year: *Provided further*, That as to all lands hereafter leased, the regulations governing same and the leases issued thereon shall contain appropriate provisions for the conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured. . . .

> (d) Act of June 24, 1938, Ch. 645, 52 Stat. 1034 at 1035. . . . The Secretary of the Interior and the Osage tribal council are hereby authorized and directed to offer for lease for oil, gas and other mining purposes any unleased portion of said land in such quantities and at such times as may be deemed for the best interest of the Osage Tribe of Indians: *Provided*, That not less than twenty-five thousand acres shall be offered for lease for oil- and gas-mining purposes during any one year: *Provided further*, That as to all lands hereafter leased, the regulations governing same and the leases issued thereon shall contain appropriate provisions for the conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured. . . .
>
> (e) Act of October 21, 1978, 92 Stat. 1660 at 1661. Sec. 4. In order to conserve natural resources and provide for the greatest ultimate recovery of oil and gas underlying the Osage mineral estate, the Secretary of the Interior is authorized to establish rules and regulations under which oil and gas leases producing from a common source of supply may be unitized.

**<u>Regulatory Basis for Damages</u>**

8. 25 C.F.R. Part 226 contains the current regulations for leasing the Osage mineral estate by the United States:

a. § 226.2 establishes oil and gas lease "sale" procedures.

b. § 226.3 describes the procedure to surrender an oil and or gas lease.

c. § 226.4 requires payment of oil and gas lease obligations to the Bureau of Indian Affairs ("BIA").

d. § 226.5 makes oil and gas leases subject to the regulations of the Secretary.

e. § 226.6 requires certain bonds of lessee.

f. § 226.7 requires oil and gas leases to be on forms prescribed by the Secretary.

g. § 226.8 sets forth information required of corporate lessees.

h. § 226.9 describes delay rental and drilling obligations to keep an oil and/or gas lease in effect.

i. § 226.10 governs the primary term of an oil and/or gas lease.

9. Regulations also govern the marketing/royalty revenue for production attributable to the Osage and the payment of royalties.

a. § 226.11 provides for payment of royalties based on "gross proceeds", except where payments are made on division orders in which case settlement is based on "actual selling Price" but not less than the "highest posted price" and provides for taking royalty oil in kind.

b. § 226.12 allows the United States to purchase Osage oil at the highest posted price.

c. § 226.13 sets forth the time when payment is due and requires certain operational information.

d. § 226.14 provides for the lessee to contract for the sale of oil and the effect of division orders.

e. § 226.15 contains rules governing unitization of oil and/or gas leases and assignments of leases and overriding royalty interests.

10. § 226.16 through § 226.27 govern operations; § 226.28 and § 226.29 govern cessation of operations; § 226.30 through § 226.41 set forth the requirements on lessees, including record keeping, prevention of waste, measurement of oil and other matters; § 226.42 and § 226.43 describe penalties for violations of the regulations and § 226.44 through § 226.46 govern appeals and notices.

## STATEMENT OF FACTS

11. Under the commerce powers of the Constitution, the above-described treaties, statutes and regulations and the decisions of this Court, and other applicable Federal decisions and the United

States Supreme Court, the United States has a fiduciary duty to the Osage requiring the exercise of "the most exacting fiduciary standards" in managing Plaintiff's minerals and trust funds. Navajo Tribe of Indians v. United States, 176 Ct. Cl. 502, at 507 (1966); Seminole Nation v. United States, 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942); United States v. Mitchell, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

12. The United States has historically allowed the sale of the oil produced from Osage lands for "the highest posted price" and not for the highest price that could be and/or was obtained for said oil.

13. Pursuant to 25 C.F.R. § 226.11, the United States is also authorized to sell oil produced from Osage lands at values described as "gross proceeds" and "actual selling price"; however, said regulations do not define either term nor do they define "highest posted price."

14. The price obtained by the United States for oil produced from Osage lands is at least $1 to $2 less than its value and or market price or prices readily available from the sale of said oil to the detriment of Plaintiff.

15. The United States, by and through its legislative arm, enacted The Indian Mineral Leasing Act of 1938, 25 U.S.C. § 396 through § 396.g which specifically excludes the Osage. The United States failed to enact similar legislation for the benefit of the Osage, which failure resulted in detriment to the Osage.

16. In 1994, The United States, through its Department of Interior Minerals Management Service ("MMS") began an investigation into royalty underpayments based on "posted prices" which culminated in a 1996 demand on various major oil companies for hundreds of millions of dollars dating back to 1980. The United States failed to do the same for the Osage.

17. As a result of the above investigation in 1996, the United States changed its regulations governing payment of royalties on Indian Oil (30 C.F.R. § 206.51 and § 206.52) and on oil produced from federal lands (30 C.F.R. § 206.101 and § 206.102) to require payment based on market value; however, the United States failed to change and/or improve regulations governing the sale of oil from Osage lands.

18. The United States has failed to judiciously collect the highest price available and account to the Osage for revenues from the sale of oil production form Osage lands in breach of the United State's solemn duty.

19. The United States has failed and refused to allow the Osage to review records in the custody of the United States, including those involving oil production, revenues received from oil purchasers, revenue statements from oil producers, prices paid for the production of oil, and production records, gross volumes of oil produced, and costs of storing, transporting, or selling same.

20. Due to the failure and refusal of the United States to allow review of the records as alleged above, the Osage cannot state with exact specificity, but based upon information and belief, the Osage hereby allege that the United States has <u>continued</u> to allow the sale of Osage oil for less than the value of the oil produced from the Osage land for a period of years, the exact time period is currently unknown to the Osage.

21. Further that the United States has <u>knowingly</u> and <u>continually</u> allowed the sale of Osage oil for less than its full value for a period of years, the exact time period of which is currently unknown to the Osage.

22. The actions and or inaction of the United States in failing to obtain the highest value for Osage oil, and its failure to account to the Osage for revenues due the Osage under the terms of

various oil and gas leases for the production of oil from Osage lands, including, without limitation, all allegations of fact herein, and as may be proven at trial in the instant proceeding, constitute a continuing claim from the date of the first such action or inaction, to the present.

23. The actions of the United States in failing to properly and judiciously administer its assumed and statutory obligations and duties over the mineral estate of the Osage are of such a nature and in such reckless disregard of the property rights and interest of the Osage that the trust relationship between the Osage and the United States has been, in effect and result, repudiated by the United States.

## FIRST CAUSE OF ACTION

**Breach of Fiduciary Duty in Failing to Make Demand on Purchasers of Osage Oil For Past Underpayments of Royalty**

The Osage incorporate all factual allegations hereinabove stated, including paragraphs 1 through 23 herein, and further allege as follows:

24. The United States, through the MMS, determined that the "highest posted price" is less than the price that the United States should receive for the sale of oil from federal lands and has made demand on the purchasers of said oil for royalty underpayments. The United States has not made a similar demand on behalf of the Osage.

25. The United States knew and or has knowledge that similar underpayments have occurred on payment of royalty for the sale of oil from Osage lands and has taken no action to correct or remedy this problem.