Passarelli

DEPARTMENT OF JUSTICE
GENERAL LITIGATION
SECTION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **THE OSAGE TRIBE OF INDIANS OF OKLAHOMA**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**DEFENDANT.** | **Case No. 99-550L**<br>**(Judge Mary Ellen Coster Williams)** |

**PLAINTIFF OSAGE TRIBE'S THIRD AMENDED COMPLAINT**

**Nature of Action**

1. This is an action for money damages brought by the Osage Tribe of Indians ("Osage Tribe" or "Tribe"), as beneficial owner of the trust lands of the Osage Tribe ("Osage surface estate"), and the oil, gas, and other minerals underlying lands within the exterior boundaries of the Osage Reservation ("Osage mineral estate"), against the United States of America ("United States" or "Federal Government"), which serves as trustee for the Osage surface and mineral estates. In this action, the Osage Tribe seeks damages for mismanagement of certain Osage trust assets committed by the United States as trustee.

**Parties**

2. Plaintiff Osage Tribe is a sovereign Indian nation based in Pawhuska, Oklahoma, acknowledged by the United States as an Indian tribe, with all the legal rights and responsibilities of a federally recognized Indian tribe.

3. Defendant United States acts as trustee for certain tribal monies, lands, and other assets belonging to the Osage Tribe, including the Osage surface estate and the Osage mineral

**Defendant's Exhibit 4**

estate. The United States has delegated certain of its trust responsibilities over such assets to the Secretary of the Interior ("Secretary"), who is charged by law with carrying out certain duties and responsibilities of the United States as trustee for the Osage Tribe.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491 and 1505.

**The United States is Trustee of Certain Property Belonging to the Osage Tribe**

5. The Osage Tribe first entered into a treaty relationship with the United States in 1808. Treaty with the Osage, Nov. 10, 1808, 7 Stat. 107, 2 CHARLES J. KAPPLER, INDIAN AFFAIRS, LAWS AND TREATIES 95-99 (1904). In that treaty, the Osage Tribe agreed to cede certain lands to the United States in exchange for a reservation, monies, goods, and the protection of the United States. Specifically, the Osage Tribe "declare[d] that they will consider themselves under the protection of [the United States]; disclaiming all right to cede, sell or in any manner transfer their lands to any foreign power, or to citizens of the United States or inhabitants of Louisiana, unless duly authorized by the President of the United States…" Article 10, Treaty with the Osage, Nov. 10, 1808, 7 Stat. 107, 2 CHARLES J. KAPPLER, INDIAN AFFAIRS, LAWS AND TREATIES 95-99 (1904).

6. This treaty relationship continued until 1865, when the United States and the Osage Tribe entered into a final treaty. Treaty with Osage, Sept. 29, 1865, 14 Stat. 687, 2 CHARLES J. KAPPLER, INDIAN AFFAIRS, LAWS AND TREATIES 878-883 (1904). In that treaty, the United States agreed to purchase lands in what is now the State of Oklahoma to serve as a permanent home for the Osage should the Tribe decide to leave its reservation in Kansas.

7. Pursuant to acts of Congress in 1872, 1873, and 1883, the United States purchased a tract of land for the Osage Tribe in what is now the State of Oklahoma. This land consisted of approximately 1,472,000 acres and now comprises the Osage Reservation and the contiguous boundaries of Osage County, Oklahoma. Acts of June 5, 1872, 17 Stat. 228; Mar. 3, 1873, 17 Stat. 530; and Mar. 3, 1883, 22 Stat. 603.

8. The Osage Tribe was the exclusive beneficial owner of these lands until 1906 when Congress enacted a law that allotted the majority of the Reservation surface lands to individual members of the Tribe. The unallotted lands remained in trust for the Osage Tribe. Act of June 28, 1906, 34 Stat. 539 ("1906 Act"). Since 1906, the Tribe has reacquired other lands within the exterior boundaries of the Osage Reservation that the United States now holds in trust.

9. The 1906 Act also reserved to the Osage Tribe all the oil, gas, sand and gravel, and other minerals beneath the surface of the Osage Reservation, allotted or otherwise, for a period of twenty-five years from April 8, 1906, or until April 8, 1931. Act of June 28, 1906, 34 Stat. 539.

10. Subsequent acts of Congress have extended the trust created by the 1906 Act and, as a result, the Osage mineral estate is today still held in trust by the United States for the benefit of the Tribe. Acts of Mar. 31, 1921, 41 Stat. 1249; Mar. 2, 1929, 45 Stat. 1478; June 24, 1938, 52 Stat. 1034; July 25, 1947, 61 Stat. 459; Oct. 6, 1964, 78 Stat. 1008; and Oct. 21, 1978, 92 Stat. 1660; and Oct. 30, 1984, 98 Stat. 3163.

