**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: April 7, 2005 |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S MEMORANDUM
PURSUANT TO THE COURT'S MARCH 25, 2005 ORDER

Defendant submits this memorandum pursuant to the Court's March 25, 2005 Order ("Order") proposing amendments to certain fact discovery interim deadlines. Despite efforts to confer and exchange proposed draft documents, Plaintiff and Defendant were unable to agree on a jointly proposed memorandum of amendments to the discovery schedule. Hence, they are filing separate memoranda.

As explained below, Defendant proposes that the Court extend the privilege log interim deadlines based on the volume of documents requested by Plaintiff and the logistical difficulties of locating and scanning the requested documents (paragraph 1.a. of the Order). In addition, due to the large volume of additional documents that Plaintiff has requested as priorities for tranche one, Defendant proposes a schedule that provides for a sustained production rate (e.g., images per week) as an alternative to a set cut-off date (paragraph 1.c of the Order). Further, Defendant proposes that, for additional box designations, that Plaintiff should be required to inspect additional boxes to designate boxes and documents actually relevant to tranche one as opposed to requiring Defendant to produce the entire contents of the designated boxes (paragraph 1.e of the Order). Finally, Defendant requests that the schedule specifically provide that Plaintiff identify the specific leases that will form the basis of tranche one and deadlines for responses to Defendant's production

requests.[1] Defendant explains below the bases for its proposals.

## I. RESOLUTION OF THE GOVERNMENT'S PRIVILEGE CLAIMS

In its March 25, 2005 Order, the Court required the following:

> Plaintiff shall file, on or before Thursday, March 31, 2005, a statement listing all items from existing draft privilege logs relevant to tranche one claims as to which plaintiff believes privilege may not exist and the legal bases for that belief as to each item. If defendant wishes to challenge any of the legal bases put forward by plaintiff, it shall file a responsive brief stating its legal bases for each of its assertions of privilege on or before Thursday, April 14, 2005 and shall cause two copies of each document as to which privilege is claimed to be delivered to the court under seal for in camera review. Plaintiff shall reply to defendant's brief on or before April 21, 2005.

Order at ¶ 1.a. On March 31, 2005, Plaintiff provided a list of documents contained in Defendant's draft privilege logs that it believes should be produced. The list contains approximately 200 items, although the actual number of disputed documents is approximately 160 due to duplicate entries.

Given the large number of items from the privilege logs that Plaintiff has requested, Defendant is concerned that it will not be able to locate all of the requested documents in sufficient time to allow for a responsive brief on or before April 14, 2005. In order to file its response, Defendant must first complete its efforts at locating the images of the documents that have already

---

[1] In its March 25, 2005 Order, the Court indicated that the purpose of this April 7 filing is to suggest amendments of the discovery and pre-trial schedule delineated in its Order. Accordingly, Defendant will reserve any further arguments about the scope and direction of tranche one of this case. At the same time, however, Defendant notes that the Court has indicated that one of its key criteria in defining Tranche One is to permit the litigation of a set of issues that could lead to entry of an appealable partial final judgment pursuant to RCFC 54(b). At present, Defendant has only an incomplete understanding of Plaintiff's claims and the underlying theories of breach. Nonetheless, Defendant's limited understanding of Plaintiff's claims -- and its understanding of the Court's definition of tranche one -- raises a concern about Plaintiff's claim-splitting and the implications of the Court's entry of any partial final judgment at the conclusion of tranche one in this case. Defendant's analysis of Plaintiff's claims and the definition of tranche one leads to one of the following outcomes: (1) Plaintiff will be abandoning certain of its previously articulated claims in order to litigate any and all of its claims in tranche one; (2) Plaintiff is expressly splitting its claims so that entry of a final appealable judgment will not be possible at the conclusion of tranche one; or (3) the Court will have to entertain *res judicata* arguments by Defendant in tranche two as the result of any partial final judgment entered in tranche one. Defendant raises this point now so as to put the Court on notice and avoid the possibility of Plaintiff either unilaterally reserving new and different claims for tranche two or relitigating the same set of operative facts in tranche two.

been scanned but not yet produced. This process involves Defendant's review of ten DVDs containing over 290,000 images. For those documents that have not yet been scanned, Defendant must locate the boxes containing the documents at the Office of Trust Records ("OTR") in Albuquerque, NM, or the American Indian Records Repository ("AIRR") in Lenexa, KS. Defendant has determined that some boxes containing requested documents have been checked out by other users at the AIRR, which may complicate obtaining those boxes.

