**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: May 6, 2005 |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO THE OSAGE NATION'S**
**OBJECTIONS TO DEFENDANT'S PRIVILEGE CLAIMS**

## TABLE OF CONTENTS


I. INTRODUCTION . . . . . 1

II. BACKGROUND . . . . . 2

III. ARGUMENT . . . . . 4

A. LEGAL STANDARDS FOR ASSERTIONS OF PRIVILEGE . . . . . 4

1. Attorney-Client Privilege . . . . . 4

2. Attorney-Work Product Privilege . . . . . 5

B. DEFENDANT PROPERLY INVOKED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES TO PROTECT DOCUMENTS . . . . . 7

C. THE FIDUCIARY EXCEPTION DOES NOT APPLY TO ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS OF FEDERAL AGENCIES ACTING IN THEIR ROLES AS TRUSTEES . . . . . 9

1. Background and legal standards for the fiduciary exception . . . . . 10

a. Application of the fiduciary exception to private trusts . . . . . 10

b. Extension of the fiduciary exception to the Department of the Interior, acting as trustee . . . . . 12

2. The fiduciary exception should not apply to the federal government because the tribal beneficiary is not the "real client" of legal advice provided to the trustee in the same sense as beneficiaries to private trusts . . . . . 13

a. Even in Trust Matters, Interior receives advice regarding its own federal interests together with advice concerning its responsibilities to the beneficiaries, and thus the tribal beneficiaries cannot be deemed to be the "real client" of the legal advice or representation obtained by the trustee . . . . . 13

b. Federal agencies owe a duty to fulfill the many directives of Congress, not only those involving Indian Tribes, thus the Indian Tribes cannot be deemed the "real client" of legal advice or representation obtained by federal agencies acting as trustees . . . . . 17

c. Congress has not recognized tribal beneficiaries as the "real client" of the legal advice of federal agencies fulfilling their fiduciary duties such that they are entitled, under the fiduciary exception, to privileged

documents of the agencies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

d. Because legal advice or representation to the federal trustee is not paid for from the trust corpus, tribal beneficiaries should not be deemed the "real client" of the advice or representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

3. Application of the attorney-client privilege does not contravene the trustee's duty to disclose to the beneficiaries complete and accurate information about the administration of the trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D. EVEN IF THE FIDUCIARY EXCEPTION APPLIES, IT SHOULD APPLY NARROWLY SUCH THAT PRIVILEGED COMMUNICATIONS ARE NOT SUBJECT TO THE EXCEPTION WHEN THEY RELATE TO LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1. The attorney-client privilege protects communications between trustees and their attorneys provided in anticipation of or during litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. The work product doctrine protects documents prepared by Defendants' attorneys in anticipation of litigation . . . . . . . . . . . . . . . . . . 27

3. The Court should uphold Defendant's assertions of attorney-client and work product privileges for those documents prepared in the context of litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

E. EVEN IF THE FIDUCIARY EXCEPTION APPLIES, IT SHOULD NOT APPLY TO ALLOW PLAINTIFF ACCESS TO PRIVILEGED DOCUMENTS OF THE TRUSTEE THAT DO NOT RELATE TO PLAINTIFF'S OWN TRUST FUNDS OR ASSETS . . . . . . . . . . . . . . . . . . . . . 31

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES

FEDERAL CASES

*American Federal Bank, FSB v. United States*, 60 Fed. Cl. 493 (2004) . . . . . . . . . . . . . . . . . . . . 6

*American Standard Inc. v. Pfizer Inc*, 828 F.2d 734 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 4

*Arney v. Hormel & Co.*, 53 F.R.D. 179 (D.Minn. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Becher v. Long Is. Lighting Co.*, 129 F.3d 268 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . 11, 25, 26

*Bowling v. United States*, 233 U.S. 528, 535 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Citizens Progressive v. United States Bureau of Indian Affairs*,
241 F.Supp.2d 1342, 1363-65 (D.N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Coastal States Gas Corp. v. Department of Energy*,
617 F.2d 854 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

*Cobell v. Norton*, 212 F.R.D. 24 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24

*Cobell v. Norton*, 213 F.R.D. 1 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Cobell v. Norton*, 213 F.R.D. 69 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*County of Oneida v. Oneida Indian Nation of New York States*,
470 U.S. 226, 241-43 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Department of the Interior v. Klamath Water Users Protective Association*,
532 U.S. 1, 15-16 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Deuterium Corp. v. United States*, 19 Cl. Ct. 697 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Duncan v. Walker*, 533 U.S. 167 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Eagle-Picher Industries, Inc.*, 11 Cl. Ct. 452 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Everett v. USAir Group, Inc.*, 165 F.R.D. 1 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . 24, 26, 28

*Federal Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000) . . . . . . . . . . . . . . . . . . . . 5, 6

*First Federal Savings Bank of Hegewisch v. United States*,
55 Fed. Cl. 263, 266 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*Fischel v. Equitable Life Assurance*, 191 F.R.D. 606 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . 24

*Flathead Joint Board of Control v. United States Department of the Interior*,

309 F.Supp.2d 1217, 1224 (D. Mont. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 24, 32

*Genetech, Inc. v. United States International Trade Commission*,

122 F.3d 1409 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Heckman v. United States*, 224 U.S. 413 (1912) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hudson v. General Dynamics*, 73 F. Supp. 2d 201 (D. Conn. 1999) . . . . . . . . . . . . . . . . . 24, 25, 26

*In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982) . . . . . . . . . . . . . . . 27

*In re Sealed Case*, 107 F.3d 46 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Sealed Case*, 29 F.3d 715 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . 4

*In Re: Grand Jury Investigation*, 399 F.3d 527 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Lawrence v. Cohn*, 202 WL 109530 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . 24, 28

*Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 129 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . 28

*Miccosukee Tribe v. United States*, 980 F. Supp. 448 (S.D. Fla. 1997) . . . . . . . . . . . . . . . . . . . 17

*Nevada v. United States*, 463 U.S. 110 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,

951 F. Supp. 679 (W.D. Mich. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Privett v. United States*, 256 U.S. 201 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Renda Marine, Inc. v. United States*, 62 Fed. Cl. 371 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 16

*Shoshone Indian Tribe of the Wind River Reservation v. United States*,

No. 458a-79L (CFC May 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Strougo v. BEA Assocs.*, 199 F.R.D. 515 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Swidler & Berlin v. United States*, 524 U.S. 399 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Triax Co. v. United States*, 11 Cl. Ct. 130 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Candelaria*, 271 U.S. 432 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 11, 22, 24, 25

*United States v. Minnesota*, 270 U.S. 181 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Navajo Nation*, 537 U.S. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Navajo Nation*, 537 U.S. 511 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Washington-Baltimore Newspaper Guild v. Washington Star Co.*,
543 F. Supp. 906 (D.D.C. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

*Wessel v. City of Albuquerque*, 2000 WL 1803818 (D.D.C., Nov 30, 2000) . . . . . . . . . . . . 22, 29

*Wildbur v. ARCO Chemical Co.*, 974 F.2d 631 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 11, 22

*Yankee Atomic Electric Co. v. United States*, 54 Fed. Cl. 306 (2002) . . . . . . . . . . . . . . . . . . . . . . 5

STATE CASES

*Mesce v. Gradone*, 1 N.J. 159, 62 A.2d 394 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Riggs National Bank v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976) . . . . . . . . . . . . . . . 10, 11, 13, 21, 22

FEDERAL STATUTES AND RULES

5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

5 U.S.C. § 552(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

24 U.S.C. § 2415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

25 U.S.C. § 162a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

25 U.S.C. § 4001 . . . . . . . . . . 22

25 U.S.C. § 4011 . . . . . . . . . . 23

28 U.S.C. § 2415 . . . . . . . . . . 18, 19

43 U.S.C. § 1457 . . . . . . . . . . 17

Indian Claims Limitation Act of 1982, Pub. L. 97-394, 96 Stat. 1976 . . . . . . . . . . 18

Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3 . . . . . . . . . . 15

Pub. L. 101-121, 103 Stat. 701 (Oct. 23, 1989) . . . . . . . . . . 22

Pub. L. 103-332, 108 Stat. 2499 (Sept. 30, 1994) . . . . . . . . . . 22

Pub. L. 108-108, 117 Stat. 1241, 1262-63 (Nov. 10, 2003) . . . . . . . . . . 21

RCFC 26(b)(3) . . . . . . . . . . 6, 8

OTHER AUTHORITIES

3 Weinstein's Federal Evidence § 503.11[4][b] . . . . . . . . . . 11

4 Austin W. Scott & William F. Fratcher, The Law of Trusts § 337 . . . . . . . . . . 14

Restatement (Second) of Trusts, § 170 . . . . . . . . . . 21

Restatement (Second) of Trusts, § 173 . . . . . . . . . . 21

*Talbot v. Marshfield*, 12 L.T.R. 761, 762 (Ch. 1865) . . . . . . . . . . 22

## I. INTRODUCTION

Pursuant to the Court's April 15, 2005, Order, Defendant herein files this response to Plaintiff's March 31, 2005, pleading, whereby it challenges Defendant's decision to withhold from production certain documents as privileged attorney-client communications or work product. The Court should reject Plaintiff's challenge.

As demonstrated in its attached privilege log (Exhibit 1), Defendant has properly invoked the attorney-client privilege to withhold those communications between federal agencies and their attorneys that involve legal advice or representation. The log also demonstrates that Defendant properly invoked the work-product privilege to protect from disclosure documents prepared by government attorneys or their representatives for pending or anticipated litigation. Plaintiff has not shown that Defendant's assertions are improper. Instead, Plaintiff asserts that the documents should be disclosed pursuant to the fiduciary exception to these privileges, which, in certain contexts, allows a beneficiary access to privileged communications between a trustee and its attorney.

The Court should conclude that the fiduciary exception does not apply to the documents that Defendant seeks to withhold as privileged in this case. Although the fiduciary exception may be applicable in the context of a private or charitable trust, it should not apply in the context of a government-to-government relationship between the United States and a Tribe, which resembles a trust relationship only where Congress has placed specific fiduciary duties on a federal agency.

The fiduciary exception was developed in the context of private trusts based on two primary rationales: that the beneficiary is the "real client" of any advice or work product that the trustee receives for purposes of administering the trust and that the beneficiary is entitled to complete and accurate information about the administration of the trust. As fully explained below, these rationales do not hold for the statutory trust relationship between a federal government attorney and an Indian Tribe. First, an Indian Tribe should not be deemed the "real client" of advice or work product of the government attorney due to several considerations: (a) in providing advice to a federal agency,

the government attorney's duty of loyalty is to the United States, which has a distinct and independent sovereign interest in fulfilling its statutory trust duties, (b) in providing advice to an agency concerning its statutory trust obligations, the attorney often must take into account multiple interests, including those that may be at odds with a tribal beneficiary; (c) in various contexts, courts and Congress have recognized that Indian beneficiaries are not entitled to the confidential or privileged communications of the federal trustee; and (d) tribal beneficiaries do not pay for the advice or work product received by the federal trustee. Second, unlike private trusts, Indian beneficiaries have multiple avenues for obtaining complete and accurate information about the administration of their trust.

Even if the Court were to determine that some form of the fiduciary exception does apply to certain communications of federal agencies acting as trustees to the tribal beneficiary, it should not extend the exception to communications or work product created in the context of pending or anticipated litigation, particularly between the trustee and beneficiary. In those instances, it is plain that the interests of the trustee and beneficiary diverge, the advice or work product in no manner can be considered as being for the benefit of the beneficiary, and the trustee should be entitled to full and frank legal advice and representation in the adversarial proceeding. Further, the Court should continue to shield from Plaintiff those privileged communications that do not relate to Plaintiff's assets or funds held in trust; Plaintiff in no manner can be considered the "real client" of privileged documents generated in the context of a fiduciary relationship between the federal trustee and other tribal or Indian beneficiaries.

For these reasons, and as fully explained below, the Court should reject Plaintiff's objections to Defendant's privilege claims.

## II. BACKGROUND

On October 1, 2004, Defendant submitted to Plaintiff its Notice of Service of Draft Privilege Logs for Office of Trust Records ("OTR") Documents, which included two draft privilege review logs from the review of OTR documents in Albuquerque, NM conducted by the Office of the

Solicitor of the Department of the Interior.[1] The October 1, 2004 Notice suggested a process for addressing privilege claims that had been made by the Solicitor's Office. Defendant requested that Plaintiff review the draft logs; identify by document number the privilege assertions with which Plaintiff disagreed; and supply Defendant with the basis for Plaintiff's disagreement. Defendant would then reconsider whether to continue or withdraw its assertion of privilege.[2] *Id.* at 2; *see also* Joint Status Report Pursuant to Court's Order of October 22, 2004 at 12 (explaining proposed process); Transcript, December 28, 2004, Status Conference, at 64-65, 70 (explaining proposed process).

Pursuant to the Court's March 25, 2005, Order, Plaintiff, on March 31, 2005, provided a list of documents contained in Defendant's draft privilege logs that it believes should be produced. The list contains 200 challenged items. Some of these items (Defendant's document number 772 and 808) referred to folders that were withheld in their entirety and consisted of numerous documents, which have now been separated into individual documents for purposes of determining privilege assertions.[3] After accounting for such single listings that actually contained multiple documents and instances where Plaintiff identified the same document in more than one of the draft privilege logs attached to its Objection, the total number of documents subject to Plaintiff's challenge is 244.[4]

---

[1] These privilege logs also contained the entries in logs that had been previously provided to Plaintiff in May 2004.

[2] In the October 1, 2004 Notice, Defendant explained that the Department of Justice has the authority to make formal assertions of privilege on behalf of Defendant and proposed the process above as an informal and efficient manner to resolve disagreements about the Solicitor's Office privilege assertions. (*See id.* at 2.)

[3] In one instance, an entire box from the Minerals Management Service was withheld and was listed as one item on a draft privilege log. On further review, no documents in this box are privileged and none are being withheld. Nevertheless, it appears that the contents of this box are not relevant to Plaintiff, for which MMS does not have involvement in collecting royalties.

[4] Defendant is still in the process of locating four documents that were listed on the draft privilege logs. For two of these documents, the draft privilege log inadvertently excluded information to identify the box within which the document is contained. The boxes have been identified, but Defendant has not yet obtained images of the privileged documents from the boxes.

(continued...)

On further review of these documents, Defendant has determined that 112 are not privileged. On the date of this filing, Defendant will produce these non-privileged documents to Plaintiff. As to the remaining privileged documents, Defendant has attached a final privilege log (Exhibit 1) with the following fields: Defendant's document identification number (hereinafter "document number"), Plaintiff's document number, document date, addressees, recipients, document title, privilege assertion, privilege category, and basis for the privilege assertion. Although the privilege log should serve as a sufficient basis for evaluating Defendant's claims of privileges, Defendant has also, under seal, submitted copies of the privileged documents to the Court for *in camera* review.

## III. ARGUMENT

### A. LEGAL STANDARDS FOR ASSERTIONS OF PRIVILEGE

#### 1. Attorney-Client Privilege

The basic contours of the attorney-client privilege are familiar. The attorney-client privilege protects confidential communications from a client to an attorney, legal advice from the attorney to the client, attorney requests for "relevant information" from the client, and communications between attorneys. *See Renda Marine, Inc. v. United States*, 62 Fed. Cl. 371, 372 (2004); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000), *Triax Co. v. United States*, 11 Cl. Ct. 130, 132 (1986). The privilege "encourages complete disclosure" between clients and their attorneys. *First Federal Savings Bank of Hegewisch v. United States*, 55 Fed. Cl. 263, 266 (2003) (citation omitted); *see also American Standard Inc. v. Pfizer Inc,* 828 F.2d 734, 745 (Fed. Cir. 1987) (stating the purpose of the privilege is to "encourage full and frank communications" between attorneys and their clients). The essential elements of the privilege are:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and]... (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client

[4](...continued)
The final two documents are contained in one box that has been unavailable for imaging. As soon as these four documents are obtained, Defendant will submit the documents for which it will continue to assert a privilege to the Court under seal along with a final privilege log.

> (b) without the presence of strangers (c) for the purposes of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding [and] ... (4) the privilege has been (a) claimed and (b) not waived by the client.

*First Federal Saving Bank of Hegewisch*, 55 Fed. Cl. at 266 (citing *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). Although the party claiming the privilege bears the burden of establishing the privilege, *Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996) (citations omitted), the burden is satisfied if "the overall tenor of the document indicates that it is a request for legal advice or services[,]" *Federal Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 315 (2000) (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d at 806). Moreover, a communication between a client and his or her attorney is "presumptively a request for legal advice[.]" *Yankee Atomic Electric Co. v. United States*, 54 Fed. Cl. 306, 315 (2002).

"It is well established that communications between government agencies and agency counsel are protected by the privilege so long as they are made confidentially and for the purpose of obtaining legal advice for the agency." *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 566 (1999). The privilege may apply to communications between an agency and its attorneys, regardless of whether the attorney is an agency counsel, a Department of Justice attorney, or an outside private counsel. *Yankee Atomic Electric Co.*, 54 Fed. Cl. at 313. The privilege applies to communications between "Government employees at all levels." *Renda Marine*, 62 Fed. Cl. at 373 (finding e-mail sent by a senior attorney in Office of Counsel for the Corps of Engineers to subordinate attorneys and non-attorney employees in the same office was protected by attorney-client privilege). Communications from a government attorney to a client may be protected by the attorney-client privilege if they "reveal, directly or indirectly, the substance of a confidential communication by the client[.]" *Yankee Atomic Electric Co.*, 54 Fed. Cl. at 313 (quoting *American Standard*, 828 F.2d at 745 (Fed. Cir. 1987)); *see also Deuterium Corp. v. United States*, 19 Cl. Ct. 697, 700 (1990).

**2. Attorney-Work Product Privilege**

"The protection for attorney work product is broader than the attorney-client privilege, but less absolute." *In re Sealed Case*, 107 F.3d 46, 51 (D.C. Cir. 1997). "Work product immunity

covers not only confidential communications between the attorney and client [but] also attaches to other materials prepared by attorneys (and their agents) in anticipation of litigation." *Id*. The long-standing work product doctrine is designed to protect the adversarial process. *See American Federal Bank, FSB v. United States*, 60 Fed. Cl. 493, 497 (2004) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *Eagle-Picher Industries, Inc.*, 11 Cl. Ct. 452, 457 (1987).

Under the attorney work product privilege, a party may obtain only documents prepared by or for another party for litigation if "the party seeking discovery has substantial need of the materials in the preparation of the party's case and . . . the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." RCFC 26(b)(3). The work product doctrine extends to documents prepared in anticipation of litigation. *First Height Bank, FSB v. United States*, 46 Fed. Cl. 312, 320 (2000) (ruling privilege applied to Internal Revenue Service ("IRS") documents that discussed potential litigation and were created by and circulated among counsel at the IRS). The privilege also applies to documents prepared in anticipation of terminated litigation in an unrelated proceeding. *Eagle-Picher Industries*, 11 Cl. Ct. at 457.

Even when the required showing is made and discovery of such materials is allowed, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* Thus, the rules distinguish fact work product from opinion work product. *Eagle-Picher Industries, Inc.*, 11 Cl. Ct. at 457. Fact work product may be discoverable under RCFC 26(b)(3), *id.*, whereas opinion work product is "nearly absolutely protected" and can only be discovered in "extraordinary circumstances." *Renda Marine, Inc.*, 62 Fed. Cl. at 375 (citation and internal quotation marks omitted). The opinion work product doctrine prohibits discovery of an attorney's mental impressions, conclusions, opinions, or legal theories. *See Sparton Corp.*, 44 Fed. Cl. at 564; *Genetech, Inc. v. United States International Trade Commission*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (stating work product privilege protects an attorney's legal recommendations and thoughts). Material in this category also includes an attorney's notes and impressions concerning witness

interviews in preparation for litigation and documents compiled by an attorney in preparation for litigation. *Sparton Corp.*, 44 Fed. Cl. at 564. Extra protection is granted to opinion work product to allow attorneys to work in an "atmosphere of privacy" because intrusions into an attorney's work product and mental impressions would hamper "the interests of clients and the cause of justice." *Deuterium Corp.*, 19 Cl. Ct. at 700 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1946)).

