EXHIBIT A

BLANKET OIL MINING LEASE,
OSAGE RESERVATION, OKLAHOMA

CONTRACT NO.
14-20-201 2679

Contract No.

THIS LEASE, made and entered into in quadruplicate on this January 20, 1954, A. D., by and between OSAGE TRIBE OF INDIANS in Oklahoma, by Paul Pitts, Principal Chief, under authority of a Resolution of the Osage Tribal Council dated Jan. 20, 1954 and numbered 18-277, party of the first part, designated as LESSOR, and KEWANEE OIL COMPANY, a corporation with an office at Tulsa, Oklahoma, party of the second part, designated as LESSEE under and in pursuance of Section 3, of the Act approved June 28, 1906, (34 Stat. L., 539-543); the Act approved March 3, 1921, (41 Stat. L., 1249); and the Act of March 2, 1929, (45 Stat. L., 1478); and the Act of June 24, 1938, (52 Stat. 1034); and the Act of June 15, 1950, (P. L. 548-81st Congress.)

WITNESSETH:

The Lessee, in full interest is the owner of oil leases, duly executed by the Principal Chief of the Osage Tribe of Indians under authority of resolutions of the Osage Tribal Council, and thereafter approved by the Secretary of the Interior, as now shown by the records of the Osage Indian Agency at Pawhuska, Oklahoma, covering lands in Osage County, Oklahoma, and more particularly described as follows:

NE/4 Sec. 33, T-27-N, R-6-E, I - 68 - IND 24953

NW/4 Sec. 34, T-27-N, R-6-E, I - 68 - IND 594

SW/4 Sec. 34, T-27-N, R-6-E, I - 68 - IND 596

NE/4 Sec. 34, T-27-N, R-6-E, I - 68 - IND 593

SE/4 Sec. 34, T-27-N, R-6-E, I - 68 - IND 595

NW/4 Sec. 3, T-26-N, R-6-E, I - 68 - IND 24944

NE/4 Sec. 3, T-26-N, R-6-E, I - 68 - IND 617

SE/4 Sec. 3, T-26-N, R-6-E, I - 68 - IND 3659

NW/4 Sec. 2, T-26-N, R-6-E, I - 68 - IND 452

SW/4 Sec. 2, T-26-N, R-6-E, I - 68 - IND 98

NE/4 Sec. 10, T-26-N, R-6-E, I - 68 - IND 24946

NW/4 Sec. 11, T-26-N, R-6-E, I - 68 - IND 86

WHEREAS, Lessee, the present owner and holder of said oil mining leases as hereinabove described and set forth, is desirous of developing and operating the lands described in said oil mining leases for oil mining purposes as a unit for the common benefit of lessor and the present owner and holder of said leases:

Section 1. The lessor, in consideration of One Dollar ($1.00), the receipt whereof is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained and hereby agreed to be paid, observed and performed by the lessee, does hereby demise, grant, lease and let unto the lessee for five (5) years from the date of approval, hereof, and as long thereafter as oil is produced in paying quantities, all of the oil deposits in or under all of the lands above described, containing nineteen hundred and twenty (1920) acres, more or less, with the exclusive right to extract, pipe, store and remove oil.

The Act of June 24, 1938, (52 Stat. 1034), amended section one of the Act of March 2, 1929, (45 Stat. 1478) so as provided in part as follows:

"That all that part of the Act of June 28, 1906, (34 Stat. L., 539-543) entitled 'An Act for the division of lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal or other minerals, covered by the lands for the selection and division of which provision is made in that Act, is hereby amended so that the oil, gas, coal or other minerals, covered by said lands are reserved to the Osage Tribe until the 8th day of April, 1983, unless otherwise provided by Act of Congress."

