CONTRACT NUMBER
14-20-G06 664

930-23-00784-65

# BLANKET OIL MINING LEASE
## OSAGE RESERVATION, OKLAHOMA
EAST HARDY UNIT

This lease, made and entered into in triplicate, on this 30th day of November, A.D., 1965, by and between the Osage Tribe of Indians in Oklahoma by Paul Pitts under authority of Resolution No. 21 - 190 of the Osage Tribal Council dated November 30, 1965, party of the first part, designated as lessor, and Charles W. Oliphant, an undivided 37.6667% interest, A. G. Oliphant, an undivided 35.3334% interest, Allene O. Mayo, an undivided 7.9999% interest, National Bank of Tulsa, Trustee for Eric Boyle Oliphant, an undivided 5.0000% interest, National Bank of Tulsa, Trustee for Nancy Blanche Oliphant, an undivided 5.0000% interest, The First National Bank & Trust Company of Tulsa, Trustee for Allen G. Oliphant, Jr. Trust, an undivided 3.3334%, Katherine O. Detrick, an undivided .020 of 5.6666% interest, Gayle G. Frazier, an undivided .018 of 5.6666% interest, Daniel D. Gridley, an undivided .022 of 5.6666% interest, Josie Hair, an undivided .006 of 5.6666% interest, Mary E. Hitzman, an undivided .005 of 5.6666% interest, Faith N. Jansen, an undivided .005 of 5.6666% interest, Carl R. Kauffman, an undivided .016 of 5.6666% interest, Allene O. Mayo, an undivided .100 of 5.6666% interest, The First National Bank & Trust Company of Tulsa, Guardian of the Estate of John D. Mayo, II, a Minor, an undivided .020 of 5.6666% interest, A. G. Oliphant, an undivided .168 of 5.6666% interest, A. G. Oliphant, Guardian of the Estate of A. G. Oliphant, Jr., a Minor, an undivided .200 of 5.6666% interest, The First National Bank & Trust Company of Tulsa, Executor of the Estate of Carol E. Oliphant, Deceased, an undivided .150 of 5.6666% interest, Charles W. Oliphant, an undivided .100 of 5.6666% interest, Charles W. Oliphant, Guardian of the Estate of Eric B. Oliphant, a Minor, an undivided .020 of 5.6666% interest, Gertrude O. Oliphant, an undivided .008 of 5.6666% interest, Mary E. Oliphant, an undivided .002 of 5.6666% interest, Charles W. Oliphant, Guardian of the Estate of Nancy B. Oliphant, a Minor, an undivided .010 of 5.6666% interest, Faye Rasmussen, an undivided .020 of 5.6666% interest, Claire E. Stevens, an undivided .010 of 5.6666% interest, R. Elmo Thompson, an undivided .004 of 5.6666% interest, Cecil Ezelle Whitwell, an undivided .030 of 5.6666% interest, Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Jean Whitwell Carpenter, an undivided .015 of 5.6666% interest, Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Marcia Whitwell Persons, an undivided .015 of 5.6666% interest, Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Cecil Ezelle Whitwell, an undivided .030 of 5.6666% interest, and Lewis L. Young, an undivided .006 of 5.6666% interest, parties of the second part designated as lessees, under and in pursuance of Section 3, of the Act approved June 28, 1906 (34 Stat. L 539-543), the Act approved March 3, 1921 (41 Stat. L. 1249), the Act of March 2, 1929 (45 Stat. L. 1478) and the Act approved June 24, 1938 (52 Stat. L. 1034), the Act of June 15, 1950 (64 Stat. L. 215), and the Act of October 6, 1964 (78 Stat. 1008); witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessees, does hereby demise, grant, lease and let unto the lessees, for five years from the effective date hereof, and as long thereafter as oil is produced in paying quantities, all the oil deposits in or under land described as follows, to-wit:

