EXHIBIT C

OSAGE AGENCY FILE OIL & GAS

RECEIVED MAR 5 1920 19467

F B

# OIL AND GAS MINING LEASE, OSAGE RESERVATION, OKLAHOMA.

(5)

This Indenture of lease made and entered into, in quadruplicate, on this 1st day of February A. D. 1913, by and between the Osage Tribe of Indians, by FRED LOOKOUT, its principal chief, under authority conferred by the Osage Tribal Council, of the State of Oklahoma, party of the first part, hereinafter designated as lessor, and Samuel G. Kennedy and W. A. Springer of Tulsa, Oklahoma, party of the second part, hereinafter designated as lessee, under and in pursuance of the provisions of Section 3 of the act of Congress approved June 28, 1906 (34 Stat., 539, 543),

WITNESSETH:

1. The lessor for and in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions hereinafter contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease, and let unto the lessee, for the term of ten years from the date of the approval hereof by the Secretary of the Interior, and as long thereafter as oil or gas is found in paying quantities: *Provided, however*, That the term of this lease shall not extend beyond April 8, 1931, all the oil deposits and natural gas in or under the following designated subdivisions of land, of tract 5, lying and being within the Osage Reservation, Osage County, State of Oklahoma, described as:

Subdivision No. 17, Secs. 4, 5, 6, 7, 8, 9 and N/2 of T. N., R. E.

(Insert description in full in each case.)

Subdivision Secs. 16, 17, 18 T. 23 N., R. 8 E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

Subdivision T. N., R. E.

of the Indian Meridian, and containing in the aggregate 4,780 acres, more or less, with the exclusive right to prospect for, extract, pipe, store, and remove oil and natural gas, and to occupy and use so much only of the surface of said land as may be reasonably necessary to carry on the work of prospecting for, extracting, piping, storing, and removing such oil and natural gas; also the right to obtain from wells or other sources on said land, by means of pipe lines or otherwise, a sufficient supply of water to carry on said operations, and also the right to use, free of cost, oil and natural gas as light and fuel so far as necessary to the development and operation of said property.

2. The lessees hereby agree to pay or cause to be paid to the Superintendent of the Osage Indian School, at Pawhuska, Okla., for the lessor, as royalty, 16⅔ per cent of the gross proceeds of all crude oil extracted from the said land, such royalty to be paid in money, based on the actual market value, unless the Osage National Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil, payment to be made at the time of sale or removal of the oil. It is understood and agreed, however, that should the actual market value of such oil be less than sixty cents per barrel, the lessee guarantee to pay royalty based on the minimum price of sixty cents per standard barrel.

6—3384

Office of Indian Affairs Received FEB 25 1913 / FEB 15 1917 / JAN 29 1918 8064

168 ind 3618

And the lessees agree to pay as royalty on each gas-producing well utilized otherwise than as provided herein 16⅔ per cent of the market value of the gas at the well: *Provided,* That should either the Osage National Council or the Secretary of the Interior be of the opinion that the price at which the lessees sell such gas is not the true market value at the well, the Secretary of the Interior shall, after notice and hearing, determine the market value and the lessees shall account to the lessor at the rate fixed by the Secretary of the Interior as aforesaid. The lessees shall establish meters at their expense to measure the supply of gas received from the leased premises, and the accounting shall be on the basis of the supply as shown by such meter statements. It is understood and agreed by the parties hereto that the standard rock pressure for the sale of gas from this lease shall be two pounds. The Osage Nation shall have the right to the free use of gas for school and public buildings of the Osage Nation from any well or wells that may be discovered on the leased lands: *Provided,* That no expense shall be incurred by the lessees in piping gas for such purposes, and the lessees shall not be required to pay royalty on such gas. Failure on the part of the lessees to use a gas-producing well, which can not profitably be utilized at the rate herein prescribed, shall not work a forfeiture of this lease so far as the same relates to mining oil, but if the lessees desires to retain gas-producing rights or privileges, lessees shall pay a rental of one hundred dollars per annum in advance on each gas-producing well, the gas from which is not marketed or not utilized otherwise than for operations under this lease, and the same shall be credited on gas royalties due and payable if during the year for which advance gas royalties are paid lessees elect to market the gas.

3. The lessees shall pay to the officer in charge, as advance annual rental on this lease, fifteen cents per acre in advance for the first year; thirty cents per acre in advance for the second year; fifty cents per acre in advance for the third year; and one dollar per acre, per annum, in advance for the fourth and each succeeding year thereafter, it being understood and agreed that the said sums of money so paid during any year in which royalties on production are payable, shall be a credit on the stipulated royalties due from the lessees if such royalties on production exceed the advance annual rental for that year.

