Third Copy

I 69 Ind. 7833

MISCELLANEOUS RECEIVED JAN 20 1936 2068 OSAGE AGENCY

BLANKET OIL MINING LEASE

OSAGE RESERVATION, OKLAHOMA

OFFICE OF INDIAN AFFAIRS RECEIVED 1936

THIS LEASE, made and entered into in quadruplicate, on this 31st day of December 1935, by and between OSAGE TRIBE OF INDIANS IN OKLAHOMA, by Fred Lookout, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated January 20, 1936, party of the first part, designated as LESSOR, and WOLVERINE PETROLEUM CORPORATION, a corporation organized under the laws of the State of Maine with offices at Tulsa, Oklahoma, PHILLIPS PETROLEUM COMPANY, a corporation organized under the laws of the State of Delaware with offices at Bartlesville, Oklahoma, and SINCLAIR PRAIRIE OIL COMPANY, a corporation organized under the laws of the State of Maine with offices at Tulsa, Oklahoma, parties of the second part, designated as LESSEES, under and in pursuance of Section 3 of the Act approved June 28, 1906 (34 Stat. L., 539-543); the Act approved March 3, 1921 (41 Stat. L., 1249); and the Act approved March 2, 1929 (45 Stat. L., 1478).

WITNESSETH, THAT:

WHEREAS, the title to certain oil mining leases covering lands in the Osage Indian Reservation, duly executed by the Principal Chief of the Osage Tribe, under authority of Resolutions of the Osage Tribal Council and thereafter approved by the Secretary of the Interior, as now shown by the records of the Osage Indian Agency at Pawhuska, Oklahoma, stands as follows, to-wit;

(A) A lease executed to Wolverine Oil Company and Sagamore Oil and Gas Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southwest Quarter ($SW\frac{1}{4}$) of Section 29, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(B) A lease executed to Wolverine Oil Company and Sagamore Oil and Gas Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter ($SE\frac{1}{4}$) of Section 30, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(C) A lease executed to Wolverine Oil Company and Sagamore Oil and Gas Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the East Half (E½) of the Southwest Quarter (SW¼) and Lots Three (3) and Four (4) of Section 30, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(D) A lease executed to Wolverine Oil Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering Lots One (1) and Two (2) and the South Half (S½) of the Northeast Quarter (NE¼) of Section 5, Township 23 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(E) A lease executed to Wolverine Oil Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering Lots Three (3) and Four (4) and the South Half (S½) of the Northwest Quarter (NW¼) of Section 5, Township 23 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(F) A lease executed to Wolverine Oil Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering Lots One (1) and Two (2) and the South Half (S½) of the Northeast Quarter (NE¼) of Section 6, Township 23 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(G) A lease executed to Wolverine Oil Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of the Northwest Quarter (NW¼) and Lots Three (3), Four (4), and Five (5) of Section 6, Township 23 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION;

(H) A lease executed to Wolverine Oil Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering Lots Three (3) and Four (4) and the South Half (S½) of the Northwest Quarter (NW¼) of Section 1, Township 23 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION; Term 7/24/00

(I) A lease executed to Wolverine Oil Company January 24, 1916, and approved by the Secretary of the Interior May 17, 1916, covering Lots One (1) and Two (2) and the South Half (S½) of the Northeast Quarter (NE¼) of Section 2, Township 23 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in WOLVERINE PETROLEUM CORPORATION; Term 7/24/00

(J) A lease executed to Gypsy Oil Company January 3, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northeast Quarter (NE¼) of Section 31, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(K) A lease executed to Gypsy Oil Company January 3, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northwest Quarter (NW¼) of Section 31, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(L) A lease executed to Matson Oil Company January 25, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southwest Quarter (SW¼) of Section 31, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(M) A lease executed to Matson Oil Company January 25, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of Section 31, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(N) A lease executed to Gypsy Oil Company January 3, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northwest Quarter (NW¼) of Section 32, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(O) A lease executed to Matson Oil Company January 25, 1916, and approved by the Secretary of the Interior May 17, 1915, covering the Southwest Quarter (SW¼) of Section 32, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(P) A lease executed to Matson Oil Company January 25, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of Section 32, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(Q) A lease executed to Standish Oil Company January 6, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of Section 35, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(R) A lease executed to Standish Oil Company January 6, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southwest Quarter (SW¼) of Section 36, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(S) A lease executed to Standish Oil Company January 6, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of Section 36, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in PHILLIPS PETROLEUM COMPANY;

