EXHIBIT E

Execution Copy
(As Enlarged)

I-765

BLANKET OIL MINING LEASE, OSAGE RESERVATION, OKLAHOMA

NORTH BURBANK UNIT

CONTRACT NUMBER
I-68-Ind 25667

THIS LEASE, made and entered into in quadruplicate this 16th day of August, 1950, by and between the OSAGE TRIBE OF INDIANS in Oklahoma, by CHARLES LOOKOUT, Assistant Principal Chief, under authority of a Resolution of the Osage Tribal Council dated August 16, 1950, party of the first part, designated as LESSOR, and ROYAL OIL AND GAS CORPORATION, a corporation with an office at Tulsa, Oklahoma, PHILLIPS PETROLEUM COMPANY, a corporation with an office at Bartlesville, Oklahoma, SKELLY OIL COMPANY, a corporation with an office at Tulsa, Oklahoma, CONTINENTAL OIL COMPANY, a corporation with an office at Ponca City, Oklahoma, THE DEVONIAN COMPANY, a corporation with an office at Tulsa, Oklahoma, CITIES SERVICE OIL COMPANY, a corporation with an office at Bartlesville, Oklahoma, MID-CONTINENT PETROLEUM CORPORATION, a corporation with an office at Tulsa, Oklahoma, SINCLAIR OIL & GAS COMPANY (formerly Sinclair Prairie Oil Company), a corporation with an office at Tulsa, Oklahoma, THE OHIO OIL COMPANY, a corporation with an office at Tulsa, Oklahoma, KEWANEE OIL COMPANY, a corporation with an office at Tulsa, Oklahoma, THE TEXAS COMPANY, a corporation with an office at Tulsa, Oklahoma, GULF OIL CORPORATION, a corporation with an office at Tulsa, Oklahoma, SOHIO PETROLEUM COMPANY, a corporation with an office at Oklahoma City, Oklahoma, NATHAN APPLEMAN, of New York, New York, JANET G. APPLEMAN, of New York, New York, JOHN T. EMERY, of Tulsa, Oklahoma, J. C. PARKS, of Tulsa, Oklahoma, and MARJORIE R. BRITT, of Pawhuska, Oklahoma, parties of the second part, designated as LESSEES under and in pursuance of Section 3 of the Act approved June 28, 1906 (34 Stat. L., 539-543); the Act approved March 3, 1921 (41 Stat. L., 1249), and the Act of March 2, 1929 (45 Stat. L., 1478), and the Act of June 24, 1938 (52 Stat. 1034), WITNESSETH:

WHEREAS, lessees, in varying interests, are the owners of a Blanket Oil Mining Lease No. I 68-IND-23988, and the lessee, Phillips Petroleum Company is the owner of Oil Mining Leases Nos. I 68-IND-24786, I 68-IND-24790, I 68-IND-24789, I 68-IND-24788 and I 68-IND-24787, and the lessee, Kewanee Oil Company, is the owner of Oil Mining Leases Nos. I 68-IND-852 and I 68-IND-19909, duly executed for and on behalf of the Osage Tribe under authority of resolutions of the Osage Tribal Council and thereafter approved by the Secretary of the Interior, as now shown by the records of the Osage Indian Agency at Pawhuska, Oklahoma, covering lands in Osage County, Oklahoma, located in the North Burbank Pool, lying within the outer boundaries indicated on the map hereto attached and marked Exhibit "B" and more particularly described in the schedule hereto attached marked Exhibit "A".

WHEREAS, the lessees coincident with their execution of this lease are executing a unit Operating Contract in writing and of like date herewith with respect to and providing for the unit operation of the lands covered hereby, for the common benefit of the lessor and lessees, a copy of which is hereto attached and made a part of this lease;

1. NOW, THEREFORE, the lessor, in consideration of One Dollar, the receipt whereof is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained and hereby agreed to be paid, observed and performed by the lessees, does hereby demise, grant, lease and let unto the lessees for five (5) years from the effective date hereof, and as long thereafter as oil is produced in paying quantities, all of the oil deposits in or under all of the lands above described, containing 23,080 acres, more or less, with the exclusive right to extract, pipe, store and remove oil. All rights, interests and estates hereby granted by the lessor are hereby vested in the lessees in the following proportions:

| LESSEE | PROPORTION OF INTEREST |
|---|---|
| Royal Oil and Gas Corporation | .0087260 |
| Phillips Petroleum Company | .5329461 |
| Skelly Oil Company | .0588493 |
| Continental Oil Company | .0165535 |
| The Devonian Company | .0041609 |
| Cities Service Oil Company | .0236345 |
| Mid-Continent Petroleum Corporation | .0432292 |
| Sinclair Oil & Gas Company | .1102351 |
| The Ohio Oil Company | .0265051 |
| The Texas Company | .0342971 |
| Kewanee Oil Company | .0085000 |
| Gulf Oil Corporation | .1164675 |
| Sohio Petroleum Company | .0060715 |
| Nathan Appleman | .0071548 |
| Janet G. Appleman | .0025666 |
| John T. Emery | .0000257 |
| J. C. Parks | .0000257 |
| Marjorie R. Britt | .0000514 |
| | 1.0000000 |

The Act of June 24, 1938 (52 Stat. 1034), amended section one of the Act of March 2, 1929 (45 Stat. 1478) so as to provide in part as follows:

"That all that part of the Act of June 28, 1906, (34 Stat. L., page 539), entitled, 'An Act for the division of lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal or other minerals, covered by the lands for the selection and division of which provision is made in that Act, is hereby amended so that the oil, gas, coal or other minerals, covered by said lands are reserved to the Osage Tribe until the 8th day of April, 1983, unless otherwise provided by Act of Congress."

2. The lessees agree to pay, or cause to be paid, to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty on oil produced from the leased premises:

(a) The sum of sixteen and two-thirds (16 2/3) per cent of the gross proceeds from the sales, after deducting the oil used for fuel in operating the lease, of the first 150,000 barrels of crude oil produced from the Burbank Sand (or such volume as is produced if less than 150,000 barrels) during each calendar month from and after the effective date hereof until the total volume of crude oil produced from the Burbank Sand on which such sixteen and two-thirds (16 2/3) per cent royalty shall have been paid shall equal 20,190,000 barrels less the volume of oil produced between November 14, 1949 and the effective date hereof from the lands covered by the prior Blanket Oil Mining Lease No. I 68-IND-23988 covering a portion of the leased premises; and

(b) The sum of twelve and one-half (12 1/2) per cent of the gross proceeds from the sale of all crude oil produced from the Burbank Sand in excess of the volumes of crude oil used for fuel in operating the lease and the volume of crude oil on which said sixteen and two-thirds (16 2/3) per cent is agreed to be paid as provided in (a) last above; and

(c) The sum of sixteen and two-thirds (16 2/3) per cent of the gross proceeds from sales, after deducting the oil used for fuel in operating the lease, of all oil produced and saved from sands other than the Burbank Sand; provided, if when the quantity of oil produced from sands other than the Burbank Sand during any calendar month is sufficient to average 100 or more barrels per well per day, the royalty on such oil shall be twenty (20) per cent.

Payment for the royalty payable hereunder shall be made at the time of sale or removal of the oil from the leased premises, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at no less than the highest posted market price in the Mid-Continent Field on the day of sale or removal.

Should the lessor with the approval of the Secretary of the Interior elect to take the royalty in oil, lessees shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the executive departments of the United States Government shall have the option to purchase at the highest posted price on the day of sale all or any part of the oil produced from this lease. The Secretary of the Interior, in his discretion, may impose restrictions on oil production when necessary as conservation measures and to conform to similar restrictions imposed on other wells in Oklahoma by state authority or agreement of operators.

As the primary and moving consideration for the granting of this lease, lessees agree that, in addition to the continuation of operations now being conducted on the leased premises, lessees will with diligence continue the development of the Burbank Sand underlying the leased premises by secondary development by the process known as the "water-flood process" as long as development and operation of said sand by said water-flood process can be conducted profitably.

The Unit Operator shall on or before December 31, 1950, and on or before December 31st of each year thereafter, submit to the Superintendent its plan of development and operation for the unit area for the ensuing year.

3. Inasmuch as the land covered by this blanket lease is producing oil in paying quantities, the rental provisions of paragraph numbered three of the printed Oil Mining Lease, prescribed by the regulations of the Secretary of the Interior (Form B) shall not apply to this blanket lease: PROVIDED, no well may be drilled on any restricted homestead selection until the consent of the Secretary of the Interior to drilling on such homestead shall have been given; PROVIDED, further, that whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production, he may direct the suspension of drilling operations on this lease.

