**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed<br>May 20, 2005 |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**THE OSAGE NATION'S REPLY IN SUPPORT OF ITS OBJECTIONS TO DEFENDANT'S PRIVILEGE CLAIMS**

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Based On The Government's Late-Produced "Final" Privilege Log, The Osage Nation Has Withdrawn Its Challenges To A Number Of Documents ........ 2

II. With Respect To The Remaining 77 Documents, The Government Has Still Failed To Demonstrate That Either The Attorney-Client Privilege Or The Attorney-Work Product Doctrine Applies ........ 3

A. The Government Has Failed to Demonstrate that the Attorney-Client Privilege Is Applicable ........ 3

B. The Documents Listed in the Government's Final Privilege Log Were Not Prepared in Anticipation of Litigation and Are Not Protected by the Attorney-Work Product Doctrine ........ 4

III. Even If The Government Has Properly Invoked The Attorney-Client Privilege And Attorney-Work Product Doctrine, The Osage Nation Is Nonetheless Entitled To Production Of These Documents Under The Fiduciary Exception ........ 5

IV. The Government's Attempts To Have This Court Overrule The Fiduciary Exception Are Meritless ........ 7

A. The Alleged Difference Between English and American Trust Law Fails to Support the Government's Claim that the Fiduciary Exception Does Not Exist ........ 7

B. The Osage Nation Is the "Real Client" in Interest with Respect to the Legal Advice Obtained by the United States as Trustee for the Osage Nation ........ 8

C. Even If the Government's Legal Fees Are Not Paid From the Trust Corpus, the Fiduciary Exception Still Applies ........ 14

D. Immunizing the Government from the Fiduciary Exception Would Violate the Government's Fiduciary Obligation to Provide the Osage Nation with Complete and Accurate Information Regarding the Administration and Management of the Osage Tribal Trust ........ 15

E. Documents Having a Dual Purpose Also Fall Within the Scope of the Fiduciary Exception ........ 17

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cabot v. United States*, 35 Fed. Cl. 442 (1996) .......... 3, 4-5

*Carter v. Gibbs*, 909 F.2d 1450 (Fed. Cir. 1990) .......... 3-4

*Cobell v. Norton*, 212 F.R.D. 24 (D.D.C. 2002) .......... *passim*

*Cobell v. Norton*, 213 F.R.D. 1 (D.D.C. 2003) .......... 10, 15, 17

*Comegys v. Glassell*, 839 F. Supp. 447 (E.D. Tex. 1993) .......... 6

*Department of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) .......... 12

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) .......... 3, 4, 5

*First Fed. Savings Bank of Hegewisch v. United States*, 55 Fed. Cl. 263 (2003) .......... 3

*First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000) .......... 3-4

*Flathead Joint Bd. of Control v. DOI*, 309 F. Supp. 2d 1217 (D. Mont. 2004) .......... 12

*Heckman v. United States*, 224 U.S. 413 (1912) .......... 11

*Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291 (S.D.N.Y. 1991) .......... 10

*Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995) .......... 12, 13

*United States v. Evans*, 796 F.2d 264 (9th Cir. 1986) .......... 12

*United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999) .......... *passim*

*United States v. Minnesota*, 270 U.S. 181 (1926) .......... 11

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .......... 2

### STATE CASES

*Mesce v. Gradone*, 62 A.2d 394 (N.J. 1948) .......... 8

*Riggs Nat'l Bank of Wash., D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976) .......... 6, 12, 14

## DOCKETED CASES

*The Osage Tribe of Indians of Okla. v. United States*, No. 04-0283 (D.D.C. filed February 20, 2004)......16

*The Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States*, Nos. 458a-79L, 459a-79L, Order (J. Hewitt, May 16, 2002)......*passim*

## STATUTES

Act of June 28, 1906, Pub. L. No. 321, 34 Stat. 539......10

The Indian Claims Limitation Act of 1982, Pub. L. 97-394, 96 Stat. 1976......13

## MISCELLANEOUS AUTHORITIES

RESTATEMENT (SECOND) OF TRUSTS, § 173, cmt. b......14

4 AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 173 (4th ed. 1989)......8

## INTRODUCTION

In this case the Osage Nation, as beneficiary of the Osage tribal trust for which the Defendant United States of America (the "Government") acts as trustee, is seeking money damages for the Government's breach of its obligations as trustee of the Osage Nation. The Osage Nation requested documents regarding how the Government administered the trust. Recognizing that a trust exists for the benefit of the beneficiaries, that the trustee must act in the best interests of the beneficiaries, and that a trustee has a fiduciary obligation to provide the beneficiary with complete and accurate information pertaining to trust administration, this Court and every other court that has considered the question has held the fiduciary exception to the attorney-client privilege applies to Indian trusts. Under the fiduciary exception, the tribe, as beneficiary of the trust, is considered the real client in interest and the Government may not withhold documents relating to the management and operation of the trust on the basis of either the attorney-client privilege or the work product doctrine.

