Passarelli

DEPARTMENT OF JUSTICE
GENERAL LITIGATION
SECTION

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **THE OSAGE TRIBE OF INDIANS OF OKLAHOMA** | |
| **PLAINTIFF,** | |
| **V.** | **Case No. 99-550L (Judge Mary Ellen Coster Williams)** |
| **THE UNITED STATES OF AMERICA,** | |
| **DEFENDANT.** | |

**PLAINTIFF OSAGE TRIBE'S THIRD AMENDED COMPLAINT**

**Nature of Action**

1. This is an action for money damages brought by the Osage Tribe of Indians ("Osage Tribe" or "Tribe"), as beneficial owner of the trust lands of the Osage Tribe ("Osage surface estate"), and the oil, gas, and other minerals underlying lands within the exterior boundaries of the Osage Reservation ("Osage mineral estate"), against the United States of America ("United States" or "Federal Government"), which serves as trustee for the Osage surface and mineral estates. In this action, the Osage Tribe seeks damages for mismanagement of certain Osage trust assets committed by the United States as trustee.

**Parties**

2. Plaintiff Osage Tribe is a sovereign Indian nation based in Pawhuska, Oklahoma, acknowledged by the United States as an Indian tribe, with all the legal rights and responsibilities of a federally recognized Indian tribe.

3. Defendant United States acts as trustee for certain tribal monies, lands, and other assets belonging to the Osage Tribe, including the Osage surface estate and the Osage mineral

estate. The United States has delegated certain of its trust responsibilities over such assets to the Secretary of the Interior ("Secretary"), who is charged by law with carrying out certain duties and responsibilities of the United States as trustee for the Osage Tribe.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491 and 1505.

**The United States is Trustee of Certain Property Belonging to the Osage Tribe**

5. The Osage Tribe first entered into a treaty relationship with the United States in 1808. Treaty with the Osage, Nov. 10, 1808, 7 Stat. 107, 2 CHARLES J. KAPPLER, INDIAN AFFAIRS, LAWS AND TREATIES 95-99 (1904). In that treaty, the Osage Tribe agreed to cede certain lands to the United States in exchange for a reservation, monies, goods, and the protection of the United States. Specifically, the Osage Tribe "declare[d] that they will consider themselves under the protection of [the United States]; disclaiming all right to cede, sell or in any manner transfer their lands to any foreign power, or to citizens of the United States or inhabitants of Louisiana, unless duly authorized by the President of the United States..." Article 10, Treaty with the Osage, Nov. 10, 1808, 7 Stat. 107, 2 CHARLES J. KAPPLER, INDIAN AFFAIRS, LAWS AND TREATIES 95-99 (1904).

6. This treaty relationship continued until 1865, when the United States and the Osage Tribe entered into a final treaty. Treaty with Osage, Sept. 29, 1865, 14 Stat. 687, 2 CHARLES J. KAPPLER, INDIAN AFFAIRS, LAWS AND TREATIES 878-883 (1904). In that treaty, the United States agreed to purchase lands in what is now the State of Oklahoma to serve as a permanent home for the Osage should the Tribe decide to leave its reservation in Kansas.

7. Pursuant to acts of Congress in 1872, 1873, and 1883, the United States purchased a tract of land for the Osage Tribe in what is now the State of Oklahoma. This land consisted of approximately 1,472,000 acres and now comprises the Osage Reservation and the contiguous boundaries of Osage County, Oklahoma. Acts of June 5, 1872, 17 Stat. 228; Mar. 3, 1873, 17 Stat. 530; and Mar. 3, 1883, 22 Stat. 603.

8. The Osage Tribe was the exclusive beneficial owner of these lands until 1906 when Congress enacted a law that allotted the majority of the Reservation surface lands to individual members of the Tribe. The unallotted lands remained in trust for the Osage Tribe. Act of June 28, 1906, 34 Stat. 539 ("1906 Act"). Since 1906, the Tribe has reacquired other lands within the exterior boundaries of the Osage Reservation that the United States now holds in trust.

9. The 1906 Act also reserved to the Osage Tribe all the oil, gas, sand and gravel, and other minerals beneath the surface of the Osage Reservation, allotted or otherwise, for a period of twenty-five years from April 8, 1906, or until April 8, 1931. Act of June 28, 1906, 34 Stat. 539.

10. Subsequent acts of Congress have extended the trust created by the 1906 Act and, as a result, the Osage mineral estate is today still held in trust by the United States for the benefit of the Tribe. Acts of Mar. 31, 1921, 41 Stat. 1249; Mar. 2, 1929, 45 Stat. 1478; June 24, 1938, 52 Stat. 1034; July 25, 1947, 61 Stat. 459; Oct. 6, 1964, 78 Stat. 1008; and Oct. 21, 1978, 92 Stat. 1660; and Oct. 30, 1984, 98 Stat. 3163.

11. The 1906 Act and subsequent acts of Congress permit the Osage Tribal Council to enter into leases covering portions of the Osage mineral estate, but such leases are not valid without the approval of the Secretary. The Secretary is also directed to promulgate rules and

regulations governing the Osage mineral estate. These acts also direct the Secretary and the Osage Tribal Council to offer for lease portions of the Osage mineral estate for oil, gas, and other mining purposes, in such quantities and at such times as may be deemed for the best interest of the Osage Tribe. Acts of June 28, 1906, 34 Stat. 539; Mar. 3, 1921, 41 Stat. 1249; Mar. 2, 1929, 45 Stat. 1478, 1479; June 24, 1938, 52 Stat. 1034, 1035; July 25, 1947, 61 Stat. 459; Oct. 6, 1964, 78 Stat. 1008; and Oct. 21, 1978, 92 Stat. 1660. Congress also has exercised control over Osage assets by mandating that the Secretary of the Interior and Osage Tribal Counsel offer for lease not less than twenty-five thousand acres of the Osage Reservation for oil and gas mining purposes during any one year. Act of March 3, 1921, 41 Stat. 1249; Act of March 2, 1929, 45 Stat. 1478.