11. The 1906 Act and subsequent acts of Congress permit the Osage Tribal Council to enter into leases covering portions of the Osage mineral estate, but such leases are not valid without the approval of the Secretary. The Secretary is also directed to promulgate rules and

regulations governing the Osage mineral estate. These acts also direct the Secretary and the Osage Tribal Council to offer for lease portions of the Osage mineral estate for oil, gas, and other mining purposes, in such quantities and at such times as may be deemed for the best interest of the Osage Tribe. Acts of June 28, 1906, 34 Stat. 539; Mar. 3, 1921, 41 Stat. 1249; Mar. 2, 1929, 45 Stat. 1478, 1479; June 24, 1938, 52 Stat. 1034, 1035; July 25, 1947, 61 Stat. 459; Oct. 6, 1964, 78 Stat. 1008; and Oct. 21, 1978, 92 Stat. 1660. Congress also has exercised control over Osage assets by mandating that the Secretary of the Interior and Osage Tribal Counsel offer for lease not less than twenty-five thousand acres of the Osage Reservation for oil and gas mining purposes during any one year. Act of March 3, 1921, 41 Stat. 1249; Act of March 2, 1929, 45 Stat. 1478.

12. Congress also has exercised control over Osage assets by mandating that the Secretary of the Interior and Osage Tribal Council offer for lease not less than twenty-five thousand acres of the Osage Reservation for oil and gas mining purposes during any one year. Act of March 3, 1921, 41 Stat. 1249; Act of March 2, 1929, 45 Stat. 1478.

13. The United States, as trustee acting through the Secretary, has promulgated an elaborate regulatory framework for the comprehensive and pervasive control over the management of the Osage mineral estate. See. Leasing of Osage Reservation Lands, Oklahoma, for Mining, Except Oil and Gas, 25 C.F.R., Part 214 (2004); and Leasing of Osage Reservation Lands for Oil and Gas Mining, 25 C.F.R., Part 226 (2004).

14. The Department of the Interior regulations governing the leasing of the Osage mineral estate for oil and gas mining were originally published in 1915 and have been subsequently amended several times. *See Okie Crude Co., et al. v. Muskogee Area Director,*

*Bureau of Indian Affairs*, 23 IBIA 174 (Feb. 5, 1993); 39 Fed. Reg. 22254 (June 21, 1974), 41 Fed. Reg. 50648 (Nov. 17, 1976), 43 Fed. Reg. 8135 (Feb. 28, 1978), 43 Fed. Reg. 11815 (Mar. 22, 1978), 55 Fed. Reg. 33112 (Aug. 14, 1990), 59 Fed. Reg. 22104 (Apr. 28, 1994). The Department of the Interior's current regulations for the leasing and management of the Osage mineral estate for oil and gas mining are contained in Part 226 of Title 25 of the Code of Federal Regulations. 25 C.F.R. Part 226 (2003). The current regulations, like their predecessor regulations, provide for the comprehensive and pervasive control of the Secretary over the leasing of the Osage mineral estate for oil and gas mining.

15. As trustee for the Osage Tribe, the United States has issued numerous oil and gas mining leases covering portions of the Osage mineral estate. The oil and gas leases issued by the United States, as trustee for the Osage Tribe, generally provide for the payment of rentals and, if crude oil and/or natural gas are discovered in commercial quantities, the payment of royalties based on the value of the crude oil and natural gas produced. The lessee must generally pay royalties monthly to the United States as trustee for the Osage Tribe.

16. As trustee for the Osage Tribe, the United States has issued other leases covering portions of the Osage surface and mineral estates, including grazing leases, rights of way, and land and building leases and rentals. Under these leases, the lessee generally makes a monthly or annual payment to the United States as trustee for the Osage Tribe.

17. The 1906 Act directed that "all funds belonging to the Osage Tribe, and all moneys due, and all money that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States . . . ." Act of June 28, 1906, 34 Stat.

539, 544. The United States continues to hold funds belonging to the Tribe, including funds derived from the Osage surface and mineral estates, in trust for the benefit of the Osage Tribe.

18. Other acts of Congress also authorized the Secretary to collect income derived from Osage tribal trust assets. These funds were and are still required to be collected and deposited in the United States Treasury and other depositary institutions in trust for the benefit of the Osage Tribe. *E.g.*, Act of Mar. 3, 1883, c. 141, § 1, 22 Stat. 590. The United States is also required to pay interest on these tribal trust funds, and to properly invest such funds. *See e.g.*, Act of Feb. 12, 1929, c. 178, 45 Stat. 1164, *codified as amended*, 25 U.S.C. § 161b; Act of June 24, 1938, 52 Stat. 1037, *codified as amended*, 25 U.S.C. § 162a.