After locating and obtaining the boxes in which the identified documents are contained, the documents must be imaged and sent to the Defendant's counsel, who will review each document to determine whether to continue to assert privileges to withhold the documents. For those documents for which it will continue to assert privileges, Defendant will produce a final privilege log and will address the assertions in its responsive brief. Although Defendant is currently obtaining and reviewing the documents, Defendant requires an extension to May 6, 2005 to obtain all of the requested documents, review those documents, amend its privilege log, and submit its responsive pleading.[2/]

The Plaintiff should not have an objection to Defendant's proposed extension to this time period in light of the history of Defendant's attempts to resolve the issues in this case related to its privilege assertions and logs and Plaintiff's failure to engage Defendant in resolving these issues. Plaintiff has had several months to review Defendant's draft privilege logs and to provide Defendant with a list of all items from those draft privilege logs for which Plaintiff disagrees with Defendant's privilege assertions. On October 1, 2004, Defendant submitted to Plaintiff its Notice of Service of Draft Privilege Logs for Office of Trust Records Documents (Joint Review and Osage Specific Reviews), which included two draft privilege review logs from the Office of the Solicitor's review

---

[2/] Defendant also notes that Defendant has proposed to Plaintiff that the parties spend part or all of the week of April 25 at the Osage Agency in Pawhuska, OK, to work toward delineating the leases that will form the basis of the Tribe's challenges in tranche one and to inspect Tribal documents in response to Defendant's document production requests.

of OTR documents in Albuquerque, NM.[3/] The October 1, 2004 Notice suggested a process for addressing privilege assertions that had been made by the Solicitor's Office. Defendant requested that Plaintiff review the draft logs; identify by document number the privilege assertions with which Plaintiff disagreed; and supply Defendant with the basis for Plaintiff's disagreement. Defendant would then reconsider whether to continue or withdraw its assertion of privilege.[4/] (*id.* at 2.) In the joint status report filed on December 22, 2004, Defendant set out this process again and noted that documents designated as privileged were not given any priority for scanning by the Department of the Interior ("Interior"). *See* Joint Status Report Pursuant to Court's Order of October 22, 2004 at 12. Further, for a period of time, Interior had not scanned documents designated as privileged when scanning non-privileged documents to produce to Tribes. *Id.* Thus, Defendant wished to receive a list of those entries that Plaintiff challenged in order to set priorities for the scanning of boxes (those boxes in the scanning queue containing privileged records would be moved to the front of the scanning queue) and for locating boxes containing challenged privileged documents that had not been previously imaged and are not in the scanning queue.[5/]

During a status conference on December 28, 2004, Defendant once again set out the process outlined above and added that, once Plaintiff indicated the relevant documents for which it disputes privilege assertions, Defendant would look for a means to prioritize the scanning of those particular

---

[3/] These privilege logs also contained the entries in logs that had been previously provided to Plaintiff in May 2004.

[4/] In the October 1, 2004 Notice, Defendant explained that the Department of Justice ("DOJ") has the authority to make formal assertions of privilege on behalf of Defendant and proposed the process above as an informal and efficient manner to resolve disagreements about the Solicitor's Office privilege assertions. (*See id.* at 2.)