## B. DEFENDANT PROPERLY INVOKED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES TO PROTECT DOCUMENTS

As explained in the attached privilege log, each of the documents that Defendant has withheld from production is protected by either the attorney-client privilege, the work product privilege, or both.[5/] In the privilege log, Defendant has utilized a field titled "privilege category" to categorize, as explained below, various documents that have similar characteristics.

Many of the documents protected by the attorney client privilege are communications that do not directly relate to pending or anticipated litigation (listed as category 1). These include communications from the client (primarily personnel of the Department of the Interior) to an attorney of the Interior Solicitor's Office or the Department of Justice seeking legal advice (listed as category 1-a in the privilege log). Although many of these documents do not bear confidentiality or privilege stamps, it is plain from the context of the communications and the addressees that they were "without the presence of strangers," *First Federal Saving Bank of Hegewisch*, 55 Fed. Cl. at 266 (citation omitted), and thus were confidential and protected by the attorney-client privilege. Other withheld documents are communications from an attorney to the client or to another attorney

---

[5/] Citing *Cabot v. United States*, 35 Fed. Cl. 442, 446 (1996), Plaintiff asserts that the Court should order the release of those documents for which Defendant failed to demonstrate the validity of its privilege claims in its draft privilege logs. *Cabot* is inapposite. In *Cabot*, plaintiff failed to comply with two court orders requiring plaintiff to identify each document withheld as privileged and provide a full and clear basis for the assertion of privilege. *Id.* at 445. Plaintiff failed to produce the requested documents, failed to produce revised logs, and simply claimed that the documents were "plainly" or "obviously" protected by the work product or attorney-client privilege. *Id.* at 446. In this case, by contrast, Defendant is not in violation of Court orders and has submitted a final privilege log to Plaintiff that indicates which privilege it is asserting for each document. Moreover, unlike the plaintiff in *Cabot*, Defendant has been attempting to resolve the issues relating to its privilege assertions with Plaintiff for several months.

that note the request for legal advice to which the communication is responding and, thus, directly reflect the confidential communications of the client (listed as category 1-b in the privilege log). It is, again, clear from the context of these communications and addresses that these communications were also made in confidence and are privileged. Also, a number of withheld documents are communications from an attorney to the client or to another attorney that do not specifically note the request for legal advice to which they respond (listed as category 1-c in the privilege log). The context and subject matter of these communications and the addressees show that these communications are legal advice that indirectly reveal the substance of confidential communications by the client and, therefore, are privileged.

In addition, a number of documents withheld under the attorney-client privilege involve communications between a client and attorney for purposes of obtaining or providing legal advice in the context of pending or anticipated litigation (categories 2 and 3 in the privilege log).[6/] Many of these documents are also protected by the work product privilege (also listed as category 2 and 3 in the privilege log). As to each of the documents protected by the work product privilege, the log notes the anticipated or pending litigation for which it was prepared. Plaintiff has made no showing that it has a substantial need for these work-product protected documents or that they are unable to obtain the substantial equivalent of the materials without undue hardship. RCFC 26(b)(3). Even if such a showing had been made, most of the work-product documents would still be protected because they reflect the "mental impressions, conclusions, opinions, or legal theories of an attorney" concerning litigation. *Id.* Thus, Plaintiff is not entitled, under RCFC 26(b)(3), to the documents protected by the work-product privilege.[7/]

In sum, Defendant's privilege log demonstrates that it has properly withheld the identified

---

[6/] Category 2 relates to attorney-client communications or work product related solely to litigation matters, while category 3 relates to such documents prepared for pending or anticipated litigation that also address fiduciary matters. *See, infra*, III.D.3.

[7/] In addition, categories 4 and 5 relates to legal advice or work product that does not relate to the trust assets of the Osage Tribe. *See, infra*, III.E.

documents under the attorney-client privilege, work product privilege, or both privileges.

## C. THE FIDUCIARY EXCEPTION DOES NOT APPLY TO ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS OF FEDERAL AGENCIES ACTING IN THEIR ROLES AS TRUSTEES

In its Objections to Defendant's Privilege Claims, Plaintiff asserts that Defendant may not withhold any attorney-client privileged documents because they are subject to the fiduciary exception to the privilege.[8] Through its challenge, Plaintiff is requesting that this Court narrow or eliminate a well-established and long-standing privilege on which the government has relied in providing advice and representation to federal agencies. Reason and experience counsels against granting Plaintiff's request.

In light of the "principle that safeguarding client confidences promotes, rather than undermines, compliance with the law [it is] best to proceed cautiously when asked to narrow the privilege's protections in a particular category of cases." *In Re: Grand Jury Investigation*, 399 F.3d 527, 531 (2d. Cir. 2005); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 402-04 (1998) (concluding that the attorney-client privilege "encourage[s] 'full and frank communication between attorneys and their clients, and thereby promote[s] broader public interests in the observance of law and the administration of justice.'") (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). That it is the government that is asserting the privilege does not dilute the purposes that the privilege is designed to protect:

> We believe that, if anything, the traditional rationale for the privilege applies with special force in the government context. It is crucial that government officials, who are expected to uphold and execute the law and who may face criminal prosecution for failing to do so, be encouraged to seek out and receive fully informed legal advice. Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business. Abrogating the privilege undermines that culture and thereby impairs the public interest.

399 F.3d at 534; *see also Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (where "the Government is dealing with its attorneys as would any private party

---

[8] Plaintiff's assertions that the work product privilege is subject to the fiduciary exception is addressed *infra* III.D.2.

seeking advice to protect personal interests, [it] needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors."). Particularly where, as here, many of Interior's decisions related to the administration of the Indian trust have historically been, and continue to be, closely scrutinized in litigation -- at present, most prominently in *Cobell v. Norton,* but also in dozens of other cases brought by tribes in the Court of Federal Claims and in other district courts -- the ability of the Secretary of the Interior and her delegates to freely seek and receive fully informed legal advice is critical.

The Court should be reluctant to upset a long-established privilege on which the government has depended to ensure government officials seek and receive frank legal advice.[9/] "[C]ourts have by reason and experience concluded that a *consistent application* of the privilege over time is necessary to promote the rule of law by encouraging consultation with lawyers, and ensuring that lawyers, once consulted, are able to render to their clients fully informed legal advice." 399 F.3d at 531 (emphasis added). Recognizing a fiduciary exception would erode the privilege, thus undermining its important value in assisting the government in upholding its trust responsibilities. "A 'no harm in one more exception' rationale could contribute to the general erosion of the privilege, without reference to common-law principles or 'reason and experience.'" *Swidler & Berlin v. United States*, 524 U.S. at 410.

For these and the reasons explained below, the Court should decline to apply the fiduciary exception to Defendant in this matter.

**1. Background and legal standards for the fiduciary exception**

**a. Application of the fiduciary exception to private trusts**

The so-called fiduciary exception is a comparatively recent development that has been applied by a relatively small number of courts. The seminal case applying the exception was *Riggs National Bank v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976). There, a trustee had obtained a legal

---

[9/] Despite decades of litigation between Indian tribes and the United States, no Court had held that the fiduciary exception negates the government's privileges until recently in *Cobell* and *Shoshone-Arapaho*. *See infra* III.C.1.b.

opinion in anticipation of bringing litigation on behalf of the trust, and had paid for that opinion with funds from the trust corpus. The trust beneficiaries sued for reimbursement of the legal fees, and, in connection with that claim, sought to obtain the opinion itself. The trustee claimed that it was privileged, but the court disagreed. It reasoned that the opinion was really procured for the benefit of the trust beneficiaries, "not for the purpose of the trustees' own defense in any litigation against themselves." *Id.* at 711. In that context, the court decided that it was more important to preserve "the full disclosure necessary in the trustee-beneficiary relationship" than it was to protect the trustees' confidence in the attorney for the trust. *Id.* at 714.

Other decisions have generally issued in the context of shareholder derivative suits, *see, e.g., Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), or with respect to claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). *See, e.g., Becher v. Long Is. Lighting Co.*, 129 F.3d 268 (2d Cir. 1997). These cases generally hold that, when acting in a fiduciary capacity, a party cannot assert the attorney-client privilege against a beneficiary about legal advice dealing with its acts as a fiduciary. *See* 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.11[4][b] at 503-22.

The case law suggests two main rationales for the fiduciary exception to the attorney-client privilege. First is the notion that "'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999) (citation omitted); *Riggs*, 355 A.2d at 713. Second, the exception has been deemed appropriate where assertion of the attorney-client privilege would contravene the trustee's general duty to disclose to the beneficiaries complete and accurate information about the administration of the trust.[10/] *Mett*, 178 F.3d at 1063; *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992); *Riggs*, 355 A.2d at 714;

[10/] Even under the exception, the beneficiary is not, however, entitled to all information about the administration of the trust, only to "such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust." Restatement (Second) of Trusts § 173, comment c.

*Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982) (citing *Riggs*).

**b. Extension of the fiduciary exception to the Department of the Interior, acting as trustee**

This Court extended the fiduciary exception to the relationship between the Department of the Interior, acting as a trustee, and a tribal beneficiary. Order, *Shoshone Indian Tribe of the Wind River Reservation v. United States*, No. 458a-79L (CFC May 16, 2002). The Court relied on the two rationales addressed above, stating that "the exception derives from a trustee's duty to disclose all information about a plan's administration to the plan's beneficiaries," and that "a trustee, as the representative for the beneficiaries of a trust, is not the 'real client' when he seeks advice about the administration of the trust." *Id.* at 3. The Court concluded that the attorney-client "privilege does not apply to prevent disclosure to beneficiaries of communications between a trustee and its counsel concerning management and administration of the trust." *Id.* at 3.[11/]

The United States District Court for the District of Columbia in *Cobell v. Norton*, 212 F.R.D. 24 (D.D.C. 2002), relied on by Plaintiff in its Objection, held that the attorney-client privilege did not bar Plaintiffs' attorneys from questioning a trustee representative regarding his understanding of advice given to him by trustee's counsel regarding the nature and scope of the trustee's fiduciary duty. The Court stated that the trustee is not entitled to claim the attorney-client privilege except when he "seeks legal advice solely in his own personal interest or where the discovery material has been shown to relate exclusively to non-fiduciary matters." 212 F.R.D. at 30. In holding that the fiduciary exception is inapplicable only when privileged communications relate exclusively to non-fiduciary matters, the Court extended the doctrine beyond prior judicial precedent, which traditionally has found that confidential communications for purposes of seeking legal advice or representation related to the trustee's own liability are privileged, whether or not they also relate to

[11/] The documents that the Court addressed related to non-litigation matters. The Court suggested that attorney-client privileged communications related to the trustee's defense of itself against liability are not subject to the fiduciary exception. *Id.* at 4. Further, the Court did not address whether the fiduciary exception applies to documents protected as work-product. *Id.*

fiduciary matters. *See infra* III.D.

This Court should decline to follow *Cobell*'s extension of the fiduciary exception. Indeed, for the reasons explained below, this Court should reconsider its conclusions in *Shoshone Indian Tribe* and should hold that the fiduciary exception does not apply to the federal agencies acting in their trustee roles. Application of the fiduciary exception to deprive the Secretary of the Interior, the Secretary of the Treasury, and their delegates in their trustee role of the protections generally afforded by the attorney-client and work-product privileges would not further the rationales of the fiduciary exception. Although the rationales may have a basis for private trusts, including trusts governed by ERISA, multiple factors distinguish the trust relationship between federal agencies as trustee and tribal beneficiaries from the private trust relationship making the rationales inapt.

**2. The fiduciary exception should not apply to the federal government because the tribal beneficiary is not the "real client" of legal advice provided to the trustee in the same sense as beneficiaries to private trusts**

**a. Even in Trust Matters, Interior receives advice regarding its own federal interests together with advice concerning its responsibilities to the beneficiaries, and thus the tribal beneficiaries cannot be deemed to be the "real client" of the legal advice or representation obtained by the trustee**

*Cobell* and other cases adopting the fiduciary exception have relied extensively on the reasoning in *Riggs National Bank v. Zimmer*. Riggs' primary rationale for adopting the fiduciary exception was that the beneficiary, not the trustee, was the attorney's client: "As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client . . . ." 355 A.2d at 713. The Delaware court emphasized that it was following several nineteenth-century English precedents, especially *Talbot v. Marshfield*, 2 Drew & Sm. 549, 62 Eng. Rep. 728 (Ch. 1865). *See* 355 A.2d at 712. The court remarked that "Delaware is a State with a strong English common law tradition, and English authorities, both at law and in equity, even as to matters of persuasion, perhaps have more weight here than elsewhere." *Id.*

The court's reliance upon English law for this point was misplaced, however, because English trust law differs fundamentally from American trust law on the underlying question of the

scope of the beneficial interest in the trust. In English law the beneficiaries are regarded as equitable owners of the trust property.[12] Hence, they are entitled to terminate the trust at will. American law, by contrast, gives great weight to the intention of the settlor:

> Where its [the trust's] continuance is necessary to carry out a material purpose of the trust, . . . it is held in most jurisdictions in the United States that the beneficiaries cannot compel the termination of the trust. In England, on the other hand, it is immaterial whether the purposes of the trust have been carried out or not; the beneficiaries, if they all agree and are all sui juris, can at any time insist on its termination.

4 AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 337, at 432-33 (4th ed. 1989). Accordingly, in American trust law involving private and charitable trusts, because the trustees owe a fiduciary duty to carry out the intentions of the settlor, a court should not treat trustees as mere representatives for the beneficiaries.

The need to avoid treating the trustee as the mere representative of the beneficiaries is even more stark where a federal agency is acting as a trustee. The federal agencies responsible for fulfilling fiduciary obligations toward Indian tribes owe, in the first instance, a duty to carry out the direction of Congress as set forth in legislation specifying the agencies' statutory trust duties.[13] The government's duties and powers concerning trust matters, particularly those of the Department of the Interior, are thus not merely derivative of the property interests of the beneficiaries; the protection of Indian interests is a distinct and sovereign governmental function.[14] *See United States*

---

[12] *See Mesce v. Gradone*, 1 N.J. 159, 165, 62 A.2d 394, 396 (1948) ("The English authorities are of no force here because of our fundamentally divergent view of the power of the settlor and the beneficiaries of a trust over the trust res. In England the beneficiaries of the trust may by united action terminate, notwithstanding the fact that to do so may nullify the intention of the settlor. . . . In this State it is the intention of the settlor of the trust that governs and not the desire of the beneficiaries.").

[13] Indeed, because the trust of the Osage Tribe is a statutory trust wherein the trustee's duties must be founded, in the first instance, in statutes, regulations or treaties, *see* United States v. Navajo Nation, 537 U.S. 488, 506 (2003) (citing Mitchell v. United States, 463 U.S. 206, 216-17, 219 (1983)), the Secretary must comply with federal law governing her fiduciary duties, not with a trust instrument such as in private trusts.

[14] Even if one considered the private trust context as an analogy to the federal trust relationship with Indian tribes, the beneficiaries should not be deemed the "real client" of legal advice. Under (continued...)

*v. Candelaria*, 271 U.S. 432, 443-444 (1926); *United States v. Minnesota*, 270 U.S. 181, 194 (1926); *Heckman v. United States*, 224 U.S. 413, 437 (1912); *see also* Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3. And, when the United States acts to fulfill its statutory duties, it has a governmental interest independent of the interests of the tribes or individual entities.

For example, in *Heckman*, the United States brought an action to cancel conveyances of restricted fee allotments by individual Cherokee Indians. The defendants challenged the standing of the United States to bring an action to enforce the restrictions on the alienation of these allotments. The Court reasoned that "[a] transfer of the allotments is not simply a violation of the proprietary rights of the Indian. It violates the governmental rights of the United States . . . . The authority to enforce restrictions of this character is the necessary complement of the power to impose them." *Heckman*, 224 U.S. at 438. Based on this analysis, the Court held that the United States had standing to bring such an action in its own right, independent of the rights or participation of the Indian allottees. Id. at 444.[15/]

In subsequent cases, the Supreme Court has clarified that the United States' governmental interests in Indian allotments are legally distinct from those of the allottees. In *United States v. Minnesota*, 270 U.S. at 195, the United States sought to invalidate the conveyance of lands set aside for Indians to the State of Minnesota by patent. The Court concluded that the fact that the 11th

---

[14/](...continued)
such an analogy, Congress would be, in essence, acting as a settlor. As explained above, the trustee, under American private trust law, should be obliged to carry out the intentions of the settlor, not the beneficiaries, undermining the concept of the federal trustee acting as the mere representative of the tribal beneficiaries.

[15/] The Court stated that the

> "presence [of the allottees] . . . could not add to, or detract from, the effect of the proceedings to determine the violation of the restrictions and the consequent invalidity of the conveyances. As by act of Congress they were precluded from alienating their lands , they were likewise precluded from taking any position in the legal proceedings instituted by the Government to enforce the restrictions which would render such proceedings ineffectual or give support to the prohibited acts."

Id. at 445.

Amendment would bar suits by Indians to cancel unlawful land transactions does not bar such a suit by the United States. The Court stated that the interest of the United States entitling it to pursue the case against the state "arises out of its guardianship over the Indians, and out of its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations, and in both aspects the interest is one which is vested in the sovereign." *Id.* at 194 (citations omitted). *See also Privett v. United States*, 256 U.S. 201, 202-03 (1921) (an earlier suit by the allottee regarding the conveyance is not binding on the United States); *Bowling v. United States*, 233 U.S. 528, 535 (1914) (same).

The independence of the governmental interests from those of tribal beneficiaries is underscored in situations where the United States considers bringing a lawsuit to fulfill the interests of a Tribe. Even in such a situation – a context analogous to that facing the court in *Riggs* when it adopted the fiduciary exception – no attorney-client relationship between the federal government and the Tribe is established such that the Tribe may receive confidential government communications related to its consideration of whether to bring the suit. In *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995), for example, the Tribe sued the Department of Justice for declining to bring a suit to establish certain water rights on behalf of the Tribe. The Court held, *inter alia*, that "there was no attorney-client relationship between the United States and the Tribes with respect to the off-reservation water claim." 56 F.3d at 1483. It found that neither an express agreement, conduct of the United States, nor legislation created such a relationship. *Id.*

Thus, in contrast to a private trustee, who has no interest separate from the beneficiary, when federal agencies perform a fiduciary function derived from legislation, they are, first and foremost, fulfilling congressional direction and upholding independent governmental interests and rights, even if individual Indians or tribes are the beneficiaries of the fiduciary function. Accordingly, when the United States obtains legal advice in furtherance of these statutory functions, the "real client" of such advice should not be deemed to be individual Indians or tribes, but the Secretary of the Interior or other federal agencies. For this reason, the fiduciary exception should not apply to the United

States.

**b. Federal agencies owe a duty to fulfill the many directives of Congress, not only those involving Indian tribes, thus the Indian tribes cannot be deemed the "real client" of legal advice or representation obtained by federal agencies acting as trustees**

The protection of Indian interests is not the only sovereign governmental function that the United States must statutorily undertake and other duties may, in fact, compete with federal obligations to Indian tribes. The Supreme Court has stated that the United States does not have an undivided duty of loyalty to Indian tribes. *Nevada v. United States*, 463 U.S. 110, 142 (1983). In *Nevada*, the Supreme Court considered whether an Indian Tribe was bound under *res judicata* to a previous judicial decree. The prior judgment involved a case in which the United States brought suit to fulfill its duties to both an Indian tribe and a water-reclamation-project organization. The Tribe argued that it was not bound by the judgment because the government had compromised its duty of undivided loyalty by representing adverse interests. The Court rejected the argument, explaining that, "where Congress has imposed [other duties] upon the United States, in addition to its duty to represent Indian tribes, the analogy of a faithless private fiduciary cannot be controlling for purposes of evaluating the authority of the United States to represent different interests." 463 U.S. at 142; *cf United States v. Navajo Nation*, 537 U.S. 511, 512-14 (2003); *compare* Restatement (Second) of Trusts 170 (in a private trust context, "[t]he trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary."). Likewise, in *Miccosukee Tribe v. United States*, 980 F. Supp. 448 (S.D. Fla. 1997), a district court addressed whether Interior, acting through the National Park Service, breached its trust duties when it refused to alleviate flooding on the Tribe's reservation. The Court held that "Congress authorized the Park Service to weigh competing interests" before taking action and, thus, Interior had not breached its trust duties to the Tribe. 980 F. Supp. at 460-62. *See also* 43 U.S.C. § 1457 (setting forth the duties of the Secretary of the Interior).