Section 2. The lessee agrees to pay, or cause to be paid, to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty;

(a) The sum of sixteen and two-thirds (16-2/3) per cent of the gross proceeds from the sales, after deducting the oil used as fuel in operating the lease, of the first eight hundred and fifty thousand (850,000) barrels of crude oil produced from the Burbank sand on the land described as follows:

NE/4 of NE/4 Sec. 33, T-27-N, R-6-E

W/2 of NE/4 Sec. 34, T-27-N, R-6-E

NE/4 of NW/4 Sec. 3, T-26-N, R-6-E

W/2 of NW/4 Sec. 2, T-26-N, R-6-E

W/2 SW/4 and SE/4 SW/4 Sec. 2, T-26-N, R-6-E

E/2 of NE/4 Sec. 10, T-26-N, R-6-E

containing four hundred forty (440) acres, more or less, and

NW/4 Sec. 34, T-27-N, R-6-E

SW/4 Sec. 34, T-27-N, R-6-E

SE/4 Sec. 34, T-27-N, R-6-E

NE/4 Sec. 3, T-26-N, R-6-E

SE/4 Sec. 3, T-26-N, R-6-E

NW/4 Sec. 11, T-26-N, R-6-E

containing nine hundred and sixty (960) acres, more or less, or a total of one thousand four hundred (1,400) acres, more or less.

(b) The sum of twelve and one-half (12-1/2) per cent of the gross proceeds from the sale of all crude oil produced from the Burbank Sand, in excess of the oil used for fuel in operating the lease and the volume of crude oil on which said sixteen and two-thirds (16-2/3) per cent is agreed to be paid as provided in (a) last above, and

(c) The sum of sixteen and two-thirds (16-2/3) per cent of the gross proceeds from sales, after deducting the oil used for fuel in operating the lease, of all oil produced and saved from the leased premises from sands other than the Burbank Sand; PROVIDED, if when the quantity of oil produced from sands other than the Burbank Sand during any calendar month is sufficient to average one hundred (100) or more barrels per well per day, the royalty on such oil shall be twenty (20) per cent.

(d) The sum of sixteen and two-thirds (16-2/3) per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease of all oil produced and saved from all sands in and under:

W/2 NE/4 and SE/4 of NE/4 Sec. 33, T-27-N, R-6-E

E/2 of NE/4 Sec. 34, T-27-N, R-6-E

W/2 NW/4 and SE/4 of NW/4 Sec. 3, T-26-N, R-6-E

E/2 of NW/4 Sec. 2, T-26-N, R-6-E

NE/4 of SW/4 Sec. 2, T-26-N, R-6-E

W/2 of NE/4 Sec. 10, T-26-N, R-6-E

containing five hundred twenty (520) acres, more or less; PROVIDED, that when the quantity of oil taken from all the wells on the five hundred twenty (520) acres last described above producing from any sand or sands during any calendar month is sufficient to average one hundred (100) or more barrels per well per day, the royalty on oil produced from said five hundred twenty (520) acres shall be twenty (20) per cent.

Payment for the royalty hereunder shall be made at the time of sale or removal of the oil from the leased premises, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at no less than the highest posted market price in the Mid-Continent Field on the day of sale or removal.

Should the lessor with approval of the Secretary of the Interior elect to take the royalty in oil, lessee shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled when

in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner may take into consideration among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

As the primary and moving consideration for the granting of this lease, lessee agrees that, in addition to operations now being conducted on the leased premises, lessee will, within ten (10) months from the effective date hereof, commence operations for the development of the leased premises by secondary development by the process known as the "Water-flood Process" and with due diligence continue the development of the leased premises by such process as long as development and operation of the leased premises by the said water-flood process can be conducted profitably.

For the purpose of preventing waste and furthering conservation by promoting the greatest ultimate recovery of oil from the water-flooded sand or sands, two (2) or more leases under which such operations are being conducted, may be unitized, communitized or consolidated with the approval of the Superintendent.

Lessee shall, before commencing water-flood operations, and on or before December 31 of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year.

Lessee agrees to indemnify and save harmless the Osage Tribe of Indians and the United States Government against any claimants for damages arising through or resulting from water-flood operations on the leased premises.