| | | |
|---|---|---|
| NE/4 | 2-25N-3E | Contract No. 14-20-201-3754 |
| SE/4 | 2-25N-3E | Contract No. I-68-Ind - 23934 |
| ~~NW/4~~ | 2-25N-3E | Contract No. I-68-Ind - 24692 |
| SW/4 | 2-25N-3E | Contract No. I-68-Ind - 21415 |
| SE/4 | 3-25N-3E | Contract No. I-68-Ind - 15825 |
| NW/4 | 3-25N-3E | Contract No. 14-20-0406 - 133 |
| SW/4 | 3-25N-3E | Contract No. 14-20-201-1131 |
| NE/4 | 4-25N-3E | Contract No. 14-20-0406 - 134 |
| SE/4 | 4-25N-3E | Contract No. 14-20-201 - 1132 |
| SW/4 | 4-25N-3E | Contract No. 14-20-0406 - 135 |
| NW/4 | 4-25N-3E | Contract No. 14-20-0406 - 427 |
| NE/4 | 9-25N-3E | Contract No. 14-20-0406 - 140 |
| NE/4 | 10-25N-3E | Contract No. 14-20-0201 - 1 |
| NE/4 | 11-25N-3E | Contract No. I-68-Ind - 23941 |
| NW/4 | 11-25N-3E | Contract No. 14-20-0201 - 2 |

of the Indian Meridian, and containing ~~2400~~ 2,240 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

Section Three of the Act of June 24, 1938 (52 Stat. L 1034) as amended by the Act of October 6, 1964 (78 Stat. 1008) provides in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543) entitled 'An Act for the division of lands and funds of the Osage Indians in Oklahoma, and for other purposes', which reserves to the Osage Tribe the oil, gas, coal or other minerals covered by the lands for the selection and division of which provision is made in the Act is hereby amended so that the oil, gas, coal or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, and thereafter until otherwise provided by Act of Congress.

2. The lessees agree to pay, or cause to be paid to the Superintendent of the Osage Agency, Pawhuska, Oklahoma, for the lessor, as royalty on oil, or other hydrocarbon substances, produced and saved from the leased premises after deducting the oil used in operating the lease:

(a) The sum of twelve and one-half percent (12-1/2%) of the gross proceeds from sales of all crude oil produced from the Osage Layton Formation underlying the following:

| | |
|---|---|
| S/2 of SW/4 of NE/4 | Section 2 |
| ~~S/2 of SE/4 of NW/4~~ | ~~Section 2~~ |
| NE/4 of SW/4 | Section 2 |
| E/2 of SE/4 of SW/4 | Section 2 |
| W/2 of SE/4 | Section 2 |
| SW/4 of SE/4 of SE/4 | Section 2 |
| NE/4 of NE/4 of NW/4 | Section 11 |

of Township 25 North, Range 3 East, containing 200 acres, more or less.

(b) The sum of sixteen and two-thirds percent (16-2/3%) of the gross proceeds from sales of oil produced and saved from the Osage Layton Formation in and under the lands described below:

| | |
|---|---|
| E/2 of NE/4 | Section 2 |
| NW/4 of NE/4 | Section 2 |
| N/2 of SW/4 of NE/4 | Section 2 |
| ~~N/2 of NW/4~~ | ~~Section 2~~ |

| | |
|---|---|
| SW/4 of NW/4 | Section 2 |
| N/2 of SE/4 of NW/4 | Section 2 |
| W/2 of SW/4 | Section 2 |
| W/2 of SE/4 of SW/4 | Section 2 |
| NE/4 of SE/4 | Section 2 |
| N/2 of SE/4 of SE/4 | Section 2 |
| SE/4 of SE/4 of SE/4 | Section 2 |
| SE/4 | Section 3 |
| SW/4 | Section 3 |
| NW/4 | Section 3 |
| NE/4 | Section 4 |
| SE/4 | Section 4 |
| SW/4 | Section 4 |
| NW/4 | Section 4 |
| NE/4 | Section 9 |
| NE/4 | Section 10 |
| NE/4 | Section 11 |
| W/2 of NW/4 | Section 11 |
| SE/4 of NW/4 | Section 11 |
| S/2 of NE/4 of NW/4 | Section 11 |
| NW/4 of NE/4 of NW/4 | Section 11 |

of Township 25 North, Range 3 East, containing 2200 acres, more or less.

(c) The sum of sixteen and two-thirds percent (16-2/3%) of the gross proceeds of all oil produced and saved from the leased premises from formations other than the Osage Layton Formation; provided, if when the quantity of oil produced from formations other than the Osage Layton Formation during any calendar month is sufficient to average one hundred (100) or more barrels per well per day, the royalty on such oil shall be 20%.

Payment of the royalty payable hereunder shall be made at the time of sale or removal of the oil from the leased premises, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent Field on the day of sale or removal.

Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessees shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled when in his judgement such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgement the Commissioner may take into consideration, among other things, federal laws, state laws, or regulations by competent federal or state authorities or lawful agreements among operators regulating either drilling or production, or both.

As the primary and moving consideration for the granting of this lease, lessees agree that, in addition to operations now being conducted on the leased premises, lessees will, within six months from the effective date hereof, commence operations for the development of the leased premises by a secondary recovery process of the Mississippi Chat formation and with due diligence continue the development of the leased premises by such process as long as development and operation of the leased premises by the said process can be conducted profitably.

For the purpose of preventing waste and furthering conservation by promoting the greatest ultimate recovery of oil from the waterflooded sand or sands, two (2) or more leases under which such operations are being conducted may be unitized, communitized, or consolidated with the approval of the Superintendent.

Lessees shall, before commencing waterflood operations, and on or before December 31 of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year.

Lessees agree to indemnify and save harmless the Osage Tribe of Indians and the United States Government against any claimants for damages arising through or resulting from waterflood operations on the leased premises.

3. Inasmuch as portions of the land covered by this Blanket Lease are producing oil in paying quantities, the rental provisions of Paragraph numbered three (3) of the printed oil mining lease, prescribed by the regulations of the Secretary of the Interior, (Form B) shall not apply to such portions. In return for the privilege of incorporating within the terms of this Blanket Lease the two tracts upon which oil is not now being produced, the lessees agree to pay annually to the Superintendent of the Osage Agency, for the lessor, advance rental amounting to one dollar per acre per year for such tracts before the anniversary date of their oil mining lease (Form B) unitized into this lease, the amount due annually to be one hundred sixty ($160.00) dollars per tract, according to the following schedule:

| | Quarter-Section | Form B Contract No. and Anniversary Date | First Rent Due Before | |
|---|---|---|---|---|
| 8 [illegible] | NW/4 3 | 14-20-0406-133 - Dec. 1 | 12- 1-65 | 369 |
| [illegible] | NW/4 11 25-3 | 14-20-0201-2 - May 11 | 5-11-66 | [illegible] 364 |

This Blanket Lease shall terminate as to all parties with respect to either tract unless such advance rental shall be received at the Osage Agency, or shall have been mailed as indicated by postmark, before the anniversary date of the tract as shown in the foregoing schedule.

Completion of an Osage Layton or Mississippi Chat water injection well or a well producing oil in paying quantities from any formation on either such tract shall exempt the Lessees from paying any further rent on the tract so long as such well remains in operation. Any time after May 10, 1968,

that any of the fifteen (15) tracts described herein does not have thereon an active well injecting water into, or producing oil in paying quantities from the (Osage Layton Sand or the Mississippi Chat formation, if such tract be the NE/4 2, NW/4 2, SE/4 2, SW/4 2, SE/4 3, NE/4 11, or NW/4 11-25-3) or (the Mississippi Chat formation, if it be the NW/4 3, SW/4 3, NE/4 4, NW/4 4, SE/4 4, SW/4 4, NE/4 9, or NE/4 10-25-3.) This Blanket Lease shall terminate with respect to that tract, and the tract shall no longer be a part of this Blanket Lease; Provided, if on May 11, 1968, there is in existence and operation on such tract a well producing oil in paying quantities from any formation other than the Osage Layton or Mississippi Chat as provided in this paragraph for that particular tract, the original Form B Lease Contract theretofore merged into this or the preceding Blanket Lease shall be restored to its original status and lessees shall be entitled to hold such tract under terms of the original Form B Lease so long as oil is produced on such tract in paying quantities; Provided, no refund will be made of advance rental paid; Provided, further, no well may be drilled on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given; Provided, further, that whenever the Commissioner shall consider the marketing facilities inadequate to take care of the production, he may direct the suspension of drilling operations on this lease.

4. Lessees shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right-of-way to any point of operations. Before commencing operations for drilling of any well the lessees shall pay to the surface owner the sum of two-hundred ($200.00) dollars for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay meadow land). One-Hundred fifty (150.00) dollars for open pasture land, and one-hundred ($100.00) for each location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessees shall be entitled to possession. Location site shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessees shall also pay tank site fees at the rate of twenty ($20.00) dollars per tank of not exceeding 1,000 barrels capacity; Provided, however, that no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for a tank site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

Lessees may with the approval of the Superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the lessees may, with the approval of the Superintendent, lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines and the setting of pumps and other equipment, that cannot be amicably settled shall be settled by arbitration, as provided in the regulations.