4. The lessees covenant and agree to commence to drill at least one well on every leased designated subdivision within ninety days and to complete such well or wells within one year from the date of the approval of this lease by the Secretary of the Interior. After the drilling of a well is commenced the drilling operations shall be conducted with due and reasonable diligence until such well is completed or is drilled to such depth as the oil inspector of the Osage Nation shall deem reasonable. In addition to forfeiture in the sole discretion of the Secretary of the Interior of the lease for failure to drill and complete the required test well or test wells on each and every designated subdivision as aforesaid, within the time provided by this lease and the regulations relating thereto, the lessees and their surety, by reason of the impossibility of accurately determining the amount of damages which will be occasioned the Osage Nation by such default, shall pay to the Superintendent of the Osage School for the use and benefit of the lessor, as and for liquidated damages and not as a penalty, the sum of two thousand dollars ($2,000) for each and every test well required to be drilled and not completed within one year from the date of approval of this lease by the Secretary of the Interior, and the execution of this lease shall be conclusive evidence of the assent of lessor and lessee to liquidated damages in the sum of two thousand dollars ($2,000) per well for defaults within the time limit named herein. The lessee, after having drilled and completed the test well or wells required to be drilled and completed, may release and surrender all the land covered by the lease, or any designated subdivision thereof, or such sections of 640 acres of any designated subdivision as he may elect, on the payment of all rentals and royalties due on the date of such surrender, as provided in paragraph 8 of this lease. Should the lessee elect to hold the lease or any designated subdivision thereof exceeding in area 2,560 acres after the period of one year allowed for the drilling of one test well on each designated subdivision ~~has expired,~~ he shall drill and complete at least one additional test well on each designated subdivision exceeding in area 2,560 acres within one year from and after the date of expiration of the time allowed for the drilling and completion of the first test well, or in default thereof, shall pay to the Superintendent of the Osage Indian School for the use and benefit of the Osage Nation, by reason of the impossibility of determining the amount of damage which will be occasioned to said Nation on account of failure to drill such second test well as aforesaid, the sum of two thousand dollars ($2,000), as and for liquidated damages and not as a penalty, for each second test well for which the lessee may be in default, in addition to any and all other payments required by the regulations and the terms of this lease. Failure on the part of the lessee to comply strictly with the provisions of this paragraph shall constitute a violation of one of the substantial terms and conditions of this lease and shall operate as a forfeiture of the lessee rights and subject the lease to cancellation in the discretion of the Secretary of the Interior; but such forfeiture and cancellation shall not operate to relieve or release the lessee and surety from the payment of liquidated damages as herein provided for, even though the Secretary of the Interior shall, in his discretion, continue the lease in force and effect.

5. The lessees may use so much of the surface of the land as may be reasonably necessary for prospecting and mining operations required by this lease, and shall also have the right of way over and across such land to any point of prospecting or mining operations, but such use of the surface shall be permissible only under the condition of least injury and inconvenience to the allottee and owner of the land. Lessees before commencing and during such operations shall pay all reasonable damages for the use of such surface of the land and to any growing crops thereon or to any improvements on such land or any damages that, during the life of this lease, shall be occasioned in any manner whatsoever to the allottee or his successor in interest or assignee or to the lessee of the surface of the land by the use of the surface, such damages to be apportioned among the parties interested in the surface, whether as owners, lessees, or otherwise, as such parties may mutually agree or as their interests may appear: *Provided,* That when the damages can not be agreed upon between the parties in interest, the amount of such damage shall be determined in accordance with the regulations approved by the Secretary of the Interior. 6—3384

1001-2

MISCELLANEOUS
RECEIVED
JUL 1931
26098
OSAGE AGENCY

STIPULATION

It is stipulated and agreed by the undersigned that it hereby consents to and accepts modification of its lease dated October 15, 1913, described as

Subdivision 61, NE¼ of NE¼ of section 25, T. 22 N., R. 7 E.
Subdivision 62, NW¼ of NE¼ of section 25, T. 22 N., R. 7 E.,

and approved by the Department October 30, 1913, by striking out that part of Section 3 thereof, providing as follows:

"It is understood and agreed, however, that should the actual market value of such oil be less than 60¢ per barrel, the lessee guarantees to pay royalty based on the minimum price of 60¢ per standard barrel,"

and substitute in lieu thereof:

"And settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: Provided, That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent,"

pursuant to recommendation of the Osage Tribal Council by its Resolution numbered 30, and adopted July 8, 1931, at Pawhuska, Oklahoma.

Done this 9th day of July, 1931.

ATTEST: [signature]
Assistant Secretary.

THE PURE OIL COMPANY,
By [signature]
~~President.~~
Manager of Southwestern Producing Division.