(T) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northwest Quarter (NW¼) of

Section 29, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(U) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northwest Quarter (NW¼) of Section 30, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(V) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northeast Quarter (NE¼) of Section 30, Township 24 North, Range 12 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(W) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southwest Quarter (SW¼) of Section 25, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(X) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of Section 25, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(Y) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Southeast Quarter (SE¼) of Section 26, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(Z) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by

the Secretary of the Interior May 17, 1916, covering the Northeast Quarter (NE¼) of Section 35, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(AA) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northwest Quarter (NW¼) of Section 36, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

(AB) A lease executed to The Prairie Oil & Gas Company February 15, 1916, and approved by the Secretary of the Interior May 17, 1916, covering the Northeast Quarter (NE¼) of Section 36, Township 24 North, Range 11 East, the legal title to said original quarter-section lease, as approved by the Secretary of the Interior, now appearing in SINCLAIR PRAIRIE OIL COMPANY;

said original quarter-section leases covering in the aggregate ~~4478.47~~ 4,158.47 acres, more or less; and

WHEREAS, the present owners and holders of said oil mining leases, as hereinabove described and set forth, are desirous of developing and operating the lands described in said oil mining leases for oil purposes as a unit, for the common benefit of LESSOR and such present owners and holders:

1. NOW, THEREFORE, the LESSOR, in consideration of One Dollar, the receipt whereof is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained and hereby agreed to be paid, observed, and performed by the LESSEES, does hereby demise, grant, lease, and let unto the LESSEES for five (5) years from the date of approval hereof, and as long thereafter as oil is found in paying quantities, all of the oil deposits in or under all of the lands above described, containing 4478.47 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil. All rights, interests, and estates hereby granted by the LESSOR are hereby vested in the LESSEES in the following proportions:

| | |
|---|---|
| WOLVERINE PETROLEUM CORPORATION | 29/100 – 1,298.7563 |
| PHILLIPS PETROLEUM COMPANY | 41/100 – 1,836.1727 |
| SINCLAIR PRAIRIE OIL COMPANY | 30/100 – 1,343.5410 |
| | 4,478.4700 ✓ |

The Act of Congress approved March 2, 1929 (45 Stat. L., 1478), amended Section 1 of the Act of

Congress approved March 3, 1921 (41 Stat. L., 1249), so as to provide in part as follows:

"That all that part of the Act of June 28, 1906, (34 Stat. L., page 539), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes', which reserves to the Osage Tribe the oil, gas, coal, or other minerals, covered by the lands for the selection and division of which provision is made in that Act, is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe until the 8th day of April, 1958, unless otherwise provided by Act of Congress, ..... "

2. The LESSEES agree to pay or cause to be paid to the Superintendent of the Osage Indian Agency at Pawhuska, Oklahoma, for the LESSOR as royalty, the sum of twelve and five-tenths (12.5%) per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price but at not less than the highest posted market price in the Mid-Continent Oil Field on the day of sale or removal, all subject, however, to the following conditions:

(A) That until such time as the amount of such royalty for any one calendar month, computed in volume, shall exceed the average monthly volume of royalty oil produced and saved during the six calendar months immediately preceding the month in which this lease is approved by the Secretary of the Interior (determined on the basis of the royalty provisions of the quarter-section leases hereinabove referred to), the royalty payable hereunder shall never be less in volume, for any one month, than the average monthly volume of royalty oil produced and saved during said six months period as above described, provided that such minimum royalty provision shall not be effective, in any event, for more than the eighteen (18) calendar months next following the month in which this lease is approved by the Secretary of the Interior, and the royalty provisions hereof are determined by the President of the United States.

(B) That in the event the twelve and five-tenths (12.5%) per cent royalty provision first above provided for shall not become effective during said eighteen (18)

months period, the royalty payable hereunder after the expiration of said eighteen (18) months period, and until such time as the twelve and five-tenths (12.5%) percent royalty shall become effective as first above provided, shall be sixteen and two-thirds (16-2/3%) per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease.