4. Lessees shall have the right to use so much of the surface of the land and such water on the premises [illegible] as may be necessary for operations [illegible], including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations, the lessees shall pay to the surface owner the sum of One Hundred Dollars for each well located on cultivated land, or land suitable for cultivation, and Thirty-Five Dollars for each location on land not susceptible to cultivation. Upon payment of such location-site money, lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessees shall also pay Ten Dollars for each site outside of the well location used for oil tanks of not exceeding 1600 barrels capacity, allowing 50 feet square for each tank site. The sum to be paid for an oil tank-site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

> SEE ATTACHED AUTHORITY FROM ALL CO-SIGNERS FOR T. B. HALL AS SUPERINTENDENT OF OSAGE AGENCY, PAWHUSKA, OKLAHOMA TO CORRECT THIS DOCUMENT

The well site and tank location fees herein stated shall not apply to sites for which payment has heretofore been made.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the lessee shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent, to be credited on the loan.

All claims for damages for use of the surface other than that included in the location and tank sites, all claims for damages to growing crops or improvements on the lands, and all claims for damages to the surface owners, or their lessees, arising from operations of the oil lessees shall be settled by arbitration whenever the parties are unable to agree concerning the same. But nothing herein contained shall be construed to deny to either party to the controversy the right to appeal to the courts in the event he is dissatisfied with the award to or against him.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency, if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the Superintendent and by him immediately remitted to the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment and unsold oil on leased premises.

5. The lessees shall carry on operations in a workmanlike manner, commit no waste and suffer none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control, nor allow any intoxicating liquors to be introduced, brought upon, sold, or given away for any purposes on such premises, also keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

All buildings and permanent improvements, unless otherwise provided by written agreement filed with the Superintendent, including casings of all producing wells on the premises, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipe lines, pumping and drilling outfits, derricks, engines, machinery and the casings of all dry or nonpaying wells. The casings of wells drilled less than three years prior to and producing oil on the expiration of the Osage mineral period remain the property of the oil lessees: PROVIDED, that such casings shall not be removed from the wells but shall be purchased from the lessees by the owner of the oil rights at such price as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

When any well, covered by this blanket lease, shall be plugged and abandoned, the lessees, within 90 days, shall clean up the premises around such well to the satisfaction of the Superintendent, or his authorized representative.

6. The lessees accept this lease with the understanding that the lands covered thereby may be leased to some other party who shall have the exclusive right to all gas except as herein provided.

7. If the oil lessees shall drill a gas well they shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the Superintendent. In the event the gas lessee does not within thirty days after receiving notice elect to take over such well and reimburse the oil lessees the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing and other equipment, the oil lessees shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the Superintendent.

8. If the gas lessee shall drill an oil well upon the lands described herein, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessees and the Superintendent. In the event the oil lessees do not, within thirty days after receipt of notice, elect to take over such well, they shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the Superintendent. Should the oil lessees elect to take over the well, they shall pay the gas lessee the cost of drilling the same, including all damages paid, in addition to the cost in place of casing and other equipment.

9. If the oil lessees shall drill a well which produces both oil and gas in commercial quantities from the same sand, they shall immediately notify the gas lessee and together they shall arrange for the separation and utilization of the oil and gas, and the cost pertaining to said well.

10. When oil and gas are found in separate sands, and the oil lessees desire to drill through the gas sand for the oil, they may do so provided the method of protecting the gas sand shall be approved by the Inspector.

11. If at any time any oil or gas well becomes unprofitable and the oil or gas lessees desire to deepen the same, such action as may be mutually agreed upon may be taken not in conflict with the regulations. Upon failure to agree, the disposition of such well shall be subject to the approval of the Superintendent.

12. All casinghead gas shall belong to the oil lessees and when used for the manufacture of gasoline shall be metered and be subject to a royalty of 16 2/3 per cent., based on the market value of the gasoline content, and all such gas not utilized by the oil lessees on the leased premises shall belong to the gas lessee, subject to the prescribed royalty of 16 2/3 per cent.

13. The gas lessee shall furnish the oil lessees, free of royalty, sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: PROVIDED, that the oil lessees shall make necessary connections between the well and the meter whenever possible.

14. The oil lessees, subject to the approval of the Secretary of the Interior, may surrender this lease as to any specific quarter section covered hereby: PROVIDED, if this lease has been recorded, the lessees shall execute a release of the specific quarter section surrendered and record the same in the proper office.

15. All amounts due and payable under this lease shall be paid to the Superintendent in St. Louis or Kansas City exchange, except that where such exchange cannot be procured, post office or express money orders will be accepted.

16. This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of this lease: PROVIDED, that no regulations made after the approval of this lease shall operate to affect the term of lease, rate of royalty, rental or acreage, unless agreed to by both parties.

17. Violation of any of the terms or conditions of this lease or of the regulations pertaining thereto, shall subject the lease to cancellation by the Secretary of the Interior, or the lessees to a fine of not exceeding Five Hundred Dollars per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Secretary of the Interior: PROVIDED, that the lessees shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent whose findings shall be conclusive unless an appeal be taken to the Secretary of the Interior within 30 days after notice of the Superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive.

18. Before this lease shall be in force and effect the lessees shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Osage Agency.

19. Assignment of this lease, or any interest therein by Operating Agreement or otherwise, may be made with the approval of the Secretary of the Interior, and not otherwise.

20. This lease shall become and be effective as of 7:00 A.M. on the first day of the calendar month next succeeding final approval hereof by the Secretary of the Interior, from and after which said effective date the aforesaid Blanket Oil Mining Lease No. I-68-IND-23988 and said quarter section oil mining leases numbered I 68-IND-24786, I 68-IND-24790, I 68-IND-24789, I 68-IND-24788, I 68-IND-24787, I 68-IND-852 and I 68-IND-19909 shall be deemed consolidated with and merged into the single leasehold estate covered hereby, and amended and modified as herein provided, it being the intention of the parties that this blanket lease shall operate as a consolidation and modification of said previously existing leases first described in this instrument.

21. Lessees agree to indemnify and save harmless the Osage Tribe of Indians and the United States Government against any liability for damages arising through or resulting from water-flood operations on the leased premises.

22. The approval of this lease by the Secretary of the Interior shall likewise constitute the approval of the Secretary of the Interior of the unit Operating Contract, a copy of which is hereto attached and made a part of this lease.

23. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors and lawful assigns of the parties hereto.

IN WITNESS WHEREOF, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned.

Two witnesses to execution by Lessor:

(SEAL)

[signature]
Post Office, Pawhuska, Oklahoma

[signature]
ASSISTANT Principal Chief

Post Office, Pawhuska, Oklahoma

ATTEST: William O. Cooper
Secretary

Two witnesses to execution by Lessee:

W. D. Robinson
Upper Darby, Pa.
Address

George Winters Jr.
Bryn Mawr Pa.
Address

[signature]
Bartlesville, Okla.
Address

[signature]
[signature]
Address

ROYAL OIL AND GAS CORPORATION

By [signature]
VICE President

ATTEST: [signature]
Secretary

PHILLIPS PETROLEUM COMPANY

APPROVED AS TO FORM
By [signature] Attorney

By [signature]
Vice President

ATTEST: [signature]
Asst Secretary

[illegible]

Tulsa, Oklahoma

Address

[illegible]

[illegible]

Address

[illegible]

Houston, Texas

Address

Dean S. Duckett

Houston, Texas

Address

Dorothy Hayfield

Tulsa, Okla.

Address

[illegible]

Tulsa, Oklahoma

Address

[illegible]

Bartlesville, Okla.