Instead of fulfilling this obligation as trustee, however, the Government has flouted the holding of this Court and numerous other federal courts by making a meritless facial challenge to the fiduciary exception. As detailed below, the Government's assault fundamentally fails to accept the now well-recognized principle that it cannot shield information relating to the operation and management of the trust from the beneficiaries of the trust. The Government's arguments to the contrary only highlight how the Government has failed to grasp and fulfill its obligations as trustee.

Because each of the documents at issue relate to the administration and management of the trust fall and clearly fall within the fiduciary exception, the Court should reject the Government's blanket challenge and should order the Government to immediately release these documents to the Osage Nation, as the beneficiary of the tribal trust.

## ARGUMENT

### I. Based On The Government's Late-Produced "Final" Privilege Log, The Osage Nation Has Withdrawn Its Challenges To A Number Of Documents

In connection with its Opposition to the Osage Nation's Objections to Defendant's Privilege Claims, the government produced an entirely new version of its privilege log. The so-called "final" log, attached as Exhibit 1 to the Government's Opposition, identifies 132 documents for which the Government is asserting either the attorney-client privilege and/or attorney-work product.[1] This "final" log had not previously been provided to the Osage Nation, even though the Government had been ordered to do so by the Court's Order dated March 26, 2004. The *final* log is substantially different from the information provided in the previous four *draft* privilege logs because it contains new information for each document and includes documents that were not identified in any of the four draft logs.[2] Thus, despite the substantial resources expended by the Osage Nation in preparing its initial objections to the Government's privilege claims, the Osage Nation has had to sift through yet *another* privilege log containing new information.

Having now reviewed this final log and based upon the descriptions contained therein, the Osage Nation withdraws its objections with respect to 55 documents. These documents are identified in Exhibit A. With respect to the remaining 77 documents identified in the Final

[1] The Government has informally notified the Osage Nation that the Government will assert privilege claims with respect to some of the approximately 900 boxes of documents that were produced for inspection at the Osage Agency in Pawhuska, Oklahoma during February 2005. However, to date, the Government has not provided the Osage Nation with a privilege log with respect to those documents and, presumably, those documents are not covered by the Final Privilege Log attached to the Government's May 6, 2005 filing.

[2] In the Final Privilege Log, the Government has assigned the 132 documents to various "privilege categories," which, according to the Government, "categorize . . . various documents that have similar characteristics." Opposition at 7. The determination of whether or not a privilege claim is valid, however, must be based on a document-by-document basis. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Thus, although the Government's categories may be convenient for references purposes, they should not be relied upon in deciding the validity of the privilege claims asserted for each document.

Privilege Log, however, the Government has failed to carry its burden of demonstrating that either the attorney-client privilege or the attorney-work product doctrine applies. Accordingly, those documents must be produced.

## II. With Respect To The Remaining 77 Documents, The Government Has Still Failed To Demonstrate That Either The Attorney-Client Privilege Or The Attorney-Work Product Doctrine Applies

In its opposition brief, the Government claims that it has properly invoked the attorney-client privilege and attorney-work product doctrine and that "Plaintiff has not shown that Defendant's assertions are improper." Opposition at 1. The Government's arguments misunderstand the applicable standards for asserting these privileges.

It is well-established that the burden of "establishing the elements of the privilege" rests with the party asserting the privilege. *First Fed. Sav. Bank of Hegewisch v. United States*, 55 Fed. Cl. 263, 267 (2003). *See also Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000) (citation omitted); *Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996). Thus, the Government's claim that "Plaintiff has not shown that Defendant's assertions are improper" is inapposite because the burden of showing that a privilege applies clearly rests with the Government. Moreover, "because privileges impede full and free discovery of the truth," courts must "strictly constru[e]" privileges and must, in each case, ensure that every element necessary for invoking a particular privilege is satisfied. *Energy Capital*, 45 Fed. Cl. at 484 (citation omitted); *Cabot*, 35 Fed. Cl. at 444. With respect to the 77 documents at issue, the Government has failed to meet this burden.

### A. The Government Has Failed to Demonstrate that the Attorney-Client Privilege Is Applicable

To properly invoke the attorney-client privilege, even the Government concedes that the communication must be confidential and must actually constitute a request for an opinion of law or for legal services. Opposition at 4-5. *See also Cabot*, 35 Fed. Cl. at 444-45 (citation omitted).

Courts also require that the confidentiality of the communication be preserved. *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990) ("The attorney-client privilege evaporates upon any voluntary disclosure of confidential information to a third party."); *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 316 (2000) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege."). With respect to several of the 77 remaining documents at issue, the Government has failed to meet its burden of demonstrating that these communications were made in confidence and that they constitute a request for legal advice. *See, e.g.*, Plf. Doc. 258/578 (Def. Doc. 808.41) (failing to demonstrate that either the recipients or the author of the communication were attorneys).