12. Congress also has exercised control over Osage assets by mandating that the Secretary of the Interior and Osage Tribal Council offer for lease not less than twenty-five thousand acres of the Osage Reservation for oil and gas mining purposes during any one year. Act of March 3, 1921, 41 Stat. 1249; Act of March 2, 1929, 45 Stat. 1478.

13. The United States, as trustee acting through the Secretary, has promulgated an elaborate regulatory framework for the comprehensive and pervasive control over the management of the Osage mineral estate. _See_. Leasing of Osage Reservation Lands, Oklahoma, for Mining, Except Oil and Gas, 25 C.F.R., Part 214 (2004); and Leasing of Osage Reservation Lands for Oil and Gas Mining, 25 C.F.R., Part 226 (2004).

14. The Department of the Interior regulations governing the leasing of the Osage mineral estate for oil and gas mining were originally published in 1915 and have been subsequently amended several times. *See Okie Crude Co., et al. v. Muskogee Area Director,*

*Bureau of Indian Affairs*, 23 IBIA 174 (Feb. 5, 1993); 39 Fed. Reg. 22254 (June 21, 1974), 41 Fed. Reg. 50648 (Nov. 17, 1976), 43 Fed. Reg. 8135 (Feb. 28, 1978), 43 Fed. Reg. 11815 (Mar. 22, 1978), 55 Fed. Reg. 33112 (Aug. 14, 1990), 59 Fed. Reg. 22104 (Apr. 28, 1994). The Department of the Interior's current regulations for the leasing and management of the Osage mineral estate for oil and gas mining are contained in Part 226 of Title 25 of the Code of Federal Regulations. 25 C.F.R. Part 226 (2003). The current regulations, like their predecessor regulations, provide for the comprehensive and pervasive control of the Secretary over the leasing of the Osage mineral estate for oil and gas mining.

15. As trustee for the Osage Tribe, the United States has issued numerous oil and gas mining leases covering portions of the Osage mineral estate. The oil and gas leases issued by the United States, as trustee for the Osage Tribe, generally provide for the payment of rentals and, if crude oil and/or natural gas are discovered in commercial quantities, the payment of royalties based on the value of the crude oil and natural gas produced. The lessee must generally pay royalties monthly to the United States as trustee for the Osage Tribe.

16. As trustee for the Osage Tribe, the United States has issued other leases covering portions of the Osage surface and mineral estates, including grazing leases, rights of way, and land and building leases and rentals. Under these leases, the lessee generally makes a monthly or annual payment to the United States as trustee for the Osage Tribe.

17. The 1906 Act directed that "all funds belonging to the Osage Tribe, and all moneys due, and all money that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States . . . ." Act of June 28, 1906, 34 Stat.

539, 544. The United States continues to hold funds belonging to the Tribe, including funds derived from the Osage surface and mineral estates, in trust for the benefit of the Osage Tribe.

18. Other acts of Congress also authorized the Secretary to collect income derived from Osage tribal trust assets. These funds were and are still required to be collected and deposited in the United States Treasury and other depositary institutions in trust for the benefit of the Osage Tribe. *E.g.*, Act of Mar. 3, 1883, c. 141, § 1, 22 Stat. 590. The United States is also required to pay interest on these tribal trust funds, and to properly invest such funds. *See e.g.*, Act of Feb. 12, 1929, c. 178, 45 Stat. 1164, *codified as amended*, 25 U.S.C. § 161b; Act of June 24, 1938, 52 Stat. 1037, *codified as amended*, 25 U.S.C. § 162a.

19. The U.S. Department of the Treasury disperses Osage tribal trust funds, including trust funds derived from the Osage mineral estate, to the Osage Tribe and to "headright" holders in the Osage mineral estate on a quarterly basis. A "headright" is the right to receive a disbursement of funds derived from the Osage mineral estate. *See Globe Indem. Co. v. Bruce*, 81 F.2d 143, 148-9 (10th Cir. 1935); COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, 790 n.187 (1982 ed.). Headright holders include Osages and Indians of other tribes, who receive funds paid into Individual Indian Money (IIM) accounts, and non-Indian individuals and entities, who receive checks directly from the Department of the Treasury.

**<u>As Trustee, the United States Owes the Osage Tribe the Highest Fiduciary Responsibilities Concerning the Management of Tribal Assets Held in Trust for the Benefit of the Osage Tribe</u>**

20. As trustee for the Osage Tribe, the United States has a fiduciary relationship with the Tribe and obligations of the highest responsibility to administer Osage tribal trust assets with the greatest skill and care possessed by the trustee. The United States "'has charged itself with

moral obligations of the highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.' " *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 297 (1942)).

21. The United States has assumed the obligations of a trustee at common law because it holds Osage tribal monies, lands, and other assets in trust for the benefit of the Osage Tribe. *United States v. Mitchell*, 463 U.S. 206, 225 (1983); *Cobell*, 240 F.3d 1081; *Cobell v. Norton*, 283 F. Supp. 2d 66 (D.D.C. 2003). These duties include, but are not limited to, the duty to properly administer the trust; to administer the trust solely in the interest of the Osage Tribe; to keep and render clear and accurate accounts with respect to the administration of the trust; to furnish complete and accurate information to the Osage Tribe as to the nature and amount of trust assets; to exercise the proper care and skill in the administration of the trust; to preserve the trust assets and protect them from loss, theft, or damage; to keep the trust assets of the Osage Tribe separate from other property not subject to the trust; to properly deposit the trust funds of the Osage Tribe; and to make the assets of the trust productive for the benefit of the Osage Tribe.