19. The U.S. Department of the Treasury disperses Osage tribal trust funds, including trust funds derived from the Osage mineral estate, to the Osage Tribe and to "headright" holders in the Osage mineral estate on a quarterly basis. A "headright" is the right to receive a disbursement of funds derived from the Osage mineral estate. *See Globe Indem. Co. v. Bruce*, 81 F.2d 143, 148-9 (10th Cir. 1935); COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, 790 n.187 (1982 ed.). Headright holders include Osages and Indians of other tribes, who receive funds paid into Individual Indian Money (IIM) accounts, and non-Indian individuals and entities, who receive checks directly from the Department of the Treasury.

**As Trustee, the United States Owes the Osage Tribe the Highest Fiduciary Responsibilities Concerning the Management of Tribal Assets Held in Trust for the Benefit of the Osage Tribe**

20. As trustee for the Osage Tribe, the United States has a fiduciary relationship with the Tribe and obligations of the highest responsibility to administer Osage tribal trust assets with the greatest skill and care possessed by the trustee. The United States "'has charged itself with

moral obligations of the highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.' " *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 297 (1942)).

21. The United States has assumed the obligations of a trustee at common law because it holds Osage tribal monies, lands, and other assets in trust for the benefit of the Osage Tribe. *United States v. Mitchell*, 463 U.S. 206, 225 (1983); *Cobell*, 240 F.3d 1081; *Cobell v. Norton*, 283 F. Supp. 2d 66 (D.D.C. 2003). These duties include, but are not limited to, the duty to properly administer the trust; to administer the trust solely in the interest of the Osage Tribe; to keep and render clear and accurate accounts with respect to the administration of the trust; to furnish complete and accurate information to the Osage Tribe as to the nature and amount of trust assets; to exercise the proper care and skill in the administration of the trust; to preserve the trust assets and protect them from loss, theft, or damage; to keep the trust assets of the Osage Tribe separate from other property not subject to the trust; to properly deposit the trust funds of the Osage Tribe; and to make the assets of the trust productive for the benefit of the Osage Tribe.

22. The United States also has certain statutory trust duties to the Osage Tribe that, in some cases, reaffirm the pre-existing trust duties imposed upon the United States at common law. Acts of June 28, 1906, 34 Stat. 539; Mar. 3, 1921, 41 Stat. 1249; Mar. 2, 1929, 45 Stat. 1478, 1479; June 24, 1938, 52 Stat. 1034, 1035; July 25, 1947, 61 Stat. 459; Oct. 6, 1964, 78 Stat. 1008; Oct. 21, 1978, 92 Stat. 1660; Dec. 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329; Oct. 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; Nov. 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, Nov. 3, 1991, Pub. L. No. 102-154, 105 Stat. 990; 25 U.S.C. § 4001-61; and 25 U.S.C. § 162a. These duties include the duty to offer for lease the Osage mineral estate in such quantities and at

such times as may be deemed for the best interest of the Osage Tribe and the duty to audit, reconcile, and provide an accounting for Osage tribal trust funds.

## Count One

## Damages Resulting from the Defendant United States' Breach of Its Trust Duties to the Osage Tribe with Respect to Oil and Gas Mining Leases Covering Portions of the Osage Mineral Estate

23. The Osage Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 21 above.

24. As trustee for the Osage Tribe, the United States has issued numerous oil and gas mining leases covering portions of the Osage mineral estate. For that purpose, the United States, as trustee, has developed form oil and gas leases that it generally requires that a lessee use. Under those form leases, the royalty on crude oil is generally a specified percentage of the higher of (a) the selling price realized by the lessee for the crude oil or (b) the price posted or offered for crude oil in a specified geographic area, such as the geographic area consisting of Kansas and Oklahoma. Under those form leases, all royalties are paid to the United States, as trustee, or its delegate, and held in trust for distribution to the headright owners of the Osage Tribe at regular intervals. Attached as Exhibit A are examples of the royalty provisions of the form oil and gas leases the government generally requires lessees to use.

25. At the conclusion of the original status conference in this matter, the Court requested the United States to make its oil and gas records available to the Osage Tribe so that the Tribe could compare the royalties it had actually received from the United States for crude oil with the royalty that the Tribe was entitled to receive under the oil and gas leases that the United States, as trustee, had issued for the benefit of the Tribe. The Tribe's comparison is set forth in

Exhibit B. That exhibit shows numerous instances during 1995 where the royalty actually received by the Osage Tribe for crude oil was significantly less than the highest posted price for crude oil and also significantly less than the price offered for crude oil at Cushing, Oklahoma. As a result, the royalties actually received by the Osage Tribe on that crude oil were less than the royalties dues under the applicable form oil and gas lease. As set forth in Exhibit C, the Osage Tribe estimates that the royalty payments it received from the United States for crude oil produced during calendar year 1995 are about $1.3 million less than the royalties that the United States, as trustee, was required to pay to the Osage Tribe for crude oil produced from the Osage mineral estate for calendar year 1995.