[5/] Due to resource considerations, Defendant had not commenced the process of locating documents on the privilege logs that had not been imaged and were in boxes that were not slated for scanning. Plaintiff had inspected a large number of boxes originating from central offices of Interior. These boxes contain mostly records, including any privileged records, that are not relevant to the Osage. Accordingly, Defendant had proposed a process that would avoid wasting resources in locating all of the records withheld as privileged, many of which would prove irrelevant. Instead, Defendant sought to focus its resources on locating the potentially relevant records, as identified by Plaintiff.

documents in the pipeline. *See* Tr. at 64-65, 70. Defendant pointed out that it could expedite the process if Plaintiff would set priorities for the documents, many of which appeared unrelated to the case and concerned other agencies or probate issues. *See id.* at 65. Plaintiff accepted this process during the status conference (*see id.* at 64-65) and explained that it would provide a list of the relevant documents in the privilege log "within the next two weeks." *Id.* at 66. In the status conference on January 24, 2005, Plaintiff's counsel indicated that he would provide Defendant with "specific information" about documents in the privilege logs "if not today, tomorrow." January 24, 2005, Tr. at 3-4. Plaintiff did not provide Defendant with any kind of a list of documents, however, until its filing on March 31, 2005. If Plaintiff had fulfilled its representation to the Court and Defendant that it would identify the relevant or priority entries in Defendant's draft privilege logs within two weeks of December 28, 2004, or within a day of January 24, 2005, Defendant would not be in the position today of having to locate, within an extremely accelerated time-frame, the challenged documents in order to file its responsive brief; rather, it would have long ago obtained images of those challenged documents.

Further, to the extent that the Plaintiff's representations made during the March 24, 2005, status conference formed the basis for the Court's deadline for Defendant's responsive brief on the privilege issue, those representations have turned out to be inaccurate. During that status conference, when discussing the number of documents that are likely to be relevant to tranche one, Plaintiff's counsel stated that the relevant documents would "primarily [be in] those 900 boxes of documents that we just went through during February at the Osage Agency. There were a minimal number of privilege claims with respect to those documents, and none of those privilege claims may have to be resolved." March 24, 2005, Tr. at 60.[6/] Further, in discussing the entries that it might

---

[6/] Due to the fact that Defendant conducted a privilege review of the boxes at the same time that Plaintiff was inspecting them, Defendant did not provide a privilege log of these documents at the time of inspection. Defendant is currently reviewing the images of the documents that Plaintiff requested from this inspection and the privileged documents that had been withheld. It will be providing a log of these documents when it produces the images to Plaintiff, by the end of April, (continued...)

challenge on the draft privilege logs that Plaintiff had received, Plaintiff's counsel stated "we'll have to look at them again. From memory, I doubt if many of them are [relevant], but we'll certainly look through them. . . We're talking about a relatively small number of documents, in any event." *Id.* at 73. On March 31, 2005, however, Plaintiff submitted a list containing a relatively large number of documents for which it disputes Defendant's privilege assertions.[7] *See* Osage Nations's Objections to Defendant's Privilege Claims.

For these reasons, the Court should enlarge the time to May 6, 2005, for Defendant to file its responsive brief addressing plaintiff's claims to withheld documents.

## II. PLAINTIFF'S INITIAL DESIGNATION OF PRIORITY BOXES

In its March 25, 2005 Order, the Court stated the following:

> b. On or before Thursday, April 7, 2005, plaintiff shall identify to defendant all document boxes to be expedited through the imaging queue as priorities for tranche one discovery.
>
> c. On or before Friday May 6, 2005, defendant shall produce the documents in those boxes prioritized by plaintiff for tranche one discovery.

On April 6, 2005, Plaintiff filed its First Notice Identifying Tranche One Boxes for Expedited Discovery. Based on an analysis of the list, it does not appear possible for Defendant to produce the images from all of these boxes on the list by May 6, 2005. As explained below, Defendant's request includes a significant number of documents and pages, many of which are likely to be irrelevant to the time periods associated with tranche one. Accordingly, the Court should either modify its schedule to allow Defendant to produce documents according to a weekly production rate (e.g., 20,000 images per week commencing on May 6), or should require Plaintiff to narrow its request prior to Defendant's imaging the documents from certain of Plaintiff's

---

[6](...continued)
2005.

[7] Some of these documents appear irrelevant to tranche one. For example, plaintiff's document 215 is a 1961 letter regarding the authority of the Secretary of the Interior to approve tribal leases, which might be relevant for asset mismanagement claims, but not for trust fund claims.

identified boxes. Plaintiff should be required to identify specific documents relevant to tranche one through the further inspection of those boxes that Plaintiff designated but has not yet inspected.