Of course, the fact that federal agencies have other duties or conflicting responsibilities does not relieve them of their obligations to fulfill their legal duties related to the Tribe. But, Congress

accords the agencies the discretion they need to decide how to fulfill *all* of their duties, and the exercise of such discretion would certainly be among the subjects for which the agencies must seek and obtain legal advice. Protection for the confidentiality of such advice is at the heart of the purpose for which the attorney-client privilege is recognized. For that reason, application to the federal agencies of the fiduciary exception cannot be based solely on consideration of trust law, but also must be construed in light of the agencies' other obligations and their need for legal advice in determining how to carry out competing duties. Because federal agencies are often charged with protecting competing interests, including some potentially adverse to a Tribe's interests, the fiction cannot hold that the "real client" of the agencies' attorneys is the Tribe. The fiduciary exception should, therefore, not apply to the federal agencies.

**c. Congress has not recognized tribal beneficiaries as the "real client" of the legal advice of federal agencies fulfilling their fiduciary duties such that they are entitled, under the fiduciary exception, to privileged documents of the agencies**

Congress has neither recognized nor countenanced a trust relationship whereby a tribal beneficiary is the "real client" in interest of legal advice or representation provided to the federal trustee. Congress has not directly spoken to the application of a fiduciary exception to Interior or other agencies, but legislation addressing privileges show that Congress did not intend the fiduciary exception to apply to the United States as a matter of course and did not intend Indian tribes to have free and unconditional access to governmental attorney-client communications.

For example, Congress has, at least on one occasion, specifically prohibited the disclosure to Indians of privileged documents of Interior. In 1966, Congress enacted legislation that provided a statute of limitations period for pre-1966 contract and tort suits for damages brought by the United States on behalf of Indians. 24 U.S.C. § 2415; *County of Oneida v. Oneida Indian Nation of New York States*, 470 U.S. 226, 241-43 (1985). On four occasions between 1966 and 1982, Congress extended the time within which the United States could bring suits on behalf of Indians. 470 U.S. at 242. In the Indian Claims Limitation Act of 1982, Pub. L. 97-394, 96 Stat. 1976, Congress established a method for final resolution of the pre-1966 claims. *See* notes to 28 U.S.C. § 2415. The

Act established a system whereby the Secretary of the Interior would compile and publish in the Federal Register a list of all Indian claims to which the statute of limitations provided in 28 U.S.C. § 2415 applied. Pub. L. 97-394, § 3(a). The Secretary would also notify those Indians who might have an interest in any such claims and give them an opportunity to submit additional claims to be compiled and published on a second list. *Id.* § 4. No statute of limitations would run on the claims on the lists until the Secretary acted upon them or formally rejected them. 470 U.S. at 243.

If the Secretary rejected a claim, he was obligated to send a report advising Indians whose rights would be affected by the rejection, which report would identify the nature and location of each rejected claim, the reason for the rejection of the claim, and other information. Pub. L. 97-394, § 5(b). Even though the Secretary of the Interior was fulfilling a statutory fiduciary duty by exercising his discretion regarding the listing or rejection of claims that the United States could bring on an individual Indian's or Tribe's behalf, Congress did not require Interior to share privileged information with the individual Indian or Tribe: "Upon the request of any Indian claimant, the Secretary shall, without undue delay, provide to such claimant any *nonprivileged* research materials or evidence gathered by the United States in the documentation of such claim." *Id.* (emphasis added). From Congress' perspective, a Tribe's status as beneficiary and Interior's fiduciary obligations did not require disclosure to the Tribe of Interior's privileged communications. Congress specifically recognized Interior's privileges vis a vis individual Indians and tribes.[16/]

The Freedom of Information Act ("FOIA") also shows that Congress has not deemed established privileges inapplicable when governmental programs involve trust responsibilities. Upon request, FOIA requires federal agencies to disclose records, 5 U.S.C. § 552, unless the documents fall within an enumerated exemption, *id.* § 552(b). Exemption 5 of FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by

---

[16/] Congress's use of the term "nonprivileged" would make no sense in this context, if the fiduciary exception barred any claim of privilege by the United States. Moreover, if the fiduciary exception applied, the term "nonprivileged" would be rendered surplusage, in violation of the canon that courts should not treat statutory terms as "surplusage." *Duncan v. Walker*, 533 U.S. 167, 167 (2001).

law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have incorporated civil discovery privileges, including the attorney-client privilege, attorney work product, and the deliberative process privilege, into the protections of Exemption 5. *See, e.g., Coastal States Gas Corp.,* 617 F.2d at 862.

Normally, exemption 5 allows federal agencies to withhold privileged documents related to its trust duties from the public.[17/] But such privileged documents may not be withheld under exemption 5 if they have already been produced to a Tribe. The Supreme Court has held that communications between Interior and a Tribe, who is acting as an interested party in a matter as opposed to an uninterested consultant, are not protected under Exemption 5 because they are not inter-agency or intra-agency communications. *Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 15-16 (2001); *see also Flathead Joint Board of Control v. United States Department of the Interior*, 309 F. Supp. 2d 1217, 1224 (D. Mont. 2004).[18/] Thus, if Interior's otherwise privileged documents are released in litigation to a Tribe pursuant to the fiduciary exception, those documents may no longer be protected under Exemption 5 from disclosure to third parties. In other words, those privileges may have been effectively waived. Presumably, if Congress intended, or the Supreme Court construed, a tribal beneficiary to be entitled to receive privileged communications of the trustee, those communications would not lose their confidentiality and thus their privileged status once disclosed to the Tribe. But, under the FOIA, this is precisely what would happen: documents disclosed to the Tribe would no longer be protected from disclosure

---

[17/] Interior also withholds such documents from tribes. *See, e.g.,* Letter from Sue Ellen Sloca, Office of the Secretary, FOIA Officer, to Lean D. Bear, Chairman, Skull Valley Band of Goshute Indians at 3 (July 14, 2003) (exempting from disclosure as work product documents prepared for anticipated litigation) (attached as Exhibit 2); Letter from Diane Murth, Acting Director, Office of Management and Administration, Interior to Richard Reich, Office of the Quinault Attorney, Quinault Indian Tribe (June 1, 2000) at 2 (exempting from disclosure as involving attorney-client communications all e-mails between BIA staff and the Solicitor's office) (attached as Exhibit 3).

[18/] There may be exceptions to this rule not relevant here, such as where tribes and the federal government are, in some manner, jointly defending a matter such that the "common interest privilege" applies. *See Citizens Progressive v. United States Bureau of Indian Affairs*, 241 F.Supp.2d 1342, 1363-65 (D.N.M. 2002).

to third parties under exemption 5 of FOIA.

If the relationship between a federal agency as trustee and a tribal beneficiary were the equivalent of a private trust where an undivided duty of loyalty is owed by the trustee to the beneficiary, *see* Restatement (Second) of Trusts, § 170, communications between Interior and the Tribe would be confidential. But Congress has not deemed that such communications are confidential. Moreover, it has twice considered proposals to exempt from FOIA Indian trust information without enacting them. *See Klamath*, 532 U.S. at 16 n.7.

In short, it appears plain that Congress does not intend – an intention upheld by the Supreme Court – for tribal beneficiaries to be entitled to the privileged communications of federal agencies acting to fulfill their statutory trust duties. Accordingly, the Court should deem that the Tribe is not the "real client" of the federal agencies' privileged legal advice and, thus, should decline to apply the fiduciary exception to the Defendant's privilege claims challenged by plaintiffs.

**d. Because legal advice or representation to the federal trustee is not paid for from the trust corpus, tribal beneficiaries should not be deemed the "real client" of the advice or representation**

Finally, that the tribal beneficiary is not deemed the "real client" of the legal services provided to the trustee is further demonstrated by the fact that the tribe does not pay for the legal communications it seeks to obtain. Cases in which attorney communications with a trustee have been held discoverable by a beneficiary are frequently decided on the consideration that the beneficiary paid for those legal services. *See, e.g., Riggs*, 355 A.2d at 710 (payment of firm from trust corpus 'is a significant factor" in determining application of fiduciary exception); *Arney v. Hormel & Co.*, 53 F.R.D. 179, 181-82 (D.Minn. 1971) ("Plaintiffs' arguments are not persuasive. The cases cited and the treatises relied upon deal with opinions rendered to guide trustees in the administration of the trust and involve situations where the expense incurred in obtaining the opinions was payable directly out of the trust estate."). This position is reflected in the Restatement of Trusts, which suggests that a trustee retains his privilege as to information he acquires "at his own expense and for his own protection." Restatement (Second) of Trusts, § 173, cmt. b. Here, of

course, legal services provided to Interior are *not* funded by the tribes. *See, e.g.,* Pub. L. 108-108, 117 Stat. 1241, 1262-63 (Nov. 10, 2003); Pub. L. 103-332, 108 Stat. 2499 (Sept. 30, 1994); Pub. L. 101-121, 103 Stat. 701 (Oct. 23, 1989).

For the foregoing reasons, it is plain that federal agencies, including Interior, acting as trustees to tribes are not in the same position as private trustees as it concerns the trustee's obtaining legal advice and representation. It is simply incorrect to conclude that a tribal beneficiary is the "real client" of the legal advice and representation obtained by a federal trustee such that the fiduciary exception breaches the privileged communications of Interior or other federal agencies.

**3. Application of the attorney-client privilege does not contravene the trustee's duty to disclose to the beneficiaries complete and accurate information about the administration of the trust**

Courts have also found that the fiduciary exception should apply when the attorney-client privilege would contravene the trustee's general duty to disclose to the beneficiaries complete and accurate information about the administration of the trust. *Mett*, 178 F.3d at 1063; *Wildbur*, 974 F.2d at 645; *Riggs*, 355 A.2d at 714; *Washington-Baltimore Newspaper Guild*, 543 F. Supp. at 909; *Shoshone Indian Tribe*, No. 458a-79L (CFC May 16, 2002) at 3. Plaintiffs have not shown that complete and accurate information regarding the administration of the trust is unavailable due to the government's assertions of privileges. Indeed, there are a number of sources for information related to the management of their trust assets and funds available to them as a tribal beneficiary that would not be available to a beneficiary of a private trust.

Congress has made available to tribes various means for obtaining trust information. Beneficiaries may seek nonprivileged information relating to trusts and trust management under the Freedom of Information Act (FOIA) as well as through the formal and informal avenues created by Interior. *See, e.g.,* Indian Tribal and Individual Mineral Owners Quick Reference (Attached as Exhibit 4).

In addition, Congress in the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001, *et seq.*, established certain accounting duties for Interior. Under this Act, the

Secretary of the Interior is obligated to account for the daily and annual balance of the funds held in trust by the United States for the benefit of an Indian Tribe and is required to provide a periodic statement of performance to each Indian Tribe that identifies the source, type, and status of the funds; the beginning balance; the gains and losses to the fund; the receipts and disbursements; and the ending balance. 25 U.S.C. § 4011.

Furthermore, because the Secretary owes a duty to Congress, her actions in administering the trust are also subject to congressional review and involvement without counterpart in the realm of private trusts. *See, e.g., Misplaced Trust: The Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund*, H.R. Rep. No. 102- 499 (1992); *Oversight Hearing Before the Senate Comm. on Indian Affairs on Indian Trust Reform*, 109th Cong., 1st Sess. (2005); *To Require the Secretary of the Interior to Pay Interest on Indian Funds Invested . . . To Reform the Management of Indian Trust Funds: Hearing on H.R. 18466 and H.R. 4833 Before the Subcomm. on Native American Affairs of the House Comm. on Natural Resources*, 103rd Cong., 2d. Sess. (August 11, 1994); *Bureau of Indian Affairs' Management of Trust Funds; and Native American Trust Fund Accounting and Management Reform Act: Oversight Hearing on H.R. 1846 Before the Subcomm. on Native American Affairs of the House Comm. on Natural Resources*, 103rd Cong., 1st Sess. (Sept. 27, 1993). As a result of this oversight, beneficiaries also have access to a wide array of information that would ordinarily be unavailable to a private beneficiary.

In short, although the "access to information" rationale for the application of the fiduciary exception may be appropriate in the context of private trusts, it is not an appropriate basis for negating the well-established privileges of the United States.

## D. EVEN IF THE FIDUCIARY EXCEPTION APPLIES, IT SHOULD APPLY NARROWLY SUCH THAT PRIVILEGED COMMUNICATIONS ARE NOT SUBJECT TO THE EXCEPTION WHEN THEY RELATE TO LITIGATION

Even if the Court were to hold that the fiduciary exception applies to federal agencies in their statutory trustee roles, it should limit the exception to those communications that do not involve advice or representation obtained to defend the agencies against liability. Thus, certain attorney-

client communications provided in the context of litigation or consideration of potential liability should not be subject to the exception. Nor should any communication protected as work-product be subject to the exception when such work-product is prepared for or in anticipation of litigation against beneficiaries.

**1. The attorney-client privilege protects communications between trustees and their attorneys provided in anticipation of or during litigation**

The fiduciary exception should not be applied to allow a plaintiff to obtain from a fiduciary defendant legal advice about matters other than trust administration or that the defendant has obtained in order to defend itself from a beneficiary's own suit. *See, e.g., Talbot v. Marshfield*, 12 L.T.R. 761, 762 (Ch. 1865) (upholding privilege for communications during litigation that advised trustees "how far they were in peril"); *Mett*, 178 F.3d at 1064 (privilege applies "as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability); *Garner*, 430 F.2d at 1103 (corporations do not automatically lose privilege when sued by stockholders); *Hudson v. General Dynamics*, 73 F. Supp. 2d 201, 203 (D. Conn. 1999) (documents advising ERISA trustees about potential liability were privileged); *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 609 (N.D. Cal. 2000) (privilege protects advice "about the legal implications of actions and decisions undertaken" while acting as a fiduciary); *Wessel v. City of Albuquerque*, 2000 WL 1803818 at *7 (D.D.C., Nov 30, 2000) (applying *Mett*); *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D.D.C. 1995) ("The attorney-client privilege . . . attach[es] to attorney-client communications with respect to the non-fiduciary activities of [a trustee]."); (*Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 326 (S.D.N.Y. 1991) ("communications that would be encompassed within the fiduciary exception'"exclude those that "reflect advice concerning th[e] litigation.").

The advice should be protected whether or not actual litigation is pending to the extent that the advice addresses the trustee's potential liability. In *Hudson v. General Dynamics*, 73 F. Supp. 2d 201, 202-03 (D. Conn. 1999), the court upheld the attorney-client privilege for the employer-trustee against employee-beneficiaries for communications that related to trust administration – even though no litigation was pending – because the communications were aimed at protecting the trustee

from potential liability. 73 F. Supp. 2d at 203. The court, noting that "such communication could arguably be broadly viewed as 'relating to' fiduciary matters insofar as disclosures of plan amendments would affect current plan participants," rejected "such an expansive interpretation of the fiduciary exception" for three reasons:

> 1) If such legal advice to an ERISA trustee were deemed to relate, even indirectly, to plan administration, such trustees would have no attorney-client privilege in effect;
>
> 2) such a result would undermine a core purpose of the attorney-client privilege "to encourage clients (e.g., employers considering the substance and logistics of plan amendments) to make full disclosure to their attorneys." See United States v. Ackert, 169 F.3d 136 (2d Cir. 1999); and,
>
> 3) if ERISA trustees without assurance of confidentiality are disinclined to seek legal counsel, they may act or fail to act in ways that harm the interests of the beneficiaries.

*Id*. Thus, the court concluded that "the legal advice communicated to the defendant on the subject of disclosure of forthcoming plan changes is protected by attorney-client confidentiality privilege [sic] from discovery disclosure, and is not subject to the 'fiduciary exception.'" *Id.* (citing *In re Long Island Lighting Co.*, 129 F.3d 268, 271-73 (2d Cir. 1997).

Even if the privileged communication touches on trust administration, as long as the attorney-client communications concern the litigation or potential liability, the fiduciary exception to the attorney-client privilege should not apply. "[W]hile the fiduciary exception does apply to advice on matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability." *Mett*, 178 F.3d at 1066. A "'not one drop' rule" that "the fiduciary exception applies to all fiduciary-attorney communications *unless* the fiduciary can demonstrate that the advice was *solely* related to personal, non-fiduciary matters" misconstrues the fiduciary exception. *Id.* (emphasis in original). As the *Hudson* Court observed, to impose a requirement that the communications relate exclusively to the litigation would be "in effect" to rule that the "trustees . . . have no attorney-client privilege," 73 F. Supp.2d at 203, since in a lawsuit such as this one – brought by beneficiaries concerning the trust – trust-related and litigation-related matters are inexorably intertwined. Moreover, to deprive

trustees of their attorney-client privilege in its entirety would ultimately be to the detriment of the beneficiaries, as trustees who are "disinclined to seek legal counsel . . . may act or fail to act in ways that harm the interests of the beneficiaries." *Id.*[19]

The Court in *Cobell* declined to follow this precedent, holding that the trustee is not entitled to protection of the attorney-client privilege except when he "seeks legal advice solely in his own personal interest or where the discovery material has been shown to relate exclusively to non-fiduciary matters." *Cobell*, 212 F.R.D. at 29-30. The *Cobell* standard is not well-founded. In defending a case alleging breaches of fiduciary duties, confidential communications between the trustee and her attorney for purposes of defending the litigation will necessarily involve discussions of fiduciary matters. Thus, to find that such communications must be disclosed under the fiduciary exception could severely restrict the ability of the trustee to obtain adequate legal representation. In addition, communications related to fiduciary matters in the context of defending litigation brought by beneficiaries would not be undertaken with the aim of benefitting the beneficiaries. Accordingly, this rationale undergirding the fiduciary exception would simply not be furthered in this context.

Further, the precedent on which *Cobell* relied at 212 F.R.D. at 30, provides scant support for the Court's adoption of the "not one drop rule," rejected in *Mett* and other cases. For example, in *In re Long Island Lighting Co.*, cited in *Cobell*, the Court did not address the assertion of privilege as to documents that addressed fiduciary issues – there "the disputed documents clearly relate to non-fiduciary matters only." 129 F.3d at 273. Also, in *Hudson*, the court specifically noted that, while the protected "communication could arguably be broadly viewed as 'relating to' fiduciary matters," it "reject[ed] such an expansive interpretation of the fiduciary exception. . . ." 73 F. Supp.

---

[19] The identity of the lawyer giving the advice does not affect the analysis of whether a communication is privileged. *See In re Long Island Lighting Co.*, 129 F.3d at 272. For example, communications with a lawyer that are solely related to trust administration – and therefore subject to disclosure under the fiduciary exception – do not prevent assertion of the attorney-client privilege for communications with that same lawyer concerning litigation regarding the trust. *Id.*

2d at 202-03.[20] For these reasons, this Court should not adopt the *Cobell* standard, which runs contrary to the prevailing authority noted above.

Finally, the Court should decline to extend the fiduciary exception to attorney-client communications pertaining to pending or anticipated litigation for the additional reason that the Secretary, as a statutory trustee, is in a fundamentally different position than a private trustee in defending litigation. A private trustee may be removed or, faced with divergence of interests, the trustee may resign. The statutory trustee, by contrast, continues to administer trusts even while consulting with counsel on the implications of further actions with respect to pending litigation.