Section 3. Inasmuch as a portion of this land covered by this Blanket Lease is producing oil in paying quantities, the rental provisions of paragraph numbered three (3)

of the printed Oil Mining Lease, prescribed by the regulations of the Secretary of the Interior (Form B) shall not apply to these portions upon which oil is now being produced; as to those tracts upon which oil is not now being produced, the lessee agrees to pay to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor, all rental payments due and incurrable for the now remaining primary term of three (3) tracts specifically indentified as the NE/4 Sec. 33, T-27-N, R-6-E; NW/4 Sec. 3, T-26-N, R-6-E; and NE/4 Sec. 10, T-26-N, R-6-E, Osage County, Oklahoma, for the privilege of incorporating same within the terms of the Blanket Lease. It is further provided that upon advancing such payment these tracts will become a part of the area included in the Blanket Lease. Further, no well may be drilled on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given; PROVIDED, further, that whenever the Commissioner shall consider the marketing facilities inadequate to take care of the production, he may direct the suspension of drilling operations on this lease.

Section 4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells, also the right to ingress and egress and the rights-of-way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations, Lessee shall pay to the surface owner the sum of One Hundred Dollars ($100.00) for each well located on cultivated land, or land suitable for cultivation, and Thirty-Five Dollars ($35.00) for each location on land not susceptible to cultivation. Upon payment of such location-site money,

Lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay Ten Dollars ($10.00) for each site outside of the well location used for oil tanks of not exceeding one thousand six hundred (1,600) barrels capacity, allowing fifty (50) feet square for each tank site. The sum to be paid for an oil tank site of larger capacity and occupying a greater area, shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

The well-site and tank location fees herein stated shall not apply to sites for which payment has heretofore been made.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the Lessee shall pay all fees and damages required to be paid to the surface owner to the mortgagee through the Superintendent of the Osage Indian Agency, to be credited on the loan.

All claims for damages for the use of the surface other than that included in the location and tank sites, all claims for damages to growing crops or improvements on the lands, and all claims for damages to the surface owners, or their lessees, arising from operations of the oil lessee, shall be settled by arbitration whenever the parties are unable to agree concerning the same, but nothing herein contained shall be construed to deny to either party to the controversy the right to appeal to the courts in the event he is dissatisfied with the award to or against him.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency, if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the Superintendent and by him immediately remitted to the Indian entitled thereto. All sums

due as royalty or damages shall be a lien on all equipment and unsold oil on leased premises.

Section 5. Lessee shall carry on operations in a workmanlike manner, commit no waste and suffer none to be committed upon the land, nor permit any nuisance to be maintained on the premises under their control, nor allow any intoxicating liquors to be introduced, brought upon, sold, or given away for any purpose on such premises; also keep an accurate account of all operations, receipts and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

All buildings and permanent improvements, unless otherwise provided by written agreement filed with the Osage Superintendent, including casings of all producing wells on the premises, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipe lines, pumping and drilling outfits, derricks, engines, machinery, and the casings of all dry or nonpaying wells. The casings of wells drilled on any lease less than three (3) years prior to and producing oil on the expiration of the Osage mineral period, remain the property of the oil lessee; PROVIDED, that such casings shall not be removed from the wells, but shall be purchased from the lessee by the owner of the oil rights at such prices as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

When any well, covered by this blanket lease, shall be plugged and abandoned, Lessee within ninety (90) days, shall clean up the premises around such well to the satisfaction of the Superintendent of the Osage Agency, or his authorized representative.

Section 6. Lessee accepts this lease with the understanding that the lands covered thereby are leased or may be leased to some other party who shall have the exclusive right to all gas except as herein provided.

Section 7. If the oil lessee shall drill a gas well, it shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the Superintendent. In the event the gas lessee does not within thirty (30) days after receiving notice, elect to take over such well and reimburse the oil lessee for the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing, and other equipment, the oil lessee shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the Superintendent.