If the surface owner of the land covered by this lease obtains a farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, and shall have agreed in writing that damages occuring to him from mineral operations on such land shall be paid to the mortgagee, the lessees shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

All claims for damages for use of the surface, other than that included in the location and tank sites, all claims for damages to growing crops or improvements on the lands and other claims for damages to the surface owners or their lessees arising from operation of the oil or gas lessees, shall be settled by arbitration whenever the parties are unable to agree concerning the same. But nothing herein contained shall be construed to deny to either party to the controversy the right of appeal to the court in the event he is dissatisfied with the award to or against him.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency, if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the Superintendent for the use and benefit of the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment and unsold oil on leased premises.

5. The lessees shall carry on operations in a workmanlike manner, commit no waste and suffer none to be commited upon the land, nor permit any nuisance to be maintained on the premises under his control, nor allow any intoxicating liquors to be introduced, brought upon, sold or given away for any purposes on such premises, also, keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

All buildings and permanent improvements unless otherwise provided by written agreement filed with the Osage Superintendent, including casings

of all producing wells on the premises, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipe lines, pumping and drilling outfits, derricks, engines, machinery, and the casing of all dry or non-paying wells. The casings of wells drilled on any lease less than three years prior to and producing oil on the expiration of the Osage mineral period remain the property of the oil lessees; Provided, that such casings shall not be removed from the wells but shall be purchased from the lessees by the owner of the oil rights at such prices as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

6. The lessees accept this lease with the understanding that the lands covered thereby is leased or may be leased to some other party who shall have the exclusive right to all gas except as herein provided.

7. If the oil lessees shall drill a gas well they shall, without removing from the well any of the casings or other equipment, immediately shut the well in and notify the gas lessee and the Superintendent. In the event the gas lessee does not within thirty days after receiving notice elect to take over such well and reimburse the oil lessees the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing, and other equipment, the oil lessees shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the Superintendent.

8. If the gas lessee shall drill an oil well upon the lands described herein, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessees, and the Superintendent. In the event the oil lessees do not within thirty days after receipt of notice elect to take over such well, he shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the Superintendent. Should the oil lessees elect to take over the well, they shall pay the gas lessee the cost of drilling the same, including all damages paid in addition to the cost in place of casing and other equipment.

9. If the oil lessees shall drill a well which produces both oil and gas in commercial quantities from the same sand, they shall immediately notify the gas lessee and together they shall arrange for the separation and utilization of the oil and gas, and the cost pertaining to said well.

10. Whenever oil and gas are found in separate sands, and the oil lessees desire to drill through the gas sand for the oil, he may do so provided the method of protecting the gas sand shall be approved by the Inspector.

11. If at any time any oil or gas well becomes unprofitable and the oil or gas lessee desires to deepen the same, such action as may be mutually

agreed upon may be taken not in conflict with the regulations. Upon failure to agree, the disposition of such well shall be subject to the approval of the Superintendent.

12. All casinghead gas shall belong to the oil lessees and when used for the manufacture of gasoline shall be metered and be subject to a royalty of 16-2/3 per cent based on the market value of the gasoline contents, and all such gas not utilized by the oil lessees on their leased premises or for operating other adjoining leases within the Osage Reservation, shall belong to the gas lessee, subject to the prescribed royalty of 16-2/3 per cent.

13. The gas lessee shall furnish the oil lessees sufficient gas for drilling and operating purposes at the rate to be agreed upon, or failure to agree, the rate shall be fixed by arbitration; Provided, that the oil lessees shall make necessary connections between the well and the meter whenever possible.

14. The oil lessees may at any time, by paying to the Superintendent all amounts then due, including rentals in lieu of development as provided in paragraph numbered three hereof, and the further sum of one dollar, surrender all or any quarter section or fractional part of quarter section where the lease does not cover the full quarter section, and have the lease cancelled as to the lands surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered; Provided, that if this lease has been recorded, lessees shall execute a release and record the same in the proper office.

15. All amounts due and payable under this lease shall be paid to the Superintendent by check or bank draft on a solvent bank in favor of the Bureau of Indian Affairs.