It is understood and agreed that in making settlement for royalty oil sold or removed from said premises, the price per barrel shall be the highest posted price per barrel in the Mid-Continent Field for oil of like gravity, but the volume of such oil shall be computed on the basis of 100% tank tables, less the content of foreign substances as determined by the Department of the Interior, and a deduction of 1/20 of 1% for each degree of temperature above normal when artificial heat has been applied, regardless of the method of determining volume provided for in the price posting.

PROVIDED, that the royalty provisions above set forth shall not become effective until 7 o'clock A. M. on the first day of the calendar month next following the month in which this blanket lease is approved by the Secretary of the Interior and the royalty provisions hereof are determined by the President of the United States, and that prior to such day and hour, the LESSEES shall pay their oil royalties on the basis of, and at the graduated rates now stipulated in the quarter-section leases hereinabove referred to.

Should the LESSOR, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the LESSEES shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease.

3. The Secretary of the Interior may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled, when, in his judgment, such action may be necessary or proper for the protection of the natural resources of the leased lands and the interests of the Osage Tribe of Indians; and, in the exercise of his judgment, the Secretary of the Interior may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities, or lawful agreements among operators regulating either drilling or production, or both.

It is understood and agreed that the lands covered by this lease are now producing oil; and it is agreed that no additional well or wells shall be drilled on any restricted homestead selection until the consent of the Secretary of the Interior to drilling on such homestead shall have been given: PROVIDED, further that whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production, he may direct the suspension of drilling operations on this lease.

4. LESSEES shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the

rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing future drilling operations, the LESSEES shall pay to the surface owner the sum of One Hundred Dollars ($100.00) for each well located on cultivated land, or land suitable for cultivation, and Thirty-Five Dollars ($35.00) for each location on land not susceptible to cultivation. Upon payment of such location site money, LESSEES shall be entitled to possession of such location site. Location sites shall not exceed one and one-half acres in area. LESSEES shall also pay Ten Dollars ($10.00) for each site outside of a well location hereafter put to use for oil tanks of not exceeding 1600 barrels capacity, allowing 50 feet square for each tank-site. The sum to be paid for an oil tank-site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the LESSEES, and on failure to agree, the same shall be fixed by arbitration. If any surface owner of all or any part of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the LESSEES shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee through the Superintendent of the Osage Indian Agency, to be credited on the loan.

All claims for damages for use of the surface other than that included in the location and tank sites, all claims for damages to growing crops or improvements on the lands, and all other claims for damages to the surface owners, or their lessees arising from operations of the oil LESSEES shall be settled by arbitration whenever the parties are unable to agree concerning the same. But nothing herein contained shall be construed to deny to either party to the controversy the right to appeal to the courts in the event he is dissatisfied with the award to or against him.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency, if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the Superintendent and by him immediately remitted to the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment and unsold oil on leased premises.

5. The LESSEES shall carry on operations in a workmanlike manner, commit no waste and suffer none to be committed upon the land, nor permit any nuisance to be maintained on the premises under their control, nor allow any intoxicating liquors to be introduced, brought upon, sold, or given away for any purposes on such premises; also keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

All buildings and permanent improvements, unless otherwise provided by written agreement filed with the Osage Superintendent, including casings of all producing wells drilled on the premises, shall remain a part of said land and become the property of the respective surface owners at expiration of the lease, excepting tools, tanks, boiler houses, pipe lines, pumping and drilling outfits, derricks, engines, machinery, and the casings of all dry or nonpaying wells. The casings of wells drilled less than three years prior to and producing oil on the expiration of the lease remain the property of the oil LESSEES: PROVIDED, That such casings shall not be removed from the wells but shall be purchased from the LESSEES by the owner of the oil rights at such price as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

6. The LESSEES accept this lease with the understanding that the lands covered thereby are leased, or may be leased, to some other party who shall have the exclusive right to all gas except as herein provided.

7. If the oil LESSEES shall drill a gas well they shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the Superintendent. In the event the gas lessee does not within thirty days after receiving notice elect to take over such well and reimburse the oil LESSEES the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing, and other equipment, the oil LESSEES shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the Superintendent.