Address

[illegible]

Bartlesville, Okla

Address

[illegible]

Tulsa, Oklahoma

Address

[illegible]

[illegible]

Address

SKELLY OIL COMPANY

By [illegible]

President

ATTEST: [illegible]

Secretary

CONTINENTAL OIL COMPANY

By [illegible]

Vice President

ATTEST: Richard Jackson

Asst. Secretary

THE DEVONIAN COMPANY

By [illegible]

President

ATTEST: [illegible]

Secretary

CITIES SERVICE OIL COMPANY

By Sam Hassen

Vice President

ATTEST: [illegible]

Asst. Secretary

MID-CONTINENT PETROLEUM CORPORATION

By [illegible]

President

A. L. PIERCE, VICE PRESIDENT

ATTEST: [illegible]

ASSISTANT Secretary [illegible] KNEALE

Tulsa Oklahoma
Address

Address

Findlay
Address

Ruth Wadsworth
Findlay Ohio
Address

Anna C. Smith
Philadelphia, Pa.
Address

Edith M. Poherman
Philadelphia, Pa.
Address

Tulsa Okla
Address

Howard Johnson
Tulsa, Okla.
Address

Tulsa Okla
Address

Tulsa Oklahoma
Address

SINCLAIR OIL & GAS COMPANY

By ____________________
Vice President J. W. JORDAN, VICE-PRESIDENT

ATTEST: V. C. Bash
Secretary V. C. BASH

THE OHIO OIL COMPANY

By ____________________
Vice-President

ATTEST: ____________________
Assistant Secretary

KEWANEE OIL COMPANY

By ____________________
President

ATTEST: ____________________
Secretary

THE TEXAS COMPANY

By ____________________
Att President

ATTEST: ____________________
Secretary

GULF OIL CORPORATION

By ____________________
Vice President

ATTEST: ____________________
Secretary

Cleveland Ohio
Address

Charles F. Andrews
Cleveland, Ohio
Address

Sarah Freed
New York, N.Y.
Address

Address

Sarah Freed
New York, N.Y.
Address

Address

Address

Address

Address

Address

Address

SOHIO PETROLEUM COMPANY

By
Vice President

ATTEST:
Asst Secretary

NATHAN APPLEMAN

JANET G. APPLEMAN

John T. Emery
JOHN T. EMERY

J. C. PARKS

MARJORIE R. BRITT

STATE OF OKLAHOMA )
) SS
COUNTY OF OSAGE )

Before me, a Notary Public, on this 16 day of Aug., 1950, personally appeared CHARLES LOOKOUT, to me known to be the Assistant Principal Chief of the Osage Tribe, and the identical person who executed the within and foregoing instrument, and acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Tribe and in accordance with the authority given him by the Osage Tribal Council.

Given under my hand and seal of office the day and year last above written.

S. Sabolleary
Notary Public

My commission expires:
My Commission Expires Aug. 5, 1951

STATE OF Pennsylvania )
) SS
COUNTY OF Philadelphia )

Before me, the undersigned, a Notary Public in and for said county and state, on this 31 day of August, 1950, personally appeared W. D. Clark, to me known to be the identical person who subscribed the name of ROYAL OIL AND GAS CORPORATION to the foregoing instrument as its Vice President and acknowledged to me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

Harriet Weingarten
Notary Public

My commission expires:
March 6- 1951

STATE OF OKLAHOMA )
) SS
COUNTY OF WASHINGTON )

Before me, the undersigned, a Notary Public in and for said county and state, on this 22 day of August, 1950, personally appeared Stanley Learned, to me known to be the identical person who subscribed the name of PHILLIPS PETROLEUM COMPANY to the foregoing instrument as its Vice President and acknowledged to me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

Ray E. Huling
Notary Public
RAY E. HULING

My commission expires:
My Commission Expires Aug. 19, 1952

STATE OF [illegible] )
) SS
COUNTY OF [illegible] )

Before me, the undersigned, a Notary Public in and for said county and state, on this [illegible] day of [illegible], 1950, personally appeared [illegible], to me known to be the identical person who subscribed the name of SKELLY OIL COMPANY to the foregoing instrument as its ____ President and acknowledged to me that he executed the same as his free and voluntary act and deed and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

[illegible]
Notary Public

My commission expires:

[illegible] 195[illegible]

STATE OF [illegible] )
) SS
COUNTY OF [illegible] )

Before me, the undersigned, a Notary Public in and for said county and state, on this [illegible] day of Sept., 1950, personally appeared [illegible], to me known to be the identical person who subscribed the name of CONTINENTAL OIL COMPANY to the foregoing instrument as its [illegible] President and acknowledged to me that he executed the same as his free and voluntary act and deed and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

[illegible]
Notary Public

My commission expires:
MARGUERITE E. BRILLY, NOTARY PUBLIC IN AND FOR HARRIS COUNTY, TEXAS
My Commission Expires June 1, 195[illegible]

STATE OF [illegible] )
) SS
COUNTY OF [illegible] )

Before me, the undersigned, a Notary Public in and for said county and state, on this [illegible] day of [illegible], 1950, personally appeared [illegible], to me known to be the identical person who subscribed the name of THE DEVONIAN COMPANY to the foregoing instrument as its Vice President and acknowledged to me that he executed the same as his free and voluntary act and deed and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

Helen M. Egan
Notary Public

My commission expires:
My Commission Expires April 2, 1953

STATE OF __________ )
                    ) ss
COUNTY OF _________ )

Before me, the undersigned, a Notary Public in and for said county and state, on this ____ day of __________, 1950, personally appeared MARJORIE R. BRITT, to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

My commission expires:

My Commission Expires April 7, 1953

C A Phillips
Notary Public

UNITED STATES

DEPARTMENT OF THE INTERIOR

BUREAU OF INDIAN AFFAIRS

OSAGE AGENCY

Pawhuska, Oklahoma
December 12, 1950

Approved pursuant to special delegation of authority from the Secretary of the Interior to the Superintendent of Osage Agency by letter dated November 27, 1950.

T. B. HALL

T. B. Hall, Superintendent

KNOW ALL MEN BY THESE PRESENTS: 32795

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil [illegible] consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to ~~the owner~~ and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the ~~making of said~~ change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this ______day of October, 1950.

~~Two witnesses~~ to execution by Lessee: C. W. [illegible] (Name of Lessee)

H. N. Brown

B W Johnson

Address

By______________________ President

[illegible]

[illegible]

Address

ATTEST: ______________________ Secretary

17

[illegible] RECEIVED 32796 OSAGE AGENCY

ACKNOWLEDGMENT OF CORPORATION

STATE OF ______ )
) SS
COUNTY OF ______ )

On this ______ day of ____________, A.D., 1950, before me, a ____________________ within and for the State and County, aforesaid, personally appeared ________________________ and ________________________, to me personally known, who being by me duly sworn, did each say that ________________________ is the ________ president and ________________________ is the ____________ secretary of ________________________, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ________________ and ________________ duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ______ day of ____________, 1950.

________________________

________________________

My commission expires ____________________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this 8th day of November, 1950, personally appeared [illegible], to me known to be the identical person ________________ who executed the within and foregoing lease, and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

Elva S. Lucas
Notary Public

My commission expires Dec. 8, 19[illegible].

32794

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil [illegible] consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the [illegible]ent page of the lease, so as to read as follows:

> "Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 15th day of ~~October~~ November, 1950.

Two witnesses to execution by Lessee:

John P. McClain
1507 E. 16th Tulsa
Address

Jean M. Andrews
Pampa, Texas
Address

John T. Emery
(Name of Lessee)

By______________________
President

ATTEST: ______________________
Secretary

32795

ACKNOWLEDGMENT OF CORPORATION

STATE OF Oklahoma
COUNTY OF Tulsa

On this 15th day of November, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared John G. Emery and ________, to me personally known, who being by me duly sworn, did each say that ________ is the ________ president and ________ is the ________ secretary of ________, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ________ and ________ duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ____ day of ________, 1950.

________________________

________________________

My commission expires ________________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF Oklahoma }
COUNTY OF Tulsa } SS

Before me, a Notary Public, in and for said County and State, on this 15th day of Nov, 1950, personally appeared John G. Emery, to me known to be the identical person John G. Emery who executed the within and foregoing lease, and acknowledged to me that John G. Emery executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

________________________
Notary Public

My commission expires Aug. 22, 1950

32793

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 23 day of October, 1950.

Two witnesses to execution by Lessee:

______________________

______________________
Address

______________________

______________________
Address

______________________
(Name of Lessee)

By______________________
President

ATTEST: ______________________
Secretary

MISCELLANEOUS RECEIVED 32794 OSAGE AGENCY

ACKNOWLEDGMENT OF CORPORATION

STATE OF )
) SS
COUNTY OF )

On this _____ day of ____________, A.D., 1950, before me, a _______________ within and for the State and County, aforesaid, personally appeared ______________________ and ______________________, to me personally known, who being by me duly sworn, did each say that ______________________ is the _______president and ______________________ is the _____________ secretary of ______________________, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ______________ and ______________ duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this _____day of ____________, 1950.