To meet this burden, the Government states that the "context of the communications" demonstrate their confidentiality. Opposition at 7-8. The Government's privilege log, however, fails to demonstrate how that "context" establishes confidentiality. In addition, even if these documents do fall within the attorney-client privilege, the documents must nonetheless be released to the Osage Nation, as the trust beneficiary, because they fall squarely within the fiduciary exception. *See infra* sections III-IV.

**B. The Documents Listed in the Government's Final Privilege Log Were Not Prepared in Anticipation of Litigation and Are Not Protected by the Attorney-Work Product Doctrine**

With respect to the attorney-work product doctrine, the Government asserts that its claims are proper because the Osage Nation has not demonstrated a "substantial need" for this information. Opposition at 6, 8. The "substantial need" requirement, however, is applicable only after the elements of the doctrine have been satisfied. Thus, before the burden shifts to the Osage Nation to demonstrate a substantial need, the Government first must meet its burden under Rule 26(b)(2) of demonstrating that the documents were "prepared in anticipation of litigation for trial by a party or its representative." *Energy Capital*, 45 Fed. Cl. at 485 (citation omitted). *See also*

*Cabot*, 35 Fed. Cl. at 445. To meet this burden, the Government is required to show that litigation was a genuine possibility at the time the document was prepared, not simply a remote prospect, and that the litigation was the primary reason for creating the document. *Energy Capital*, 45 Fed. Cl. at 485. The Government has failed to meet this burden.

Instead, the Government seeks to immunize communications made, in some cases, over thirty years ago, on the basis of current litigation. Opposition at 10. Under the Government's argument, the fact that there is litigation *now* somehow validates claims of the work product privilege for communications occurring, in some instances, nearly thirty years ago. *See, e.g.*, Plf. Doc. 369 (Def. Doc. 525); Plf. Doc. 23/413 (Def. Doc. 582). This assertion misunderstands the nature of the work product privilege because the presence of litigation is not a retroactive factor that reaches back in time to protect communications made prior to any conceivable litigation.

Moreover, according to the Government's argument, the simple fact that many Indian tribes are *now* challenging the Government's administration of tribal trusts, somehow entitles the Government to additional protection that would allow it to shield otherwise discoverable communications from production. Opposition at 10. This assertion is not consistent with the principles of the work product doctrine and the Government should not be entitled to increased protection merely because its actions are being challenged on many different fronts.

Finally, as discussed more fully below, even if some or all of these documents do qualify for the attorney-work product doctrine, the documents must nonetheless be produced to the Osage Nation, as the trust beneficiary, under the fiduciary exception. *See infra* sections III-IV.

## III. Even If The Government Has Properly Invoked The Attorney-Client Privilege And Attorney-Work Product Doctrine, The Osage Nation Is Nonetheless Entitled To Production Of These Documents Under The Fiduciary Exception

It is well-established that the attorney-client privilege "does not apply to prevent disclosure to beneficiaries of communications between a trustee and its counsel concerning management and

administration of the trust." *The Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States*, Nos. 458a-79 L, 459a-79 L, Order at 3 (J. Hewitt, May 16, 2002) (citations omitted). Applying this same doctrine, the United States District Court for the District of Columbia held in *Cobell v. Norton* that, in the context of a trust relationship between the United States as a trustee and a particular Indian tribe beneficiary, "communications between [the] trustee and its attorney concerning the administration of the trust fall within the 'fiduciary exception' to the [attorney-client] privilege." 212 F.R.D. 24, 27 (2002).

Indeed, despite the Government's attempt to characterize the fiduciary exception as "a comparatively recent development that has been applied by a relatively small number of courts," Opposition at 10, it is clear that the fiduciary exception has been widely recognized for well over a generation. As the United States District Court for the District of Columbia acknowledged, "federal courts . . .have uniformly recognized the existence of a fiduciary exception." *Cobell*, 212 F.R.D. at 27 (citing *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999); *In re Long Island Lighting Co.*, 129 F.3d, 268 272 (2d. Cir. 1997); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970); *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D.D.C. 1995); *Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982); *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 609 (N.D. Cal. 2000)). *See also Shoshone*, Order at 3-4; *Riggs Nat'l Bank of Wash., D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976); *Comegys v. Glassell*, 839 F. Supp. 447, 448-49 (E.D. Tex. 1993).

Moreover, the Government's effort to dismiss the fiduciary exception as some sort of newly-minted theory is particularly disingenuous since the Government itself has not only conceded the existence of the fiduciary exception, but has actually argued in favor of its application. For example, in *United States v. Mett*, the Government not only argued in favor of

recognition of the fiduciary exception, but also argued that the exception should be construed broadly. 178 F.3d 1058, 1061, 1064 (9th Cir. 1999) (noting that the "government responds by invoking the 'fiduciary exception' to the attorney-client privilege" and that the "government would prefer a more expansive interpretation of the fiduciary exception"). Similarly, in *Cobell*, the Government went even further by conceding existence of the fiduciary exception and, arguably, its applicability to tribal trust relationships. 212 F.R.D. at 27 (noting that "as [the Government] concede[s], communications between a trustee and its attorneys concerning the administration of the trust fall within the 'fiduciary exception' to the privilege"). In light of these concessions, the Government's blanket challenge to the fiduciary exception is both meritless and disingenuous.