22. The United States also has certain statutory trust duties to the Osage Tribe that, in some cases, reaffirm the pre-existing trust duties imposed upon the United States at common law. Acts of June 28, 1906, 34 Stat. 539; Mar. 3, 1921, 41 Stat. 1249; Mar. 2, 1929, 45 Stat. 1478, 1479; June 24, 1938, 52 Stat. 1034, 1035; July 25, 1947, 61 Stat. 459; Oct. 6, 1964, 78 Stat. 1008; Oct. 21, 1978, 92 Stat. 1660; Dec. 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329; Oct. 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; Nov. 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, Nov. 3, 1991, Pub. L. No. 102-154, 105 Stat. 990; 25 U.S.C. § 4001-61; and 25 U.S.C. § 162a. These duties include the duty to offer for lease the Osage mineral estate in such quantities and at

such times as may be deemed for the best interest of the Osage Tribe and the duty to audit, reconcile, and provide an accounting for Osage tribal trust funds.

**Count One**

**Damages Resulting from the Defendant United States' Breach of Its Trust Duties to the Osage Tribe with Respect to Oil and Gas Mining Leases Covering Portions of the Osage Mineral Estate**

23. The Osage Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 21 above.

24. As trustee for the Osage Tribe, the United States has issued numerous oil and gas mining leases covering portions of the Osage mineral estate. For that purpose, the United States, as trustee, has developed form oil and gas leases that it generally requires that a lessee use. Under those form leases, the royalty on crude oil is generally a specified percentage of the higher of (a) the selling price realized by the lessee for the crude oil or (b) the price posted or offered for crude oil in a specified geographic area, such as the geographic area consisting of Kansas and Oklahoma. Under those form leases, all royalties are paid to the United States, as trustee, or its delegate, and held in trust for distribution to the headright owners of the Osage Tribe at regular intervals. Attached as Exhibit A are examples of the royalty provisions of the form oil and gas leases the government generally requires lessees to use.

25. At the conclusion of the original status conference in this matter, the Court requested the United States to make its oil and gas records available to the Osage Tribe so that the Tribe could compare the royalties it had actually received from the United States for crude oil with the royalty that the Tribe was entitled to receive under the oil and gas leases that the United States, as trustee, had issued for the benefit of the Tribe. The Tribe's comparison is set forth in

Exhibit B. That exhibit shows numerous instances during 1995 where the royalty actually received by the Osage Tribe for crude oil was significantly less than the highest posted price for crude oil and also significantly less than the price offered for crude oil at Cushing, Oklahoma. As a result, the royalties actually received by the Osage Tribe on that crude oil were less than the royalties dues under the applicable form oil and gas lease. As set forth in Exhibit C, the Osage Tribe estimates that the royalty payments it received from the United States for crude oil produced during calendar year 1995 are about $1.3 million less than the royalties that the United States, as trustee, was required to pay to the Osage Tribe for crude oil produced from the Osage mineral estate for calendar year 1995.

26. The documents in Exhibit A were included in Exhibit 1 to Plaintiff's Claim Verification filed with this Court on November 12, 2002. The documents in Exhibits B and C were included in Exhibit 8 to Plaintiff's Claim Verification. Plaintiff hereby incorporates by reference Plaintiff's Claim Verification in its entirety.

27. Defendant United States has never provided the Osage Tribe with an accounting of the revenue that the United States, as trustee, has collected or was required to collect under the oil and oil gas leases that the United States issued for the benefit of the Tribe. In addition, the United States is the custodian of the federal trust records relating to Osage trust assets. Except for the single visit to the Interior Department's Osage Agency in Pawhuska where a small number of the Osage trust records are kept, the United States has not provided the Osage Tribe with access to the oil and gas records that the United States, as trustee, is required to maintain for the benefit of the Tribe. As a result, at the present time, the Osage Tribe cannot identify each and every oil and gas lease where the United States, as trustee, has paid a crude oil royalty to the

Tribe that is less than the amount of royalty required by the form oil and gas mining lease that the United States, as trustee, has issued for the benefit of the Tribe.

28. On information and belief, Plaintiff alleges that, in addition to those set forth in Exhibits A, B, and C, the United States, as trustee, has made crude oil royalty underpayments with respect to other oil and gas leases and other time periods.

29. On information and belief, Plaintiff also alleges that the United States, as trustee, has also made royalty underpayments with respect to natural gas that has been produced from the form oil and gas leases that the United States, as trustee, has issued for the benefit of the Osage Tribe.

30. As a result of the above failures, the Osage Tribe has been damaged by not receiving payments under the oil and gas mining leases that the United States, as trustee, issued for the benefit of the Osage Tribe and should have collected but did not collect. The Osage Tribe was also damaged by not being able to receive interest or other investment income from the funds that the United States, as trustee, should have but failed to collect. Accordingly, the Osage Tribe is entitled to a money judgment against the United States, as trustee, for the full amount of these damages.

## Count Two

## Damages Resulting From the Defendant United States' Breach of its Trust Duties to the Osage Tribe With Respect to Leases Covering the Osage Surface and/or Mineral Estates, Other Than Oil and Gas Leases

31. The Osage Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above.

32. As trustee for the Osage Tribe, the United States has issued other leases covering portions of the Osage surface and mineral estates, including grazing leases, rights of way, and land and building leases and rentals. Under these leases, the lessee generally makes a monthly or annual payment to the United States as trustee for the Osage Tribe.