26. The documents in Exhibit A were included in Exhibit 1 to Plaintiff's Claim Verification filed with this Court on November 12, 2002. The documents in Exhibits B and C were included in Exhibit 8 to Plaintiff's Claim Verification. Plaintiff hereby incorporates by reference Plaintiff's Claim Verification in its entirety.

27. Defendant United States has never provided the Osage Tribe with an accounting of the revenue that the United States, as trustee, has collected or was required to collect under the oil and oil gas leases that the United States issued for the benefit of the Tribe. In addition, the United States is the custodian of the federal trust records relating to Osage trust assets. Except for the single visit to the Interior Department's Osage Agency in Pawhuska where a small number of the Osage trust records are kept, the United States has not provided the Osage Tribe with access to the oil and gas records that the United States, as trustee, is required to maintain for the benefit of the Tribe. As a result, at the present time, the Osage Tribe cannot identify each and every oil and gas lease where the United States, as trustee, has paid a crude oil royalty to the

Tribe that is less than the amount of royalty required by the form oil and gas mining lease that the United States, as trustee, has issued for the benefit of the Tribe.

28. On information and belief, Plaintiff alleges that, in addition to those set forth in Exhibits A, B, and C, the United States, as trustee, has made crude oil royalty underpayments with respect to other oil and gas leases and other time periods.

29. On information and belief, Plaintiff also alleges that the United States, as trustee, has also made royalty underpayments with respect to natural gas that has been produced from the form oil and gas leases that the United States, as trustee, has issued for the benefit of the Osage Tribe.

30. As a result of the above failures, the Osage Tribe has been damaged by not receiving payments under the oil and gas mining leases that the United States, as trustee, issued for the benefit of the Osage Tribe and should have collected but did not collect. The Osage Tribe was also damaged by not being able to receive interest or other investment income from the funds that the United States, as trustee, should have but failed to collect. Accordingly, the Osage Tribe is entitled to a money judgment against the United States, as trustee, for the full amount of these damages.

## Count Two

### Damages Resulting From the Defendant United States' Breach of its Trust Duties to the Osage Tribe With Respect to Leases Covering the Osage Surface and/or Mineral Estates, Other Than Oil and Gas Leases

31. The Osage Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above.

32. As trustee for the Osage Tribe, the United States has issued other leases covering portions of the Osage surface and mineral estates, including grazing leases, rights of way, and land and building leases and rentals. Under these leases, the lessee generally makes a monthly or annual payment to the United States as trustee for the Osage Tribe.

33. Defendant United States has never provided the Osage Tribe with an accounting of the revenue that the United States, as trustee, has collected or was required to collect under the leases that the United States issued for the benefit of the Tribe for purposes other than oil and gas mining. In addition, the United States holds the records relating to these Osage trust assets and has not provided the Osage Tribe with access to the records with respect to those leases that the United States, as trustee, is required to maintain for the benefit of the Tribe. As a result, at the present time, the Osage Tribe cannot identify each and every non-oil and gas lease where the United States, as trustee, has made a payment to the Tribe that is less than the payment required by the lease that the United States, as trustee, issued for the benefit of the Tribe.

34. On information and belief, Plaintiff alleges that, in addition to the royalty underpayments set forth in Exhibits A, B, and C, the United States, as trustee, has made payments to the Tribe that are less than the payments required by the non-oil and gas leases that the United States has issued for the benefit of the Tribe.

35. As a result of the above failures, the Osage Tribe has been damaged by not receiving payments under leases that the United States, as trustee, issued for the benefit of the Tribe and should have collected but did not collect. In addition, the Osage Tribe was damaged by not receiving interest or other investment income on the funds the United States should have

but failed to collect. Accordingly, the Osage Tribe is entitled to a money judgment against the United States, as trustee, for the full amount of these damages.

**WHEREFORE,** the Plaintiff Osage Tribe prays:

1. For an award of damages to the Osage Tribe in an amount to be determined at trial, for Defendant United States' breaches of its compensable fiduciary duties;

2. For an award to the Osage Tribe of reasonable attorneys' fees, costs, and such other relief as the Court deems just.

Dated this 20th day of October, 2004.

Respectfully submitted,

Wilson K. Pipestem
Pipestem Law Firm, P.C.
1333 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

ATTORNEY FOR THE OSAGE TRIBE
OF INDIANS OF OKLAHOMA