Plaintiff's Notice identifying priority boxes contains a list of 226 boxes. Plaintiff has listed these boxes in three categories: 1) boxes that have been entered in the Box Inventory Search System ("BISS") (it is not clear from Plaintiff's description whether it has inspected these boxes); 2) boxes located at the Osage Agency in Pawhuska that Plaintiff has inspected; and 3) boxes that were located at the Osage Agency that were moved to the AIRR but have not been inspected by Plaintiff. These categories are addressed in turn below.

Category 1 includes 49 boxes from G06 accessions, which contain boxes originating from the Osage Agency. In addition, 19 boxes in accessions with an 075 prefix also originated from the Osage Agency. Of these 68 boxes originating from the Osage Agency, Defendant has already scanned 10. From Defendant's experience to date in imaging the contents of boxes originating from the Osage Agency from which Plaintiff has requested copies, an average of 1238 pages per box have been imaged. Thus, in the remaining 58 of these boxes that must be scanned, Defendant expects to have to image 71,804 pages.[8/]

The rest of the boxes in category 1 originated from central offices. During its inspections, Plaintiff flagged for imaging far fewer images in boxes from central offices, averaging 400 pages per box. Defendant has already scanned 44 of these boxes. Thus, in the remaining 8 boxes to be scanned, Defendant expects to have to image 3,200 pages.

Defendant has completed imaging of the boxes listed in category 2. Currently, defendant is conducting a due-diligence review of the images and intends to provide them to Plaintiff no later than April 29, 2005.

Addressing category 3 is somewhat more complicated. From Defendant's experience, boxes

---

[8/] This expectation assumes that Plaintiff has inspected these additional boxes. If they have not inspected the particular boxes, the Court should require them to do so prior to Defendant's scanning such boxes.

at the AIRR from the Osage Agency contain from 2500 to 3300 pages per box. Assuming that each of the 66 boxes in category 3 contain 2500 images, then this category would contain a total of 165,000 pages. As Interior Department personnel explained to the parties during meetings at the Osage Agency on February 24, 2005, this category consists of boxes containing oil control cards, monthly oil production histories, lessee reports, and oil reports. Also, as Interior Department personnel explained to the parties, the boxes contained information from the time-frame of the 1950s to 2000. Because this date range includes time-frames outside the periods specified for tranche one, a significant amount of the 165,000 projected images will be irrelevant to the time frames that are subject to tranche one. Accordingly, by having to image the entire contents of these 66 boxes, Defendant will have to image a significant number of documents that are not relevant to tranche one.

During the March 25, 2005, status conference, Defendant explained that, from the time it received the list of boxes from Plaintiff, it would take at least three weeks to start producing 20,000 images per week on a rolling basis. Given the total number of images that Defendant expects to still have to image in response to Plaintiff's request (240,000), the current 20,000 image per week limit on the production rate, and rolling production commencing on May 6, 2002, Defendant would require until July 29, 2005 to produce all of the images. Defendant has already initiated steps to try to increase the production rate, but its ability to do so may be limited.[9] A further narrowing of the images that Plaintiff seeks, including through the inspection of the category 3 boxes listed above prior to the imaging of the documents in this category, would also allow the parties to expedite the conclusion of document discovery.

For the foregoing reasons, Defendant proposes that paragraph 1.c. of the Court's March 25, 2005 Order be modified to state as follows:

On or before Friday April 29, 2005, defendant shall produce the documents in those

---

[9] The production for Osage does not pose the only demand on Defendant's resources at the AIRR. Defendant is currently also imaging documents in cases brought by the Shoshone-Bannock Tribe of the Fort Hall Reservation, the Assiniboine and Sioux Tribes of the Fort Peck Reservation, and the Shoshone and Arapaho Tribes of the Wind River Reservation.

> boxes prioritized by plaintiff for tranche one discovery that have, as of April 7, 2005, been imaged, including those documents that plaintiff identified for imaging in boxes that it inspected at the Osage Agency. On or before Friday, May 6, 2005, defendant shall produce 20,000 images from those boxes prioritized for tranche one discovery that, as of April 7, 2005, had not been imaged, and shall produce 20,000 images per week thereafter until all images from plaintiff's requests for tranche one are produced.