**2. The work product doctrine protects documents prepared by Defendants' attorneys in anticipation of litigation**

"The work-product privilege protects written materials lawyers prepare 'in anticipation of litigation.'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (citing Fed. R. Civ. P. 26(b)(3)). "By ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials, the privilege protects the adversary process." *Id.*

When a beneficiary sues its trustee, or there is anticipated litigation between the beneficiary and trustee, work product plainly protects materials prepared for or in anticipation of the litigation. "The work product privilege is based on the existence of an adversarial relationship." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1239 (5th Cir. 1982). "Thus, the mutuality of interest that is the rationale behind the fiduciary exception expires upon anticipation of litigation." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 687 (W.D. Mich. 1996) (citing *In re Int'l Sys. & Controls*, 693 F.2d at 1239). Once a beneficiary becomes an adversary of the trustee, the work product privilege protects "any material obtained or prepared by a lawyer in the course of his legal duties, provided that the work was done with an 'eye toward litigation.'" *In re Sealed*

---

[20] *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D.D.C. 1995), appears to provide direct support for *Cobell*'s standard, but that case provided minimal reasoning and support for its sweeping conclusions. The U.S. District Court for the District of the District of Columbia appears to be the only court that has adopted this broad standard for application of the fiduciary exception.

*Case*, 29 F.3d 715, 718 (D.C. Cir. 1994) (quoting *In re Sealed Case*, 676 F.2d 793,809 (D.C. Cir. 1982)).

In *Cobell*, the Court upheld the defendants' application of the work product privilege to protect from disclosure a document prepared for litigation. *Cobell v. Norton*, 213 F.R.D. 69, 77 (D.D.C. 2003). The district court has placed a qualifier on the work product privilege of the trustee, however. It has stated that "the work product doctrine [is] applicable only where the material is developed exclusively for purposes other than the benefit of trust beneficiaries, *i.e.,* solely to aid in litigation." *Cobell v. Norton*, 213 F.R.D. 1, 13 (D.D.C. 2003). "[T]he work product doctrine is inapplicable to documents prepared to assist a trustee in its fiduciary capacity." *Id.* at 11. This qualifier was not well-founded and is not supported by the precedent cited by the Court.

In *Cobell*, 213 F.R.D. at 12, 13-14, the Court's reliance on *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 129, 320 (S.D.N.Y. 1991), was misplaced. The Court in *Martin* addressed two situations. In the first, where the attorney's client was the trust itself, the Court found that any work product was produced for, and could not be shielded from, the beneficiaries. 140 F.R.D. at 316-17, 319-20. In the second, where the attorney's client was the trustee, the court stated that the work-product protection was applicable to protect documents "prepared for the principal purpose of assisting in anticipated or pending litigation." *Id.* at 327. *Martin's* conclusion shows that, even if the protected document addressed fiduciary matters, so long as the principal purpose of the document was to assist in defending the trustee, the fiduciary exception would not apply. Although *Cobell* relies upon *Martin*, the conclusion in *Martin* is actually contrary to the one reached in *Cobell*.

The other precedent on which *Cobell* relied considered the application in circumstances where the "true client" of the work product was the beneficiary. *Everett v. USAir Group, Inc.*, 165 F.R.D. at 5 (the trustee's assertion of work product privilege did not appear to involve documents prepared for pending or anticipated litigation against the beneficiary), relied on in *Cobell*, 213 F.R.D. at 12; *Lawrence v. Cohn*, 202 WL 109530 *3-6 (S.D.N.Y. 2002) (finding that the invocation of work-product immunity failed in case brought by the trustee in capacity as executor), relied on

in *Cobell*, 213 F.R.D. at 13. In the situation where work product was generated in litigation between the trustee and beneficiary, wherein the beneficiary is potentially at odds with the trustee and work product is not generated for the benefit of the trust beneficiary, the work product protection is upheld. *Lawrence* at *3. In any event, as explained *supra* III.C.2., in the context of a federal agency's acting as a trustee, the beneficiary should not be deemed the "true client" of the work product, even if the federal trustee and beneficiary's interests are not at odds, such as when the trustee brings a lawsuit on behalf of a Tribe.

Other courts have properly recognized that, when the mutuality of interest that forms the basis for the fiduciary exception expires upon anticipation of litigation, "[m]aterials need not be prepared solely for a litigation purpose . . . to merit protection." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001). When a document is created "because of" the prospect of litigation, and analyzes the likely outcome of that litigation, it does not lose protection merely because it is also created in order to assist with a business decision. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); *accord Wessel v. City of Albuquerque*, 2000 WL 1803818 at *3 (D.D.C. Nov. 30, 2000) (quoting *Adlman*).

Even if the Court deems that the fiduciary exception may apply to federal agencies acting in their capacities as trustees, the Court should follow the weight of precedent and hold that the fiduciary exception does not apply to work product prepared for the principal purpose of assisting in anticipated or pending litigation, even if the work product involves fiduciary matters. The Court should decline to adopt a "not one drop rule," which could have the effect of eviscerating the work product doctrine for government attorneys defending federal agencies acting in their roles as trustees.

**3. The Court should uphold Defendant's assertions of attorney-client and work product privileges for those documents prepared in the context of litigation**

For the foregoing reasons, the Court should uphold Defendant's assertion of the attorney-client privilege for communications involving pending or anticipated litigation and the work product privilege. Defendant has delineated such assertions of privilege in the attached log (Exhibit 1).

Those documents listed as category 2 in the "privilege category" field of the privilege log involve communications that are protected, even under the broad *Cobell* standard. They exclusively relate to litigation, are not for the benefit of the beneficiaries, and touch on fiduciary matters, if at all, only in a tangential manner. Thus, for example, document number P71 (Plf. Doc 71), is a memorandum prepared by the Field Solicitor for the Associate Solicitor, Indian Affairs, evaluating potential litigation that the Osage Tribe had requested the United States to bring against the state of Kansas to quiet title to the beds of certain rivers. In the memorandum, the Field Solicitor evaluates the validity of the claims of the Tribe. The memorandum constitutes core opinion work product, reflecting the mental impressions, conclusions, opinions, or legal theories of the attorney. The fiduciary exception should not be applied for a number of independent reasons: the work product does not involve administration of trust funds or assets, is not for the benefit of the Tribe, and addresses whether a suit should be brought on the behalf of the United States to fulfill its governmental and sovereign interests regarding the property. For these reasons, the fiduciary exception should not apply to this document.

Those documents listed as category 3 in the "privilege category" field of the privilege log also involve attorney-client communications or work product prepared for pending or anticipated litigation between Interior and individual Indians or tribes, although they arguably also address fiduciary issues in a more substantive manner. These assertions of the privileges to protect these documents should also be upheld. For example, document number 776 (Plf. Doc 229 and 549), is a memorandum from the Associate Solicitor for the Division of Indian Affairs to the Deputy to the Assistant Secretary of Indian Affairs, related to the investment of tribal trust funds and individual Indian monies. The document is prepared, in part, in anticipation of expected litigation related to Interior's investment in Savings and Loans that had, or were in danger of, becoming insolvent. In evaluating Interior's potential liability, the Solicitor's Office attorney reviewed various standards that he believed should guide certain of Interior's investment practices. In this document, although the attorney is offering legal advice to Interior that could have been used in a prospective basis in

administering the trust, this advice is inextricably linked to the advice, mental impressions, and legal opinions of the attorney reflecting on potential liability and litigation. Accordingly, the fiduciary exception should not apply to this document.

For the reasons explained in the attached privilege log, the Court should decline to apply the fiduciary privilege to the other documents that relate to pending or anticipated litigation.

**E. EVEN IF THE FIDUCIARY EXCEPTION APPLIES, IT SHOULD NOT APPLY TO ALLOW PLAINTIFF ACCESS TO PRIVILEGED DOCUMENTS OF THE TRUSTEE THAT DO NOT RELATE TO PLAINTIFF'S OWN TRUST FUNDS OR ASSETS**

The primary rationale for application of the fiduciary exception to allow a beneficiary to obtain the privileged documents of its trustee is that the beneficiary is the real client of the advice provided to the trustee. Thus, where the trustee received legal advice related solely to its fiduciary obligations toward an Indian beneficiary other than the Plaintiff Tribe, and there is no suggestion that the advice sought or rendered directly affected the administration of Plaintiff's trust assets or funds, the fiduciary exception does not apply to allow Plaintiff access to the privileged communication (category 4 in the privilege log). Similarly, where work product is related to pending or anticipated litigation that does not involve the trust funds or assets of the Plaintiff Tribe, the fiduciary exception should not apply to allow Plaintiff access to the privileged work product (category 4 in the privilege log). The fiduciary exception should be inapplicable in these situations even if the privileged document may otherwise appear relevant to the issues brought by the Plaintiff – it is not the relevance of the trustee's documents to issues of concern to the beneficiary that might entitle the beneficiary to the documents; rather, it is the relationship of the beneficiary to the purpose for which the document was created that may entitle the beneficiary to the document.

Thus, for example, Defendant has asserted the attorney-client privilege to protect from disclosure document number 572 (Plf. Doc. 19 & 404), a memorandum from the Field Solicitor to the Phoenix Area Director of the Bureau of Indian Affairs providing legal advice related to the investment of Indian trust funds. More specifically, the Field Solicitor provided advice on whether an individual Tribe within the Phoenix Area, which does not include the Osage Tribe, could relieve

the Secretary of certain investment responsibilities under 25 U.S.C. § 162a., legislation that is generally applicable to tribal trust funds. Even if this document is in some manner relevant to investment practices that may have been undertaken for the Osage trust fund – and it is not apparent that it is relevant – Plaintiff is still not entitled to the document under the fiduciary exception because the advice was in no manner provided in response to a request relating to the Osage's trust funds or assets.

As another example, Defendant has asserted the attorney-client and work product privilege for document number 315 (Plf. Doc. 115), which sets forth steps that the office of the Minnesota field solicitor recommended in the event that certain pending litigation was not resolved through a stipulated dismissal. The document relates specifically to litigation involving the Red Lake Band and, in no manner, relates to the Osage. This document would only be subject to the fiduciary exception, if at all, as asserted by the Red Lake Band, not by the Osage.

For those documents that relate more generally to Interior's fiduciary duties without any reference to a particular Tribe or individual Indian, Plaintiff should be required to show cause as to why it should receive the document (category 5 in the privilege log). Requiring such a showing is supported by *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), and its progeny. *Garner,* involving a class action suit by shareholders against the officers, directors and other members of corporate management, found that, while generally

> management does not manage for itself and . . . the beneficiaries of its action are [in fact] the stockholders . . . part of the managerial task is to seek legal counsel when desirable and, obviously, management prefers that it confer with counsel without the risk of having the communications revealed at the instance of one or more dissatisfied stockholders. The managerial preference is a rational one, because it is difficult to envision the management of any sizeable corporation pleasing all of its stockholders all of the time, and management desires protection from those who might second-guess or even harass in matters purely of judgment.

*Id.* at 1101. The Court held that the availability of the privilege should not be automatic, but instead "be subject to the right of the stockholders to *show cause* why it should not be invoked in the particular instance." *Id.* at 1103-4 (emphasis added). Similarly, here, where a withheld communication involves the federal agency seeking or obtaining legal advice on subjects that may

affect many or all Indian or tribal beneficiaries, the advice sought and received would likely not please all of the Indian beneficiaries, which may have competing interests, all of the time. In such a situation, an individual beneficiary should, at a minimum, be required to show cause why Interior should not be able to invoke its privileges as to such communications.

Accordingly, if the Court deems that the fiduciary exception does apply, it should allow the Osage Tribe to receive only those documents that relate specifically to the Osage funds or assets held in trust. In the attached privilege log, documents listed as category 4 involve documents that pertain to other specific tribes. Because these documents do not pertain to Osage tribal trust funds or assets, they are not subject to the fiduciary exception as asserted by Plaintiff. Documents listed as category 5 are those that pertain broadly to all tribal and/or Indian beneficiaries for which Plaintiff should have to show cause as to why it is entitled to the document. As it has not shown cause that it is entitled to these documents, the Court should not require their disclosure to Plaintiff.

## IV. CONCLUSION

For the forgoing reasons, the Court should uphold Defendant's assertions of privilege and should allow Defendant to withhold from production the privileged documents listed in the attached final privilege log.

Respectfully submitted this 6th day of May, 2005,

KELLY A. JOHNSON
Acting Assistant Attorney General

By:

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

Martin J. LaLonde
John H. Martin
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Jason R. Baron
Director of Litigation
Office of General Counsel
National Archives and Records Administration
8601 Adelphi Road
Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| | ) | Electronically Filed: |
| Plaintiff, | ) | May 6, 2005 |
| | ) | |
| v. | ) | No. 00-169 L |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX TO DEFENDANT'S EXHIBITS IN SUPPORT OF DEFENDANT'S OPPOSITION TO THE OSAGE NATION'S OBJECTIONS TO DEFENDANT'S PRIVILEGE CLAIMS (DATED MAY 6, 2005)**

**Index to Defendant's Exhibits in Support of Defendant's Opposition to the Osage Nation's Objections to Defendant's Privilege Claims (Dated May 6, 2005)**

**Summary of Exhibits:**

Exhibit No. 1 (Pages 1-32)
Exhibit No. 2 (Pages 33-37)
Exhibit No. 3 (Pages 38-40)
Exhibit No. 4 (Pages 41-42)