Section 8. If the gas lessee shall drill an oil well upon the lands described herein, he shall immediately without removing from the well any of the casing or other equipment, notify the oil lessee and the Superintendent. In the event the oil lessee does not, within thirty (30) days after receipt of notice, elect to take over such well, it shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the Superintendent. Should the oil lessee elect to take over the well, it shall pay the gas lessee the cost of drilling the same, including all damages paid in addition to the cost in place of casing and other equipment.

Section 9. If the oil lessee shall drill a well which produced both oil and gas in commercial quantities from the same sand, it shall immediately notify the gas lessee, and together they shall arrange for the separation and utilization of the oil and gas, and the cost pertaining to said well.

Section 10. Whenever oil and gas are found in separate sands, and the oil lessee desires to drill through the gas sand for the oil, it may do so provided the method of protecting the gas sand shall be approved by the Inspector.

Section 11. If at any time any oil or gas well becomes unprofitable and the

oil or gas lessee desires to deepen the same, such action as may be mutually agreed upon may be taken not in conflict with the regulations. Upon failure to agree, the disposition of such well shall be subject to the approval of the Superintendent.

Section 12. All casinghead gas shall belong to the oil lessee, and when used for the manufacture of gasoline, shall be metered and be subject to a royalty of sixteen and two-thirds (16-2/3) per cent, based on the market value of the gasoline content, and all such gas not utilized by the oil lessee on its leased premises, or for operating other adjoining leases within the Osage Reservation, shall belong to the gas lessee, subject to the prescribed royalty of sixteen and two-thirds (16-2/3) per cent.

Section 13. The gas lessee shall furnish the oil lessee sufficient gas for drilling and operating purposes at a rate to be agreed upon or on failure to agree the rate shall be fixed by arbitration; PROVIDED, that the oil lessee shall make necessary connections between the well and the meter whenever possible.

Section 14. The oil lessee, subject to the approval of the Superintendent, may surrender this lease as to any specific quarter section covered hereby; PROVIDED, if this lease has been recorded, the lessee shall execute a release of the specific quarter section surrendered and record the same in the proper office and payment of the further sum of One Dollar ($1.00) as a cancellation fee.

Section 15. All amounts due and payable under this lease shall be paid to the Superintendent by check or bank draft on a solvent bank in favor of the Treasurer of the United States.

Section 16. This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of this lease; PROVIDED, that no regulation made after the approval of this lease shall

operate to affect the term of the lease, rate of royalty, rental or acreage, unless agreed to by both parties.

Section 17. Violation of any of the terms or conditions of this lease or of the regulations pertaining thereto, shall subject the lease to cancellation by the Superintendent, or the Lessee to a fine of not exceeding Five Hundred Dollars ($500.00) per day for each and every day the terms of the lease or the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent; PROVIDED, that the Lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent, whose findings shall be conclusive unless an appeal be taken to the Commissioner of Indian Affairs or to the Secretary of the Interior, as provided by the Regulations and the decision of the Commissioner or Secretary on such an appeal shall be conclusive.

Section 18. Before this lease shall be in force and effect, Lessee shall furnish a bond with responsible surety to the satisfaction of the Superintendent, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Osage Agency.

Section 19. An assignment of this lease or any interest therein covered by operating agreement or otherwise, may be made with the approval of the Superintendent, and not otherwise.

Section 20. This lease shall become and be effective as of 7:00 a.m. on the first day of the calendar month next succeeding final approval thereof by the Superintendent, from and after which effective date all of the quarter-section leases first described in this Blanket Lease shall be deemed consolidated with and merged into the single leasehold

estate covered hereby; it being the intention of the parties that this Blanket Lease shall operate as a consolidation and modification, and be in lieu of said previously existing leases first described in this instrument.

Section 21. Each and every clause and covenant of this Indenture shall extend to the heirs, executors, administrators, successors and lawful assigns of the parties hereto.