16. This lease is subject to the regulations now or hereinafter prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of this lease; Provided, that no regulation made after the approval of this lease shall operate to affect the term of lease, rate of royalty, rental or acreage, unless agreed to by both parties.

17. Violation of any of the terms or conditions of this lease or of the regulations pertaining thereto, shall subject the lease to cancellation by the Superintendent, or the lessees to a fine of not exceeding five hundred ($500.00) dollars per day for each and every day the terms of the lease or the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent; Provided, that the lessees shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which

hearing shall be held by the Superintendent whose findings shall be conclusive unless an appeal to be taken to the Commissioner of Indian Affairs or to the Secretary of the Interior as provided by the regulations and the decision of the Commissioner or the Secretary, or such an appeal shall be conclusive.

18. Before this lease shall be in force and effect the lessees shall furnish bonds with responsible surety to the satisfaction of the Superintendent, conditioned for the performance of this lease, which bonds shall be deposited and remain on file in the Osage Agency.

19. Assignment of this lease or any interest therein may be made with the approval of the Superintendent or his authorized representative and not otherwise. If this lease is divided by the assignment of an entire interest in any part of it, each part shall be considered a separate lease under all the terms and conditions of this lease.

20. Concurrently with the approval of this lease by the Superintendent, all the separately owned leases first described in this Blanket Lease, shall be deemed consolidated with and merged into the single leasehold estate covered hereby, and amended and modified as herein provided, it being the intention of the parties that this blanket lease shall operate as a consolidation and modification of said leases first described in this instrument.

21. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

IN WITNESS WHEREOF, the said parties have hereunto subscribed their names on the day and year first above mentioned.

LESSOR:

Principal Chief

LESSEES:

A. G. Oliphant

Charles W. Oliphant

**LESSEES:**

Allene O. Mayo

ATTEST

Assistant Cashier

National Bank of Tulsa

By VP & Sr TO

Trustee for Eric Boyle Oliphant

ATTEST

Assistant Cashier

National Bank of Tulsa

By VP & Sr TO

Trustee for Nancy Blanche Oliphant

Katherine O. Detrick

Gayle G. Frazier

Daniel D. Gridley

Josie Hair

Mary E. Hitzman

Carl R. Kauffman

**LESSEES:**

______________________________
Faith N. Jansen

The First National Bank and Trust
Company of Tulsa

By ____________________ VICE PRESIDENT
Guardian of the Estate of John D. Mayo,
II, a Minor

A. G. Oliphant, Guardian of the Estate
of A. G. Oliphant, Jr., a Minor

The First National Bank and Trust
Company of Tulsa

By ____________________ VICE PRESIDENT
Executor of the Estate of Carol E.
Oliphant, Deceased

Charles W. Oliphant, Guardian of the
Estate of Eric B. Oliphant, a Minor

Charles W. Oliphant, Guardian of the
Estate of Nancy B. Oliphant, a Minor

Gertrude O. Oliphant

LESSEES:

Mary E. Oliphant

Faye Rasmussen

Claire E. Stevens

R. Elmo Thompson

Cecil Ezelle Whitwell

Commercial National Bank in
Shreveport, Louisiana

By ______________________
Trustee for Mrs. Jean Whitwell
Carpenter, Mrs. Marcia Whitwell
Persons, Mrs. Cecil Ezelle Whitwell

Lewis L. Young

**LESSEES:**

______________________________
Allene O. Mayo

National Bank of Tulsa

By______________________________
Trustee for Eric Boyle Oliphant

National Bank of Tulsa

By______________________________
Trustee for Nancy Blanche Oliphant

Katherine O. Detrick
Katherine O. Detrick

______________________________
Gayle G. Frazier

______________________________
Daniel D. Gridley

______________________________
Josie Hair

______________________________
Mary E. Hitzman

______________________________
Carl R. Kauffman

**LESSEES:**

____________________________
Allene O. Mayo

National Bank of Tulsa

By__________________________
Trustee for Eric Boyle Oliphant

National Bank of Tulsa

By__________________________
Trustee for Nancy Blanche Oliphant

____________________________
Katherine O. Detrick

Gayle G. Frazier
Gayle G. Frazier

____________________________
Daniel D. Gridley

____________________________
Josie Hair

____________________________
Mary E. Hitzman

____________________________
Carl R. Kauffman

**LESSEES:**

______________________________
Allene O. Mayo

National Bank of Tulsa

By____________________________
Trustee for Eric Boyle Oliphant

National Bank of Tulsa

By____________________________
Trustee for Nancy Blanche Oliphant

______________________________
Katherine O. Detrick

______________________________
Gayle G. Frazier

______________________________
Daniel D. Gridley

______________________________
Josie Hair

Mary E. Hitzman
Mary E. Hitzman

______________________________
Carl R. Kauffman

**LESSEES:**

Faith N. Jansen

The First National Bank and Trust Company of Tulsa

By______________________________
Guardian of the Estate of John D. Mayo, II, a Minor