8. If the gas lessee shall drill an oil well upon the lands described herein, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil LESSEES and the Superintendent. In the event the oil LESSEES do not, within thirty days after receipt of notice, elect to take over such well, they shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the Superintendent. Should the oil LESSEES elect to take over the well, they shall pay the gas lessee the cost of drilling the same, including all damages paid in addition to the cost in place of casing and other equipment.

9. If the oil LESSEES shall drill a well which produces both oil and gas in commercial quantities from the same sand, they shall immediately notify the gas lessee and together they shall arrange for the separation and utilization of the oil and gas, and the cost pertaining to said well.

10. Whenever oil and gas are found in separate sands, and the oil LESSEES desire to drill through the gas sand for the oil, they may do so provided the method of protecting the gas sand shall be approved by the Inspector.

11. If at any time any oil or gas well becomes unprofitable and the oil LESSEES or gas lessees desire to deepen the same, such action as may be mutually agreed upon may be taken not in conflict with the regulations. Upon failure to agree, the disposition of such well shall be subject to the approval of the Superintendent.

12. All casinghead gas shall belong to the oil LESSEES, and when used for the manufacture of gasoline, shall be metered and be subject to a royalty of sixteen and two-thirds (16-2/3%) per cent, based on the market value of the gasoline contents, and all such gas not utilized by the oil LESSEES on the leased premises, or for operating other adjoining leases within the Osage Reservation, shall belong to the gas lessee, subject to the prescribed royalty of sixteen and two-thirds (16-2/3%) per cent: PROVIDED, that in the application of this paragraph, and the determination of the relative rights of the oil LESSEES and gas lessees thereunder, the tract covered by each of the quarter-section leases hereinabove referred to shall be dealt with as a separate entity and holding.

13. The gas lessee shall furnish the oil LESSEES, free of royalty, sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree, the rate shall be fixed by arbitration; PROVIDED, that the oil LESSEES shall make necessary connections between the well and the meter whenever possible.

14. The oil LESSEES may at any time, by paying to the Superintendent of the Osage Indian Agency at Pawhuska, Oklahoma, all sums then due the LESSOR hereunder, and the further sum of One Dollar ($1.00), surrender this lease as to any specific quarter section covered hereby, and have the lease cancelled as to the lands surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered: PROVIDED, that if this lease has been recorded, the LESSEES shall execute a release of the specific quarter section surrendered and record the same in the proper office.

15. All amounts due and payable under this lease shall be paid to the Superintendent in a form of exchange or certified check on a solvent member bank of the Federal Reserve System, except that where such exchange cannot be procured, post office or express money orders will be accepted.

16. This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of this lease: PROVIDED, that no regulations made after the approval of this lease shall operate to affect the term of the lease, rate of royalty, or acreage, unless agreed to by both parties.

17. Violation of any of the terms or conditions of this lease or of the regulations pertaining thereto, shall subject the lease to cancellation by the Secretary of the Interior, or the LESSEES to a fine of not exceeding Five Hundred Dollars per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Secretary of the Interior: PROVIDED, that the LESSEES shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations or orders violated, which hearing shall be held by the Superintendent whose findings shall be conclusive unless an appeal be taken to the Secretary of the Interior within thirty (30) days after notice of the Superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive.

18. Before this lease shall be in force and effect the LESSEES shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Indian Office.

19. Assignment of this lease, or any interest therein, may be made with the approval of the Secretary of the Interior, and not otherwise.

20. Concurrently with the approval of this lease by the Secretary of the Interior, and the determination of the royalty provisions hereof by the President of the United States, all of the separately owned quarter-section leases first described in this blanket lease shall be deemed cancelled and of no further force and effect, it being the intention of the parties that this blanket lease shall operate as a substitute for the said separately owned quarter-section leases first described in this instrument: PROVIDED, that the LESSEES herein, subject to the conditions of the second paragraph of Section 5 hereof, dealing with the disposition of buildings and permanent improvements, shall remain the owners of all personal property and lease equipment, of whatsoever description, installed on the lands covered by this blanket lease by the lessees holding separate quarter-section leases on said lands; the intent and meaning of this paragraph being that the LESSEES, according to their respective undivided interests under this blanket lease, shall be and remain the owners of all said personal property and lease equipment installed during the period the quarter-section leases, for which this blanket lease is a substitute, were in effect.

21. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

IN WITNESS WHEREOF, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned.

Two witnesses to execution by LESSOR:

Post Office, Pawhuska, Okla.

Post Office, Pawhuska, Okla.

(SEAL)
Principal Chief

ATTEST: ____________
Secretary

Two witnesses to execution by LESSEES:

Post Office, Tulsa Okla

Post Office, Tulsa OK

WOLVERINE PETROLEUM CORPORATION

By ____________
Vice President

ATTEST: ____________
Secretary

APPROVED:
Legal
Land
Geo.-Prod.
Crude

Post Office, Bartlesville Okla.

Post Office, Bartlesville, Okla.

PHILLIPS PETROLEUM COMPANY

By ____________
Vice President

ATTEST: ____________
Secretary

Approved as to form on behalf of Phillips Petroleum Co.
Attorney

Post Office, Tulsa Okla

Post Office, Tulsa Okla

SINCLAIR PRAIRIE OIL COMPANY

By ____________
President

ATTEST: ____________
Secretary

APPROVED AS TO FORM
LEGAL DEPARTMENT

STATE OF OKLAHOMA )
) SS
COUNTY OF OSAGE )

Before me, a Notary Public, on this ________ day of JUL 7 1936, 19____, personally appeared FRED LOOKOUT, to me known to be the Principal Chief of the Osage Tribe, and the identical person who executed the within and foregoing lease, and acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Tribe and in accordance with the authority given him by the Osage Tribal Council.

[signature]
Notary Public

My Commission expires:
FEB 20 1940.

* * * * *

STATE OF MISSOURI )
) SS
CITY OF SAINT LOUIS )

On this 29th day of June, A.D. 1936, before me, a Notary Public within and for the State and City aforesaid, personally appeared J. W. Watson and E. S. Gentry, to me personally known, who being by me duly sworn, did each say that J. W. Watson is the Vice President and E. S. Gentry is the Secretary of WOLVERINE PETROLEUM CORPORATION, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors; and said J. W. Watson and E. S. Gentry duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 29th day of June, 1936.

[signature]
Notary Public

My Commission expires:
June 14, 1938.

STATE OF OKLAHOMA )
) SS
COUNTY OF WASHINGTON )

On this 22nd day of June, A. D., 1936, before me, a Notary Public within and for the State and County aforesaid personally appeared J. M. Sands and B. J. Stradley, to me personally known, who being by me duly sworn, did each say that J. M. Sands is the Vice President and B. J. Stradley is the — Secretary of PHILLIPS PETROLEUM COMPANY, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said J. M. Sands and B. J. Stradley duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 22nd day of June, 1936.

Marie Latenia
Notary Public

My Commission expires:

February 13, 1940

* * * * *

STATE OF OKLAHOMA )
) SS
COUNTY OF TULSA )

On this 20th day of June, A. D., 1936, before me, a Notary Public within and for the State and County aforesaid, personally appeared H. L. Phillips and A. E. Barrows, to me personally known, who being by me duly sworn, did each say that H. L. Phillips is the — President and A. E. Barrows is the — Secretary of SINCLAIR PRAIRIE OIL COMPANY, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said H. L. Phillips and A. E. Barrows duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 20th day of June, 1936.

V. V. Hammond
Notary Public

My Commission expires:

Nov 5-1939.

DEPARTMENT OF THE INTERIOR
UNITED STATES INDIAN SERVICE

Osage Agency, Pawhuska, Okla.,
JUL 9 1936, 19__.

The within lease is forwarded to the Commissioner of Indian Affairs with recommendation that it be APPROVED.

See my report of even date.

C. L. Ellis
~~Acting~~ Superintendent

OFFICE OF INDIAN AFFAIRS

Washington, D. C.
AUG 24 1936, 19__.

Respectfully submitted to the Secretary of the Interior with recommendation that it be APPROVED.

(Signed) John Herrick
ASSISTANT TO THE Commissioner

Washington, D. C.
SEP 8 1936, 19__.

The within lease is APPROVED.

(SGD) CHARLES WEST,
Under ~~Assistant~~ Secretary of the Interior.