______________________________

______________________________

My commission expires ____________________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF *NEW YORK* )
) SS
COUNTY OF *NEW YORK* )

Before me, a Notary Public, in and for said County and State, on this *23* day of *OCTOBER*, 1950, personally appeared *NATHAN APPLEMAN, ATTY. IN FACT* ~~FOR~~ *JANET G. APPLEMAN* to me known to be the identical person _______________ who executed the within and foregoing lease, and acknowledged to me that *HE* executed the same as *HIS* free and voluntary act and deed for the uses and purposes therein set forth.

*Sarah F. Smith*
Notary Public

My commission expires *3-30-52*.

SARAH F. SMITH
Notary Public, State of New York
No. [illegible]
Qualified in Kings County
Certs. filed with N.Y. Co. Clerk
Commission Expires March 30, 1952

KNOW ALL MEN BY THESE PRESENTS: 382792

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar [illegible] from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "I" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 23 day of October, 1950.

Two witnesses to execution by Lessee:

Sarah F. Smith
New York N.Y.
Address

Katie Lopper
New York N.Y.
Address

[signature]
(Name of Lessee)

By______________
President

ATTEST: ______________
Secretary

MISCELLANEOUS RECEIVED 32793

ACKNOWLEDGMENT OF CORPORATION

STATE OF
COUNTY OF } SS

On this _____ day of __________, A.D., 1950, before me, a __________ within and for the State and County, aforesaid, personally appeared __________ and __________, to me personally known, who being by me duly sworn, did each say that __________ is the _____ president and __________ is the __________ secretary of __________, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said __________ and __________ duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this _____ day of __________, 1950.

__________

__________

My commission expires __________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF NEW YORK
COUNTY OF NEW YORK } SS

Before me, a Notary Public, in and for said County and State, on this 23 day of OCTOBER, 1950, personally appeared NATHAN APPLEMAN, to me known to be the identical person __________ who executed the within and foregoing lease, and acknowledged to me that HE executed the same as HIS free and voluntary act and deed for the uses and purposes therein set forth.

Sarah F. Smith
Notary Public

My commission expires 3-30-52.

SARAH F. SMITH
Notary Public, State of New York
No. 24-0083750
Qualified in Kings County
Certs. filed with N.Y. Co. Clerk
Commission Expires March 30, 1952

KNOW ALL MEN BY THESE PRESENTS: 32791

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject [illegible] agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 26 day of October, 1950.

Two witnesses to execution by Lessee:

Flora [illegible]
Cleveland, Ohio
Address

Charles F. Andrews
Cleveland Ohio
Address

Sohio Petroleum Company
(Name of Lessee)

By [signature]
Vice President

ATTEST: A. W. Evans
Asst. Secretary

MISCELLANEOUS
RECEIVED
32792
OSAGE AGENCY

ACKNOWLEDGMENT OF CORPORATION

STATE OF Ohio )
COUNTY OF Cuyahoga ) SS

On this 26th day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared R. W. French and G. W. Evans, to me personally known, who being by me duly sworn, did each say that R. W. French is the Vice president and G. W. Evans is the Ass't. secretary of Sohio Petroleum Company, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said R. W. French and G. W. Evans duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 26th day of October, 1950.

Margaret J. Campbell
Notary Public

My commission expires MARGARET J. CAMPBELL, Notary Public My commission expires May 17, 1951.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
COUNTY OF ) SS

Before me, a Notary Public, in and for said County and State, on this ____ day of __________, 1950, personally appeared ______________________, to me known to be the identical person __________________ who executed the within and foregoing lease, and acknowledged to me that __________________ executed the same as __________________ free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My commission expires __________________.

13

KNOW ALL MEN BY THESE PRESENTS: 32790

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar [illegible] other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 27 day of October, 1950.

Two witnesses to execution by Lessee:

W E Bauman
Tulsa Okla
Address

J. W. Garner
Tulsa Okla
Address

GULF OIL CORPORATION
(Name of Lessee)

By [signature]
Vice President

ATTEST: [signature]
Secretary

12

MISCELLANEOUS RECEIVED 32794 [illegible] AGENCY

ACKNOWLEDGMENT OF CORPORATION

STATE OF [illegible] )

[illegible] )

On this 27 day of [illegible], A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared [illegible] and [illegible], to me personally known, who being by me duly sworn, did each say that [illegible] is the Vice President and [illegible] secretary of [illegible] is the [illegible], a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said [illegible] and [illegible] duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 27 day of [illegible], 1950.

My Commission Expires July 12, 1952

[signature]

FANNY [illegible]
Notary Public

My commission expires __________________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
COUNTY OF ) SS

Before me, a Notary Public, in and for said County and State, on this ____ day of ____________, 1950, personally appeared ________________________, to me known to be the identical person ________________ who executed the within and foregoing lease, and acknowledged to me that ________________ executed the same as ________________ free and voluntary act and deed for the uses and purposes therein set forth.

________________________
Notary Public

My commission expires __________________.

ACKNOWLEDGMENT OF CORPORATION

STATE OF PENNSYLVANIA )
COUNTY OF PHILADELPHIA )

On this 3 day of November, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared Wm. Wikoff Smith and Percy A. Rowland, to me personally known, who being by me duly sworn, did each say that Wm. Wikoff Smith is the president and Percy A. Rowland is the secretary of KEWANEE OIL COMPANY, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said Wm. Wikoff Smith and Percy A. Rowland duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 3 day of November, 1950.

Frederick C. Gruber
Notary Public in and for Philadelphia County
Commonwealth of Pennsylvania

My commission expires Jan 4 1953.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
COUNTY OF ) SS

Before me, a Notary Public, in and for said County and State, on this ____ day of ________, 1950, personally appeared ________, to me known to be the identical person ________ who executed the within and foregoing lease, and acknowledged to me that ________ executed the same as ________ free and voluntary act and deed for the uses and purposes therein set forth.

________
Notary Public

My commission expires ________.

32788

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 23rd day of October, 1950. The Texas Company

By M. L. Terry
M. L. TERRY

Two witnesses to execution by Lessee: ____________________
(Name of Lessee)

____________________ By ____________________
President

____________________
Address

____________________ ATTEST: ____________________
Secretary

____________________
Address

Form Approved

Form Approved
By

ACKNOWLEDGMENT OF CORPORATION

STATE OF Oklahoma )
) SS
COUNTY OF Tulsa )

On this 23rd day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared M. L. TERRY ~~and~~ __________, to me personally known, who being by me duly sworn, did ~~each~~ say that M. L. TERRY is the ~~president and~~ Attorney-in-Fact ~~is the~~ __________ ~~secretary~~ of The Texas Company, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said M. L. TERRY ~~and~~ __________ duly acknowledged that the~~y~~ ~~each~~ had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 23rd day of October, 1950.

A M Stephens
Notary Public

My commission expires Nov. 6, 1950.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of __________, 1950, personally appeared ____________________, to me known to be the identical person ____________ who executed the within and foregoing lease, and acknowledged to me that _______________ executed the same as _______________ free and voluntary act and deed for the uses and purposes therein set forth.

____________________
Notary Public

My commission expires ____________________.

10

KNOW ALL MEN BY THESE PRESENTS: 32787

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the proc[illegible] consents and agre[illegible] [illegible] parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 27th day of October, 1950.

Two witnesses to execution by Lessee:

L. G. Eidelman (signature)
L. G. Eielman
Findlay, Ohio
Address

THE OHIO OIL COMPANY
(Name of Lessee)

By W. B. Emery (signature)
VICE-President W.B. Emery

John L. Clymer (signature)
John L. Clymer
Findlay, Ohio
Address

ATTEST: F. L. Fox (signature)
Asst. Secretary F.L. Fox

RECEIVED 32788

ACKNOWLEDGMENT OF CORPORATION

STATE OF OHIO )
) SS
COUNTY OF HANCOCK )

On this 27th day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared W. B. Emery and F. L. Fox, to me personally known, who being by me duly sworn, did each say that W. B. Emery is the Vice president and F. L. Fox is the Assistant secretary of The Ohio Oil Company, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said W. B. Emery and F. L. Fox duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 27th day of October, 1950.