## IV. The Government's Attempts To Have This Court Overrule The Fiduciary Exception Are Meritless

Notwithstanding this Court's prior decision and the its own admissions, the Government argues that the fiduciary exception either does not exist at all under American trust law, or does not apply to the Government when it act as trustee of a tribal trust. As detailed below, these arguments all fail.

### A. The Alleged Difference Between English and American Trust Law Fails to Support the Government's Claim that the Fiduciary Exception Does Not Exist

The Government's position rests on the notion that the fiduciary exception is a giant mistake because courts have failed to recognize the distinction between English and American trust law relating to powers of the beneficiaries versus the powers of the settlor. Opposition at 13-14. This argument, however, hinges on an inaccurate characterization of the fiduciary exception and an exaggerated distinction between English trust law and American trust law that is refuted by the Government's own authorities.

The Government argues that, because the fiduciary exception was originally based on English trust law and because American trust law places more emphasis on the intent of the settlor

than English law, the fiduciary exception has no applicability to American trusts. *Id*. To support its proposition, the Government relies on two primary authorities. First, the Government relies on *Mesce v. Gradone*, 62 A.2d 394, 396 (N.J. 1948), for the proposition that "English authorities are of no force [in the United States] because of our fundamentally divergent view of the power of the settlor and the beneficiaries of a trust over the trust res." *Mesce*, however, actually stands for the proposition that, where the interests of the settlor and the beneficiary are not aligned and where finding a merger of legal and equitable title would defeat the "purpose of the settlor in creating the trust," American courts must give effect to the intent and purpose of the settlor. *Mesce*, 62 A.2d at 395-96. *Mesce* says nothing about the fiduciary exception and has no application whatsoever where, as here, there is no divergence of interests between the settlor and the beneficiary.

Second, the Government cites the treatise by Scott and Fratcher to support its challenge to the fiduciary exception based on the alleged differences between English and American trust law. Opposition at 14. But Scott and Fratcher expressly recognize and acknowledge the existence of the fiduciary exception. *See* 4 AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 173, at 465 (4th ed. 1989) ("A beneficiary is entitled to inspect opinions of counsel procured by the trustee to guide him in the administration of the trust."). Thus the Government's attempt to erase the fiduciary exception based on alleged differences between English and American law is wholly without merit.

### B. The Osage Nation Is the "Real Client" in Interest with Respect to the Legal Advice Obtained by the United States as Trustee for the Osage Nation

Undeterred by the lack of theoretical support for its frontal assault on the fiduciary exception, the Government attempts to carve out an Indian trust exception to the fiduciary exception by arguing that "multiple factors distinguish the trust relationship between federal agencies as trustee and tribal beneficiaries from the private trust relationship" and that, in light of

those distinctions, "this Court should reconsider its conclusions in *Shoshone Indian Tribe* and should hold that the fiduciary exception does not apply to the federal agencies acting in their trustee roles." Opposition at 13. As detailed below, the Government's attempts to draw a meaningful distinction between Indian trusts and private trusts fails to raise a single valid reason for this Court to revisit its decision in *Shoshone*.

One of the primary rationales for the fiduciary exception is that the beneficiary is the "real client" because the trustee has fiduciary obligations to act in the best interests of the beneficiary. *Shoshone*, Order at 3 (citation omitted); *Mett*, 178 F.3d at 1063 (explaining that the "fiduciary exception is not an 'exception' to the attorney-client privilege . . . [r]ather, it merely reflects the fact that . . . [the] trustee is not 'the real client' and thus never enjoyed the privilege in the first place") (citation omitted).

The Government contests that determination by arguing that, because Interior receives advice "regarding its own federal [mineral] interests together with advice concerning its" fiduciary obligations with respect to tribal beneficiaries, the tribal beneficiaries are somehow not the "'real client' of the legal advice or representation obtained by the trustee." Opposition at 13. This argument is without merit. The fact that the Government chose, for its own convenience, to obtain legal advice regarding both Government-owned assets and Indian trust assets at one time in no way changes the fact that the legal advice relates to the tribal trust assets. The Government cannot strip the Tribe of its status as client because it chose to "bundle" legal advice regarding tribal assets with legal advice concerning non-tribal assets. The tribe is still the client, and still entitled to see the legal advice obtained on its behalf. *Cobell*, 212 F.R.D. at 29 (noting that "the most heightened duty of loyalty is the one that the fiduciary owes his or her beneficiary" and the placement of the Government's independent policy interests "above the beneficiary's need of disclosure is not sound").