33. Defendant United States has never provided the Osage Tribe with an accounting of the revenue that the United States, as trustee, has collected or was required to collect under the leases that the United States issued for the benefit of the Tribe for purposes other than oil and gas mining. In addition, the United States holds the records relating to these Osage trust assets and has not provided the Osage Tribe with access to the records with respect to those leases that the United States, as trustee, is required to maintain for the benefit of the Tribe. As a result, at the present time, the Osage Tribe cannot identify each and every non-oil and gas lease where the United States, as trustee, has made a payment to the Tribe that is less than the payment required by the lease that the United States, as trustee, issued for the benefit of the Tribe.

34. On information and belief, Plaintiff alleges that, in addition to the royalty underpayments set forth in Exhibits A, B, and C, the United States, as trustee, has made payments to the Tribe that are less than the payments required by the non-oil and gas leases that the United States has issued for the benefit of the Tribe.

35. As a result of the above failures, the Osage Tribe has been damaged by not receiving payments under leases that the United States, as trustee, issued for the benefit of the Tribe and should have collected but did not collect. In addition, the Osage Tribe was damaged by not receiving interest or other investment income on the funds the United States should have

but failed to collect. Accordingly, the Osage Tribe is entitled to a money judgment against the United States, as trustee, for the full amount of these damages.

**WHEREFORE,** the Plaintiff Osage Tribe prays:

1. For an award of damages to the Osage Tribe in an amount to be determined at trial, for Defendant United States' breaches of its compensable fiduciary duties;

2. For an award to the Osage Tribe of reasonable attorneys' fees, costs, and such other relief as the Court deems just.

Dated this 20th day of October, 2004.

Respectfully submitted,

Wilson K. Pipestem
Pipestem Law Firm, P.C.
1333 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

ATTORNEY FOR THE OSAGE TRIBE
OF INDIANS OF OKLAHOMA

# EXHIBIT A

CONTRACT NUMBER
14-20-G06 5519

BLANKET OIL MINING LEASE

OSAGE RESERVATION, OKLAHOMA

THIS LEASE, made and entered into in duplicate on this 3rd day of March, 1978, by and between the OSAGE TRIBE OF INDIANS IN OKLAHOMA by Sylvester J. Tinker, Principal Chief, under authority of the resolution of the Osage Tribal Council dated February 15, 1978, and numbered 24-429. Party of the First Part, designated as Lessor, and Charles W. Oliphant, an undivided .469641 interest, Gertrude O. Oliphant, an undivided .115472 interest, Allene O. Mayo, an undivided .132062 interest, Bank of Oklahoma, Trustee, u/t/w A. G. Oliphant, deceased, an undivided .078561 interest, Eric B. Oliphant, an undivided .044456 interest, Nancy B. Oliphant, formerly Nancy B. Wyrick, an undivided .044456 interest, John D. Mayo II, an undivided .009857 interest, Peter O. Mayo, an undivided .009857 interest, J. P. Freeman an undivided .009857 interest, W. J. McAulay, an undivided .009857 interest, Martha R. Gillespie, an undivided .012124 interest, Katherine O. Croteau, an undivided .006900 interest, and Dorothy O. Johnston, an undivided .006900 interest, parties of the second part, designated as Lessee, under and in pursuance of Section 3 of the Act approved June 28, 1906 (34 Stat. L. 539-543); the Act approved March 3, 1921 (41 Stat. L. 1249); the Act of March 2, 1929 (45 Stat. L. 1478); the Act of June 24, 1938 (52 Stat. L. 1034); the Act of June 15, 1950 (Stat. L. 215); and the Act of October 6, 1964 (78 Stat. 1008):

WITNESSETH:

WHEREAS, Lessee is the owner of oil mining leases duly executed by the Principal Chief of the Osage Tribe under authority of resolution of the Osage Tribal Council and thereafter approved by the Secretary of the Interior, or his duly authorized representative, as now shown by the records of the Osage Indian Agency at Pawhuska, Oklahoma, covering lands in Osage County, Oklahoma, more particularly described as follows:

| | | |
|---|---|---|
| NE/4 | 5-T25N-R5E | Contract No. 14-20-G06-663 |
| SE/4 | 5-T25N-R5E | Contract No. " |
| NW/4 | 5-T25N-R5E | " " |

[based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal.]

D. Casinghead Gas - All casinghead gas shall belong to the oil lessee subject to any rights under existing gas leases. All casinghead gas removed from the lease from which it is produced shall be metered unless otherwise approved by the Superintendent and subject to a royalty of 16-2/3 percent of the market value of the gas and all products extracted therefrom, less a reasonable allowance for manufacture or processing. If oil lessee supplies casinghead gas produced from one lease for operation and/or development of other leases, either his or others, a royalty of 16-2/3 percent shall be paid on the value of all casinghead gas so used. All casinghead gas not utilized by the oil lessee may, with the approval of the Superintendent, be utilized by the gas lessee, subject to the prescribed royalty of 16-2/3 percent.

E. Development (1) Lessee shall drill and produce all wells necessary to offset or protect the above described land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage: Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon, if, in his opinion, a prudent operator would conduct further development.

(2) The Lessee accepts this lease with the understanding that the lands covered hereby are or may be leased to another party who shall have the exclusive right to prospect for and produce gas. If Lessee is notified of indications of possible oil production as the result of drilling by a gas lessee, he shall have the option to take over the well subject to acceptance and payment as provided in the regulations in 25 CFR Part 183.

(3) If the oil lessee drills a gas well he shall immediately without removing from the well any of the casing or other equipment, notify the gas lessee and the Superintendent. If the gas lessee does not, within 15 days after receipt of notice and cost of drilling elect to take over the well, he shall immediately notify the oil lessee, and the disposition of such well and the production therefrom shall be subject to the approval of the Superintendent. Should the gas lessee elect to take over the well, he shall pay the oil lessee the cost of drilling the same, including all damages paid and cost in place of casing and other equipment. If the oil lessee shall drill a gas well upon lands not leased for gas purposes, he shall immediately notify the Superintendent who may, until such time as said lands are leased, permit the lessee to

Section 15. This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of this lease; PROVIDED, that no regulation made after the approval of this lease shall operate to affect the term of the lease, rate of royalty, rental or acreage, unless agreed to by both parties.