As explained above, to further expedite the production of documents relevant to tranche one, the Court may also find it expedient to order plaintiff to inspect those boxes that it has identified that it has not already inspected, and designate those boxes or documents that, in fact, are relevant to tranche one prior to Defendant's imaging these boxes.

## III. PLAINTIFF'S IDENTIFICATION OF ADDITIONAL BOXES

In its March 25, 2005 Order, the Court stated the following:

> d. On or before Friday, May 13, 2005, plaintiff shall identify to defendant any additional document boxes required to be produced to complete tranche one discovery.
>
> e. On or before Friday, June 17, defendant shall produce the documents in the additional boxes designated by plaintiff on Friday, May 13, 2005.

Order at ¶¶ 1.d - 1.e. This provision of the Order may be interpreted as allowing Plaintiff to identify boxes of records and then receive images of all the documents in those boxes without Plaintiff ever having to inspect the records to ensure their relevance to tranche one. Such a reading would likely lead to the imaging of a significant number of records that are not relevant to tranche one. Also, it would lead to an excessive burden on Interior's resources to produce the records in an expedited fashion. Accordingly, Defendant requests that the Court require Plaintiff to inspect any additional designated boxes and identify boxes and documents relevant to tranche one prior to Defendant's imaging of the relevant documents.

Even with the Plaintiff obligated to inspect the additional boxes prior to imaging, Defendant notes that its ability to produce documents referenced in paragraph 1.d. of the Order by June 17, 2005, will also depend on the volume requested by plaintiff, the location of the documents, and the need for pre-inspection privilege reviews of those documents. The concerns about volume are related to the throughput of imaging that is explained above. In addition, the location of the

documents is crucial because, at the AIRR, Defendant already has, and will continue to have, the personnel and equipment ready to scan documents. If Plaintiff requests documents from other locations, however, Defendant will have to make other arrangements to obtain images of the documents, which would take more time than if the documents are at the AIRR. Finally, unlike the documents described in paragraph 1.b. of the Order, Interior will have to conduct privilege reviews of the documents Plaintiff has identified for inspection before Plaintiff can inspect them. Thus, depending on whether the foregoing factors are implicated by Plaintiff's May 13 request, Defendant may have to seek a modification to this interim deadline.

## IV. IDENTIFICATION OF RELEVANT LEASES

Defendant proposes that Plaintiff identify the five sample leases referenced in the Order at the same time that Plaintiff identifies issues for tranche one (May 12, 2005). Having Plaintiff do so may sharpen the focus of the parties' discovery and trial preparation efforts.

## V. DEFENDANT'S DISCOVERY OF PLAINTIFF'S CASE

The Court's March 25, 2005 Order does not set out interim deadlines for Defendant's discovery on Plaintiff. Defendant cannot adequately prepare a defense or otherwise sufficiently address Plaintiff's allegations of trust funds mismanagement, unless it has timely access to relevant documents that are in the custody or control of Plaintiff or its agents, attorneys, or representatives. Defendant will also need these relevant documents to prepare for both fact and expert depositions, and for dispositive motion briefing on June 13, 2005. Accordingly, Defendant proposes the following interim deadlines for Defendant's discovery of Plaintiff's case:

(a) By April 8, 2005, Defendant shall make its request for production of documents.

(b) By April 25, 2005, Plaintiff shall start making documents responsive to paragraph (a) available to Defendant for its inspection.

(c) By May 13, 2005, Defendant shall complete its inspection of documents.

(d) By June 17, 2005, Plaintiff shall produce the document images to Defendant. The parties may agree to an alternative arrangement whereby Defendant will image Plaintiff's responsive records.

To expedite receipt of documents relevant to Defendant's production requests, Defendant plan to use its imaging contractors to scan and code Plaintiff's documents.

Respectfully submitted this 7th day of April, 2005,

THOMAS L. SANSONETTI
Assistant Attorney General

By:

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

John H. Martin
Martin J. LaLonde
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Jason R. Baron
Director of Litigation
Office of General Counsel
National Archives and Records Administration
8601 Adelphi Road
Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227

Telephone: (202) 874-2567
Fax: (202) 874-6627