| Exhibit No. | Description | Beginning Page Number in Appendix |
|---|---|---|
| 1 | Final Privilege Log | 1 |
| 2 | Letter from Sue Ellen Sloca, Office of the Secretary, FOIA Officer, to Lean D. Bear, Chairman, Skull Valley Band of Goshute Indians (July 14, 2003) | 33 |
| 3 | Letter from Diane Murth, Acting director, Office of Management and Administration, Interior to Richard Reich, Office of the Quinault Attorney, Quinault Indian Tribe (June 1, 2000) | 38 |
| 4 | Indian Tribal and Individual Mineral Owners Quick Reference | 41 |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 315 | 115 | Mark Anderson, Office of the Solicitor | Earl Barlow, BIA Area Director, Minneapolis Area Office | | Red Lake Mill | 06/26/1989 | 3, 4 | ACP, AWP | This memorandum from attorney to client relates to the Area Director's decision letter regarding the viability of the Red Lake Indian Mill. This memorandum contains legal advice from attorney to client; references a decision letter from client; discusses on-going litigation between the United States and the Red Lake Band; and includes the attorney's mental impressions, legal conclusions, and recommendations concerning next steps in the litigation. |
| 363 | 123 | Donna Erwin, Acting Director, OTRM | Mr. James E. Brookside, Deputy Chief, General Lit. Section, ENRD; DOJ | | Request for advisory assistance from Ms. Pamela West relating to the Bureau of Indian Affairs Tribal Trust Funds Reconciliation Project | 01/24/1995 | 1-a, 5 | ACP | This letter relates to the BIA Tribal Trust Funds Reconciliation Project and contains a confidential communication from client to attorney requesting legal advice from Ms. Pamela West, Department of Justice, about specific tasks related to the Reconciliation Project. |
| 372 | 155 | Commissioner of Indian Affairs | Associate Solicitor, Indian Affairs | Roland Miller, Chief, Financial Management | Navajo Tribe of Indians v. United States, Civil No. 356-69, United States Court of Claims | 05/11/1971 | 2, 4 | ACP, AWP | This memorandum from client to attorney provides requested information for pending litigation. The information relates to allotments made by BIA from Navajo accounts and balances in Navajo accounts. It is a confidential communication for the purposes of obtaining legal services (litigation support) and is prepared for pending litigation. |
| 404 | 166 | J.P. Sykes; Fiscal Plans & Management | Associate Solicitor of Indian Affairs | C. Hourigan, Chief, Division of Finance Management, Trust Unit | Cheyenne-Arapaho Tribes of Oklahoma | 08/28/1972 | 3, 4 | ACP, AWP | This memorandum from client to attorney responds to a memorandum from the attorney and relates to the deposit and distribution of receipts collected by the BIA on behalf of a tribe. The memorandum relates to on-going litigation with the Cheyenne-Arapaho Tribe; concerns a test case with the Hoopa Valley Tribe; and contains a list of exhibits compiled from the records of the Bureau and US Treasury regarding the above issue. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 424 | 261 | Deputy Solicitor | Special Trustee | | Personnel rules applicable to the Office of Special Trustee | 05/10/1996 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the applicability of 25 U.S.C. 472 (Indian Preferance Statute) to the Office of Trust Funds Management and contains a general discussion of the Indian Trust Fund Management Reform Act of 1994. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 428 | 262 | David Moran, SOL, Division of Indain Affairs | Rusty Farmer | | Proposed IIM regulations | 10/15/1993 | 1-b, 5 | ACP | This memorandum from attorney to client contains comments regarding proposed regulations for the management of IIM funds and contains legal advice from attorney to client and reflects the attorney's mental impressions, conclusions, and legal theories about the proposed regulations. |
| 430 | 267 | Tim Vollmann, Reg. Solicitor, Southwest Region | Area Director, Muskogee Area Office, BIA | BIA Field Superintendent, Okmulee Agency | BIA collection of overpayment from restricted funds of Lizzy Pinky then Hanson, Creek Indian, Roll No. M-338 | 03/04/1992 | 1-c, 4 | AWP, ACP | This memorandum from attorney to client relates to the BIA's discretion, under a recent Board of Indian Appeals' decision, to forego collection on an erroneous overpayment from funds held in an Individual Indian Money Account and the possible applicability of that decision to the BIA's claims for overpayment against Lizzy Pinky. This memorandum was prepared in anticipation of a collection action against Lizzy Pinky and contains legal advice from attorney to client and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 433 | 280 | Commissioner of Indian Affairs | Associate Solicitor | Charles Hourigan Acting Chief Division of Fin. Management | Navajo Tribe of Indians v United States, Civil No. 256-69, United States Court of Claims | 08/27/1971 | 3, 4 | AWP | This memorandum from client to attorney, in response to the attorney's memorandum/request, provides information and reports in response to plaintiff's requets in Navajo Tribe of Indians v. United States. The memo generally discusses investements from particular trust funds related to the case and was prepared for on-going litigation. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 446 | 35, 296 | John Chaffin, for the Field Solicitor - Richard K. Aldrich, Rock Mountain Region (Billings) | Area Director, Indian Affairs, Billings, Mon | | Application of 31 USC 3527 to provide funds for reimbursement of 3 IIM accounts | 10/29/1986 | 1-b, 4 | ACP | This memorandum from attorney to client relates to a proposal to transfer appropriated funds to and then disburse those funds from three IIM accounts under 31 USC 3527 at the Blackfeet Agency. During the probate of an estate at the Blackfeet Agency, lease revenue monies were mistaknely disbursed to three IIM accounts and the account holders subsequently spent the money. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 447 | 36, 295 | Vernon Peterson, Attorney, Office of the Regional Solicitor | Stanley Speaks, Portland Area Director, Bureau of Indian Affaris, Branch of Finance | | Harvey Philips Estate - Bureau policy regarding collection of erroneous payments | 04/10/1985 | 1-b, 4 | ACP | This memorandum from attorney to client relates to the distribution of assets from the Harvey Phillips Estate, the overpayment from the Estate to Ms. Slockish, and the subsequent collection of overpayments from Ms. Slockish by the BIA. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 448 | 37, 293 | Arthur V. Biggs, Asst. Regional Solicitor, Pacific Northwest Region | Asst. Area Dir., Bureau of Indian Affairs, Branch of Tribal Operations | | 1306-10 Individual Indian Monies (IIM) Accounts | 11/23/1982 | 1-b, 4 | ACP | This memorandum from attorney to client relates to the power of a tribal court to control IIM accounts, including the disbursement from IIM accounts, and contains a general discussion of the nature of IIM accounts This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 468 | 313 | Scott Keep, Asst. Solicitor, Branch of Tribal Government and Alaka | Chief, Branch of Trust Accounting | Director, BIA Juneau Affice; Alaska Liason, BIA | Aleutian and Pribilof Islands Restitution Fund | 03/27/1991 | 1-c, 4 | ACP | This memorandum from attorney to client relates to the Aleutian and Pribilof Islands Restitution Fund, including the investment of those funds. It contains legal advice from attorney to clien and reflects the attorney's mental impressions, conclusions, and legal theories. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| 470 | 314 | William Gershuny, Acting Associate Solicitor, Indian Affairs | Commissioner of Indian Affairs, Attn: Branch of Financial Management | | Navajo Tribe of Indians v. United States, Nos. 256-69 and 377-70, United States Court of Federal Claims | 08/11/1971 | 3, 4 | ACP, AWP | This memorandum from attorney to client relates to recording deposits in Navajo interest accounts and withdrawals from Navajo principal accounts. This memorandum refers to a memo from client to attorney; relates to on-going litigation between the United States and the Navajo Tribe of Indians; and includes the attorney's request for information. |
| 480 | 326 | Assistant Solicitor, Division Indian Affairs, Duane Barnes | Director, Office of Trust Responsibilities | | Authority under the Act of 10/19/73, 87 Stat. 466 | 10/31/1974 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the Secretary of the Interior's ability to delegate his or her authority under the Act of October 19, 1973, 87 Stat. 466 (statute concerns approval of plans for use and distribution of tribal judgment funds) to the Commissioner of the BIA. The memo contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 486 | 332 | Dean Dunsmora, Attorney, DOJ | William Gershuny, Acting Associate Solicitor, DOI | Robert Coulter, Esq. | Six Nations Confederacy v. Cecil Andrus et al., Civil No. 77-0515, U.S.D.C., D.C. | 05/19/1977 | 2, 4 | ACP, AWP | This memorandum from one government attorney to another government attorne relates to a preliminary injunction in the above-captioned case and when payment is considered to be made under 25 USC 70u for judgments awarded to the Six Nations. This memorandum discusses pending litigation; contains confidential communications from government attorney to government attorney, including a request for "relevant information"; and contains the author's mental impressions, conclusions, opinions, and legal theories. |
| 489 | 337 | Commissioner of Indian Affairs | Associate Solicitor, Indian Affairs | Chrony-440, Mailroom | Participants in Osage tribal elections and powers of the Osage Tribal Council | 08/19/1971 | 1-a | ACP | This memorandum from client to attorney relates to the extent of the Osage Tribal Council's authority under the Act of 1906. It is a confidential communication for the purposes of obtaining legal advice. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 512 | 352 | Arthur G. Barber, Acting Superintendent Olympic Penisula Agency | Through Portland Aread Director to Arthur Biggs, Assistant Regional Solicitor, Office of the Regional Solicitor | Dick DeClerk, BIA-PAO, BIA-PAO, PAO-Forestry, For-Hoq, Adm-Hoq | IMPL Escrow Account | 08/19/1985 | 1-a, 4 | ACP | This memorandum from client to attorney relates to the origination of monies in the IMPL Escrow Account at the Olympic Penisula Agency. It is a follow-up confidential communication for the purpose of receiving legal advice. |
| 521 | 367 | William G. Lavell, Associate Solicitor, Division of Indian Affairs | Assistant Secretary, Indian Affairs | | Contractibility of investment of tribal trust funds under Title I of Pub. L 93-638, the Indian Self-Determination Act | 03/23/1990 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the Bureau of Indian Affairs's ability to contract out, upon the request of a Tribe, the investment of tribal trust funds under Title I of Pub. L. 93-638, the Indian Self Determination Act. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 522 | 364 | Thomas Sansonetti, Associate Solicitor, Energy & Resources, Office of the Solicitor, DOI | land management agencies | | Takings implication assessment: R.S. 2477 Policy | 11/01/1988 | 1-c, 5 | ACP | This memorandum relates to Section 8 of R.S. 2477 (43 U.S.C. 932), which provides for a right-of-way construction of highways over public lands not reserved for public use. The memo discusses the policy for determing the existence of and processing such right-of-ways, including takings implications, and contains legal advice and reflects the attorneys mental impressions, conclusions, and legal theories |
| 525 | 369 | Acting Associate Solicitor, Indian Affairs | Commissioner, Bureau of Indian Affairs | | Statute of Limitations | 01/31/1977 | 1-c, 5 | AWP, ACP | This memorandum from attorney to client discusses the implications of 28 USC 2415, which imposes a statute of limitations on all claims brought by the United States on behalf of Indians for money damages. The memo sets out procedures for complying with 2415 and a proposed legislative alternative to 2415. This memorandum contains legal advice from attorney to client; refers to potential litigation (claims) by the United States on behalf of tribes; and includes the attorney's mental impressions, legal conclusions, and recommendations concerning next steps to ensure compliance with 2415. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 528 | 376 | Lawrence A. Ascheinbrennes, Acting Associate Solicitor, Indian Affairs | Commissioner of Indian Affairs | | Use of "Indian moneys, proceeds of labor" to fund or supplement funding of contracts and grants under Title I of PL 93-638 | 07/07/1976 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the proposed use of "indian moneys, proceeds of labor" (IMPL) in connection with contracts and grants under Title I of PL 93-638, and discusses the authority to use IMPL funds (and the extent of that authority) for such contracts and grants. This memo contains legal advice from attorney to client; summarizes a confidential communication from client to attorney for the purpose of obtaining a legal opinion; and includes the attorney's mental impressions and legal conclusions. |
| 529 | 377 | Morris Thompson, Commissioner of Indian Affairs | Associate Solicitor, Indian Affairs | Phoenix Area Director; Surname-Chrony | Use of "Indian moneys, proceeds of labor" to fund or supplement funding of contracts and grants under Title I of P.L. 93-638 | 08/26/1976 | 1-a, 5 | ACP | This memorandum from client to attorney responds to a legal memo, dated 7/7/76, concerning the use of IMPL funds to supplement funding of contracts and grants under Title I of P.L. 93-638. This memo provides additional information/input regarding IMPL funds, including what funds are included within IMPL funds. It is a confidential communication for the purposes of obtaining legal advice about the granting of IMPL funds. |
| 530 | 380 | John Fritz, Deputy Assistant Sec'y, Indian Affairs | Associate Solicitor, Indian Affairs | Files, BIA, Daniels | IMPL Federal Trust Funds | 03/05/1982 | 1-a, 5 | ACP | This memorandum from client to attorney relates to the Bureau of Indian Affair's management and handling of IMPL Federal Trust Funds, including disposition, ownership and responsibility of said funds. It is a confidential communication for the purpose of obtaining legal advice about the management of IMPL Federal Trust Funds. |
| 531 | 381 | Lawrence Jensen, Associate Solicitor, Division of Indian Affairs | Deputy Assistant Sec., Indian Affairs (Program Operations) | | Implementation procedures for Escrow Accounts established by P.L. 97-257 modification to the Indian Monies, Proceeds of | 11/22/1982 | 1-b, 5 | ACP | This memorandum from attorney to client relates to proposed procedures for preliminary determination concerning entitlement to receive funds in escrow accounts derived from special deposits. This memorandum contains legal advice from attorney to client concerning the proposed procedures; summarizes confidential communications (a draft memorandum) from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, legal |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Labor (IMPL) Trust Fund | | | | theories, and recommendations concerning the proposed procedures. |
| 532 | 373 | Hans Walker, Acting Associate Solicitor, Division of Indian Affairs | Deputy Assistant Sec., Indian Affairs (Program Operations) | Don, Peggy | Draft regulations on IMPL Funds, Proposed 25 CFR 103 | 02/25/1980 | 1-b, 5 | ACP | This memorandum from attorney to client relates to draft regulations for IMPL Funds (Proposed 25 CFR 103), which set out procedures for the receipt, deposit, investment, and disbursement of IMPL funds. This memorandum contains legal advice from attorney to client concerning the proposed regulation; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, legal theories, and recommendations concerning the proposed regulations. |
| 534 | 378 | Lawrence A. Ascheinbrennes, Acting Associate Solicitor, Indian Affairs | Commissioner of Indian Affairs, Division of Finance Management | | Use of "Indian moneys, proceeds of labor" to fund or supplement funding of contracts and grants under Title I of P.L. 93-638 | 10/01/1976 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the use of "Indian moneys, proceeds of labor" to fund or supplement funding of contracts and grants under Title I of PL 93-638, and clarifies a previous legal opinion regarding the the extent of authority to use IMPL funds to fund contracts and grants. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 536 | 379 | Hans Walker, Acting Associate Solicitor, Division of Indian Affairs | Thomas Stangl, Assistant Director, Finance Management, BIA | Assistant Secretary, Indian Affairs, Mozelle Henry; Inspector General, Arnold Baron; Assitant Solicitor, Auditor and Inspection | Draft regulations governing IMPL Funds and special deposits: Proposed 25 CFR 103 | 06/09/1980 | 1-b, 5 | ACP | This memorandum from attorney to client relates to draft regulations governing IMPL funds and special deposits. (Proposed 25 CFR 103). The IMPL section deals primarily with the source and expenditure of IMPL funds while the special deposit section deals with the distribution of interest earned from from the investment of special deposits. This memorandum contains legal advice from attorney to client concerning the proposed regulation; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, legal theories, and recommendations |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | concerning the proposed regulations. |
| 561 | 395 | Assoc. Sol. For Indian Affairs | Acting Director, Office of Trust Responsibilities, Bureau of Indian Affaris | | United States v. Wald, 8th Cir, No. 76-160 | 09/01/1977 | 3, 4 | ACP, AWP | This memorandum from attorney to client relates to the application of 25 CFR 151.24, the regulation governing penalties for grazing trespass in light of United States ex rel. Chase v. Wald, which ruled that the regulation is unlawful. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 562 | 2, 391 | Commissioner of Indian Affairs | Associate Solicitor, Div. of Indian Affairs | | Proposed system for categorizing Individual Indian Money Accounts for distribution of interest | 10/13/1972 | 1-a, 5 | ACP | This memorandum relates to a proposed system to categorize all IIM accounts, which might result in different distributions and rates of returns for different categories. It contains confidential communications from client to attorney for the purpose of obtaining legal advice on the same subject. |
| 563 | 3, 393 | Asst. Solicitor, Indian Affairs | BIA, Investments | | Segregation of Individual Money Accounts for payment of interest | 04/19/1973 | 1-b, 5 | ACP | This memorandum from attorney to client relates to a proposal to segregate Individual Indian Money Accounts into restricted (minors and legal disability) and unrestricted (all other depositors) accounts for payment of Interest. This memorandum contains legal advice from attorney to client concerning the proposal, including a discussion of the significance of trust funds; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 564 | 4, 392 | Comm. of Indian Affairs | Assoc. Solicitor, Division of Indian Affairs | | Proposed system for categorizing Individual Indian Money Accounts for distribution of interest | 10/13/1972 | 1-a, 5 | ACP | This memorandum relates to a proposed system to categorize all IIM accounts, which might result in different distributions and rates of returns for different categories. It contains confidential communications from client to attorney for the purpose of obtaining legal advice on the same subject. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 565 | 5, 394 | Asst. Solicitor, Indian Affairs | BIA, Investments | | Segregation of Individual Indian Money Accounts for payment of interest | 04/19/1973 | 1-b, 5 | ACP | This memorandum from attorney to client relates to a proposal to segregate Individual Indian Money Accounts into restricted (minors and legal disability) and unrestricted (all other depositors) accounts for payment of Interest. This memorandum contains legal advice from attorney to client concerning the proposal, including a discussion of the significance of trust funds; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 566 | 15, 397 | Martin L. Seneca, Jr. Esq, Assoc. Solicitor, Indian Affairs | Director, Office of Trust Responsibilities, BIA | Chief, Branch of Investments & ISSDA, Albuquerque | Indian trust funds maintained as "Individual Indian Money" | 04/29/1975 | 1-b, 5 | ACP | This memorandum from attorney to client relates to Indian trust funds maintained as "Individual Indian Money". It contains the attorney's legal opinions and requests relevant advice from the Director of the Office of Trust Responsibility regarding the management of tribal trust funds. |
| 568 | 17, 398 | Robert N. Barone, InterGroup Financial Corp. | Shirley Smith, U.S. Attorney's Office, DOJ | | Southern Paiute Nation of Indians Trust Minors - #31-001177-0 | 07/05/1985 | 2, 4 | AWP | This memorandum appears to be from an expert consultant or witness to a U.S. attorney and prepared for litigation between the United States and the Southern Paiute Nation. The memo relates to yields of Southern Paiute Nation trust funds. |
| 570 | 7, 399 | Asst. Secretary of Indian Affairs | Assoc. Solicitor, Indian Affairs | | Request for Solicitor's Opinion | 00/00/0000 | 1-a, 4 | ACP | This memorandum from client to attorney relates to the Yakima Indian Nation's request for permission to move funds from a tribally controlled bank account to the Bureau of Indian Affairs' Treasury tribal trust account. It is a confidential communication for the purposes of obtaining a legal opinion regarding the Yakima Indian Nation's request and whether other types of Funds can be put into a Treasury trust account. |
| 571 | 18, 405 | Reid Payton Chambers, Assoc. Sol., Indian Affairs | Asst. to the Secretary for Indian Affairs | | Investment of Indian Power Project and Irrigation Project Operation and Maintenance Revenues | 10/10/1973 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the investment of Indian Power Project and Irrigation Project collections. It contains legal advice from attorney to client; confidential communication from client to attorney for the purpose of obtaining legal advice; and includes the attorney's mental impressions, and legal conclusions. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 572 | 19, 404 | William G. Lavell, Field Solicitor | Area Director, BIA Phoenix | From Area Director to All Super. Off. in Charge & Coord., Phoenix Area | Investment of Indian Tribal Trust Funds | 01/31/1973 | 1-b, 4 | ACP | This memorandum (attached to a cover letter from Area Director to all superintendents, Officers in Charge and Coordinators, Phoenix Area) from attorney to client relates to the required rate of return on investment of Tribal trust funds and the limitations on investing such funds. It contains legal advice from attorney to client; confidential communication from client to attorney for the purpose of obtaining legal advice; includes the attorney's mental impressions and legal conclusions; and appears to relate to a Tribe under the jurisdiction of the Phoenix Area Office. |
| 574 | 21, 402 | Assistant Secretary, Management & Budget, Department of the Interior | Assoc. Solicitor, Division of Indian Affairs | Secretary's File Copy, Commissioner's Reading File, LM Copy, 730, 700, LIA Mailroom, Bureau-DFM, JVale | Requests for Opinion regarding the Branch of Investments and ISSDA - with attached documents | 01/16/1973 | 1-a, 5 | ACP | Memorandum from client to attorney relating to (and enclosing) outstanding requests for opinions regarding the Branch of Investments and ISSDA.<br><br>The first enclosed memo, Purchase of Other Than Treasury Securities for ISSDA Investments Through a Broker Instead of Through the Treasury Department, is from the Commissioner of Indian Affairs, Dept. of the Interior, to the Associate Solicitor, Division of Indian Affairs. This memo contains confidential communications from client to attorney for the purpose of obtaining legal advice regarding the purchasing investments through a broker. Referenced and attached to this memo/confidential communication is a letter from W.J. Wilson, Jr., Senior Account Executive, Merril lynch, Pierce, Fenner & Smith, to Mr. John Vale, Bureau of Indian Affairs, relating to proposed procedures for Merril Lynch to hold securities for the BIA.<br><br>The second enclosed memo, Proposed System for Categorizing Individual Indian Money Account for Distribution of Interest, is from client, Commissioner of Indian Affairs, to Associate Solicitor, Division of Indeian Affairs, dated 10/13/92. This memorandum relates to a proposed system to categorize all IIM accounts, which might result in different distributions and rates of returns for different categories. It contains confidential communications from client to attorney for the purpose of obtaining legal advice. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 578 | 8, 408 | Edwin Winstead, Atty., Div. of Indian Affairs | Jim Parris, Chief, Branch of Trust fund Accounting, BIA | | Shii Shi Keyah Association v. Hodel, May 15, 1989, Court Deadline for Implementation of New Accounting System for Computation of Interest | 05/01/1989 | 2, 4 | AWP | This memorandum from attorney to client relates to the Court deadline in the above-captioned case for implementing a new accounting system to calculate interest. This memorandum discusses on-going litigation between the United States and the Shii Shi Keyah Association and includes the attorney's mental impressions, legal conclusions, and recommendations concerning the new accounting system and the timeline for implementing the new system. |
| 579 | 12, 411 | George Skibine, Staff Atty, Office of the Solicitor | Assistant Sol., General Indian Legal Activities | Arlene Brown, Office of ASIA, Ross Dembling, Division of Gen. Law | Questions and answers on Trust Funds RFP | 01/20/1988 | 1-b, 5 | ACP | This memorandum from government attorney to government attorney, responds to questions about a request for proposal for a third-party (private; non-government) to manage Tribal trust funds. It reflects the attorney's mental impressions and legal conclusions and reflects confidential communications, including questions, from a government attorney. |
| 582 | 23, 413 | Thomas Sansonetti, Associate Solicitor, Energy and Resources | Assoc. Dir. for Royalty Management, Minerals Management Service | | Interest payments on Indian oil and gas lease revenues under the Federal Oil and Gas Royalty Mangement Act of 1982 | 10/23/1987 | 1-b, 3, 5 | ACP, AWP | This memorandum from attorney to client relates to whether MMS must pay interest under the Federal Oil and Gas Royalty Management Act ("FOGRMA") on Indian oil and gas lease revenues when the revenues are earning investment interest. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; discusses pending litigation in New Mexico on the same subject; and reflects the attorney's mental impressions, conclusions, and legal theories about interest payments and the general collection and investment process of proceeds from indian lands. |
| 583 | 24, 412 | Tim Vollman, Assoc. Solicitor, Indian Affairs | Director, MMS | Skeep RF | Escrow of Funds of Lease Erroneously Conveyed to the State of Alaska | 07/16/1987 | 1-b, 4 | ACP | This memorandum from attorney to client relates to the MMS proposal to escrow receipts derived from oil and gas leases of mineral estate in Alaska (proposal resulted from a request from a native regional corporation). This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | conclusions, and legal theories. |
| 586 | 416 | Richard Aldrich, the Field Solicitor, Rocky Mountain Region (Billings) | Area Director, Indian Affairs, Billings - attn: 230 | handwritten initials | Application of 31 U.S.C. Section 3527 to provide funds for reimbursement of three IIM Accounts | 10/29/1986 | 1-b, 4 | ACP | This memorandum from attorney to client relates to a proposal to transfer appropriated funds to and then disburse those funds from three IIM accounts under 31 USC 3527 at the Blackfeet Agency. During the probate of an estate at the Blackfeet Agency, lease revenue monies were mistaknely disbursed to three IIM accounts and the account holders subsequently spent the money. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 588 | 418 | Duard R. Barnes, Asst. Solicitor, Branch of General Indian Legal Activities | Director, Office of Trust Funds Request - attn: Chief, Division of Trust Funds Management | | Eligibility of Krupp Government Income Trust for Investment of Indian Trust Funds under 25 USC 162a. | 11/21/1990 | 1-b, 5 | ACP | This memorandum from attorney to client discusses whether the Secretary can invest Indian trust funds in the Krupp Government Income Trust under 25 USC 162a. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 589 | 421 | Patrick A. Hayes, Deputy to the Asst. Secretary - Indian Affairs (Operations) | Associate Solicitor, Indian Affairs | | Eligibility of repurchase agreements and Government Agency Money Market Account (GAMMA) under 28 U.S.C. 162a | 10/13/1989 | 1-b, 5 | ACP | This memorandum from client to attorney relates to a request from the Security Pacific National Bank for authorization to invest in repurchase agreeements and a Government Agnecy Money Market Account (GAMMA) under 25 USC 162a. It is a confidential communication for the purposes of obtaining a legal advice on the same subject. |
| 591 | 420 | Dennis Daugherty, Assoc. Solicitor, Div. of Indian Affairs | Asst. Secretary – Indian Affairs | DIA Gskilbine, Docket, D. Barnes | Authority of the BIA to place the disbursing functions of the Indian trust funds with an eligible financial institution | 01/24/1989 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the authority of the Bureau of Indian Affairs to place the disbursing functions of various Indian trust funds, including tribal trust funds, with an eligible financial institution. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 592 | 419 | Nanette R. Everson Assoc. Solicitor, Div. of Gen Law | Asst. Secretary – Indian Affairs | Dennis Daugherty, Assoc. Solicitor, Div. Of Indian Affairs; A. Brown, Indian Affairs | Advisory consultants to the Financial Trust Services Evaluation Committee | 04/21/1988 | 1-b | ACP | This memorandum from attorney to client discusses a proposal for tribal members to serve as consultants to the Financial Trust Servies Evaluation Committee in light of the Federal Advisory Committee Act (FACA), which requires specific procedures for a committee that provides advice to the government. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 616 | 442 | Charles M. Soller, Asst. Sol., Indian Legal Activities | Frank Limpouch, BIA | | Returning Marine Midland Trust Co.'s correspondence regarding Repurchase Agreements | 10/14/1969 | 1-b | ACP | This note from attorney to client relates to a repurchase agreement with Marine Midland Trust and whether such an arrangement is within the authority of 25 USC 162a. This memorandum contains legal advice from attorney to client; refers to a confidential phone conversation for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 620 | 452 | Assoc. Sol., Indian Affairs | Assitant to the Secretary for Indian Affairs | Division of Financial Management, DOI | Investment of Indian Power Project and Irrigation Project Operation and Maintenance Revenues | 10/10/1973 | 1-b, 5 | ACP | This memorandum from client to attorney relates to whether revenue collected from Indian Power and Irrigation Projects may be invested under Section 162a, Title 25. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 621 | 451 | Secretary of the Interior | Assoc. Sol., DIA | | Purchase of small business administration guaranteed loans with Individual Indian Money Deposit Funds | 05/01/1973 | 1-a, 5 | ACP | This memorandum from client to attorney discusses purchasing Small Business Adminstration (SBA) Loans with IIM funds. It is a confidential communication for the purposes of obtaining a legal review of the SBA program and associated documents. |