IN WITNESS WHEREOF, The said parties have hereunto subscribed their names and affixed their seals on the day and year above mentioned.

Two Witnesses to execution of Lessor: ______________________
Principal Chief

______________________
Post Office, Pawhuska, Oklahoma

______________________
Post Office, Pawhuska, Oklahoma

KEWANEE OIL COMPANY

By ______________________
President

Two Witnesses to execution by Lessee:

______________________
Post Office ______________________

ATTEST:

______________________
Ass't. Secy.

______________________
Post Office ______________________

STATE OF OKLAHOMA )
) SS
COUNTY OF OSAGE )

Before me, a Notary Public, on this 26th day of January, 1954, personally appeared ________________, to me known to be the Principal Chief of the Osage Tribe, and the identical person who executed the within and foregoing lease, and acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Tribe and in accordance with the authority given him by the Osage Tribal Council.

Given under my hand and seal of office the day and year last above written.

Eva La Zelle
Notary Public

My commission expires 9-12-54

EVA LA ZELLE NOTARY PUBLIC IN AND FOR STATE OF OKLAHOMA PAWHUSKA

STATE OF OKLAHOMA )
) SS
COUNTY OF TULSA )

Before me, the undersigned, a Notary Public in and for said county and state, on this 2 day of DECEMBER, 1953, personally appeared Wm. Wikoff Smith, to me known to be the identical person who subscribed the name of KEWANEE OIL COMPANY to the foregoing instrument as its President and acknowledged to me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

Opal M. Massey
Notary Public

My commission expires: My commission expires April 9, 1957

## CONSENT OF SURETY

The United States Fidelity and Guaranty Company of Baltimore, Maryland, surety for KEWANEE OIL COMPANY, hereby accepts the provisions of the blanket oil mining lease herewith presented, and consents to the terms thereof, and agrees that their collective bond now on file at the Osage Indian Agency, covering separate leases herein described, shall apply to the cover the within Blanket Oil Mining Lease.

Dated at Tulsa, Oklahoma this 1st day of December, 1953.

UNITED STATES FIDELITY AND GUARANTY COMPANY

By [signature]
(Wm.F.Stahl) Attorney in Fact

Power of Attorney on file with the Dept. of Interior

Subscribed and sworn to before me this 1st day of December, 1953.

My Commission expires

12/13/53

Clara V. Schafnitt
Notary Public

DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
Anadarko Area Office
Osage Agency
Pawhuska, Oklahoma
JAN 28 1954
Approved under authority delegated to the Superintendent of the Osage Agency by the Secretary of the Interior. (25 CFR 180.2 (b); 17 Fed. Reg. 2602)

T. B. HALL
SUPERINTENDENT

FORM E
Approved by the Secretary of the Interior March 20, 1952

CONTRACT NUMBER
I-68-Ind ______________

# OSAGE MINING LEASES

## EVIDENCE OF AUTHORITY OF OFFICERS TO EXECUTE PAPERS

(To be sworn to by Secretary or President of a corporation and sealed with its seal.)

I solemnly swear that Wm. Wikoff Smith and Percy A. Rowland were on the 2nd day of December, 1953, the duly elected, qualified and acting president and secretary, respectively, of Kewanee Oil Company a corporation organized under the laws of Delaware on which day they executed Blanket Oil mining lease for and in behalf of said corporation as lessee, covering certain lands of the Osage Tribe; that they were fully empowered to execute said Blanket Oil / Mining lease and all papers in connection therewith, and that their action in executing the same binds the said corporation to full performance of all obligations thereunder.

[signature]

President
(Title)

This 2 day of December, 1953

(CORPORATE SEAL)

Subscribed and sworn to before me this 2 day of December, 1953

My commission expires April 9, 1957

(Signed) Opal M. Moss

Notary Public
(Title)

(Seal.)

OPAL M. MOSS NOTARY PUBLIC TULSA OKLA.