______________________________
A. G. Oliphant, Guardian of the Estate of A. G. Oliphant, Jr., a Minor

The First National Bank and Trust Company of Tulsa

By______________________________
Executor of the Estate of Carol E. Oliphant, Deceased

______________________________
Charles W. Oliphant, Guardian of the Estate of Eric B. Oliphant, a Minor

______________________________
Charles W. Oliphant, Guardian of the Estate of Nancy B. Oliphant, a Minor

______________________________
Gertrude O. Oliphant

**LESSEES:**

______________________________
Mary E. Oliphant

______________________________
Faye Rasmussen

______________________________
Claire E. Stevens

______________________________
R. Elmo Thompson

______________________________
Cecil Ezelle Whitwell

Commercial National Bank in
Shreveport, Louisiana

By______________________________
Trustee for Mrs. Jean Whitwell
Carpenter, Mrs. Marcia Whitwell
Persons, Mrs. Cecil Ezelle Whitwell

______________________________
Lewis L. Young

**LESSEES:**

Mary E. Oliphant

Faye Rasmussen

Claire E. Stevens

R. Elmo Thompson

Cecil Ezelle Whitwell

Cecil Ezelle Whitwell

Commercial National Bank in
Shreveport, Louisiana.

By
Trustee for Mrs. Jean Whitwell
Carpenter, Mrs. Marcia Whitwell
Persons, Mrs. Cecil Ezelle Whitwell

Lewis L. Young

**LESSEES:**

Mary E. Oliphant

Faye Rasmussen

Claire E. Stevens

R. Elmo Thompson

Cecil Ezelle Whitwell

Commercial National Bank in Shreveport, Louisiana

By [signature] TRUST O... & By [signature] President

Trustee for Mrs. Jean Whitwell Carpenter, Mrs. Marcia Whitwell Persons, Mrs. Cecil Ezelle Whitwell

Lewis L. Young

File Copy
Surname

OSAGE AGENCY
PAWHUSKA, OKLAHOMA

NOV 30 1965

Approved under authority delegated to the Superintendent of the Osage Agency by the Secretary of the Interior. (25 CFR 183.2(b) and (25 CFR 183.46(b).

Superintendent

STATE OF OKLAHOMA ) ss.
COUNTY OF OSAGE )

Before me, a Notary Public, on this 30 day of November, 1965, personally appeared Paul Pitts, to me known to be the ______ Principal Chief of the Osage Tribe and identical person who executed the within and foregoing lease, and acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Tribe and in accordance with the authority given him by the Osage Tribal Council.

Notary Public

My Commission Expires:

September 13, 1968

STATE OF OKLAHOMA ) ss.
COUNTY OF TULSA )

Before me, a Notary Public, in and for said County and State, on this 15th day of November, 1965, personally appeared A. G. OLIPHANT, CHARLES W. OLIPHANT, ALLENE O. MAYO, DANIEL D. GRIDLEY, CARL R. KAUFFMAN, GERTRUDE O. OLIPHANT, CLAIRE E. STEVENS, JOSIE HAIR, nad LEWIS L. YOUNG, to me known to be the identical persons who executed the within and foregoing lease and acknowledged to me that they executed the same as their free and voluntary act and deed for the uses and purposes therein set forth.

Notary Public

My Commission Expires:

February 8, 1969

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this 4th day of November, 1965, personally appeared R. ELMO THOMPSON, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

Notary Public

My Commission Expires:

February 8, 1969

STATE OF OKLAHOMA )
COUNTY OF TULSA ) ss.