M. E. SORENSON
NOTARY PUBLIC, HANCOCK COUNTY, OHIO
MY COMMISSION EXPIRES JUNE 20, 1953

M. E. Sorenson

~~My commission expires~~ ____________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of ________, 1950, personally appeared ____________, to me known to be the identical person __________ who executed the within and foregoing lease, and acknowledged to me that __________ executed the same as __________ free and voluntary act and deed for the uses and purposes therein set forth.

________________
Notary Public

My commission expires ____________.

KNOW ALL MEN BY THESE PRESENTS: 32786

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar [illegible] agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and ~~adopts~~ said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 23rd day of October, 1950.

Two witnesses to execution by Lessee: SINCLAIR OIL & GAS COMPANY

(Name of Lessee)

[signature] By [signature]

Address Vice-President

[signature] ATTEST: [signature]

Tulsa, Oklahoma Asst Secretary

Address

Approved as to Form, Legal Dept.

RECEIVED
32787

ACKNOWLEDGMENT OF CORPORATION

COUNTY OF TUL )

On this 22nd day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared Alexander Johnston and R. J. JONES, to me personally known, who being by me duly sworn, did each say that Alexander Johnston is the Vice president and R. J. JONES is the ASST. secretary of SINCLAIR OIL & GAS COMPANY, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said Alexander Johnston and R. J. JONES duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 22nd day of Oct, 1950.

[signature]

My commission expires 8-22-52.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
} SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of ____________, 1950, personally appeared ______________________, to me known to be the identical person ______________________ who executed the within and foregoing lease, and acknowledged to me that ______________________ executed the same as ______________________ free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My commission expires ______________________.

MY COMMISSION EXPIRES AUGUST 22, 1952

8

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar [illegible] to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 26 day of October, 1950.

Two witnesses to execution by Lessee:

C. L. Watson
1914 S. Wheeling, Tulsa Okla
Address

[signature]
2537 E. 18th St. Tulsa, Okla.
Address

MID-CONTINENT PETROLEUM CORPORATION
(Name of Lessee)

By [signature]
Vice President
A. E. PIERCE, VICE PRESIDENT

ATTEST: [signature]
Asst. Secretary

RECEIVED

ACKNOWLEDGMENT OF CORPORATION

STATE OF } SS
COUNTY OF Tulsa )

On this 26 day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared A. E. Pierce and Chas. Klein, to me personally known, who being by me duly sworn, did each say that A. E. Pierce is the Vice president and Chas. Klein is the Assistant secretary of MID-CONTINENT PETROLEUM C[illegible], a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said A. E. Pierce and Chas. Klein duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 26 day of October, 1950.

Searle Joyner
Notary Public

My commission expires Aug. 14, 1952.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
} SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of __________, 1950, personally appeared ____________________, to me known to be the identical person ______________ who executed the within and foregoing lease, and acknowledged to me that ______________ executed the same as ______________ free and voluntary act and deed for the uses and purposes therein set forth.

____________________
Notary Public

My commission expires ______________.

32785

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 31 day of October, 1950.

Two witnesses to execution by Lessee:

Geo. B. Bael

Bartlesville, Okla.
Address

C. H. Wellington

Bartlesville, Okla.
Address

CITIES SERVICE OIL COMPANY
(Name of Lessee)

By Sam Harlan
Vice President

ATTEST: M. Wilson
Asst. Secretary

MISCELLANEOUS RECEIVED OSAGE AGENCY

ACKNOWLEDGMENT OF CORPORATION

COUNTY OF Washington } SS

On this 31 day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared Sam Harlan and M. A. Wilson, to me personally known, who being by me duly sworn, did each say that Sam Harlan is the Vice president and M.A. Wilson is the Assistant secretary of Cities Service Oil Company a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said Sam Harlan and M.A. Wilson duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 31 day of October, 1950.

Anna M. Reid
Notary Public

My commission expires March 29, 1951.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF } SS
COUNTY OF }

Before me, a Notary Public, in and for said County and State, on this ____ day of __________, 1950, personally appeared __________________, to me known to be the identical person ______________ who executed the within and foregoing lease, and acknowledged to me that ______________ executed the same as ______________ free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My commission expires ____________________.

32784

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 24th day of October, 1950.

Two witnesses to execution by Lessee:

[signature]

[signature]

Address

[signature]

[signature]

Address

THE DEVONIAN COMPANY
(Name of Lessee)

By [signature]
Vice- President

ATTEST: [signature]
Secretary

32785

ACKNOWLEDGMENT OF CORPORATION

STATE OF OKLAHOMA )
) SS
COUNTY OF [illegible] )

On this 24th day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared E. S. Calvert and H. R. Dean, to me personally known, who being by me duly sworn, did each say that E. S. Calvert is the Vice-president and H. R. Dean is the ______ secretary of The Devonian Company, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said E. S. Calvert and H. R. Dean duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 20th day of October, 1950.

[signature]

Notary Public

My commission expires April 7, 1953.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of ____________, 1950, personally appeared ______________________, to me known to be the identical person ________________ who executed the within and foregoing lease, and acknowledged to me that ______________________ executed the same as ________________ free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My commission expires ____________________.

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar [illegible] the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this ______ day of October, 1950.

Two witnesses to execution by Lessee:

E. R. Erickson
Houston, Texas
Address

Dean S. Burkett
Houston, Texas
Address

______________________
(Name of Lessee)

By [signature]
Vice President

ATTEST: Richard Jackson
ASST. Secretary

32784
OSAGE AGENCY

ACKNOWLEDGMENT OF CORPORATION

COUNTY OF Harris } SS

On this 8 day of November A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared Ira H. Cram and Richard Jackson, to me personally known, who being by me duly sworn, did each say that Ira H. Cram is the Vice president and Richard Jackson is the Assistant secretary of CONTINENTAL OIL COMPANY, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said Ira H. Cram and Richard Jackson duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 8 day of November, 1950.

Marguerite E. Briley

MARGUERITE E. BRILEY, NOTARY PUBLIC IN AND FOR HARRIS COUNTY, TEXAS
My Commission Expires June 1, 1951

My commission expires ____________________.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF } SS
COUNTY OF

Before me, a Notary Public, in and for said County and State, on this _____ day of ____________, 1950, personally appeared ________________________, to me known to be the identical person ______________ who executed the within and foregoing lease, and acknowledged to me that ____________________ executed the same as ________________ free and voluntary act and deed for the uses and purposes therein set forth.

____________________
Notary Public

My commission expires ____________________.

32783

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil [illegible] consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 24 day of October, 1950.

Two witnesses to execution by Lessee:

[signature]

Tulsa, Oklahoma
Address

[signature]

Tulsa, Oklahoma
Address

SHELLY OIL COMPANY
(Name of Lessee)

By [signature]
Vice President

ATTEST: [signature]
Asst Secretary

ACKNOWLEDGMENT OF CORPORATION

) SS
COUNTY OF Tulsa )

On this 24th day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared J. J. Freeman and [illegible], to me personally known, who being by me duly sworn, did each say that J. J. Freeman is the Vice president and [illegible] is the Asst. secretary of Skelly Oil Company, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said J. J. Freeman and W. A. Houlen duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 24th day of October, 1950.

[illegible] A. Tucker
Notary Public

My commission expires Feb. 3, 1952.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of __________, 1950, personally appeared ____________________, to me known to be the identical person __________ who executed the within and foregoing lease, and acknowledged to me that __________ executed the same as __________ free and voluntary act and deed for the uses and purposes therein set forth.

____________________
Notary Public

My commission expires ____________.

3

MISCELLANEOUS
RECEIVED
AGENCY

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessees and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the [illegible] consents and agreements from the other parties to said lease, and in consideration of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 25th day of October, 1950.

Two witnesses to execution by Lessee:

Zona M. Watkins
Bartlesville, Oklahoma
Address

[illegible]
Bartlesville, Oklahoma
Address

PHILLIPS PETROLEUM COMPANY
(Name of Lessee)

By [signature]
Vice-President

ATTEST: [signature]
Asst. Secretary

RECORDED 32783 OSAGE AGENCY

ACKNOWLEDGMENT OF CORPORATION

COUNTY OF Washington ) SS

On this 26th day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared E. P. Dunit and R. E. Arnold, to me personally known, who being by me duly sworn, did each say that E. P. Dunit is the Vice president and R. E. Arnold is the Asst. secretary of Phillips Petroleum Co., a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said E. P. Dunit and R. E. Arnold duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 26th day of October, 1950.

C. A. Phillips

My commission expires Apr. 7, 1952.