As an alternative argument, the Government asserts that the Osage Nation is not the "real client" in interest because Interior's fiduciary obligations with respect to the Osage Nation are established by Congress and Interior's primary duty is to "carry out the direction of Congress as set forth in legislation specifying the agenc[y's] statutory trust duties." Opposition at 14. Under the Government's view, the "United States . . . has a governmental interest independent of the interests" of the Osage Nation, and thus Congress is, in essence, the "real client" in interest. Opposition at 14-15.

This argument proves the Osage Nation's point, however. Because Congress named the United States as trustee over the Osage tribal trust and because the United States has delegated some of those obligations to Interior, Interior's must continue to act as trustee until Congress directs otherwise. Act of June 28, 1906, Pub. L. No. 321, 34 Stat. 539. As the trustee's delegate, Interior has a fiduciary obligation to provide the Osage Nation, as the trust beneficiary, with complete and accurate information regarding the administration and management of the tribal trust. *Cobell v. Norton*, 213 F.R.D. 1, 11 (D.D.C. 2003) (noting that "a trustee possesses an obligation to provide full and accurate information to the trust beneficiaries regarding the administration of the trust") (citations omitted). To fulfill "this obligation, the trustee must make available to the beneficiary, on request, any communications with an attorney that are intended to assist in the administration of the trust." *Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 322 (S.D.N.Y. 1991) (citation omitted).

The fact that the Government's fiduciary obligations were established by and through Congress does not somehow relieve the Government of its obligation to fulfill those fiduciary duties. To the contrary, the only way Interior can fulfill its Congressional charge is by adhering to its obligations as trustee to, among other things, disclose to the Osage Nation all information relating to trust assets. Indeed, the Government's argument that because Congress directed it to

act as a trustee somehow excuses it from disclosing information that a trustee must disclose to a beneficiary reveals just how cavalierly the Government treats its obligations as trustee

Third, to bolster its argument that the Osage Nation is not the "real client" in interest, the Government relies on three cases, none of which support the proposition that the Government should be relieved of its fiduciary obligations. First, in *Heckman v. United States*, the Government sought to enforce the rights of all trust beneficiaries against two individual allotees who had impermissibly transferred their restricted fee allotments. 224 U.S. 413, 426 (1912). In response, the individual allotees alleged that the United States lacked standing to bring suit. *Id.* at 428. The Court held that the Government had standing *only because* it had a binding obligation to act "on behalf of" the tribal beneficiaries whom Congress "ha[d] not yet released from tutelage." *Id*. at 439-445. Thus, it was actually the Government's interest as trustee for the Cherokee Tribe – and not an independent government interest – that gave the Government standing to bring the suit.

Similarly, the Government relies on the Supreme Court's decision in *United States v. Minnesota* for the proposition that "the United States' governmental interests in Indian allotments are legally distinct from those of the allotees." Opposition at 15. In *Minnesota*, however, the Court emphasized that this distinct "interest arises out of [the United States'] guardianship over the Indians and out of its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations." *United States v. Minnesota*, 270 U.S. 181, 194 (1926). As in *Heckman*, the Court in *Minnesota* emphasized that the Government was acting on behalf of, and consistent with, the interests of the particular tribe involved in fulfillment of its Congressional charge. *Id*. Far from supporting the proposition that the Government may promote this "legally distinct" interest above the interests of the tribal beneficiaries, these cases support that proposition that the Government has an active and binding obligation to act consistent with the interests of the beneficiaries.

Finally, the Government relies on an analysis of the Freedom of Information Act ("FOIA"), the D.C. Circuit's holding in *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995), and the Indian Claims Litigation Act of 1982, to support its assertion that no attorney-client relationship exists between the Osage Nation and the Government and that, therefore, the Osage Nation cannot be the "real client" in interest. First, the Government asserts that releasing privilege information to the Osage Nation, as the trust beneficiary, results in a waiver of the privilege under FOIA. Opposition at 19-21. This reasoning is based on a misunderstanding of the fiduciary exception. The fiduciary exception does not require disclosure of documents outside the attorney-client relationship. Instead, the exception recognizes that the "real client" in interest is in fact the trust beneficiary. *Riggs*, 355 A.2d at 713; *United States v. Evans*, 796 F.2d 264, 265-66 (9th Cir. 1986).

Additionally, the Government's reliance on *Department of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001), is inapposite. Citing *Klamath*, the Government asserts that communications between the Government and the beneficiary of a tribal trust are never considered to be privileged and that, therefore, disclosure of these 77 documents would constitute a waiver of the Government's attorney-client and attorney-work product privileges for these communications. Opposition at 20-21. In *Klamath*, the Supreme Court addressed documents prepared by the Tribe regarding the Tribe's "own view of its own interest" in a pending litigation. 532 U.S. at 14. Thus, *Klamath* did not involve a communication regarding the administration or management of the tribal trust, which is precisely the issue here. Thus, *Klamath* does not in any way support the Government's argument.