Section 16. Violation of any of the terms or conditions of this lease or of the regulations pertaining thereto, shall subject the lease to cancellation by the Superintendent, or the Lessee to a fine of not exceeding Five-Hundred Dollars ($500.00) per day for each and every day the terms of the lease or the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent; PROVIDED, that the Lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent, whose findings shall be conclusive unless an appeal be taken to the Commissioner of Indian Affairs or to the Secretary of the Interior, as provided by the Regulations and the decision of the Commissioner or Secretary on such an appeal shall be conclusive.

Section 17. Before this lease shall be in force and effect, Lessee shall furnish a bond with responsible surety to the satisfaction of the Superintendent, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Osage Agency.

Section 18. An assignment of this lease or any interest therein covered by operating agreement or otherwise, may be made with the approval

# WEST BURBANK UNIT

## BLANKET OIL MINING LEASE

## OSAGE COUNTY, OKLAHOMA

A. A. CAMERON, OPERATOR

JANUARY 1, 1957

(a) [The sum of sixteen and two-thirds (16 2/3) per cent of the gross proceeds from the sales,] after deducting the oil used for fuel in operating the lease, of all oil produced and saved from the lease premises; provided, if when the quantity of oil produced and saved during any calendar month is sufficient to average 100 or more barrels per well per day, the royalty on such oil shall be twenty (20) per cent.

(b) Payment for the royalty payable hereunder shall be made at the time of sale or removal of the oil from the leased premises, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at [not less than the highest posted market price in the Mid-Continent Field on the day of sale or removal.]

Should the lessor with the approval of the Commissioner of Indian Affairs elect to take the royalty in oil, lessee shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner may take into consideration among other things, Federal laws, State laws, or regulations by competent Federal or St... authorities or lawful agreements among operators regulating either drilling

1/6

33228

(Must be executed in Triplicate)

FORM B

CONTRACT NUMBER

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in quadruplicate, on this 7th day of September A. D. 19 50, by and between the Osage Tribe of Indians in Oklahoma by JOHN OBERLY Principal Chief, under authority of the Resolution of the Osage Tribal Council dated AUG 16 1950 party of the first part, designated as lessor, and LESTER E. COX of Springfield, Missouri party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906 (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quantities, all the oil deposits in or under land described as follows, to-wit:

66 Tr. NE¼ (Quarter) Sec. 31 Twp 29 North N. Rge. 11 East E

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (45 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled "An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes," which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Secretary of the Interior may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in this lease within twelve months from date of approval of lease, or this may be held for the full five year period without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1.00 per acre per annum, or a proportionate part thereof for each three months period the lease is held and a well not drilled, such rental beginning twelve months from date of approval of lease: PROVIDED, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homesteads shall have been given. Provided, that the Superintendent of the Osage Agency in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender this lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental based on one dollar per acre for the fraction part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty five days from expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: Provided, further, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also, the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Upon payment of such location-site money lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location used for oil tank of not exceeding 1,600 barrels capacity, allowing 50 feet square for each tank-site. The sum to be paid for an oil tanksite of larger capacity and occupying greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the lessee shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

33229

(Must be executed in Triplicate)

FORM B

| CONTRACT NUMBER |
| --- |
| Lessor ........ |

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in quadruplicate, on this 7th day of September A. D. 19 50 by and between the Osage Tribe of Indians in Oklahoma by JOHN ... Principal Chief, under authority of the Resolution of the Osage Tribal Council dated AUG 16 1950 party of the first part, designated as lessor, and LESTER E. COX of Springfield, Missouri party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quanities, all the oil deposits in or under land described as follows, to-wit:

67 Tr. SE¼ (Quarter) Sec. 31 Twp 29 North N. Rge. 11 East E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (45 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royality oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Secretary of the Interior may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in this lease within twelve months from date of approval of lease, or this may be held for the full five year period without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1.00 per acre per annum, or a proportionate part thereof for each three months period the lease is held and a well not drilled, such rental beginning twelve months from date of approval of lease: PROVIDED, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homesteads shall have been given. Provided, that the Superintendent of the Osage Agency in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender this lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental based on one dollar per acre for the fraction part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty five days from expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: Provided, further, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also, the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Upon payment of such location-site money lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location used for oil tank of not exceeding 1,600 barrels capacity, allowing 50 feet square for each tank-site. The sum to be paid for an oil tanksite of larger capacity and occupying greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the lessee shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

FORM B (Revised)
Approved by the Secretary of the Interior September 14, 1968

(Must be executed in duplicate)

CONTRACT NUMBER
14-20-G06 3726

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in duplicate, on this 26th day of April A. D., 19 74, by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker Principal Chief, under authority of the Resolution of the Osage Tribal Council dated APR 17 1974 party of the first part, designated as lessor, and Ferguson Oil Company, Inc. of 2700 Liberty Tower., Okla. City, Okla. party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906 (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) the Act approved June 24, 1938 (52 Stat. L. 1034), and the Act of October 8, 1964, Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quantities all the oil deposits in or under land described as follows, to-wit:

107 Tr. SE/4 (Quarter) Sec. 10 Twp. 22N R. Rge. 8E E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

Section three of the Act of June 24, 1938 (52 Stat. 1034) as amended by the Act of October 8, 1964 (78 Stat. 1008) provides in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled "An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes," which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, and thereafter until otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs shall elect to take the royalty in oil; payment to be made at the time of sale or removal of oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Commissioner of Indian Affairs elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner of Indian Affairs may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: PROVIDED, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: Provided further, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: Provided further, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease.

Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

4. Lessee shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay meadow land), $150 for open pasture land, and $100 for each location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location site shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for a tank site of larger capacity and occupying a greater area, shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

Lessee may with the approval of the Superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the lessee may, lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines and the setting of pumps and other equipment, that cannot be amicably settled shall be settled by arbitration, as provided in regulations.

If the surface owner of the land covered by this lease obtains a farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortage on the surface of said land, and shall have agreed in writing that damages accruing to him from mineral operations on such land shall be paid to the mortagee, the lessee shall pay all fees and damages required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

CONTRACT NUMBER
14-20-G06 5619

BLANKET OIL MINING LEASE

OSAGE RESERVATION, OKLAHOMA

THIS LEASE, made and entered into in duplicate on this 3rd day of March, 1978, by and between the OSAGE TRIBE OF INDIANS IN OKLAHOMA by Sylvester J. Tinker, Principal Chief, under authority of the resolution of the Osage Tribal Council dated February 15, 1978, and numbered 24-429, Party of the First Part, designated as Lessor, and Charles W. Oliphant, an undivided .469641 interest, Gertrude O. Oliphant, an undivided .115472 interest, Allene O. Mayo, an undivided .182062 interest, Bank of Oklahoma, Trustee, u/t/w A. G. Oliphant, deceased, an undivided .078561 interest, Eric B. Oliphant, an undivided .044456 interest, Nancy B. Oliphant, formerly Nancy B. Wyrick, an undivided .044456 interest, John D. Mayo II, an undivided .009857 interest, Peter O. Mayo, an undivided .009857 interest, J. P. Freeman an undivided .009857 interest, W. J. McAulay, an undivided .009857 interest, Martha R. Gillespie, an undivided .012124 interest, Katherine O. Croteau, an undivided .006900 interest, and Dorothy O. Johnston, an undivided .006900 interest, parties of the second part, designated as Lessee, under and in pursuance of Section 3 of the Act approved June 28, 1906 (34 Stat. L. 539-543); the Act approved March 3, 1921 (41 Stat. L. 1249); the Act of March 2, 1929 (45 Stat. L. 1478); the Act of June 24, 1938 (52 Stat. L. 1034); the Act of June 15, 1950 (Stat. L. 215); and the Act of October 6, 1964 (78 Stat. 1008):

WITNESSETH:

WHEREAS, Lessee is the owner of oil mining leases duly executed by the Principal Chief of the Osage Tribe under authority of resolution of the Osage Tribal Council and thereafter approved by the Secretary of the Interior, or his duly authorized representative, as now shown by the records of the Osage Indian Agency at Pawhuska, Oklahoma, covering lands in Osage County, Oklahoma, more particularly described as follows:

| | | | |
|---|---|---|---|
| NE/4 | 5-T25N-R5E | Contract No. | 14-20-G06-663 |
| SE/4 | 5-T25N-R5E | Contract No. | " |
| NW/4 | 5-T25N-R5E | " | " |

| | | |
|---|---|---|
| SW/4 | 5-T25N-R5E | Contract No. 14-20-G06-603 |
| NE/4 | 6-T25N-R5E | " " |
| SE/4 | 6-T25N-R5E | " " |
| NW/4 | 6-T25N-R5E | " " |
| SW/4 | 6-T25N-R5E | " " |
| NW/4 | 8-T25N-R5E | " " |
| SE/4 | 31-T26N-R5E | " " |
| SW/4 | 31-T26N-R5E | " " |
| SE/4 | 32-T26N-R5E | " " |
| NW/4 | 31-T26N-R5E | Contract No. 14-20-G06-933 |
| NE/4 | 31-T26N-R5E | Contract No. I-68 Ind. 26205 |
| NW/4 | 32-T26N-R5E | Contract No. 14-20-G06-934 |
| NE/4 | 32-T26N-R5E | Contract No. 14-20-G06-2656 |
| NE/4 | 36-T26N-R4E | Contract No. 14-20-G06-2777 |
| SE/4 | 36-T26N-R4E | Contract No. 14-20-G06-2778 |

WHEREAS, Lessee desires to unitize and merge said leases into a sole blanket lease for further development by the water flood process.

1. The lessor, in consideration of a bonus of One Dollar ($1.00), receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee for Five (5) years from the date of approval hereof and as long thereafter as oil is produced in paying quantities all the oil deposits except as hereinafter provided, in or under all the lands above described, containing 2,880 acres, more or less.

As the primary and moving consideration for the granting of this lease, Lessee agrees that in addition to operations now being conducted on the leased premises Lessee will within six months from the effective date hereof commence operations for the development of the Cleveland Sand underlying the leased premises by a secondary recovery process and with due diligence continue the development of the Cleveland Sand and the Mississippi Chat underlying the leased premises by such process as long as development and operation of the leased premises by said process can be conducted profitably.