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 624 | 456 | Comm. Indian Affairs Through: AS- Public Land Mgmt. | Assoc. Sol., DIA | DFM-Bureau; Commissioner's Reading File; Asst. Secretary, Public Land Management; LIA Mailroom; JVale | Purchase of other than Treasury Securities for ISSDA investments through a broker instead of through the Treasury Department | 10/27/1972 | 1-a, 5 | ACP | The memornadum is from the Commissioner of Indian Affairs, Dept. of the Interior (client), to the Associate Solicitor, Division of Indian Affairs (attorney). This memo contains confidential communications from client to attorney for the purpose of obtaining legal advice regarding purchasing investments through a broker. |
| 629 | 459 | Dir., Ofc. Of Trust Responsibility | Solicitor | John Vale, 220-3, Wash Corres, Chrony | Pledging of collateral under Treasury Circular 176 for non-trust tribal funds | 02/24/1976 | 1-a, 5 | ACP | This memorandum from client to attorney relates to the pledging of collateral under Treasury Circular 176 for Non-trust Tribal Funds. It is a confidential communication for the purposes of obtaining a legal advice regarding the same subject and expresses the client's opinion. |
| 631 | 457 | Dir., Office of Trust Responsibility | Solicitor | John Vale, 220-3, Wash Corres, Chrony | Pledging of collateral under Treasury Circular 176 for non-trust tribal funds | 02/24/1976 | 1-a, 5 | ACP | This memorandum from client to attorney relates to the pledging of collateral under Treasury Circular 176 for Non-trust Tribal Funds. It is a confidential communication for the purposes of obtaining a legal advice regarding the same subject and expresses the client's opinions. |
| 632 | 458 | Comm. of Indian Affairs Through: AS- Public Land Mgmt. | Assoc. Sol., DIA | | Proposed system for categorizing Individual Indian Money Accounts for distribution of interest | 10/13/1972 | 1-a, 5 | ACP | This memorandum relates to a proposed system to categorize all IIM accounts, which might result in different distributions and rates of returns for different categories. It contains confidential communications from client to attorney for the purpose of obtaining legal advice on the same subject. |
| 633 | 463 | Asst. Sol., Indian Affairs | BIA - Attention: Investments | | Segregation of Individual Indian Money Accounts for payment of interest | 04/19/1973 | 1-b, 5 | ACP | This memorandum from attorney to client relates to a proposal to segregate Individual Indian Money Accounts into restricted (minors and legal disability) and unrestricted (all other depositors) accounts for payment of Interest. This memorandum contains legal advice from attorney to client concerning the proposal, including a discussion of the significance of trust funds; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | attorney's mental impressions, conclusions, and legal theories. |
| 634 | 464 | Martin E. Seneca, Jr., Director, Ofc. Of Trust Responsibility | Assoc. Sol., Indian Affair | Chief, Br. of Investments & ISSDA, ABQ, Commissioner's Reading File, Mailroom | Indian trust funds maintained as "Individual Indian Money" | 04/29/1975 | 1-b, 5 | ACP | This memorandum from attorney to client relates to Indian trust funds maintained as "Individual Indian Money". It contains the attorney's legal opinions and requests relevant advice from the Director of the Office of Trust Responsibility regarding the management of tribal trust funds. |
| 646 | 473 | Reinholt Brust, Assistant Area Director | Field solicitor | Superintendent, Fort Peck agency - attn: Real Property Mgt. and Land Operations | Restoration, abandonment, or transfer of public use areas | 03/21/1967 | 1-a, 4 | ACP | This memorandum from client to attorney relates to the restoration or abandonment of pulic use areas within townsites on the Fort Peck Reservation in connection with a proposed transfer of such areas to tribal ownership. It is a confidential communication for the purposes of obtaining legal advice on the same subject. |
| 732 | 502 | A. Scott Loveless, Attorney-Advisor; Regional Solicitor, Intermountain Region; Office of Solicitor | Superintendent, Uintah and Ouray Agency, Bureau of Indian Affairs | | Reversionary Status of Allotted Property | 11/21/1991 | 1-b, 4 | ACP | This memorandum from attorney to client relates to the date the Ute Indian Tribe becomes the beneficial owner of a particular tract of land to determine ownership of the mineral estate. This memorandum referes to prior legal opinions and contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 734 | 503 | Mary Dearborn, Paralegal Specialist, on behalf of Philip N. Hogen, U.S. Attorney, Dept. of Justice | Mark Anderson, Office of the Field Solicitor | | Ducheneanx, et al v. United States | 09/09/1991 | 1-b, 2, 4 | ACP, AWP | This letter from attorney to attorney addresses the issue of BIA procedures for litigation settlement reimbursements in the context of the above-captioned case. This memo contains legal advice from attorney to attorney; summarizes confidential communication from attorney to attorney; reflects the author's mental impressions, conclusions; and references specific litigation. |
| 752 | 202, 522 | Thomas W. Fredricks, Associate Solicitor, Division of Indian Affairs; Dave Moran, DC Solicitor | Assistant Secretary Indian Affairs | | New departmental regulations on rulemaking | 10/31/1978 | 1-c, 3 | ACP, AWP | This memorandum from attorney to client discusses/highlights new regulations for rule-making, particularly for significant rules and significant amendments. It contains legal advice from attorney to client and includes the attorney's mental impressions and recommendations related to litigation (Norman Red Bear v. Andrus, No. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 78-3036, U.S.D.C. S.D.). |
| 772.02 | 222, 542 | OST | File | | Solicitors Opinions FY 1990 - 1997 | 09/18/1997 | 1-a | ACP | This 4-page chart from OTFM, contains a list of the status of Solicitors Opinions in response to OTFM requests (primarily dealing with management of trust funds for various Tribes), related correspondence (requests), attorney sent, and status of opinions. This memorandum summarizes confidential communications for the purpose of obtaining legal advice and the status of the opinions. |
| 772.03 | 222, 542 | Director, OTFM | Special Assistant to the Associate Solicitor | Karen Foster, OTFM | OTFM investment of indian monies in "agency"/government sponsored entities (GSE) debt securities | 04/20/1999 | 1-a, 5 | ACP | This 2-page memorandum from Director OTFM, to Associate Solicitor DOI, concerns a request for a solicitor's opinion regarding OTFM investment of Indian monies in "Agency"/GSE Debt Securities under U.S.C. 162(a). This memorandum is a communication made for the purpose of obtaining legal advice and direction in carrying out the provisions of 25 U.S.C. 162(a); refers to legal issues of prior solicitor opinions; and includes solicitors' opinions. |
| 772.04 | 222, 542 | | | | Solicitors Opinions FY 1990 - 1996 | 09/16/1996 | 1-a | ACP | This chart from OTFM, contains a list of the status of Solicitors Opinions in response to OTFM requests (primarily dealing with management of trust funds for various Tribes), related correspondence (requests), attorney sent, and status of opinions. This memorandum summarizes confidential communications for the purpose of obtaining legal advice and the status of the opinions. |
| 772.06 | 222, 542 | Tonianne Baca, Attorney-Advisor Office of the Southwest Regional Solicitor | Director, Office of Trust Fund Management | | Suitability of certain investments under 25 U.S.C. 162a | 09/16/1996 | 1-b, 5 | ACP | This 3-page memorandum to Director OTFM, from Office of the SW Regional Solicitor, responds to Director's 1/22/96 request for advice regarding the suitability of certain investments, including Government Sponsored Enterprises under 25 U.S.C. 162(a). This memorandum contains legal advice from attorney to client concerning 25 U.S.C. 162(a); summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 772.08 | 222, 542 | Chief, Division of Trust Funds Services | Special Assistant to the Associate Solicitor | | Suitability of certain investments under 25 U.S.C. 162a | 00/00/0000 | 1-a, 5 | ACP | This 2-page memorandum (plus 1 attachment) to Special Assistant to the Associate Solicitor, from Chief Division of Trust Funds Services, concerns the suitability of certain investments, including GSEs under 25 U.S.C. 162(a). This memorandum is a confidential communication between client and attorney made for the purposes of keeping the attorney informed, and discusses legal interpretation of 25 U.S.C. 162(a). |
| 772.09 | 222, 542 | Director, Office of Trust Fund Management | Special Assistant to the Associate Solicitor, DOI | | Wampanoag request for land purchase | 01/14/1999 | 1-a, 4 | ACP | This 2-page memorandum to the Special Assistant to the Associate Solicitor, from Director OTFM, concerns the Wampanoag request for land purchase utilizing tribe settlement funds. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice and for the purpose of keeping the attorney informed. |
| 772.10 | 222, 542 | Chief, Division of Trust Funds Services (OTFM) | Special Assistant to the Associate Solicitor, DOI | 540 Surname; RLUpton | Fax cover sheet with attached memorandum entitled Disposition of interest on per capita awards | 01/21/1999 | 1-a, 4, 5 | ACP | This 2-page memorandum (plus fax cover sheet) to the Special Assistant to the Associate Solicitor, from Chief, Division of Trust Funds Services OTFM, concerns the disposition of interest on per capita awards to Red Lake Band of Chippewas, and requests legal clarification/interpretation for other tribes in the future. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice and keeping the attorney informed. |
| 772.11 | 222, 542 | David Moran, Attorney, Office of the Solicitor | Donna Erwin, Director, Office of Trust Fund Management | | Northern Cheyenne request to withdraw Northern Cheyenne trust funds established under P.L. 102-374, Northern Cheyenne Indian Reserved Water Rights | 10/11/1997 | 1-b, 4 | ACP | This 1-page memorandum (plus 1 attachment) to Director of OTFM, from the Office of the Solicitor, concerns the Northern Cheyenne request to withdraw trust funds established under P.L. 102-374. This memorandum contains the attorney's legal opinion o the proposal;attaches confidential communications from client to attorney; and is made for the purpose of providing and obtaining legal advice. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Settlement Act | | | | |
| 772.12 | 222, 542 | Douglas Lords, Director OTFM | Dave Moran, Office of the Solicitor | | Second request regaining withdrawal by tribe of Northern Cheyenne trust funds established under P.I. 102-374, the Northern Cheyenne Indian Reserved Water Rights Settlement Act of 1992 | 11/21/1997 | 1-a, 4 | ACP | This 2-page memorandum to Office of the Solicitor from Director, OTFM, concerns the Northern Cheyenne request to withdraw trust funds established under P.L. 102-374. This memorandum contains confidential communications from client to attorney and is made for the purpose of obtaining legal advice The memo also includes the attorney's final legal opinion on the same subject. |
| 772.13 | 222, 542 | David Moran, Office of the Solicitor | Donna Erwin, OTFM | Joe Weller, Bob Upton, Pat G. | Fax cover sheet attaching confirmation on OTFM | 01/15/1998 | 1-b, 4 | ACP | This 1-page fax cover sheet to the Director of OTFM, Donna Erwin, from the Associate Solicitor, concerns the Three Affilliated Tribes' request to withdraw docket 350G Funds. This fax provides the attorney's legal opinion. |
| 772.14 | 222, 542 | Director, Office of Trust Funds Management (OTFM) | Special Assistant to the Associate Solicitor | | Three Affiliated Tribes request to withdraw docket 350G funds | 08/28/1997 | 1-a, 4 | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Director OTFM, concerns the Three Affilliated Tribes' request to withdraw docket 350G Funds. This memorandum is a confidential communication from client to attorney, made for the purpose of obtaining legal advice and keeping the attorney informed. |
| 772.15 | 222, 542 | David Moran, Attorney, Office of the Solicitor | Donna Erwin, Director, Office of Trust Fund Management | | Three Affiliated Tribes request to withdraw docket 350G funds | 08/19/1997 | 1-b, 4 | ACP | This 2-page memorandum to Director OTFM, from Office of the Solicitor, concerns the Three Affilliated Tribes' request to withdraw docket 350G Funds. This memorandum is a confidential communication from attorney to client, made for the purpose of obtaining legal advice and keeping the attorney informed. |
| 772.28 | 222, 542 | Doug Lords, Acting Director (OTFM) | Special Assistant to the Associate Solicitor | Gary Roger, Chief Division of Field Operations; | Request for Solicitor's opinion on releasing funds | 07/07/1997 | 1-a, 4 | ACP | This 2-page memorandum (plus 4 attachments) to the Special Assistant to the Associate Solicitor, from the Acting Director OTFM, concerns a request for the Solicitor's Opinion on releasing funds under |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Gary King, Customer Relations Specialist, OTFM | under provisions of 25 U.S.C. Section 1724 | | | | provisions of 25 U.S.C. 1724 based on a a request from the Pleasant Point Reservation of the Passam. This letter contains confidential communications from client to attorney for the purpose of obtaining and providing legal advice, and is a communication made for the purpose of keeping the attorney informed. |
| 772.29 | 222, 542 | Richard Doyle, Governor, Pleasant Point Reservation | Gary Rogers, Division Chief, Field Operations | Dorothy Clement; George W. Sample, Esq.; Jonathan Musher | Enclosing Resolution of the Passamaquoddy Joint Tribal Council to request that the Secretay transfer current balance of portion of Maine Indian Claims Land Acquisition Fund | 06/17/1997 | 1-a, 4 | ACP | This 2-page letter (1 of 4 attachments) to Division Chief Field Operations, from the Governor of Pleasant Point Reservation, concerns the Passamaquoddy Tribe's request that the Secretary transfer their balance of the Maine Indian Claims Land Acquisition Fund to Smith Barney. This letter on its own is not privileged, but is an attachment to a letter which contains confidential communications from an agency to its counsel, made for the purpose of obtaining and providing legal advice, and made for the purpose of keeping the attorney informed. See Yankee Atomic Electric Co. v. U.S., 54 Fed. Cl. 306, 314 (2002). |
| 772.30 | 222, 542 | Clerk, Joint Tribal Council | | | Resolution of the Joint Tribal Council of the Passamaquoddy Tribe, adopted at a meeting held at Indian Township Reservation on June 11, 1997 | 06/11/1997 | 1-a, 4 | ACP | This 2-page document (2 of 4 attachments), concerns the Resolution of the Joint Tribal Council of the Passamaquoddy Tribe adopted on June 11, 1997. This resolution on its own is not privileged, but is an attachment to a letter which contains confidential communications from an agency to its counsel, made for the purpose of obtaining and providing legal advice, and made for the purpose of keeping the attorney informed. See Yankee Atomic Electric Co. v. U.S., 54 Fed. Cl. 306, 314 (2002). |
| 772.31 | 222, 542 | Richard Doyle, Governor, Pleasant Point Reservation | Jonathan Musher | Gary Rogers, Doi; Gregory W. Sample, Esq.; Dorothy Clement | Account of the Passamaquoddy Tribe | 06/17/1997 | 1-a, 4 | ACP | This 2-page letter (3 of 4 attachments), to Smith Barney, from Governor of the Passamaquoddy tribe, concerns the tribes' account. This letter on its own is not privileged, but is an attachment to a letter which contains confidential communications from an agency to its counsel, made for the purpose of obtaining and providing legal advice, and made for the purpose of keeping the attorney informed. see Yankee Atomic Electric Co. v. U.S., 54 Fed. Cl. 306, 314 (2002). |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 772.32 | 222, 542 | | | | Title 25--Indians Section 1724 | 00/00/0000 | 1-a, 4 | ACP | This 4-page excerpt (4 of 4 attachments) of the US Code, concerns 25 U.S.C. 1724, the Maine Indian Claims Settlement and Land Acquisition Funds in the US Treasury. This excerpt on its own is not privileged, but is an attachment to a letter which contains confidential communications from an agency to its counsel, made for the purpose of obtaining and providing legal advice, and made for the purpose of keeping the attorney informed See Yankee Atomic Electric Co. v. U.S., 54 Fed. Cl. 306, 314 (2002). |
| 772.34 | 222, 542 | Director, OTFM | Dave Moran, Office of the Solicitor | | Documenting for the record recent discussion held regarding authority for withdrawal of judgment funds in Docket 22-H for the White Mountain Apache Tribe of Arizona | 05/22/1997 | 1-a, 4 | ACP, AWP | This 2-page memorandum to the Office of the Solicitor, from the Director OTFM, concerns the recent discussions held regarding the authority for withdrawal of judgment funds in Docket 22-H for the White Mountain Apache Tribe of AZ (pending litigation). This document is a confidential communication from a client to its agency counsel, made for the purpose of keeping the attorney informed, and contains the mental impressions of agency enforcement staff. |
| 772.35 | 222, 542 | Director, OTFM | Regional Solicitor, Sw Region, Usdoi | Handwritten initials (file copy) | Non-federally recognized tribes with funds held by OTFM | 04/22/1997 | 1-a, 4 | ACP | This 1-page memorandum to Regional Solicitor SW Region, from Director OTFM, concerns 7 non-federally recognized tribes (not Osage) with funds held by OTFM. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice. |
| 772.36 | 222, 542 | Robert L. Upton, Acting Director OTFM | Special Assistant to the Associate Solicitor | | Request for Solicitor's Opinion on removal of funds under provisions of Public Law 103-444 (108 STAT.4632), Crow Boundary Settlement Act of 1994, and | 04/14/1997 | 1-a, 4 | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Acting Director OTFM, concerns a request for Solicitor's Opinion on removal of funds under P.L. 103-444, Crow Boundary Settlement Act of 1994, P.L. 103-412, and AITFMRA of 1994. This memorandum contains confidential communications from client to agency counsel for the purpose of obtaining legal advice. |

## Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Public Law 103-412 (108 STAT. 4239), The American Indian Trust Fund Management Reform Act of 1994 | | | | |
| 772.37 | 222, 542 | Robert L. Upton, Acting Director OTFM | Dave Moran, Office of the Solicitor | | Request for Solicitor's Opinion on releasing funds under provisions of 25 U.S.C. Section 1724 | 03/28/1997 | 1-a, 4 | ACP | This 1-page memorandum to the Office of the Solicitor, from the Acting Director OTFM, concerns a request for the solicitor's opinion on releasing and investing funds under provision of 25 U.S.C. 1724 (the funds belong to the Pleasant Point Reservation of the Passamaquoddy Tribe). This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice. |
| 772.38 | 222, 542 | Director, OTFM | Area Director, Albuquerque Area Office; Dave Muran, Office of the Solicitor | | Repayment of tribal trust funds from private foundations | 02/26/1997 | 1-b, 4 | ACP | This 1-page memorandum to Area Director, Albuquerque Area Office, from Director OTFM, concerns the repayment of tribal trust funds (Taos Pueblo) from private foundations. This memorandum contains confidential communications between agencies; contains agency counsel's opinions and recommendations; and is a confidential communication made for the purpose of relaying legal advice. |
| 772.40 | 222, 542 | Director, Office of Trust Funds Management | Special Assistant to the Associate Solicitor | | Policy on closing small and inactive tribal accounts | 01/23/1997 | 1-a | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Director OTFM, concerns OTFM's new policy on closing small and inactive tribal accounts. It is a confidential communication from client to attorney for the purpose of obtaining legal advice concerning the new policy. |
| 772.41 | 222, 542 | Douglas A Lords, Acting Director, OTFM | Special Assistant to the Associate Solicitor | Juneau Area Director; Contracting Officer, Junea Area Office; Roger Judson, Attorney; | Aleutian/Pribilof Islands Association Inc (A/PIA) claim for attorney and administrative expenses | 09/23/1996 | 1-a, 4 | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Acting Director OTFM, concerns the Aleutian/Pribilof Islands Association Inc. (A/PIA) claim for attorney and administrative expenses under P.L. 100-383 sec. 205(d). This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice on the payment or |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Margaret Williams, Trust Funds Accounting | | | | | non-payment of the claim. |
| 772.44 | 222, 542 | Tonianne Baca, Attorney-Advisor For Southwest Regional Solicitor's Office | Director, OTFM | | Suitability of certain investments under 25 U.S.C. 162a | 09/16/1996 | 1-b, 5 | ACP | This 3-page memorandum to Director OTFM, from Office of the SW Regional Solicitor, concerns OTFM's request for advice regarding the suitability of certain investments, including Government-Sponsored Enterprises under 25 U.S.C. 162a. This memorandum contains confidential communications between agency and counsel and is made for the purpose of providing legal advice and keeping counsel informed. This document includes the attorney's mental impressions and legal conclusions. |
| 772.48 | 222, 542 | Office of the Southwest Regional Solicitor | Director, OTFM | | Suitability of certain investments under 25 U.S.C. 162a | 09/16/1996 | 1-b, 5 | ACP | This 1-page excerpt of a memorandum to Director OTFM, from Office of the SW Regional Solicitor, concerns OTFM's request for advice regarding the suitability of certain investments, including Government-Sponsored-Enterprises under 25 USC 162a. This memorandum contains confidential communications from attorney to the agency, is a communication made for the purpose of providing legal advice, , and contains the attorney's mental impressions, opinions, and conclusions. |
| 772.51 | 222, 542 | Director, OTFM | Special Assistant to the Associate Solicitor | | Restoration to indian tribes of unclaimed per capita and other individual payments of tribal trust funds | 07/24/1996 | 1-a, 4 | ACP | This 1-page memorandum (plus 2 attachments) to the Special Assistant to the Associate Solicitor, from the Director OTFM, concerns a reqeust from the Cherokee Shawnee Business Committe in Oklahoma for the retun of unclaimed monies. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice. |
| 772.53 | 222, 542 | Actingdirector, OTFM | Special Assistant to the Associate Solicitor | Paul Homan, Special Trustee For American Indians | Voluntary deposit of funds generated from tribal activities outside of trust | 04/03/1996 | 1-a, 4 | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Acting Director OTFM, concerns the voluntary deposit of funds generated from tribal activities (Yavapai-Apache Nation and Taos Pueblo) outside of trust. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice, and keeping the attorney informed. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 772.54 | 222, 542 | Douglas Lords, Acting Director OTFM | Southwest Regional Solicitor, Albuquerque, New Mexico | | Suitability of certain investments under 25 U.S.C. 162a | 01/22/1996 | 1-a, 5 | ACP | This 2-page memorandum to SW Regional Solicitor from the Acting Director OTFM, concerns the suitability of certain investments, including Government-Sponsored Entitities, under 25 USC 162a. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice regarding OTFM's investment responsibility. |
| 772.55 | 222, 542 | Director, OTFM | Dave Moran, Special Assistant to the Associate Solicitor | | Request for opinion regarding lost earnings of Hoopa Valley Tribe | 02/03/1995 | 1-a, 4 | ACP | This 1-page excerpt of a memorandum to the Special Assistant to the Associate Soclicitor, from Director OTFM, concerns a request for a solicitor's opinion regarding lost earnings of Hoopa Valley Tribe. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice as to how and when to credit lost earnings to the Tribe's account. |
| 772.56 | 222, 542 | Robert Upton, Acting Director OTFM | Dave Moran, Esq., Special Assistant to the Associate Solicitor | | Request for Opinion regarding lost earnings of Hoopa Valley Tribe | 11/30/1994 | 1-a, 4 | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Acting Director OTFM, concerns a request for opinion regarding lost earnings of Hoopa Valley Tribe. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice, and is a communication containing the mental impressions, conclusions, and legal theories of prior opinions of the solicitor. |
| 772.57 | 222, 542 | Robert L. Upton, Acting Director OTFM | Dave Moran, Esq. Special Assistant to the Associate Solicitor | Area Director, Aberdeen Office; Supt. Fort Berthold Agency | Request for Opinion regarding Three Affiliated Tribes/Fort Berthold Indian Reservation Mini-Fund Proposal (Proposal) relative to P.L. 102-575 | 11/30/1994 | 1-a, 4 | ACP | This 1-page memorandum to the Special Assistant to the Associate Solicitor, from the Acting Director OTFM, concerns a request for opinion regarding Three Affiliated Tribes/Fort Berthold Indian Reservation Mini-Fund Proposal relative to P.L. 102-575. This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice regarding the proposal, including the transfer of the Tribe's funds. |
| 772.59 | 222, 542 | Director, OTFM | David Moran, Office of the Solicitor | | P.L. 102-358 and the Settlement Agreement | 08/29/1994 | 1-a, 4 | ACP | This 1-page memorandum to the Office of the Solicitor, from Director OTFM, concerns a request for a solicitor's opinion as to P.L. 102-358 and the settlement agreement approved by said statute set |

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | approved by said statute set forth in the report of the COE entitled, "Report on Investigation Wet Field Solution" dated July 24, 1990 and, more specifically, involving funds to be held "in Trust" for benefit of the Pueblo de Cochiti | | | | forth in the report of the COE (involving the Pueblo de Cochiti). This memorandum contains confidential communications from client to attorney for the purpose of obtaining legal advice as to the proper classification and investment of these funds. |
| 774 | 223, 543 | Edwin Winstead, Acting Director, Office of Trust Funds Management | Regional Solicitor | | Request for opinion regarding application of Uniform Principal and Income Act to Indian Trust Funds | 00/00/0000 | 1-a, 5 | ACP | This memorandum from client to attorney concerns whether the Uniform Principal and Income Act, including its accounting principals, has any possible application to managment of Indian trus funds. It is a confidential communication for the purpose of obtaining a legal advice and sets out several questions about the proposed accounting policy in the context of Indian trusts. |
| 776 | 229, 549 | Tim Volmann, Associate Solicitor – Division of Indian Affairs | Deputy to the Assistant Secretary – Indian Affairs (Trust and Economic Development) | | Investment of Indian trust funds | 07/26/1989 | 1-b, 3, 5 | ACP | This memorandum from attorney to client relates to the investment of tribal trust funds and individual indian monies (IIM funds), the standard of care applicable to the BIA for managing investments, and the scope of insurance coverage when particular financial institutions fail. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. In addition, the document evaluates the agency's potential liability. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 778 | 226, 546 | Tim Vollmann, Associate Solicitor, Indian Affairs | Deputy Asst. Secretary – Indian Affairs | | Investment of Indian trust funds | 05/13/1985 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the investment or deposit of indian trust funds and the extent to which the Secretary of the Interior can contract with outside vendors, including banks, to manage various aspects of investment and disbursement of indian trust funds. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 780 | 230, 550 | Deputy to the Assistant Secretary Indian Affairs | Associate Solicitor, Indian Affairs | Surname 100, 200, 710, 700, F Kellerup, 710 – Abrown, 101A, A. Brown | Eligibility of repurchase agreements and Government Agency Money Market Account (GAMMA) under 25 U.S.C. 162a | 09/18/1989 | 1-b, 5 | ACP | This memorandum from client to attorney relates to a request from the Security Pacific National Bank for authorization to invest in repurchase agreeements and a Government Agnecy Money Market Account (GAMMA) under 25 USC 162a. It is a confidential communication for the purposes of obtaining a legal advice on the same subject. |
| 781 | 233, 553 | Thomas O'Hare, Field Solicitor, Alb. | Associate Solicitor, IA | R/SOL., SW Region; Solicitors' Reading File | Classification of Indian trust funds pursuant to the Monetary Control Act of 1980 | 01/07/1981 | 1-b, 5 | ACP | This memorandum from one government attorney to another government attorney, concerns the classification of Indian trust fund accounts (personal, non-personal, transaction) at various financial institutions pursuant to the Monetary Control Act of 1980. The type of classification can impact whether the financial intstitutions have to maintain a reserve percentage. The memo contains legal advice from attorney to attorney; summarizes confidential communication from attorney to attorney; and reflects the author's mental impressions, conclusions, opinions, and legal theories. |
| 784 | 231, 551 | Tim Vollmann, Assoc. Solicitor, Div. of Indian Affairs | Dep'y to Asst. Secretary Indian Affairs (Trust and Economic Development) | | Investment of Indian trust funds | 08/04/1986 | 1-b, 5 | ACP | This memorandum from attorney to client relates to a request from Security Pacific National Bank that the BIA consider whether 14 specific agency securities are eligible for investment of Indian trust funds under 25 USC 162a. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
# Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 787 | 235, 555 | Paul T. Baird, Assoc. Solicitor, Div. of Indian Affairs | Director, Office of Trust Responsibilities | Docket; DIA; R.R.Barnes; P.Squire; Solicitor's RF | Investing Indian funds in Savings and Loan Certificates of Deposit in denominations above that insured by the Federal Savings and Loan Insurance Corporation | 01/16/1984 | 1-b, 5 | ACP | This memorandum from attorney to client relates to whether under 25 USC 162a the Investments Branch can invest Indian funds in savings and loan certificates of deposit in denomincations above that insured by the Federal Savings and Loan Corporation. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 793 | 236, 556 | Tim Vollmann, Assoc. Solicitor, Div. Of Indian | Dep. Asst. Secretary, Indian Affairs | | Investment of Indian trust funds | 05/13/1985 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the investment or deposit of indian trust funds and the extent to which the Secretary of the Interior can contract with outside vendors, including banks, to manage various aspects of investment and disbursement of indian trust funds. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 794 | 245, 565 | Acting Associate Solicitor, Indian Affairs Robert T. Anderson | Director, MMS | Deputy Commissioner BIA | Contracts for accounting functions and access to confidential financial data regarding Indian allotted leases | 04/11/1995 | 1-b, 5 | ACP | This memorandum from attorney to client discusses whether Indian Tribes can contract to perform royalty accounting functions for allotees under the Indian Self-Determination Act. This memorandum contains a general discussion on the restrictions of certain functions, beyond accounting, to disbursing officers; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 795 | 244, 564 | Associate Solicitor DIA – William Lavell | Deputy to the Assistant Secretary – Indian Affairs (operations) | | Contractability of executive direction (Element 71) administrative services (Element 72) and education | 10/01/1990 | 1-b, 5 | ACP | This memorandum from attorney to client discusses whether the following items may be contracted out to tribal organizations under the Indian Self Determination Act: executive direction (element 71), adminstrative services (Element 72), and education and training (element 10). This memorandum contains legal advice from attorney to client; summarizes confidential communications from client |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | and training - general (Element 10) under Pub. L. 93-638 | | | | to attorney for the purpose of obtaining legal advice and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 798 | 249, 569 | David A. Longold, Chief Counsel, Department of Treasury | Dr. Eddie F. Brown, Assistant Secretary - Indian Affairs, DOI | | | 01/04/1991 | 1-b, 5 | ACP | This letter from attorney to client relates to the disposition of proceeds of Treasury checks authorized to be issued by the Bureau of Indian Affaris and cancelled pursuant to 31 USC 3334 (b) (statute relates to the cancellation and proceeds distribution of Treasury checks). The memo discusses how proceeds from cancelled checks shall be distributed in the context of public and non-public (tribal trust funds) funds. This memorandum contains legal advice from attorney to client concerning the terms of the agreement; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 799 | 248, 568 | Dennis Daugherty, Associate Solicitor, Division of Indian Affairs | Assistant Secretary, Indian Affairs | Division of Indian Affairs, G Skibine, Docket, D Barnes | Authority of the BIA to place the disbursing functions of Indian trust funds with an eligible financial institution | 01/24/1989 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the authority of the Bureau of Indian Affairs to place the disbursing functions of various Indian trust funds, including tribal trust funds, with an eligible financial institution. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 808.28 | 258, 578 | | | | Issue One | 00/00/0000 | 1-a, 4 | ACP | This document discusses legal issues involving the Monominee Tribe of Wisconsin related to its Indian and Non-Indian status. The document is related to document number 808.036, which plainly constitutes a request for legal advice from the Solicitor's Office. |
| 808.29 | 258, 578 | Tammie Poitra | Dave Moran, Solicitor's Office | Doug Lords | Menominee Tribe of Wisconsin | 03/05/1998 | 1-a, 4 | ACP | This email to agency counsel, from agency personnel, concerns the Menominee Tribe of Wisconsin's status of tribal recognition from 1961 1973 and that status of particular accounts. This is a communication to an attorney from the agency, made for the purpose of obtaining legal advice. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 808.30 | 258, 578 | | | | Issue Two | 00/00/0000 | 1-a, 4 | ACP | This document concerns legal questions related a single mother in the Klamath Tribe. The document is related to document number 808.036, which plainly constitutes a request for legal advice from the Solicitor's Office. |
| 808.31 | 258, 578 | Director, Office of Trust Funds Management | Tim Vollman, Regional Solicitor | | Treatment of per capita payments for individuals who's whereabouts are unknown | 10/10/1997 | 1-a | ACP | This memorandum plus attachments to the Regional Solicitor, from the Director OTFM, concerns the treatment of per capita payments for individuals who's whereabouts are unknown, and the 7/31/97 OTFM issued policy memo POL97-005. This is a document between agency and counsel that contains confidential communications made for the purpose of obtaining legal advice. |
| 808.32 | 258, 578 | Arthur V. Biggs, Assistant Regional Solicitor, Offce of the Regional Solicitor | Ronald A. Brown, Assistant Area Director (Adminstration) - Branch of Finance | | Internal revenue service levy on funds in IIM account | 05/13/1985 | 1-b, 4 | ACP | This memorandum to Assistant Area Director, from Asisstant Regional Solicitor, concerns an IRS levy on funds in IIM accounts at the Yakima Agency for payment of child support. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 808.33 | 258, 578 | Arthur V. Biggs, Assistant Regional Solicitor, Portland | Ronald A. Brown, Assistant Area Director | Tim Vollman, Associate Solicitor, Indian Affairs; Anita Vogt | Internal revenue service levy on funds on IIM account | 05/14/1985 | 1-b, 4 | ACP | This memorandum to the agency, from a Solicitor, concerns the relevance of 25 U.S.C. 410 (an amendment to the General Allotment Act) to attempted collection and levy by the IRS. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 808.34 | 258, 578 | | Jim Stephens - File | | | 10/10/1997 | 1-b, 4 | ACP | This 1-page document discusses IRS collection and trust assets and may contain an attorney's handwritten notes that comment on the document and provide legal conclusions. The document also refers to a prior DOI/SOL opinion, regarding OTFM funds in IIM accounts and whether those funds should be paid to the IRS. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 808.35 | 258, 578 | | File | | Regarding Pima Agency and per capita payment | 00/00/0000 | 1-a, 4 | ACP | This document concerns the Pima Agency's issue of per capita payments to individuals on a certified roll. The document is related to document number 808.036, which plainly constitutes a request for legal advice from the Solicitor's Office. |
| 808.36 | 258, 578 | | File | | Issues for the Solicitor | 00/00/0000 | 1-a | ACP | This 2-page document sets out several legal issues for the Solicitor on various accounts (including status on accounts of Monesmines descendants; managment of IIM accounts; disbursements; undeliverable per capita checks). This document contains confidential communications to an attorney made for the purpose of obtaining legal advice. |
| 808.38 | 258, 578 | | | | Can a tribe proceed with reversionary process of reverting unclaimed per capita funds back to tribe? | 00/00/0000 | 1-b, 5 | ACP | This page of handwritten and typed notes concerns whether a tribe can proceed with the reversionary process of reverting unclaimed per capita funds back to the the tribe and IRS levies on IIM accounts. This document contains confidential communications from attorney to the file, made for the purpose of obtaining legal advice. The document is related to document number 808.036, which plainly constitutes a request for legal advice from the Solicitor's Office. |
| 808.40 | 258, 578 | Attorney | File | | Issue 5<br><br>What are parameters for whether OTFM Area Trust accounts honors IRS levies on IIM accounts? | 00/00/0000 | 1-a, 5 | ACP | This document by the attorney to the file concerns a solicitor's opinion on whether OTFM Area Trust accounts honors IRS levies on IIM accounts, and if so, what the parameters should be. This document contains the mental impressions, opinions, conclusions, and legal theories of an attorney. The document is related to document number 808.036, which plainly constitutes a request for legal advice from the Solicitor's Office. |
| 808.41 | 258, 578 | Margaret Williams | Sarah Yepa | Doug Lords | IRS Levies | 00/00/0000 | 1-b | ACP | This email from Margaret Williams to Sarah Yepa concerns the question as to whether OTFM Area Trust accounts should honor IRS levies on IIM accounts. The document reflects advice that was provided by the Solictor's Office. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 808.43 | 258, 578 | Attorney | File | | Issue Six<br><br>Performance bonds for Tribal and IIM allottees. | 00/00/0000 | 1-a | ACP | This document concerns issues surrounding performance bonds for Tribal and IIM allottees, whether joint IIM/Tribal performance bonds in the IIM system can be moved to OmniTrust, and if moved what legal ramifications IIM rates v. Omnitrust rates might occur. The document is related to document number 808.036, which plainly constitutes a request for legal advice from the Solicitor's Office. |
| 808.45 | 258, 578 | Deborah Ross | Margaret Williams | Freda Wabnum | Pima Per Capita | 02/20/1998 | 1-a, 4 | ACP | This email from Deborah Ross to Margaret Williams documents conversations held with Francis Joe, Pima Agency Tribal Operations, regarding errors to the certified roll and accounts placed on hold. The hand written notes in the document indicate that the issue addressed in the e-mail would be referred to Dave Moran of the Solicitor's Office. |
| 808.48 | 258, 578 | Margaret Williams | | | Solicitor's Status Report | 04/27/1998 | 1-a | ACP | This document is a chart of the Solicitor's Status Report and concerns opinion number, description of issue, author, OST status, file and due date. It reflects requests for legal advice made on the Solcitor's Office by the Office of Trust Funds Management. |
| 812 | 273, 583 | William G. Lavell, Assoc. Solicitor, Indian Affairs | Dep. to the Asst. Secretary, Indian Affairs (operations) | | Request for opinion regarding trust fund losses | 02/13/1990 | 1-b, 5 | ACP | This memorandum from attorney to client relates to trust fund losses due to investments and the source of funds for possible reimbursement of those losses. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| 813 | 274, 584 | William G. Lavell, Assoc. Solicitor, Indian Affairs | Asst. Secretary, Indian Affairs | | Contractability of investment of tribal trust funds under title I of Public Law 93-638, the Indian Self-Determination Act | 03/21/1990 | 1-b, 5 | ACP | This memorandum from attorney to client relates to the Bureau of Indian Affairs's ability to contract out, upon the request of a Tribe, the investment of tribal trust funds under Title I of Pub. L. 93-638, the Indian Self Determination Act. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| 814 | 272, 582 | William G. Lavell, Associate Solicitor, Indian Affairs | Deputy to the Asst. Secretary, Indian Affairs (operations) | | Request for Opinion Regarding Trust Fund Losses | 02/13/1990 | 1-b, 5 | ACP | This memorandum from attorney to client relates to trust fund losses due to investments and the source of funds for possible reimbursement of those losses. This memorandum contains legal advice from attorney to client; summarizes confidential communications from client to attorney for the purpose of obtaining legal advice; and reflects the attorney's mental impressions, conclusions, and legal theories. |
| P65 | 65 | William A. Gershuny, Associate Solicitor, Div. of Indian Affairs | Commissioner of Indian Affairs, All Regional & Field Solicitors, Area Directors & Superintendents | N/A | Statute of limitations; effect of public law 92-485 on 28 U.S.C. Section 2415 | 10/31/1972 | 1-c, 3, 5 | AWP, ACP | This memorandum from government attorney to client and other government attorneys relates to the effect of Public Law 92-485 on the statute of limitations for instituting litigation on behalf Indian tribes, bands, or groups, including for historical claims. This memorandum was prepared for on-going and anticipated litigation by the United States on behalf of Tribes and includes legal advice from attorney to client other attorneys, and the attorney's mental impressions, conclusions, and legal theories. |
| P71 | 71 | Field Solicitor, Pawhuska | Associate Solicitor, Indian Affairs, Tim Vollman | | Damage claim of Osage Tribe subject to 28 U.S.C. Section 2415 | 06/07/1979 | 2 | ACP, AWP | This memorandum from government attorney to government attorney relates to the Osage Tribe's request for the Department of the Interior to bring action against the State of Kansas to quiet title to certain riverbeds and to recover damages for removal of assets from those riverbeds. It contains legal advice; refers to confidential communications from client to attorney for the purose or obtaining legal advice; and contains the author's mental impressions, conclusions, and legal theories. |
| P74 | 74 | Field Solicitor, Pawhuska, John M Slater | Superintendent, Osage Agency | N/A | Comments concerning "A Study of Administrative Procedure and Functions at the Osage Agency, March 1962" | 03/06/1964 | 1-b | ACP | This memorandum from attorney to client provides comments regarding sections of a study by the Stanford Research Institute of the administrative procedures and functions at the Osage Agency that discuss the Solicitor's Office. The study discusses the role, duties, procedures, and effectiveness of the Solicitor's Office and makes recommendations on these same topics. The memo contains legal advice from attorney to client; confidential communications from client to attorney; and includes the attorney's mental impressions and conclusions. |