Be it remembered, that on this 15th day of November, 1965, before me, a Notary Public in and for said State, personally appeared A. G. OLIPHANT, whose name is subscribed to the within and foregoing instrument as Guardian of the Estate of A. G. Oliphant, Jr., a Minor, and acknowledged to me that he, as Guardian of said Estate of A. G. Oliphant, Jr., a Minor, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

My Commission Expires:

February 8, 1969

STATE OF OKLAHOMA )
COUNTY OF TULSA ) ss.

Be it remembered, that on this 15th day of November, 1965, before me, a Notary Public in and for said State, personally appeared CHARLES W. OLIPHANT, whose name is subscribed to the within and foregoing instrument as Guardian of the Estates of Eric B. Oliphant, a Minor, and Nancy B. Oliphant, a Minor, and acknowledged to me that he, as Guardian of said Estates of Eric B. Oliphant, a Minor, and Nancy B. Oliphant, a Minor, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

My Commission Expires:

February 8, 1969

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

Be it remembered that on this 2nd day of November, 1965, before me, a Notary Public in and for said County and State, personally appeared C. B. Neal, whose name is subscribed to the within and foregoing instrument as Vice President of The First National Bank and Trust Company of Tulsa, Guardian of the Estate of John D. Mayo, II., a Minor, and acknowledged to me that he, as Vice President of The First National Bank and Trust Company of Tulsa, Guardian of the Estate of John D. Mayo, II, a minor, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

[signature]
Notary Public

My Commission Expires:

Aug 27, 1966

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

Be it remembered that on this 2nd day of November, 1965, before me, a Notary Public in and for said County and State, personally appeared C. B. Neal, whose name is subscribed to the within and foregoing instrument as Vice President of The First National Bank and Trust Company of Tulsa, Executor of the Estate of Carol E. Oliphant, and acknowledged to me that he, as Vice President of The First National Bank and Trust Company of Tulsa, Executor of the Estate of Carol E. Oliphant, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

[signature]
Notary Public

My Commission Expires:

Aug 27, 1966

STATE OF OKLAHOMA ) ss.
COUNTY OF TULSA )

Before me, a Notary Public, in and for said County and State, on this 28th day of October, 1965, personally appeared GAYLE G. FRAZIER, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Mary Evans Sellers
Notary Public

My Commission Expires:

February 8, 1969

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ________ day of ____________, 1965, personally appeared MARY E. HITZMAN, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________________
Notary Public

My Commission Expires:

____________________

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ________ day of ____________, 1965, personally appeared FAITH N. JANSEN, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________________
Notary Public

My Commission Expires:

____________________

STATE OF )
COUNTY OF ) ss.

Before me, a Notary Public, in and for said County and State, on this ______ day of ______________, 1965, personally appeared FAYE RASMUSSEN to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My Commission Expires:

______________________

STATE OF OKLAHOMA )
COUNTY OF TULSA ) ss.

Before me, a Notary Public, in and for said County and State, on this 29th day of October, 1965, personally appeared MARY E. OLIPHANT, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

NOTARY PUBLIC IN AND FOR ...

My Commission Expires:

February 8, 1969

STATE OF )
COUNTY OF ) ss.

Before me, a Notary Public, in and for said County and State, on this ______ day of ______________, 1965, personally appeared KATHERINE O. DETRICK, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My Commission Expires:

______________________

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

Be it remembered that on this [illegible] day of [illegible], 1965, before me, a Notary Public in and for said State, personally appeared [illegible], whose name is subscribed to the within and foregoing instrument as [illegible] of the National Bank of Tulsa, Trustee for Eric Boyle Oliphant and Trustee for Nance Blanche Oliphant, minors and acknowledged to me that he, as [illegible] of the National Bank of Tulsa, Trustee for Eric Boyle Oliphant and Trustee for Nancy Blanche Oliphant, minors, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

[illegible]
Notary Public

My Commission Expires:

Jan. 27, 1968

STATE OF )
COUNTY OF ) ss.

Before me, a Notary Public, in and for said County and State, on this ______ day of ____________, 1965, personally appeared FAYE RASMUSSEN to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

____________________
Notary Public

My Commission Expires:

____________________

STATE OF )
COUNTY OF ) ss.

Before me, a Notary Public, in and for said County and State, on this ______ day of ____________, 1965, personally appeared MARY E. OLIPHANT, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

____________________
Notary Public

My Commission Expires:

____________________

STATE OF TEXAS )
COUNTY OF GREGG ) ss.