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of ____________, 1950, personally appeared ______________________, to me known to be the identical person ________________ who executed the within and foregoing lease, and acknowledged to me that ________________ executed the same as ________________ free and voluntary act and deed for the uses and purposes therein set forth.

______________________
Notary Public

My commission expires ________________.

32782

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, named as one of the lessee and as such having joined in the execution of a certain Blanket Oil Mining Lease dated August 16, 1950, covering lands in Osage County, Oklahoma, known as the North Burbank Oil Field, for and in consideration and subject to the procurement of similar consents and agre[illegible] tion of the mutual benefits to be derived therefrom, hereby consents and agrees that the first sentence of Section 4 of said lease may be rewritten, changed and amended, either by striking the unnecessary words or by the rewriting and substitution of the pertinent page of the lease, so as to read as follows:

> "Lessees shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under conditions of least injury and inconvenience to the owner and occupant of the surface."

and likewise consents and agrees that a corresponding change and amendment be made in the same sentence and section of the copy of said lease attached as Exhibit "X" to the Operating Contract dated August 16, 1950, covering the development and operation of said lease and to which the undersigned is a party.

For the same consideration the undersigned hereby ratifies, confirms and adopts said Blanket Oil Mining Lease and said Operating Contract as so changed and amended upon and subject to the further terms and provisions thereof, all to the same extent as if said lease had been so changed and amended at the time of the execution thereof by the undersigned.

Except as herein expressly provided, the terms, provisions and conditions of said Blanket Oil Mining Lease and said Operating Contract shall remain unaffected hereby. It is understood that the making of said change and amendment in said lease as aforesaid is subject to the approval of the Osage Tribal Council and of the Secretary of the Interior.

The authority and agreements herein contained shall extend to and be binding upon the successors and assigns of the undersigned.

Dated this 27th day of October, 1950.

Two witnesses to execution by Lessee:

[signature]

[illegible]
Address

[signature]

Philadelphia, Pa.
Address

ROYAL OIL & GAS CORPORATION
(Name of Lessee)

By [signature]
Vice President

ATTEST: [signature]
Secretary

32782

ACKNOWLEDGMENT OF CORPORATION

STATE OF PENNSYLVANIA )

PHILADELPHIA )

On this 27th day of October, A.D., 1950, before me, a Notary Public within and for the State and County, aforesaid, personally appeared W. D. Robinson and Z. T. Danes, to me personally known, who being by me duly sworn, did each say that W. D. Clark the Vice President and J. Norvelle Walker is secretary of Royal Oil & Gas Corporation, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said W. D. Clark and J. Norvelle Walker duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this 27th day of October, 1950.

[signature]

My commission expires [handwritten]

ACKNOWLEDGMENT OF INDIVIDUAL

STATE OF )
) SS
COUNTY OF )

Before me, a Notary Public, in and for said County and State, on this ____ day of ____________, 1950, personally appeared ____________, to me known to be the identical person ____________ who executed the within and foregoing lease, and acknowledged to me that ____________ executed the same as ____________ free and voluntary act and deed for the uses and purposes therein set forth.

____________
Notary Public

My commission expires ____________.

# OIL AND GAS MANAGEMENT AGENCY AGREEMENT

This Oil and Gas Management Agency Agreement is made by and between the Henry R. Kravis Trustee of the Raymond F. Kravis Trust under Trust Agreement dated July 21, 1977, as Principal (KRAVIS), C/O KOHLBERG KRAVIS ROBERTS & CO., 9 [illegible] Street, Sui[illegible] New York, New York 10019, and B[illegible] of Oklahoma, National Association, as Agent (BOk), P.O. Box 1588, Tulsa, Oklahoma 74101.

W I T N E S S E T H:

KRAVIS owns oil, gas and mineral properties in various counties and states consisting of producing royalty and working interests and of leased and unleased non-producing mineral interests. KRAVIS desires to engage the services of BOk to advise and assist KRAVIS in the management of such properties to the extent and in the manner hereinafter set forth and BOk is willing to undertake such responsibilities in accordance with this agreement.

NOW, THEREFORE, in consideration of the mutuality hereof and of the compensation to be paid BOk by KRAVIS as herein provided, it is agreed by and between BOk and KRAVIS as follows:

1. KRAVIS will furnish to BOk, a description of the properties owned by KRAVIS, copies of each division order, oil and gas lease, operating agreement and other documents applicable thereto, the name and address of the purchaser of production and each party (if other than the purchaser) who remits to KRAVIS proceeds of production, delay rentals, royalties, overriding royalties or other revenues attributable to such properties and copies of all other documents and information that KRAVIS may possess or that BOk may reasonably request from KRAVIS to enable it to carry out its functions hereunder, including as to each working interest, a complete and current account for capital expenditures theretofore paid or incurred by Kravis as of the date upon which BOk is requested to assume its responsibilities hereunder. Thereafter, KRAVIS will promptly furnish to BOK any changes or additions to the information or documents previously furnished to the end that at all times BOk will have a current, updated file with respect to each of such properties. BOK will inventory every property file and subsequently provide a copy to KRAVIS for their review.

If BOK determines extended research is warranted to obtain sufficient documentation with regard to mineral ownership, leasehold status and current well status, BOk shall advise KRAVIS of information sought and estimated costs of obtaining same for KRAVIS, such work will be performed by BOk at an additional charge upon approval.

2. KRAVIS will cause the party who accounts for and remits to KRAVIS revenues attributable to the properties, to remit such revenues by check addressed to KRAVIS in care of BOk, P.O. Box 1588, Tulsa, Oklahoma 74101 together with the remitter's statement accounting for such proceeds. BOk is authorized to endorse all such checks as agent for KRAVIS and to deposit for credit to the agency account. With respect to working interests, BOk will also cause the operator and other working interest owners to send to KRAVIS in care of BOk, all statements for operating and other expenses and all notices and other documents, including production and gas balancing statements, pertaining to such working interests, and for all properties shall cause the respective ad valorem taxing authorities to send tax statements to BOK.

3. Using the information furnished to it by KRAVIS as well as all other information that it receives from third parties, BOk will set up and maintain books and records in such manner as will enable it to account for receipts and disbursements, and BOk will perform the following services:

(a) Remit the revenues to KRAVIS by wire transfer. funds to Bank of Oklahoma, N.A., . for credit to as soon as practical after the first day of the month following the month in which they are received in BOk, except that BOk may retain in reserve such amounts as in its judgment will be needed to pay ad valorem taxes and any applicable operating or other expenses including insurance costs to which the properties may be subject, and BOk's compensation for services. The above instructions shall remain in effect until written replacement instructions are received from a KRAVIS representative designated in paragraph 13 hereafter.

(b) Review statements received for operating and other expenses including insurance cost's as to working interests and if, in BOK's judgment, any statement is correct and in compliance with the operating or other applicable agreement and accounting procedures, pay such statement from reserves on hand. If BOk does not consider the statement to be correct or in accordance with the applicable agreements, BOk will forward same to KRAVIS with it's reasons for contesting the payment and its recommendation. KRAVIS will decide the issue and instruct BOk in writing accordingly.

(c) BOk as Agent for KRAVIS shall promptly act on all notices and other documents received with respect to working interests that require a vote or other action by KRAVIS.

(d) From reserves on hand pay ad valorem taxes assessed against the properties promptly upon receipt of tax statements.

(e) Execute, as KRAVIS's agent, authorizations for expenditures (AFE) with respect to working interests in an amount not to exceed $5,000.00 as to KRAVIS's interest for a single AFE, and forward to KRAVIS with BOk's recommendations any AFE that exceeds such amount. KRAVIS will instruct in writing all parties requesting AFEs to accept BOk's execution as KRAVIS's agent in accordance with this subparagraph (e).

(f) Furnish to KRAVIS on a annual basis a full and complete accounting of all income and expenses handled and monthly account summary reports. Such accounting will be in the form of BOk's usual customer statement and reports that are generated by BOk's accounting system. The BOk Oil and Gas Manager or Account Administrator will meet and review activities with KRAVIS personnel if so requested.

(g) BOk shall establish appropriate procedures to insure timely collection of anticipated delay rentals and shut-in payments and provide other management duties relating to non-producing interests that are leased.

(h) BOk is hereby authorized to review, evaluate, negotiate and execute, as agent for KRAVIS, all agreements, oil and gas leases, other mineral leases, division orders, and other documents when it deems such actions are or will be beneficial to the property interests of KRAVIS subject to this agreement.