Moreover, the Government's reliance on both *Klamath* and *Flathead Joint Board of Control v. DOI*, 309 F. Supp. 2d 1217, 1224 (D. Mont. 2004), is misplaced because the privilege at issue in both cases was the deliberative-process privilege, a privilege that is necessarily waived by

disseminating the communication to an outside party. Unlike the deliberative-privilege, however, the attorney-client privilege extends to all communications between an attorney and the client, including the "real client" in interest. *Cobell*, 212 F.R.D. at 28 (noting that in the context of a tribal trust, "the trust beneficiaries are the attorneys' clients"); *Mett*, 178 F.3d at 1063.

Second, the Government asserts that, under *Shoshone-Bannock*, there is "no attorney-client relationship between the federal government and the Tribe . . . such that the Tribe may receive confidential government communications related to its consideration of whether to bring the suit." Opposition at 16. In *Shoshone-Bannock*, however, the question of whether or not to assert the "off-reservation water claim" was not within the scope of the trust relationship and thus did not relate to the administration or management of the trust. 56 F.3d at 1482-84. In fact, the Court's conclusion that the United States had the discretion to not bring suit was based, in large part, on the conclusion that this obligation was not within the scope of the United States' trust obligations. *Id*. at 1483 (noting that the "United States does not hold any recognized off-reservation water right in trust for the Tribes" and until such interest is held in trust, "the United States has no duty" to pursue the "Tribes litigation demand").

Finally, the Government relies on the Indian Claims Limitation Act of 1982, Pub. L. 97-394, 96 Stat. 1976, as supporting the proposition that Congress has "specifically prohibited the disclosure to Indians of privileged documents of Interior." Opposition at 18. Moreover, the Government claims that this Act demonstrates that "Congress [has] specifically recognized Interior's privileges vis a vis individual Indians and tribes" *Id*. at 19. The Indian Claims Limitation Act, however, does not address the situation where a trust beneficiary seeks to discover from the Government, as trustee, information pertaining to the administration and management of a tribal trust, and certainly does not prohibit the disclosure of such information to a tribal beneficiary. Moreover, the Government's argument rests on a misunderstanding of the fiduciary

exception. Under the fiduciary exception, such communications *are not privileged with respect to a beneficiary*. *Mett*, 178 F.3d at 1063. Thus, the Government's reliance on the Indian Claims Limitation Act is inapposite.

**C. Even If the Government's Legal Fees Are Not Paid From the Trust Corpus, the Fiduciary Exception Still Applies**

Continuing in its quixotic quest for a way to avoid application of the fiduciary exception, the Government asserts that because the Osage tribal trust does not pay the Government's legal fees, the Osage Nation must not be the "real client" of the legal services provided to the United States. Opposition at 21-22. In support of this argument, the Government cites *Riggs* for the proposition that the payment of legal fees from the trust corpus is a "*significant* factor," and relies on the Restatement (Second) of Trusts for the argument that "a trustee retains his privilege as to information he acquires 'at his own expense and for his own protection.'" Opposition at 21.

First, as the Government's own authorities demonstrate, the payment of fees is only relevant in deciding the application of the fiduciary exception to legal advice obtained by the trustee "for his *own* protection." RESTATEMENT (SECOND) OF TRUSTS, § 173, cmt. b (emphasis added). Because the Government has failed to demonstrate that any of the 77 communications at issue were obtained for the protection of the Government, as trustee of the Osage Nation, and not for purposes of administering the trust itself, the consideration of payment of legal fees is irrelevant.

Second, even if the payment of legal fees is relevant, it is not determinative as the Government's own quotation from *Riggs* makes clear. *Riggs*, 355 A.2d at 710. In this context, because the Osage tribal trust itself was not voluntary, the fact that Congress, in creating the trust relationship, chose not to require (or even permit) that the costs of legal advice or representation be paid from the trust corpus cannot be held against the Osage Nation. As even the Government

notes, one of the primary purposes of the fiduciary exception is to prevent the trustee from breaching its fiduciary duty to the beneficiary and then escaping liability simply because the beneficiary lacks sufficient information to hold the trustee accountable. Opposition at 22. *See also Cobell*, 212 F.R.D. at 29 ("A trustee has no 'legitimate need' to 'shield his actions from those whom he is obligated to serve'" and the reason for placing the burden of proof on the trustee "is to prevent trustees from shielding information about trust administration from the beneficiaries, who are entitled to that information") (quoting *Washington Star*, 543 F. Supp. at 909 n.5). The Government's legal obligation to fulfill its fiduciary duty of providing the Osage Nation, as the beneficiary of the trust, with complete and accurate information overrides any implication that must arise from the fact that the Government pays its own legal fees.