Lessee shall on or before December 31, 1978, and on or before December 31st of each year thereafter, submit to the Superintendent his plan of development and operation for the unit area for the ensuing year.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operations; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April, 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Casinghead gas" means gas produced from an oil well as a consequence of oil production from the same formation.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

B. Reversion to Form B - Prior to February 1, 1981, all eighteen (18) tracts may be held as part of the Blanket Lease by having a well injecting water into, or producing oil in paying quantities from the Cleveland Sand or Mississippi Chat formations. Failure to comply with the above shall cause the termination of any such tract and it shall no longer be a part of this Blanket Lease; Provided, If there is in existence and operation on such tract a well producing oil in paying quantities from any formation other than the Cleveland Sand or Mississippi Chat as provided in this paragraph for that particular tract, the original Form B. Lease Contract theretofore merged into this or the preceding Blanket Lease shall be restored to its original status and lessee shall be entitled to hold such tract under terms of the original Form B Lease so long as oil is produced on such tract in paying quantities; Provided, further, That any time after February 1, 1981, that any of the eighteen (18) tracts described herein does not have thereon an active well producing oil in paying quantities from the Cleveland Sand or Mississippi Chat formations, this Blanket Lease shall terminate with respect to that tract, and the tract shall no longer be a part of this Blanket Lease, if any of the tracts that cease to produce oil in paying quantities from the Cleveland Sand or Mississippi Chat formation but have thereon an active well injecting water into either of these formations the Lessee or his assigns will be assured of obtaining a SWD easement at the prevailing rate. Provided, If there is in existence and operation on such tract a well producing oil in paying quantities from any formation other than the Cleveland Sand or Mississippi Chat as provided in this paragraph for that particular tract, the original Form B Lease Contract theretofore merged into this or the preceding Blanket Lease shall be restored to its original status and lessee shall be entitled to hold such tract under terms of the original Form B Lease so long as oil is produced on such tract in paying quantities.

C. Royalty - Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2/3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, That when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be

based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal.

D. Casinghead Gas - All casinghead gas shall belong to the oil lessee subject to any rights under existing gas leases. All casinghead gas removed from the lease from which it is produced shall be metered unless otherwise approved by the Superintendent and subject to a royalty of 16-2/3 percent of the market value of the gas and all products extracted therefrom, less a reasonable allowance for manufacture or processing. If oil lessee supplies casinghead gas produced from one lease for operation and/or development of other leases, either his or others, a royalty of 16-2/3 percent shall be paid on the value of all casinghead gas so used. All casinghead gas not utilized by the oil lessee may, with the approval of the Superintendent, be utilized by the gas lessee, subject to the prescribed royalty of 16-2/3 percent.

E. Development (1) Lessee shall drill and produce all wells necessary to offset or protect the above described land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon, if, in his opinion, a prudent operator would conduct further development.

(2) The Lessee accepts this lease with the understanding that the lands covered hereby are or may be leased to another party who shall have the exclusive right to prospect for and produce gas. If Lessee is notified of indications of possible oil production as the result of drilling by a gas lessee, he shall have the option to take over the well subject to acceptance and payment as provided in the regulations in 25 CFR Part 183.

(3) If the oil lessee drills a gas well he shall immediately without removing from the well any of the casing or other equipment, notify the gas lessee and the Superintendent. If the gas lessee does not, within 15 days after receipt of notice and cost of drilling elect to take over the well, he shall immediately notify the oil lessee, and the disposition of such well and the production therefrom shall be subject to the approval of the Superintendent. Should the gas lessee elect to take over the well, he shall pay the oil lessee the cost of drilling the same, including all damages paid and cost in place of casing and other equipment. If the oil lessee shall drill a gas well upon lands not leased for gas purposes, he shall immediately notify the Superintendent who may, until such time as said lands are leased; permit the lessee to

(Must be executed in Triplicate)

FORM B

CONTRACT NUMBER

I-68-Ind ...............

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in triplicate, on this 5th day of 7th A. D., 19 52 by and between the Osage Tribe of Indians in Oklahoma by PAUL PITTS Principal Chief, under authority of the Resolution of the Osage Tribal Council dated JAN 16 1952 party of the first part, designated as lessor, and Lester E. Cox of Springfield, Missouri party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quantities, all the oil deposits in or under land described as follows, to-wit:

Tr. SE (Quarter) Sec. 30 Twp 29 N. Rge. 11 E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (46 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Secretary of the Interior may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in this lease within twelve months from date of approval of lease, or this may be held for the full five year period without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1.00 per acre per annum, or a proportionate part thereof for each three months period the lease is held and a well not drilled, such rental beginning twelve months from date of approval of lease: PROVIDED, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homesteads shall have been given. Provided, that the Superintendent of the Osage Agency in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender this lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental based on one dollar per acre for the fraction part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty five days from expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: Provided, further, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also, the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Upon payment of such location-site money lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location used for oil tank of not exceeding 1,600 barrels capacity, allowing 50 feet square for each tank-site. The sum to be paid for an oil tanksite of larger capacity and occupying greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the lessee shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

(Must be executed in Triplicate)

FORM B

| CONTRACT NUMBER |
| --- |
| I-65-Ind |

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in triplicate, on this 5th day of Feb A. D. 1952, by and between the Osage Tribe of Indians in Oklahoma by PAUL PITTS Principal Chief, under authority of the Resolution of the Osage Tribal Council dated JAN 16 1952, party of the first part, designated as lessor, and Lester E. Cox of Springfield, Missouri party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quanities, all the oil deposits in or under land described as follows, to-wit:

5V Tr. SE (Quarter) Sec. 30 Twp 29 N. Rge. 11 E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (45 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Secretary of the Interior may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in this lease within twelve months from date of approval of lease, or this may be held for the full five year period without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1.00 per acre per annum, or a proportionate part thereof for each three months period the lease is held and a well not drilled, such rental beginning twelve months from date of approval of lease: PROVIDED, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homesteads shall have been given. Provided, that the Superintendent of the Osage Agency in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender this lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental based on one dollar per acre for the fraction part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty five days from expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: Provided, further, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also, the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Upon payment of such location-site money lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location used for oil tank of not exceeding 1,600 barrels capacity, allowing 50 feet square for each tank-site. The sum to be paid for an oil tanksite of larger capacity and occupying greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the lessee shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

(Must be executed in Triplicate)

FORM II

CONTRACT NUMBER

I-63-Ind ..........