# Osage Nation and/or Tribe v. United States, Ct. Cl. No. 00-169L
## Final Privilege Log, May 6, 2005

| DOC ID | PL NUM | AUTHOR | ADDRESSEE | COPYEE | DOC_TITLE | DOC DATE | PRIV CAT | PRIV CALL | PRIVLOG NOTE |
|---|---|---|---|---|---|---|---|---|---|
| P81 | 81 | Gordon Jackson, Osage Agency Superintendent | Sharon Blackwell, Field Solicitor, Tulsa Region | | Request for review of Osage law and order code | 12/23/1994 | 1-a | ACP | This memorandum from client to attorney relates to a proposed Osage Law and Order Code passed by the Osage National Council for courts, court procedures, criminal offenses and police services. It is a confidential communication for the purposes of obtaining a legal review of the code from the attorney and discusses several questions as to the legality of a number of the code's provisions. |

United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

July 14, 2003

Mr. Leon D. Bear, Chairman
Skull Valley Band of Goshute Indians
Skull Valley Reservation, #808
3359 South Main Street
Salt Lake City, Utah 84115

Dear Mr. Bear:

On May 5, 2003, you filed Freedom of Information Act (FOIA) request OS-2003-00687, addressed to Secretary Gale Norton, asking for copies of the following records:

"A. To disclose all records of communications since January 1, 2001 (including formal and informal correspondence, unsigned briefings, e-mail communications, and notes of telephone conversations) with officials and employees of the Office of the Secretary, Office of the Deputy Secretary, Office of the Assistant Secretary for Indian Affairs, Office of the Assistant Secretary for Land and Minerals Management, Office of the Assistant Secretary for Policy Management and Budget, Office of Congressional and Legislative Affairs, Office of Public Affairs, Office of the Solicitor, Office of Hearings and Appeals, and the Office of the Inspector General, regarding the Skull Valley Band of Goshute Indians or the proposed Private Fuel Storage Facility which is the subject of a lease, which was approved by the Bureau of Indian Affairs on May 23, 1997.
B. The request in Paragraph B is for records of all such communications (1) with the Governor of Utah, any persons on his staff, or anyone communicating on his behalf, including communications from the Utah Department of Environmental Quality or the Office of the Utah Attorney General; (2) with current or former members of the Utah Congressional Delegation, or their staff, or anyone communicating on their behalf (3) with the White House or the Office of Management and Budget, or otherwise from the Executive Office of the President, including copies of communications between Utah state officials, the Utah Congressional Delegation, and the Executive Office of the President, which are in the custody of the Department of the Interior; (4) with the Department of Energy, including copies of communications between Utah state officials, the Utah Congressional Delegation, and the Department of Energy, which are in the

custody of the Department of the Interior; (5) with the Department of Defense, including the Department of the Air Force, and including copies of communications between Utah state officials, the Utah Congressional Delegation, and the Department of the Defense, which are in the custody of the Department of the Interior; and (6) with individual members of the Skull Valley Band, representatives of Ohngo Gaudadeh Devia (OGD), or attorneys representing either OGD or these individual members of the Band, including EchoHawk, LLC, Steadman & Shepley, and Randall Gaither."

On May 22, 2003, I acknowledged your request, advised you of your fee status under the FOIA, advised you that the Office of the Secretary would be responding to your request on behalf of the Department, and informed you that the Office of the Secretary was taking a ten-working day extension on behalf of the Department on the processing of your request.

On May 28, 2003, I denied your request for a fee waiver, and provided you with your appeal rights.

I am writing today to provide you with the first installment of our response to your request. Enclosed are copies of all responsive documents located in the Office of Hearings and Appeals and in the Office of the Solicitor. Twenty-five (25) documents total three hundred nine (309) pages.

**Portions of some of these documents have been deleted, pursuant to Exemption 5 of the FOIA (5 U.S.C. § 552 (b)(5)).**

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."(5 U.S.C. § 552 (b)(5)). As such, the privilege "exempts] those documents . . . normally privileged in the civil discovery context." National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132 (1975) (NLRB). The exemption incorporates several of these privileges from discovery in litigation, including the deliberative process privilege and the attorney work-product privilege. Id. at 149.

The deliberative process privilege "protect[s] the decisionmaking process of government agencies" and "encourage[s] the frank discussion of legal and policy issues" by ensuring that agencies are "not forced to operate in a fish bowl." Mapother v. United States Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing Wolfe v. United States Dep't of Health & Human Services, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)) (Mapother). Three policy purposes have been advanced by the courts as the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between

subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. See, e.g., Russell v. United States Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (Russell); Coastal States Gas Corp. v. United States Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects materials that are both predecisional and deliberative. Mapother, 3 F.3d at 1537; Access Reports v. United States Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Maricopa Audubon Society v. United States Forest Service, 108 F.3d 1089, 1093 (9th Cir. 1997). A predecisional document is part of the "deliberative process" if "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id.

The portions of the documents that have been withheld pursuant to Exemption 5 are both predecisional and deliberative. They contain recommendations, proposals, suggestions, and other subjective documents that reflect the personal opinions of their authors. They also contain some factual material which has been withheld when the use of selected facts constitutes an exercise of judgement by agency personnel and release of those facts would expose the agency's deliberative process. They do not contain or represent formal or informal agency policies or decisions. Public dissemination of this information would have a chilling effect on the agency's deliberative processes.

The attorney work-product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947); Fed. R. Civ. P. 26(b)(3). Its purpose is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

The portions of these documents that have been withheld pursuant to Exemption 5 under the attorney work-product privilege were all compiled in anticipation of litigation relating to issues associated with the activities of the Skull Valley Band of Goshute Indians. As such, they contain conclusions, opinions, and recommendations of agency attorneys. They also contain some factual material which has been withheld when the use of selected facts constitutes an exercise of judgement by agency attorneys and release of

those facts would expose the agency's litigation strategy. All portions of these documents that have been withheld under the attorney work-product privilege have been held confidential by the agency. Public dissemination of them would most certainly have a harmful effect on the agency's legal position vis-a-vis the issues in question.

Cindy Cafaro, Attorney-Advisor, in the Office of the Solicitor, was consulted in reaching these decisions. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that these decisions are incorrect, you may file an FOIA appeal by writing to the FOIA Appeals Officer, Office of the Assistant Secretary - Policy, Management and Budget, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 5312, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) after the date of our response (this letter.) Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience,) and a copy of this letter, along with a brief explanation of why you believe that these decisions are in error.

REDACTED

If you have any questions regarding this portion of our response to your request, or any of the issues discussed in this letter, you may contact me by phone at 202-208-6045, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240. Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

Sue Ellen Sloca
Office of the Secretary
FOIA Officer

Enclosures

***PRIVACY ACT notice**: Before you choose to contact us, electronically, there are a few things you should know. The information you submit, including your electronic address, may be seen by various people. We will scan a copy of your request into our electronic OS FOIA administrative/image file. We will key the information that you provide to us into our electronic OS FOIA tracking file. We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration. You may be contacted by any of these individuals. In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of the information you submit. Also, e-mail is not necessarily secure against interception. If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Washington, D.C. 20240

IN REPLY REFER TO:
Tribal Services - AR
BCCO 00626 FOIA (FU)

JUN 1 2000

Mr. Richard Reich
Office of the Quinault Attorney
Quinault Indian Nation
3010 77th Avenue SE #102
Mercer Island, Washington 98040

Dear Mr. Reich:

This letter is a continued partial response to your Freedom of Information Act (FOIA) request dated February 17, 2000, made pursuant to 5 U.S.C. § 552 for copies of "all records relating to the Cowlitz acknowledgment petition and determination, other than those previously provided to the Quinault Indian Nation in response to Requests for Production in *Quinault v Gover*, or which the Department has previously identified as exempt from disclosure."

Enclosed please find two boxes of copies of the materials relating to the Cowlitz Indian Tribe's petition and an inventory of these boxes, noting the number of pages redacted or withheld under FOIA exemptions. With this installment, which includes all materials except tapes of interviews, we are including a preliminary inventory of the materials being transmitted. The number of pages in the files within the scope of your FOIA is approximately 5,395. The number of pages released at this time is 2,581.

The Department's policy is to release records to the greatest extent possible in keeping with the spirit and intent of FOIA. The Department will release all records, unless there is a sound ground for invoking the exemption and withholding the documents. (See, 43 CFR § 2.13 (a) and (d)). Acknowledgment files are somewhat unique in that there may be substantial personal information throughout the file. This information may properly be withheld under FOIA; moreover, its release could violate the rights of individuals protected by the Privacy Act.

Exemption 4 of the FOIA provides that documents containing "trade secrets and commercial or financial information obtained from a person which is privileged or confidential" may be withheld. The Bureau of Indian Affairs (BIA) made very few and sporadic redactions of the materials you requested under this exemption, and notations on the documents indicate where this exemption has been invoked.

Exemption 5 of the FOIA provides that records which are pre-decisional and part of the deliberative process may be withheld if release of these documents would inhibit the free discussion of government officials necessary to making informed decisions. A number of

documents, particularly e-mails and notes from peer review sessions, have been withheld under exemption 5. All e-mails between the BIA staff and the Solicitor's office have been withheld as they involve attorney-client communications.

Exemption 6 of the FOIA provides that records which are "personnel, medical, and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may be withheld. Redactions were made under Exemption 6 throughout the materials we are sending to you. (See, 5 U.S.C. § 552 (b)(6)). We are withholding in their entirety 232 pages of various printouts from the genealogical data base, 1,433 pages of the 1998 Cowlitz Roll, 667 pages of a file labeled, "New Green Card Members 1994-1999", and 301 pages from the genealogist's files dealing with the current enrollment. Because factors pursuant to Exemption 6 are at stake, sound grounds exist for withholding portions of certain documents which contain genealogical and other information. These materials contained information on individuals of a highly personal nature such as their age, marital status, ancestry, health, birth date, address, telephone number, membership status, blood quantum and other vital information which are clearly protected under Exemption 6.

Once privacy interests are at stake, Exemption 6 requires that those interests be balanced against any general public interest in disclosure. The public interest in the disclosure must be significant to overcome legitimate privacy interests. We do not perceive, nor have you enunciated, any public interest that would be served in disclosing these data which would outweigh the privacy interest of the subject individuals. Your assertions of need based on being an "interested party" are not relevant in determining whether the release serves a public interest under the FOIA. *Department of Justice v. Reporters Committee*, 484 U.S. 749 (1989). Therefore, sound grounds exist for withholding the information under Exemption 6 of FOIA. (5 U.S.C. § 552 (b)(6)).

In your letter [redacted]

This installment includes only the written materials you have requested. You have a right to appeal this installment in writing to: The Freedom of Information Act Appeals Officer, Office of Information Resources Management, U.S. Department of the Interior, 1849 C Street, N.W., MS 5312-MIB, Washington, D.C. 20240. A copy of your initial request should accompany the appeal. The appeal should be marked "FREEDOM OF INFORMATION APPEAL" both on the envelope and the face of the letter, and it must be received no later than 20 workdays after the date of this letter.

The copies of tapes of interviews by the BIA anthropologist for the Final Determination have not been completed. The final installment of your FOIA request will provide you these tapes. The final installment of your FOIA request will provide you with your right to appeal the denial of any information on the tapes.

3

The agency personnel responsible for reviewing this portion of the requested record on the granting or denial of this request are: Branch Chief R. Lee Fleming and Cultural Anthropologist Holly Reckord, Branch of Acknowledgment and Research; Michael R. Smith, Acting Director, Office of Tribal Services; and Barbara Coen, Branch of Tribal Government & Alaska, Division of Indian Affairs, Office of the Solicitor, Department of the Interior.

In accordance with our letter of March 29, 2000, we will hold these materials for 48 hours, Monday through Friday, after this letter is signed and we have notified you by telephone. If your researcher does not pick them up within 48 hours of the date of this letter, we will ship them to you.

If you have any other questions please contact us again. We hope this information is helpful.

Sincerely,

/s/ DIANE MURTH

Acting Director, Office of Management
and Administration

Enclosures

cc: Surname;Chron;101A;Bureau RF;400;600;600-FOIA Coord;Hold
440B:HReckord x4686;5/18/00;K:\Share\BAR\Corresp\Holly\Cowlitz\BCCO626FOIA
K:\SHARE\BAR\CORRESP\HOLLY\CASE\COWLITZ\bcco626.FOIA.wpd

## Office of Historical Trust Accounting

The Office of Historical Trust Accounting (OHTA) was established by Secretary Norton on July 10, 2001, and charged with planning and conducting a historical accounting of Individual Indian Money (IIM) Accounts. The historical accounting will provide Indian beneficiaries with information on their IIM account balances and associated land assets.

On September 10, 2001, OHTA issued its "Blueprint for Developing the Comprehensive Historical Accounting Plan for Individual Indian Money Accounts." Please visit our Web site at http://www.doi.gov/ohta to view the "Blueprint" and for the current status of the historical accounting work being performed by OHTA. To contact us:


| | |
|---|---|
| Leave a message at: | 202-208-3406 |
| Send a fax to: | 202-219-1139 |
| E-mail us at: | OHTA@doi.gov |




EXHIBIT 4

### Indian Tribal and Individual Mineral Owners

# *Quick Reference*

## Trust Management of Your Mineral Resources







The Department of the Interior is committed to assisting you in the development of your mineral resources, whether they be oil and gas, coal, sand and gravel, stone, or metallic ores. There are five agencies in my Department that are responsible for the "Trust Management" of your mineral resources. I am confident they will be responsive to any questions you may have concerning how the minerals can be leased, how they are valued, how they can be extracted in an environmentally sound and safe manner, and how the royalties are collected and paid to you. The Department must continue to work to ensure that Federally recognized tribes and individual Indian mineral owners of record receive the very best service from my Department in the trust management and accountability of Indian mineral resources.

Gale A Norton
Secretary of the Interior

*Five agencies in the Department of the Interior share responsibility for the trust management and protection of Indian mineral interests*

*How can we help you?*

# How can you contact us?

Please contact the
**Minerals Management Service (MMS)**
if you have questions about:

- Your oil and gas or solid minerals royalty payments
- When you should receive your royalty check
- An explanation of your oil and gas payment report
- Royalty issues regarding oil and gas or solid minerals

You may call MMS toll free at:

| | |
|---|---|
| Western Oklahoma area | 1-800-354-7015 |
| Eastern Oklahoma area | 1-800-238-1943 |
| All other areas of the U.S. | 1-800-982-3226 |
| For solid minerals questions | 1-888-201-6416 |

Please contact the
**Bureau of Indian Affairs (BIA)**
if you have questions about:

- Land ownership and lease status
- How lands are leased
- Status of lease applications
- Lease obligations
- Appeals

For BIA questions, please contact the BIA agency or tribal office having responsibility for your mineral properties.

Please contact the
**Bureau of Land Management (BLM)**
if you have questions about:

- Status of permit approvals to drill or extract a mineral resource
- Frequency of onsite lease inspections
- What happens in an inspection
- Results of onsite inspections
- Lease production volumes
- Variations in monthly production
- Wells and other ownership that may affect your production
- Proper plugging of wells
- Official surveys of Indian lands

You may call BLM toll free at 1-877-256-6263

Please contact the
**Office of Surface Mining (OSM)**
if you have questions about:

- Permitting and regulating the environmental effects of coal mining on Indian lands
- Inspecting active coal mines on Indian lands to ensure compliance with the Surface Mining Law, regulations, and permits
- Assuring that land mined for coal is reclaimed in accordance with approved plans
- Preventing offsite environmental damage from coal mining on Indian lands
- Assisting with regulatory activities or receiving grants to develop an Indian regulatory program
- Grants and technical assistance available for Indian tribes to reclaim abandoned mines

You may call OSM toll free at 1-877-274-4025

Please contact the
**Office of the Special Trustee for American Indians — Office of Trust Funds Management (OTFM)**
if you have questions about:

- How to access funds in your account
- Privacy of your financial trust account
- Why it is important to update your address
- If funds in your account earn interest
- Making direct deposits to your bank account

You may call OTFM toll free at:
Customer Service Line
1-888-678-6836, ext. 888
Division of Trust Funds Accounting
1-888-678-6836, ext. 384
Branch of Tribal Accounts Management
1-888-678-6836, ext. 389

The Farmington Indian Minerals Office (FIMO) is a "one-stop shop" for individual Navajo Indian oil and gas mineral owners. Staffed by personnel from BIA, BLM, and MMS, FIMO is designed not only as a traditional customer service office, but also one that issues oil and gas leases and provides inspections of lands that are leased. You may call FIMO toll free at 1-800-238-2839 or visit them at 1235 La Plata Highway, Farmington, New Mexico, 87401.

Due to Privacy Act restrictions, some information may not be disclosed unless owner's identification can be verified.