Before me, a Notary Public, in and for said County and State, on this 11th day of November, 1965, personally appeared KATHERINE O. DETRICK, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Lorraine H. Haglund
Notary Public
LORRAINE H. HAGLUND

My Commission Expires:

June 1, 1967

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ________ day of ____________, 1965, personally appeared GAYLE G. FRAZIER, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

________________________
Notary Public

My Commission Expires:

________________________

STATE OF Oklahoma ) ss.
COUNTY OF Washington )

Before me, a Notary Public, in and for said County and State, on this 3rd day of November 1965, personally appeared MARY E. HITZMAN, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Rita Hinshaw
Notary Public

My Commission Expires:

My Commission Expires April 29, 1968

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ________ day of ____________, 1965, personally appeared FAITH N. JANSEN, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

________________________
Notary Public

My Commission Expires:

________________________

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ________ day of ____________, 1965, personally appeared GAYLE G. FRAZIER, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

________________________
Notary Public

My Commission Expires:

____________________

STATE OF ) ss.
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ________ day of ____________, 1965, personally appeared MARY E. HITZMAN, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

________________________
Notary Public

My Commission Expires:

____________________

STATE OF California ss.
City & COUNTY OF San Francisco

Before me, a Notary Public, in and for said County and State, on this 1st day of November, 1965, personally appeared FAITH N. JANSEN, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Gloria M. Howard
Notary Public

Gloria M. Howard
NOTARY PUBLIC - CALIFORNIA
CITY & COUNTY OF
SAN FRANCISCO

My Commission Expires:

June 27, 1968

STATE OF New York )
COUNTY OF Westchester ) ss.

Before me, a Notary Public, in and for said County and State, on this 29th day of October, 1965, personally appeared FAYE RASMUSSEN to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Peter A. Garrity Jr.
Notary Public

My Commission Expires:
PETER A. GARRITY, JR.
Notary Public, State of New York
No. 60-6467754
Qualified in Westchester County
Commission Expires March 30, 1966

STATE OF New York )
COUNTY OF Westchester ) ss.

Before me, a Notary Public, in and for said County and State, on this ______ day of ____________, 1965, personally appeared MARY E. OLIPHANT, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My Commission Expires:

______________________

STATE OF )
COUNTY OF ) ss.

Before me, a Notary Public, in and for said County and State, on this ______ day of ____________, 1965, personally appeared KATHERINE O. DETRICK, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My Commission Expires:

______________________

STATE OF LOUISIANA )
PARISH OF CADDO ) ss.

Before me, a Notary Public, in and for said Parish and State, on this 8th day of November, 1965, personally appeared CECIL EZELLE WHITWELL, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Notary Public

My Commission Expires:

At death

STATE OF LOUISIANA )
PARISH OF CADDO ) ss.

Be it remembered, that on this ________ day of ______________, 1965, before me, a Notary Public in and for said Parish and State, personally appeared ______________________________, whose name is subscribed to the within and foregoing instrument as ______________________________ of the Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Jean Whitwell Carpenter, Mrs. Marcia Whitwell Persons, and Mrs. Cecil Ezelle Whitwell, and acknowledged to me that he, as ______________________________ of the Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Jean Whitwell Carpenter, Mrs. Marcia Whitwell Persons, and Mrs. Cecil Ezelle Whitwell, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

______________________________
Notary Public

My Commission Expires:

______________________

STATE OF LOUISIANA )
PARISH OF CADDO ) ss.

Before me, a Notary Public, in and for said Parish and State, on this ________ day of ____________, 1965, personally appeared CECIL EZELLE WHITWELL, to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My Commission Expires:

______________________

STATE OF LOUISIANA )
PARISH OF CADDO ) ss.

Be it remembered, that on this 9th day of November, 1965, before me, a Notary Public in and for said Parish and State, personally appeared Emmett R. Hook, whose name is subscribed to the within and foregoing instrument as President of the Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Jean Whitwell Carpenter, Mrs. Marcia Whitwell Persons, and Mrs. Cecil Ezelle Whitwell, and acknowledged to me that he, as President of the Commercial National Bank in Shreveport, Louisiana, Trustee for Mrs. Jean Whitwell Carpenter, Mrs. Marcia Whitwell Persons, and Mrs. Cecil Ezelle Whitwell, executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

[signature]
Notary Public REDA B. D[illegible]

My Commission Expires:

At death