(i) BOk shall not retain funds in an uninvested form and, in the absence of alternative investment directions from KRAVIS, shall invest such balances in the American Performance Cash Management fund; a money market mutual Fund.

4. For its service hereunder, BOk will be compensated by KRAVIS in the amounts and manner as specified in their Oil, Gas and Mineral Service Fee Schedule (a copy of the current schedule is attached hereto as Exhibit A), or as may be agreed to in writing from time to time.

5. BOk, with prior approval from KRAVIS, is authorized to employ and pay reasonable compensation to any individual or firm whose services are at any time or from time to time deemed necessary or prudent to enable BOk to properly advise KRAVIS in the management of the properties, and BOk may charge KRAVIS for the expense thus incurred.

6. BOk shall not be responsible for the preparation of income tax returns nor for any other tax returns nor payments of taxes other than ad valorem and gross production taxes. BOk annually, will provide information to outside tax preparers that would enable them to prepare the necessary tax return. KRAVIS authorizes BOk as agent to furnish and disclose to the Internal Revenue Service and other federal or state agencies' information as required by federal or state law and regulation.

7. BOk shall diligently market any unleased minerals to obtain lease bonus monies for KRAVIS and pursue recovery of suspended or underpayments of royalties.

8. BOk shall exercise the same degree of care in performing its responsibilities under this Agreement as it would exercise in managing oil and gas properties for its own account. BOk shall not be deemed to have any duty or obligation not expressly set forth in this Agreement. BOK shall be entitled to rely upon advice of counsel concerning legal matters and upon any division order, oil and gas lease, operating agreement and any other schedule, certificate, statement, report, notice or other writing which it believes to be genuine or to have been presented by a proper person. Neither BOk nor any of its directors, officers, employees or agents shall (i) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of, any such document or any other instrument or document delivered pursuant to or in connection with this Agreement other than those executed or delivered by BOk, (ii) be under any duty to inquire into or pass upon any of the foregoing matters, or (iii) in any event, be liable as such for any action taken or omitted by it or them in accordance with this Agreement, except for its or their own gross negligence or willful misconduct.

9. This Agreement shall remain in force through the later of one (1) year from the execution date or December 31, 1996. After that period, this agreement may be terminated in its entirety at any time, with or without cause, by either party upon thirty (30) days advance written notice of the other. Upon notice of such termination, and payment of all sums due BOk as agent, BOk shall, without additional charge, make all necessary arrangements to transfer its records, files and data either to KRAVIS or to a third party that KRAVIS shall designate. Such transfer shall take place within sixty (60) days of the termination date.

10. BOk recognizes the confidential nature of these accounts and agrees not to release any information concerning this account to third parties without prior written approval of KRAVIS.

11. This Agreement may not be assigned without the prior written approval of KRAVIS.

12. Any reference herein to Bank of Oklahoma, National Association, shall include any corporate entity, with which it may be merged or to which it may transfer substantially all of its assets, or any subsidiary of BOk Financial Corporation for the purpose of managing assets or conducting business on behalf of Bank of Oklahoma, National Association or any of its clients.

13. KRAVIS shall designate in writing to BOk the individual or individuals who are authorized by KRAVIS to give BOk directions or approval under this agreement. BOk may rely upon the continued authority of the designated individual(s) until BOk receives actual notice of it's termination.

14. This agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Oklahoma.

15. BOk hereby acknowledges and agrees that Henry R. Kravis is executing this Agreement (and each other document, instrument and agreement relating hereto or required hereunder) solely in his capacity as a trustee of the Raymond F. Kravis Trust and not in his individual capacity. Notwithstanding anything to the contrary contained herein, the execution and delivery of this Agreement (and each such other document, instrument and agreement) by Henry R. Kravis in such capacity as a trustee shall not be deemed to create any individual liability or obligation of him.

EXECUTED this 11th day of January, 1996.

| | |
|---|---|
| Witness: | x Henry R. Kravis Trustee of the Raymond F. Kravis Trust |
| Attest: Wayne Tate<br>Assistant Cashier | David L. Smith<br>Vice President and Trust Officer<br>Bank of Oklahoma, N.A. |

STATE OF NEW YORK )
) SS
COUNTY OF NEW YORK )

INDIVIDUAL AC..IOWLEDGEMENT

Before me, the undersigned, a Notary Public, in and for said County and State, on this 11TH day of JANUARY, 1996, personally appeared Henry R. Kravis as Trustee for the Raymond F. Kravis Trust, known to me to be the identical person who subscribed the name of the maker thereof to the foregoing [illegible] and executed it as his free and voluntary act and deed and as the free and voluntary act and deed of such individual, for the uses and purposes therein expressed.

WITNESS my hand and official seal the day and year last above written.

My commission expires:

Lesley V. Harrison, Notary Public

LESLEY V. HARRISON
Notary Public, State of New York
No. 31-4720901
Qualified In New York County
Commission Expires April 30, 1996
(SEAL)

STATE OF OKLAHOMA )
) SS
COUNTY OF TULSA )

(CORPORATE ACKNOWLEDGEMENT)

Before me, the undersigned authority, on this 5th day of January, 1996, personally appeared David L. Smith known to me to be the identical person who subscribed the name of Bank of Oklahoma, N.A., Agent, to the foregoing instrument as its Vice President and Trust Officer, and acknowledged to me that he had willingly made and executed it as his free and voluntary act and deed and as the free and voluntary act and deed of such national banking association, as such Trustee, for the uses and purposes therein expressed.

WITNESS my hand and official seal the day and year last above written.

Annette E. Consalvi
Annette E. Consalvi, Notary Public

My commission expires:

May 4, 1999
(SEAL)

OIL AND GAS MANAGEMENT
AGENCY AGREEMENT

This Oil and Gas Management Agency Agreement is made by and between the Henry R. Kravis Trustee of the Raymond F. Kravis Trust under Trust Agreement dated July 21, 1977, as Principal (KRAVIS), C/O KOHLBERG KRAVIS ROBERTS & CO., 9 West 57th Street, Suite 4200, New York, New York 10019, and Bank of Oklahoma, National Association, as Agent (BOk), P.O. Box 1588, Tulsa, Oklahoma 74101.

W I T N E S S E T H:

KRAVIS owns oil, gas and mineral properties in various counties and states consisting of producing royalty and working interests and of leased and unleased non-producing mineral interests. KRAVIS desires to engage the services of BOk to advise and assist KRAVIS in the management of such properties to the extent and in the manner hereinafter set forth and BOk is willing to undertake such responsibilities in accordance with this agreement.

NOW, THEREFORE, in consideration of the mutuality hereof and of the compensation to be paid BOk by KRAVIS as herein provided, it is agreed by and between BOk and KRAVIS as follows:

1. KRAVIS will furnish to BOk, a description of the properties owned by KRAVIS, copies of each division order, oil and gas lease, operating agreement and other documents applicable thereto, the name and address of the purchaser of production and each party (if other than the purchaser) who remits to KRAVIS proceeds of production, delay rentals, royalties, overriding royalties or other revenues attributable to such properties and copies of all other documents and information that KRAVIS may possess or that BOk may reasonably request from KRAVIS to enable it to carry out its functions hereunder, including as to each working interest, a complete and current account for capital expenditures theretofore paid or incurred by Kravis as of the date upon which BOk is requested to assume its responsibilities hereunder. Thereafter, KRAVIS will promptly furnish to BOK any changes or additions to the information or documents previously furnished to the end that at all times BOk will have a current, updated file with respect to each of such properties. BOK will inventory every property file and subsequently provide a copy to KRAVIS for their review.

If BOK determines extended research is warranted to obtain sufficient documentation with regard to mineral ownership, leasehold status and current well status, BOk shall advise KRAVIS of information sought and estimated costs of obtaining same for KRAVIS, such work will be performed by BOk at an additional charge upon approval.

2. KRAVIS will cause the party who accounts for and remits to KRAVIS revenues attributable to the properties, to remit such revenues by check addressed to KRAVIS in care of BOk, P.O. Box 1588, Tulsa, Oklahoma 74101 together with the remitter's statement accounting for such proceeds. BOk is authorized to endorse all such checks as agent for KRAVIS and to deposit for credit to the agency account. With respect to working interests, BOk will also cause the operator and other working interest owners to send to KRAVIS in care of BOk, all statements for operating and other expenses and all notices and other documents, including production and gas balancing statements, pertaining to such working interests, and for all properties shall cause the respective ad valorem taxing authorities to send tax statements to BOK.