**D. Immunizing the Government from the Fiduciary Exception Would Violate the Government's Fiduciary Obligation to Provide the Osage Nation with Complete and Accurate Information Regarding the Administration and Management of the Osage Tribal Trust**

Having conceded that the Government has an obligation to provide the Osage Nation with complete and accurate information regarding the administration and management of the tribal trust, the Government asserts that application of the fiduciary exception is not necessary to fulfill this obligation because the Osage Nation has not shown that such information "is unavailable due to the government's assertions of privileges." Opposition at 22.

First, the Government's assertion that "there are a number of sources for information related to the management of [the Osage Nation's] assets and funds available" is irrelevant. Opposition at 22. Even if such sources were available, that does not discharge the Government of *its* obligation, as a fiduciary, to provide complete and accurate information. *See, e.g.*, *Cobell*, 213 F.R.D. at 11. The Osage Nation is entitled to *all* documents related to the trust, even if similar information is contained in multiple documents. The *only* basis for the Government to refuse to

produce documents is if the documents fall into one of the narrow exceptions to the fiduciary exception. And in those cases, courts require that "the trustee seeking to foreclose a beneficiary's inquiry into trust administration must bear the burden of showing that he or she acted in a capacity that rendered the privilege applicable." *Cobell*, 212 F.R.D. at 28 (citations omitted). The Osage Nation is not required to make any showing of need, and the Government cannot escape application of the fiduciary exception by claiming (incorrectly, as detailed below) that the information is available through other sources.

Second, the "sources of information" that the Government has identified are not actually available to the Osage and do not contain complete information. FOIA is a false remedy because discovery in this case serves the same purpose as FOIA, and in any event the same issue of the applicability of the fiduciary exception would arise in that context. Moreover, although the American Indian Trust Fund Management Reform Act of 1994 did, as the Government asserts, "establish certain accounting duties for Interior" and require the Government to "provide a periodic statement of performance to each Indian Tribe," it is these very obligations that the Government has failed to fulfill. Indeed, the Osage Nation has sued the Government to compel it to perform the required accounting. *The Osage Tribe of Indians of Okla. v. United States*, No. 04-0283 (D.D.C. filed February 20, 2004). It is disingenuous, therefore, for the Government to blithely claim that information regarding its management of the trust is readily available elsewhere. Finally, the fact that the Secretary of the Interior is subject to congressional review does not relieve the Government of its fiduciary obligations to the Osage Nation, nor does it provide an alternative means for tribal beneficiaries to obtain complete, accurate, and timely information. This the Government's "alternative source" argument is without merit and emphasizes the very reasons that application of the fiduciary exception and production of the 77 documents is a necessary element of the Government's trust obligations.

**E. Documents Having a Dual Purpose Also Fall Within the Scope of the Fiduciary Exception**

The Government asserts that this Court "should limit the [fiduciary] exception to those communications that do not involve advice or representation obtained to defend the agencies against liability." Opposition at 23. In support of this proposition the Government argues that the fiduciary exception is not applicable to legal advice obtained by the trustee "in order to defendant itself from a beneficiary's own suit." *Id*. at 24. More generally, the Government asserts that the fiduciary exception is inapplicable to documents protected by the attorney-work product privilege. *Id*. at 24-29.

Standing alone, these statements of the law are not inaccurate or controversial. Indeed, as indicated above, the Osage Nation has withdrawn its objections to a number of documents on the Privilege Log based on some of those concepts. It is clear, however, that those principles cannot be applied to shield from discovery any of the 77 documents at issue.

First, the Government's argument is relevant only to the extent that it has properly invoked the attorney-work product doctrine. For the reasons stated above, the Government has not satisfied this burden and the attorney-work product doctrine is, therefore, inapplicable. *See supra* section II(B). Second, even if a proper claim of attorney-work product doctrine has been made, the fiduciary exception nonetheless applies and requires that where the communication relates to the administration or management of the trust, it must be disclosed to the trust beneficiary. *See Cobell*, 213 F.R.D. at 11-12 (concluding that the "work product doctrine is inapplicable to documents prepared to assist a trustee in its fiduciary capacity"). Moreover, because privileges must be construed narrowly, documents falling within the attorney-work product doctrine may be withheld *only* if they relate *exclusively* to legal advice obtained by the trustee "*solely* in his own personal interest" and "*solely* to protect himself personally or the government from civil or

criminal liability." *Cobell*, 212 F.R.D. at 29-30 (emphasis added). The burden of proving this element falls on the Government, as trustee, which must demonstrate that, with respect to the communication at issue, it "was acting in a non-trustee capacity" and that the advice or communication "did *not* benefit the trust beneficiaries" *in any way*. *Id.* at 28.