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in triplicate, on this 5th day of March A. D. 1952 by and between the Osage Tribe of Indians in Oklahoma by PAUL PITTS Principal Chief, under authority of the Resolution of the Osage Tribal Council dated JAN 16 1952 party of the first part, designated as lessor, and **Lester E. Cox** of **Springfield, Missouri** party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quanities, all the oil deposits in or under land described as follows, to-wit:

27 Tr. **NW** (Quarter) Sec. **5** Twp **28** N. Rge. **11** E.

of the Indian Meridian, and containing **160** acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (45 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 639-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Secretary of the Interior may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in this lease within twelve months from date of approval of lease, or this may be held for the full five year period without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1.00 per acre per annum, or a proportionate part thereof for each three months period the lease is held and a well not drilled, such rental beginning twelve months from date of approval of lease: PROVIDED, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homesteads shall have been given. Provided, that the Superintendent of the Osage Agency in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender this lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental based on one dollar per acre for the fraction part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty five days from expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: Provided, further, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also, the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Upon payment of such location-site money lessee shall be entitled to possession. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location used for oil tank of not exceeding 1,600 barrels capacity, allowing 60 feet square for each tank-site. The sum to be paid for an oil tanksite of larger capacity and occupying greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

If the surface owner of the land covered by this lease obtains a Federal farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, the lessee shall pay all fees and damages, required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

Approved by the Secretary of the Interior November 7, 1983

Lease Contract No. 14-20-G06

Lease Contract No. 14-20-G06

CONTRACT NUMBER 14-20-G06-

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 18th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma, Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1978 party of the first part, designated as Lessor, and Cussman Oil Company of Tulsa, Oklahoma

party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. NE/4 Sec. 19 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control. The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and-or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... to drill and complete and place in production a well producing and selling oil and/or natural gas in paying quantities on the land ... within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary ... the lease may be ... the remaining primary term of the lease by payment ...~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations. It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

17

Form [illegible]
Approved by the Secretary of the Interior November 7, 1975

Comb[illegible]ng oil lease and gas lease pursuant to Resolution No. 25-173
[illegible]l Lease Contract No. 14-20-G[illegible] [illegible]33
[illegible]s Lease Contract No. 14-20-G06-[illegible]16

CONTRACT NUMBER
14-20-[illegible]

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 1st day of April, 1980, by and between the Osage Tribe of Indians of Oklahoma, Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June [illegible], 1974 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 5, 1974 (78 Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~[illegible]~~ from the date of approval hereof and as long thereafter as oil and/or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SE/4 Sec. 19 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and/or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. [illegible] shall complete and place in production a well producing and selling oil and/or natural gas in paying quantities on the land [illegible] within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, [illegible] 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be [illegible] during the remaining primary term of the lease by payment of the same rental [illegible] of the lease.~~

C. Royalty - Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions. - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combi... Oil lease and gas lease pursuant to Resolution No. 26-173

...oved by the Secretary of the Interior November 7, 1973

Lease Contract No. 14-20-G0... 0

...as Lease Contract No. 14-20-G06-...16

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

CONTRACT NUMBER 14-20-G... 7319

This lease made and entered into in duplicate, on this 18th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma, Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1974 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SE/4 Sec. 24 Twp. 23 N. Rge. 7 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Lessee shall complete and place on production a well producing and selling oil and or natural gas in paying quantities on the land embraced within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, ... 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for as long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be ... during the remaining primary term of the lease by payment of ... rental ... of the lease.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate ...ation if in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combined oil lease and gas lease pursuant to Resolution No. 25-173
Approved by the Secretary of the Interior November 7, 1975
Lease Contract No. 14-20-GO 5
Lease Contract No. 14-20-G06-6

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

CONTRACT NUMBER 14-20-G06-

This lease made and entered into in duplicate, on this 15 day of April, 1980, by and between the Osage Tribe of Indians in Oklahoma Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1978 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma

party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SW/4 Sec. 19 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Lessee shall complete and place on production a well producing and selling oil and or natural gas in paying quantities on the land ... within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, ... 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be ... primary term of the lease by payment of advance rental ...~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from the lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations. - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions. - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of

Combining oil lease and gas lease pursuant to Resolution No. 25-173
Approved by the Secretary of the Interior November 7, 1975
Lease Contract No. 14-20-C06-...3
Gas Lease Contract No. 14-20-C06-...9

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

CONTRACT NUMBER 14-20-C06-

This lease made and entered into in duplicate, on this 8th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1979 party of the first part, designated as Lessor, and Cussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and-or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. NE/4 Sec. 30 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and-or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Unless Lessee shall complete and place in production a well producing and selling oil and-or natural gas in paying quantities~~ the land ... within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be ~~... during the remaining primary term of the lease by payment of ... rental ...~~
~~... ...~~

C. Royalty - Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate portion if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions. The Superintendent may impose restrictions as to time ofdrillingand rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Comb ing oil lease and gas lease pur nt to Resolution No. 25-173

Approved by the Secretary of the Interior November 7, 1975

1 Lease Contract No. 14-20-G06 09

Gas Lease Contract No. 14-20-G06- 289

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

CONTRACT NUMBER 14-20-G06-

This lease made and entered into in duplicate, on this 15th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma, Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1976 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 21 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 8 Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SW/4 Sec. 30 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right -of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. Drill. Unless lessee shall complete and place on production a well producing and selling oil and or natural gas in paying quantities~~ on the land ~~described~~ within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the ~~Superintendent~~ consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall ~~be paid before~~ the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the ~~specified rental annually~~ in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities ~~shall, for so long~~ as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary ~~term, the lease~~ may be ~~maintained during the remaining primary term of the lease by payment of advance rental which shall ... of the lease~~.

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate strata if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated, are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time ofdrillingand rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the