3. Using the information furnished to it by KRAVIS as well as all other information that it receives from third parties, BOk will set up and maintain books and records in such manner as will enable it to account for receipts and disbursements, and BOk will perform the following services:

(a) Remit the revenues to KRAVIS by wire transfer. funds to Bank of Oklahoma, N.A., . for credit to as soon as practical after the first day of the month following the month in which they are received in BOk, except that BOk may retain in reserve such amounts as in its judgment will be needed to pay ad valorem taxes and any applicable operating or other expenses including insurance costs to which the properties may be subject, and BOk's compensation for services. The above instructions shall remain in effect until written replacement instructions are received from a KRAVIS representative designated in paragraph 13 hereafter.

(b) Review statements received for operating and other expenses including insurance cost's as to working interests and if, in BOK's judgment, any statement is correct and in compliance with the operating or other applicable agreement and accounting procedures, pay such statement from reserves on hand. If BOk does not consider the statement to be correct or in accordance with the [illegible] with its reasons for contesting the payment and its recommendation. KRAVIS will decide the issue and instruct BOk in writing accordingly.

(c) BOk as Agent for KRAVIS shall promptly act on all notices and other documents received with respect to working interests that require a vote or other action by KRAVIS.

(d) From reserves on hand pay ad valorem taxes assessed against the properties promptly upon receipt of tax statements.

(e) Execute, as KRAVIS's agent, authorizations for expenditures (AFE) with respect to working interests in an amount not to exceed $5,000.00 as to KRAVIS's interest for a single AFE, and forward to KRAVIS with BOk's recommendations any AFE that exceeds such amount. KRAVIS will instruct in writing all parties requesting AFEs to accept BOk's execution as KRAVIS's agent in accordance with this subparagraph (e).

(f) Furnish to KRAVIS on a annual basis a full and complete accounting of all income and expenses handled and monthly account summary reports. Such accounting will be in the form of BOk's usual customer statement and reports that are generated by BOk's accounting system. The BOk Oil and Gas Manager or Account Administrator will meet and review activities with KRAVIS personnel if so requested.

(g) BOk shall establish appropriate procedures to insure timely collection of anticipated delay rentals and shut-in payments and provide other management duties relating to non-producing interests that are leased.

(h) BOk is hereby authorized to review, evaluate, negotiate and execute, as agent for KRAVIS, all agreements, oil and gas leases, other mineral leases, division orders, and other documents when it deems such actions are or will be beneficial to the property interests of KRAVIS subject to this agreement.

(i) BOk shall not retain funds in an uninvested form and, in the absence of alternative investment directions from KRAVIS, shall invest such balances in the American Performance Cash Management fund; a money market mutual Fund.

4. For its service hereunder, BOk will be compensated by KRAVIS in the amounts and manner as specified in their Oil, Gas and Mineral Service Fee Schedule (a copy of the current schedule is attached hereto as Exhibit A), or as may be agreed to in writing from time to time.

5. BOk, with prior approval from KRAVIS, is authorized to employ and pay reasonable compensation to any individual or firm whose services are at any time or from time to time deemed necessary or prudent to enable BOk to properly advise KRAVIS in the management of the properties, and BOk may charge KRAVIS for the expense thus incurred.

6. BOk shall not be responsible for the preparation of income tax returns nor for any other tax returns nor payments of taxes other than ad valorem and gross production taxes. BOk annually, will provide information to outside tax preparers that would enable them to prepare the necessary tax return. KRAVIS authorizes BOk as agent to furnish and disclose to the Internal Revenue Service and other federal or state agencies' information as required by federal or state law and regulation.

7. BOk shall diligently market any unleased minerals to obtain lease bonus monies for KRAVIS and pursue recovery of suspended or underpayments of royalties.

8. BOk shall exercise the same degree of care in performing its responsibilities under this Agreement as it would exercise in managing oil and gas properties for its own account. BOk shall not be deemed to have any duty or obligation not expressly set forth in this Agreement. BOK shall be entitled to rely upon advice of counsel concerning legal matters and upon any division order, oil and gas lease, operating [illegible] and any other [illegible] certificate, statement, request, [illegible] or other writing which it believes to be genuine or to have been presented by a proper person. Neither BOk nor any of its directors, officers, employees or agents shall (i) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of, any such document or any other instrument or document delivered pursuant to or in connection with this Agreement other than those executed or delivered by BOk, (ii) be under any duty to inquire into or pass upon any of the foregoing matters, or (iii) in any event, be liable as such for any action taken or omitted by it or them in accordance with this Agreement, except for its or their own gross negligence or willful misconduct:

9. This Agreement shall remain in force through the later of one (1) year from the execution date or December 31, 1996. After that period, this agreement may be terminated in its entirety at any time, with or without cause, by either party upon thirty (30) days advance written notice of the other. Upon notice of such termination, and payment of all sums due BOk as agent, BOk shall, without additional charge, make all necessary arrangements to transfer its records, files and data either to KRAVIS or to a third party that KRAVIS shall designate. Such transfer shall take place within sixty (60) days of the termination date.

10. BOk recognizes the confidential nature of these accounts and agrees not to release any information concerning this account to third parties without prior written approval of KRAVIS.

11. This Agreement may not be assigned without the prior written approval of KRAVIS.

12. Any reference herein to Bank of Oklahoma, National Association, shall include any corporate entity, with which it may be merged or to which it may transfer substantially all of its assets, or any subsidiary of BOk Financial Corporation for the purpose of managing assets or conducting business on behalf of Bank of Oklahoma, National Association or any of its clients.

13. KRAVIS shall designate in writing to BOk the individual or individuals who are authorized by KRAVIS to give BOk directions or approval under this agreement. BOk may rely upon the continued authority of the designated individual(s) until BOk receives actual notice of it's termination.

14. This agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Oklahoma.

15. BOk hereby acknowledges and agrees that Henry R. Kravis is executing this Agreement (and each other document, instrument and agreement relating hereto or required hereunder) solely in his capacity as a trustee of the Raymond F. Kravis Trust and not in his individual capacity. Notwithstanding anything to the contrary contained herein, the execution and delivery of this Agreement (and each such other document, instrument and agreement) by Henry R. Kravis in such capacity as a trustee shall not be deemed to create any individual liability or obligation of him.

EXECUTED this 11th day of January, 1996.

| | |
|---|---|
| [signature] | x [signature] |
| Witness: | Henry R. Kravis Trustee of the Raymond F. Kravis Trust |
| Wayne Tate | [signature] |
| Attest: Wayne Tate<br>Assistant Cashier | David L. Smith<br>Vice President and Trust Officer<br>Bank of Oklahoma, N.A. |

STATE OF *NEW YORK* )
) SS
COUNTY OF *NEW YORK* )

INDIVIDUAL ACKNOWLEDGEMENT

Before me, the undersigned, a Notary Public, in and for said County and State, on this *11TH* day of *JANUARY*, 1996, personally appeared Henry R. Kravis as Trustee for the Raymond F. Kravis Trust, known to me to be the identical person who subscribed the name of the maker thereof to the foregoing instrument and acknowledged to me that he willingly made and executed it as his free and voluntary act and deed and as the free and voluntary act and deed of such individual, for the uses and purposes therein expressed.

WITNESS my hand and official seal the day year last above written.

*Lesley V. Harrison*, Notary Public

My commission expires:

LESLEY V HARRISON
Notary Public, State of New York
No. 31-4720901
Qualified In New York County
Commission Expires April 30, 1998

STATE OF OKLAHOMA )
) SS
COUNTY OF TULSA )

(CORPORATE ACKNOWLEDGEMENT)

Before me, the undersigned authority, on this *5th* day of *January*, 1996, personally appeared David L. Smith known to me to be the identical person who subscribed the name of Bank of Oklahoma, N.A., Agent, to the foregoing instrument as its Vice President and Trust Officer, and acknowledged to me that he had willingly made and executed it as his free and voluntary act and deed and as the free and voluntary act and deed of such national banking association, as such Trustee, for the uses and purposes therein expressed.

WITNESS my hand and official seal the day and year last above written.

*Annette E. Consalvi*
Annette E. Consalvi, Notary Public

My commission expires:

*May 4, 1999*
(SEAL)


FC3-0645
>PC+ABS< GE-MC5400