Third, the Government relies on *United States v. Mett* for the proposition that litigation-related documents are excluded from production under the fiduciary exception. Opposition at 25-26. In *Mett*, a case in which the Government *itself* argued in favor of applying the fiduciary exception, the Ninth Circuit addressed the scope of the fiduciary exception in the context of a criminal prosecution for improper transactions under an ERISA benefit plan. *Mett*, 178 F.3d at 1060. The Ninth Circuit concluded that the particular communications did not fall within the fiduciary exception because they "detail[ed] the potential civil and criminal exposure the defendants might face" and therefore constituted advice obtained by a fiduciary *solely* "in an effort to protect herself from civil or criminal liability." *Id*. at 1062-66.

But in *Mett*, the Court distinguished between: (1) documents "dispensed to trustees prior to any threat of suit, advising them regarding the propriety of" a particular action; and (2) documents "dispensed after the commencement of suit, aimed at advising them 'how far they were in peril,'" and required production of "the first item, but not the second." *Id*. at 1063 (quoting *Talbot v. Marshfield*, 12 L.T.R. 761, 762 (Ch. 1985)). It was on these very grounds that this Court previously found the holding in *Mett* to be inapposite to tribal beneficiaries seeking to discover information relating to the "management and administration of the trust." *Shoshone*, Order at 3. In doing so, this Court specifically distinguished *Mett* on the grounds that, in that case, "the trustee ha[d] sought legal advice for his own personal benefit, that is, to defend himself." *Shoshone*, Order at 4.

Similarly, here, the descriptions in the final privilege log provide no basis for concluding that any of the 77 challenged documents even come close to advising the Government on the extent of its existing liability, or that they *exclusively* relate to such exposure. Instead, these documents, according to their descriptions, advise the Government on how to properly administer the trust, and thus fall squarely within the fiduciary exception. *See*, *e.g.*, Plf. Doc. 369 (Def. Doc. 525); Plf. Doc. 23/413 (Def. Doc. 582). Such documents were not prepared to *defend* the Government, instead they were prepared to prosecute a suit on behalf of the Osage Nation and are, therefore, outside the scope of the "exception" to the fiduciary exception. *See Shoshone*, Order at 4 (holding that documents were within the fiduciary exception because the "United States did not seek to defend itself from liability").

Thus, none of the 77 documents presently at issue qualify for the attorney-work product doctrine, and those that do nonetheless fall within the fiduciary exception. As such, the Osage Nation, as the trust beneficiary, is entitled to production of these documents.

## CONCLUSION

For the foregoing reasons, the Court should reject the Government's privilege claims and order the Government to release the 77 documents at issue to the Osage Nation immediately, or, in the alternative, conduct an *in camera* review to determine the validity of the Government's privilege claims on a document-by-document basis.

Dated this May 20, 2005

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

**Documents from the Government's Final Privilege Log For Which the Osage Nation Has Withdrawn Its Objections to the Government's Privilege Claims**

| Plaintiff's Document Number | Defendant's "Doc ID" |
|---|---|
| 115 | 315 |
| 155 | 372 |
| 166 | 404 |
| 261 | 424 |
| 267 | 430 |
| 280 | 433 |
| 35 & 296 | 446 |
| 36 & 295 | 447 |
| 313 | 468 |
| 314 | 470 |
| 332 | 486 |
| 352 | 512 |
| 364 | 522 |
| 395 | 561 |
| 17 & 398 | 568 |
| 7 & 399 | 570 |
| 18 & 405 | 571 |
| 8 & 408 | 578 |
| 24 & 412 | 583 |
| 416 | 586 |
| 459 | 629 |
| 457 | 631 |
| 473 | 646 |
| 502 | 732 |
| 503 | 734 |
| 222 & 542 | 772.09 |
| 222 & 542 | 772.11 |
| 222 & 542 | 772.12 |

| Plaintiff's Document Number | Defendant's "Doc ID" |
|---|---|
| 222 & 542 | 772.13 |
| 222 & 542 | 772.14 |
| 222 & 542 | 772.15 |
| 222 & 542 | 772.28 |
| 222 & 542 | 772.29 |
| 222 & 542 | 772.30 |
| 222 & 542 | 772.31 |
| 222 & 542 | 772.32 |
| 222 & 542 | 772.34 |
| 222 & 542 | 772.35 |
| 222 & 542 | 772.41 |
| 222 & 542 | 772.51 |
| 222 & 542 | 772.53 |
| 222 & 542 | 772.55 |
| 222 & 542 | 772.56 |
| 222 & 542 | 772.57 |
| 222 & 542 | 772.59 |
| 258 & 578 | 808.28 |
| 258 & 578 | 808.29 |
| 258 & 578 | 808.30 |
| 258 & 578 | 808.32 |
| 258 & 578 | 808.33 |
| 258 & 578 | 808.34 |
| 258 & 578 | 808.35 |
| 258 & 578 | 808.38 |
| 258 & 578 | 808.40 |
| 258 & 578 | 808.45 |

**PLAINTIFF'S EXHIBIT A**