# In the United States Court of Federal Claims

No. 00-169 L

(E-Filed: July 8, 2005)

| | |
|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Indian Trust Claims; Discovery; Privilege; Fiduciary Exception to Attorney-Client Privilege and Work Product Doctrine |

Wilson K. Pipestem, Washington, DC, for plaintiff.

Brett D. Burton, with whom were Kelly A. Johnson, Acting Assistant Attorney General; Martin J. LaLonde and John H. Martin, U.S. Department of Justice, Environment and Natural Resources Division, Washington, DC, for defendant. Stephen Simpson, Office of the Solicitor, U.S. Department of the Interior, Washington, DC; Teresa E. Dawson, Office of Chief Counsel, U.S. Department of the Treasury, Washington, DC; Jason R. Baron, Office of General Counsel, National Archives and Records Administration, College Park, MD, of counsel.

OPINION AND ORDER

HEWITT, Judge

The court has before it plaintiff Osage Nation's Objections to Defendant's Privilege Claims (Pl.'s Objections or Objections), electronically filed March 31, 2005, Defendant's Opposition to the Osage Nation's Objections to Defendant's Privilege Claims[1] (Def.'s Opp'n), electronically filed May 6, 2005, and plaintiff Osage Nation's Reply in Support of its Objections to Defendant's Privilege Claims (Pl.'s Reply), electronically filed May 20, 2005. For the following reasons, the court SUSTAINS plaintiff's objections and ORDERS DEFENDANT TO PRODUCE TO PLAINTIFF the

[1]Defendant also provided under seal 127 documents for in camera review. See Notice of Submission of Documents Under Seal for In Camera Review Pursuant to the Court's Order of April 15, 2005, electronically filed May 6, 2005.

documents provided to the court under seal for in camera review as to which plaintiff's objections remain.

## I. Background

Plaintiff objected to defendant's withholding of certain documents from discovery and submitted to the court a list of "items from [defendant's] . . . draft privilege logs relevant to tranche one claims as to which [plaintiff] believes privilege does not exist." Pl.'s Objections at 1; see also id. at 2 (noting the attachment of defendant's draft privilege logs as exhibits based on plaintiff's understanding that the logs had never been filed with the court). Defendant then submitted its final privilege log, which identified 127 withheld documents,[2] along with a substantial brief refuting the legal bases for plaintiff's objections. See generally Def.'s Opp'n; id. at Ex. 1 (Final Privilege Log). Based on its review of the final privilege log, plaintiff withdrew objections to fifty-five of the withheld documents, Pl.'s Reply at Ex. A (List of Documents as to which Objections Withdrawn), and maintained its objections to the remaining seventy-two (remaining documents or Documents), id. at 2-3. Plaintiff urges the court to "reject [defendant's] attempt to assert a blanket claim of attorney-client privilege for all communications between the [f]ederal [g]overnment, as trustee of the Osage Nation, and its counsel concerning the administration of that trust" based on "the validity of the fiduciary exception to the attorney-client privilege which this [c]ourt established in its Orders in Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States, Nos. 458[1]-79L, 459[1]-79L." Pl.'s Objections at 1; see generally Order of May 16, 2002 in Shoshone, Nos. 4581-79L, 4591-79L (Shoshone Order) (applying the fiduciary exception to deny defendant's motion for a protective order to prevent the deposition and testimony of government counsel).

Plaintiff cites the Shoshone Order for the proposition that "it is well-established in . . . this [c]ourt, and in federal courts in general, that the attorney-client privilege does not apply to prevent disclosure to beneficiaries of communications between a trustee and its counsel concerning management and administration of the trust." Pl.'s Objections at 4 (internal quotations and citations omitted); see Pl.'s Reply at 1 ("Under the fiduciary exception, the tribe, as beneficiary of the [Osage tribal] trust, is considered the real client in interest and the [g]overnment may not withhold documents relating to the management and operation of the trust on the basis of either the attorney-client privilege or the work product doctrine."); see also Pl.'s Objections at 5 ("[A] document [prepared to assist a trustee in its fiduciary capacity] . . . is not protected from disclosure even if it also satisfies the elements of some other privilege, such as the work[]product privilege." (citing Cobell v. Norton, 213 F.R.D. 1, 11-12 (D.D.C. 2003) (Cobell II)). Thus, plaintiff argues, "'the trustee seeking to foreclose a beneficiary's inquiry into trust administration must bear the burden of showing that he or she acted in . . . a non-trustee capacity' and

[2]As noted above, the court received under seal the 127 documents catalogued in defendant's final privilege log. Supra note 1.

that the advice or communication 'did not benefit the trust beneficiaries.'" Id. (quoting Cobell v. Norton, 212 F.R.D. 24, 28 (D.D.C. 2002) (Cobell I). Plaintiff urges the court to "order [defendant] to immediately release the[] [remaining] documents to the Osage nation, as the beneficiary of the tribal trust." Pl.'s Reply at 1.

Defendant characterizes the "so-called fiduciary exception [as] a comparatively recent development that has been applied by a relatively small number of courts." Def.'s Opp'n at 10 (citing Riggs Nat'l Bank v. Zimmer, 355 A.2d 709 (Del. Ch. 1976), as the "seminal case applying the exception"). Defendant rejects the analogy of Indian trusts to private trust relationships on which this court's Shoshone Order and the orders in Cobell are founded. See id. at 1 ("[A] government-to-government relationship between the United States and a Tribe . . . resembles a trust relationship only where Congress has placed specific fiduciary duties on a federal agency."). Defendant argues that the Shoshone Order and Cobell I "extended the [fiduciary exception] doctrine beyond prior judicial precedent" by applying it to the relationship between the Department of Interior (Interior) and Indian tribes. Id. at 12. Defendant urges the court in this case not "to follow Cobell's extension of the fiduciary exception . . . [and to] reconsider its conclusions in Shoshone." Id. at 13.

The court considers each of the parties' arguments in turn.

## II. Discussion

Defendant maintains that the fiduciary exception is inapplicable in this case for two reasons. First, plaintiff should not be considered the "real client" of the legal advice sought or received by the federal trustee for several reasons:

> (a) . . . the government attorney's duty of loyalty is to the United States, which has a distinct and independent sovereign interest in fulfilling its statutory trust duties, . . . [and this duty of loyalty requires] the attorney [to] take into account multiple interests [which] may be at odds with a tribal beneficiary; ([b]) . . . courts and Congress have recognized that Indian beneficiaries are not entitled to the confidential or privileged communications of the federal trustee; and ([c]) tribal beneficiaries do not pay for the advice or work product received by the federal trustee.

Id. at 1-2. Second, defendant argues that "Indian beneficiaries have multiple avenues for obtaining complete and accurate information about the administration of their trust" and thus are not analogous to beneficiaries of private trusts. Id. at 2.

### A. Whether Tribal Beneficiaries Are the "Real Client" in Interest of Legal Advice Regarding the Government's Administration of Indian Trusts

1. Whether the Fiduciary Exception Does Not Apply Because Legal Advice Given to the Government Must Account for Competing Interests

Defendant reasons that the "'real client'" of legal advice regarding fiduciary matters "should not be deemed to be individual Indians or tribes, but the Secretary of the Interior or other federal agencies." Id. at 16. Defendant claims that "the United States does not have an undivided duty of loyalty to Indian tribes" because of its varied obligations. Id. at 17; see id. ("[W]here Congress has imposed [other duties] upon the United States, in addition to its duty to represent Indian tribes, the analogy of a faithless private fiduciary cannot be controlling for purposes of evaluating the authority of the United States to represent different interests.") (quoting Nevada v. United States, 463 U.S. 110, 142 (1983)) (internal quotations omitted) (second alteration in original). Thus, "[b]ecause federal agencies are often charged with protecting competing interests, including some potentially adverse to a Tribe's interests, the fiction cannot hold that the 'real client' of the agencies' attorneys is the Tribe." Id. at 18; see also id. at 14-16 (discussing United States v. Minnesota, 270 U.S. 181 (1926); Heckman v. United States, 244 U.S. 413 (1912); and Shoshone-Bannock Tribes v. Reno, 56 F.3d 1476 (D.C. Cir. 1995)).

The court, like plaintiff, sees no "meaningful distinction between Indian trusts and private trusts" and thus no "valid reason . . . to revisit its decision in Shoshone." Pl.'s Reply at 9; see id. at 8 (arguing for the rejection of defendant's "attempts to carve out an Indian trust exception to the fiduciary exception"). "Because Congress named the United States as trustee over the Osage tribal trust and because the United States has delegated some of those obligations to Interior, Interior[] must continue to act as trustee until Congress directs otherwise." Id. at 10. The court agrees with plaintiff that the cases cited by defendant are either inapposite as precedent or actually strengthen the analogy between Indian and private trusts underlying the fiduciary exception. See id. at 11.

The Supreme Court in Nevada held that, for res judicata purposes, the government may adjudicate claims on behalf of non-Indian interests without breaching its fiduciary duty to the tribes. See 463 U.S. at 128 ("The Government does not 'compromise' its obligation to one interest that Congress obliges it to represent by the mere fact that it simultaneously performs another task for another interest that Congress has obligated it by statute to do."). Nevada merely characterizes the government's sovereign powers without casting any light on the scope of the fiduciary exception generally, and, therefore, no light on whether the fiduciary exception should apply to the disclosure of the Documents. In Minnesota, the Supreme Court held that the United States may bring suit against a state to enforce the rights of Indians even though the 11th Amendment prevents individual Indians from doing so. See 270 U.S. at 194-95; Pl.'s Reply at 11 (pointing out that Minnesota emphasizes that the government must act "on behalf of, and consistent with, the interests of the particular tribe involved in fulfillment of its [c]ongressional charge."). Similarly, Heckman reiterates the standing of the United States to sue individual Indians to enforce property restrictions imposed by the government acting on

behalf of the tribes. See 224 U.S. at 439-45; Pl.'s Reply at 11 (arguing that standing existed in Heckman "only because [the government] had a binding obligation to act 'on behalf of' the tribal beneficiaries'"); id. ("Thus, it was actually the [g]overnment's interest as trustee . . . and not an independent government interest[] that gave the [g]overnment standing to bring . . . suit [in Heckman]."). And Shoshone-Bannock merely construes the scope of the government's trust duties. See 56 F.3d at 1482-84 (finding off-reservation water right claims fell outside scope of government trust duties); Pl.'s Reply at 13 (arguing that the Shoshone-Bannock holding "did not relate to the administration . . . of the trust" because "the question of whether or not to assert the 'off-reservation water claim' was [found ] not [to be] within the scope of the trust relationship"). The court finds defendant's argument that the government's sovereign interests somehow negate or offset its obligations as trustee to be unpersuasive.

2. Whether the Indian Claims Limitation Act of 1982 or FOIA Demonstrates that Congress Does Not Intend for the Fiduciary Exception to Apply

Defendant further argues that "[l]egislation addressing privileges show[s] that Congress did not intend the fiduciary exception to apply to the United States as a matter of course." Def.'s Opp'n at 18. Because the Indian Claims Limitation Act of 1982 provided that the Secretary of the Interior must "provide to [any Indian claimant] any nonprivileged research materials or evidence" as documentation for the government's decision not to bring a claim on the claimant's behalf, Pub. L. No. 97-394, 96 Stat. 1966, (Dec. 30, 1982), defendant argues that "Congress specifically recognized Interior's privileges vis a vis individual Indians and tribes." Id. at 19. Plaintiff contends that the language cited by defendant "does not prohibit the disclosure of such information to a tribal beneficiary" because the information is never considered privileged "with respect to a beneficiary" under the fiduciary exception. Pl.'s Reply at 13-14 (citing and quoting United States v. Mett, 178 F.3d 1058, 1063 (9th Cir. 1999) ("[T]he fiduciary exception can be understood as . . . no[]'exception' . . . at all. Rather, it merely reflects the fact that, . . . as to advice regarding plan administration, a trustee is not the 'real client' and thus never enjoyed the privilege in the first place.") (internal citations omitted). Whether the fiduciary exception is analyzed as suggested by the Mett court or as an exception to privilege, as in the Shoshone Order and Cobell I and Cobell II, the result is the same. The Documents were prepared by defendant in connection with its services as trustee and are not privileged as to the Osage as trust beneficiaries.

Defendant also argues that the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000), incorporates certain exceptions analogous to the privileges of civil discovery to prevent public disclosure of documents and thus expresses Congress' intent to preserve the attorney-client privilege against the fiduciary exception. See Def.'s Opp'n at 19, 20 & n.17 (noting that "Interior also withholds [privileged] documents from tribes" in response to FOIA requests and citing letters from Interior to tribal representatives invoking the attorney-client privilege in the FOIA context). Defendant cites Department of the Interior v. Klamath Water Users Protective Association, 532 U.S. 1 (2001), to argue that invoking

the fiduciary exception in this case would constitute a FOIA waiver subjecting the Documents to public disclosure. See Def.'s Opp'n at 20 (arguing that disclosing privileged communications to the tribes would, under Klamath, constitute a FOIA waiver not intended by Congress).

The Supreme Court held in Klamath that FOIA did not foreclose public disclosure of communications between tribal beneficiaries and the government trustee to a third party FOIA litigant because no "inter- or intra-agency" communications were implicated. See 532 U.S. at 12. As plaintiff points out, the holding in Klamath applied to "documents prepared by the Tribe regarding the Tribe's 'own view of its own interest' in a pending litigation" and submitted to Interior, Pl.'s Reply at 12 (quoting 532 U.S. at 14); such documents fall "outside [of] the attorney-client relationship" and therefore do not implicate the fiduciary exception, id. (emphasis added). See id. ("[Defendant] misunderstand[s] . . . the fiduciary exception. The fiduciary exception does not require disclosure of documents outside the attorney-client relationship."). Unlike the communications at issue in Klamath, which originated with a tribe, the Documents here are government documents prepared in aid of trust administration. Klamath does not govern this case. In addition, the rules of discovery in civil litigation and the requirements of FOIA serve different policies and interests. The court does not agree that FOIA weighs against the application of the fiduciary exception in the circumstances of this case.

3. Whether the Fiduciary Exception Does Not Apply Because Tribal Beneficiaries Do Not Pay for Legal Advice Regarding Trust Administration

Defendant also asserts that the analogy to private trusts is inapplicable because tribes do not pay for the legal advice provided to the trustee on their behalf. See Def.'s Opp'n at 21-22 ("[L]egal services provided to Interior are not funded by the tribes.") (citing Pub. L. No. 108-108, 117 Stat. 1241, 1262-63 (Nov. 10, 2003); Pub. L. No. 103-332, 108 Stat. 2499 (Sept. 30, 1994); Pub. L. No. 101-121, 103 Stat. 701 (Oct. 23, 1989)); see also id. at 21 (citing Riggs, 355 A.2d at 710-11, and Restatement (Second) of Trusts, § 173, cmt. b, for the proposition that the beneficiary exception has been "frequently decided" on the basis of the beneficiaries' funding of legal services from the trust corpus).

Plaintiff points out that the payment of legal fees "is not determinative" of the issue and "is only relevant in deciding the application of the fiduciary exception to legal advice obtained by the trustee 'for his own protection.'" Pl.'s Reply at 14 (quoting with added emphasis Restatement (Second) of Trusts § 173, cmt. b). Plaintiff contends that "Congress['] . . . [choice] not to require (or even permit) . . . [payment for legal advice] from the trust corpus cannot be held against the Osage Nation" because "the Osage tribal trust . . . [is] not voluntary." Id. at 14. The court agrees that "[t]he [g]overnment's legal obligation to fulfill its fiduciary duty of providing the Osage Nation, as the beneficiary of the trust, with complete and accurate information overrides any implication that must

arise from the fact that the [g]overnment pays its own legal fees." Id. at 15; see Cobell I, 212 F.R.D. at 30 ("The Court . . . recognize[s] the existence of an attorney-client privilege where a trustee seeks legal advice solely in his own personal interest or where the discovery material has been shown to relate exclusively to non-fiduciary matters."); Riggs, 355 A.2d at 711-12 (looking to the source of payment for legal advice to discern whether the advice was intended to benefit the trust or protect the trustee personally); Restatement (Second) of Trusts § 173, cmt. b ("[A trustee] is privileged to refrain from communicating to the beneficiary opinions of counsel obtained by him at his own expense and for his own protection.") (emphasis added). There is no claim by the United States here that the Documents relate exclusively to the trustee's personal benefit or protection. The information sought here concerns trust administration matters. See Documents passim.

B. Whether the Fiduciary Exception Does Not Apply Because Tribal Beneficiaries Have Access to Other Sources of Complete and Accurate Trust Administration Information

Finally, defendant argues that the fiduciary exception is inapplicable because plaintiffs have access to "complete and accurate information about the administration of the trust" and because "there are a number of sources for information related to the management of their trust assets and funds available to them as a tribal beneficiary" not available in the context of private trusts. Def.'s Opp'n at 22; see also id. (discussing availability of information through means such as FOIA and congressional oversight hearings of Interior's trust management, and Interior's statutory duty to provide tribes with periodic performance statements).

Plaintiff replies that defendant's "'alternative source' argument is without merit." Pl.'s Reply at 16. The court agrees. The availability of other sources of information "is irrelevant" because

> [e]ven if such sources were available, that does not discharge the [g]overnment of its obligation, as a fiduciary, to provide complete and accurate information. The Osage Nation is entitled to all documents related to the trust, even if similar information is contained in multiple documents. The only basis for the [g]overnment to refuse to produce documents is if [they] fall into one of the narrow exceptions to the fiduciary exception.

Id. at 15-16 (citing Cobell I, 212 F.R.D. at 28 and Cobell II, 213 F.R.D. at 11); see id. at 16 ("[T]hat the Secretary of the Interior is subject to congressional review does not relieve [defendant] of its fiduciary obligations to the Osage Nation, nor does it provide . . . alternative . . . [access] to . . . complete, accurate, and timely information."); see also id. (describing FOIA as "a false remedy" which would duplicate discovery conducted in this case and could present the same fiduciary exception issue). Although the Secretary of the Interior is indeed required by statute to account to the tribes, see Def.'s Opp'n at 22-23

(citing 25 U.S.C. § 4011 (2000)), plaintiff alleges that the accounting has not occurred, see Pl.'s Reply at 16.

C. Whether the Fiduciary Exception Applies to Attorney Work Product

Defendant argues in the alternative that work product should be excluded from the exception. See Def.'s Opp'n at 23-24 ("The fiduciary exception should not be applied to allow a plaintiff to obtain . . . legal advice about matters other than trust administration or that the defendant has obtained in order to defend itself from a beneficiary's own suit."). Defendant also urges this court not to follow Cobell I regarding work product which, it claims, adopts a "'not one drop rule'" that applies the fiduciary exception to any document containing trust advice, even if the document also contains non-trust related advice protected by the work product doctrine. Id. at 26; see id. at 27, n.20 ("The U.S. District Court for the District of Columbia [in Cobell I] appears to be the only court that has adopted [a] broad standard for application of the fiduciary exception."); id. at 29 ("The [c]ourt should decline to adopt a "not one drop rule," which could . . . eviscerat[e] the work product doctrine for government attorneys defending federal agencies acting in their roles as trustees."). By way of example, defendant discusses a document submitted for in camera review which it claims should be protected work product "even under the broad Cobell standard." Id. at 30.

Defendant claims that one of the Documents, a memorandum evaluating potential property claims the Osage Nation requested that the United States bring against the state of Kansas (the Kansas Memorandum), "constitutes core opinion work product, reflecting the mental impressions, conclusions, opinions, or legal theories of the attorney." Id. Defendant invokes language in Cobell II, 213 F.R.D. at 77, concerning "core work product." In Cobell II, the court held that a memorandum quoting from "the mental impressions, conclusions, opinions, or legal theories" of a government attorney "[was] developed exclusively for purposes other than the benefit of the trust beneficiaries; i.e., solely to aid in [the instant] litigation" and thus constituted "core work product" falling outside the fiduciary exception. Id. In Cobell II, the memorandum was not about work on behalf of the tribe, but rather about the defense by the government of the lawsuit then before the court.

Defendant nevertheless argues, citing Cobell II, that the Kansas Memorandum, which "addresse[d] whether a suit should be brought [by the United States] on behalf of the [the Osage Nation] to fulfill its governmental and sovereign interests" regarding disputed riverbed property "does not involve administration of trust funds or assets, [and] is not for the benefit of the Tribe." Def.'s Opp'n at 30. The court is unable to discern how the Kansas Memorandum, a memorandum about a suit proposed to be brought on behalf of the Osage tribe as to which the United States has a fiduciary relationship, could be considered a document that does not involve trust administration or that was not produced "for the benefit of the Tribe."

Plaintiff also argues that defendant "has [not] properly invoked the . . . work product doctrine." Pl.'s Reply at 17. Rule 26 of the Rules of the Court of Federal Claims (RCFC) places on defendant the burden of demonstrating that the withheld documents were "prepared in anticipation of litigation or for trial" before the burden shifts to plaintiff to demonstrate "substantial need" to obtain the withheld documents. RCFC 26(b)(3).[3] Based on the descriptions in defendant's final privilege log, plaintiff argues that, even if defendant has properly invoked work product protection, all of the remaining documents concern administration of Indian trusts "and thus fall squarely within the fiduciary exception," eliminating plaintiff's burden of showing "substantial need." Pl.'s Reply at 19. Plaintiff relies on the rulings in the Shoshone Order and Cobell:

> [D]ocuments falling within the . . . work product doctrine may be withheld only if they relate exclusively to legal advice obtained by the trustee "solely in his own personal interest" and "solely to protect himself personally or the

---

[3]Under Rule 26, any relevant, non-privileged information is discoverable. See RCFC 26(b)(1). The court may "[f]or good cause . . . order discovery of any matter relevant to the subject matter involved in the action." Id. The rule provides that "[r]elevant information need not be admissible at . . . trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The burden of establishing privilege or work product protection falls on the party opposing discovery:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

RCFC 26(b)(5). In the case of work product protection, once the withholding party establishes the applicability of the doctrine, the rule shifts the burden of demonstrating its inapplicability to the party seeking discovery:

> [A] party may obtain discovery of documents . . . otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney . . . or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

RCFC 26(b)(3). The rule further provides so-called core work product protection: "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id.

> government from civil or criminal liability." . . . [The government] must demonstrate that . . . it "was acting in a non-trustee capacity" and that the advice or communication "did not benefit the trust beneficiaries" in any way."

Id. at 17-18 (quoting with added emphasis Cobell I, 212 F.R.D. at 28-30); see also id. at 18 (quoting the Shoshone Order at 3 ("[T]his [c]ourt specifically distinguished [a case holding the fiduciary exception inapplicable] on the grounds that . . . 'the trustee . . . sought legal advice for his own personal benefit, that is, to defend himself.'")); cf. Cobell I, 212 F.R.D. at 30 ("The Court . . . recognize[s] the existence of an attorney-client privilege where a trustee seeks legal advice solely in his own personal interest or where the discovery material has been shown to relate exclusively to non-fiduciary matters.").

Plaintiff maintains that "the fact that the [g]overnment chose, for . . . convenience, to obtain legal advice regarding both [g]overnment-owned assets and Indian trust assets at one time in no way changes the fact that the legal advice relates to the tribal trust assets." Pl.'s Reply at 9. From its face, it is apparent that the Kansas Memorandum was not prepared to defend the government from liability against the beneficiaries but was intended to advise on whether to prosecute a suit on behalf of the Osage Nation–a subject falling within administration of the trust and thus within the fiduciary exception. See id. at 19. Contrary to defendant's position, the court finds that the Kansas Memorandum, which contains legal advice received by the government as to whether it should bring property claims on behalf of the Osage tribe, involves administration of trust assets, and is expressly intended for the benefit of the Tribe.

D. Whether the Fiduciary Exception Applies to Trust Administration Materials Concerning Other Tribes or Indian Trusts in General

Defendant also urges the court not to apply the fiduciary exception to documents concerning trust funds or assets of tribes other than plaintiff's. See Def.'s Opp'n at 31. Defendant reasons that "it is not the relevance of the trustee's documents to issues of concern to the beneficiary that might entitle the beneficiary to the documents; rather, it is the relationship of the beneficiary to the purpose for which the document was created that may entitle the beneficiary to the document." Id. at 31. For example, a memorandum "provid[ing] advice on whether an individual Tribe . . . which does not include the Osage Tribe, could relieve the Secretary [of Interior] of certain investment responsibilities under . . . legislation that is generally applicable to tribal trust funds," is irrelevant because it "in no manner . . . relat[es] to the Osage[]." Id. at 31-32. Defendant extends this reasoning to include materials "that relate more generally to Interior's fiduciary duties without any reference to a particular Tribe or individual Indian," and requests that "[p]laintiff . . . be required to show cause as to why it should receive the document." Id. at 32 (citing Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), "and its progeny" for the holding in a derivative shareholder suit that class action plaintiffs must show cause why the

attorney-client privilege should not be invoked to protect communications between a corporation's directors and its counsel). Defendant analogizes that,

> where a withheld communication involves the federal agency seeking or obtaining legal advice on subjects that may affect many or all Indian or tribal beneficiaries, the advice sought and received would likely not please all of the Indian beneficiaries, which may have competing interests, all of the time. . . . [A]n individual beneficiary should, at a minimum, be required to show cause why Interior should not be able to invoke its privileges as to such communications.

Id. at 32-33. Defendant asserts that plaintiff has not shown cause as to its entitlement to documents "pertain[ing] broadly to all tribal and/or Indian beneficiaries" and the court should not require defendant to disclose such documents. Id. at 33.

The court believes that the broad fiduciary relationship between the government and tribes supports application of the fiduciary exception to communications regarding trust administration–whether addressing specific tribes other than plaintiff's or Indians generally. See, e.g., Pl.'s Reply at 11 ("[The fiduciary relationship] arises out of [the United States'] guardianship over the Indians.") (quoting Minnesota, 270 U.S. at 194 (internal quotations omitted); id. ("The [Supreme] Court held that the [g]overnment had standing only because it had a binding obligation to act 'on behalf of' the tribal beneficiaries whom Congress 'ha[d] not yet released from tutelage.'" (quoting Heckman, 224 U.S. at 444). Furthermore, defendant's reliance on Garner for its assertion that plaintiff must "show cause" is inapposite. Garner concerned the executive-shareholder relationship in a corporate context. See Cobell II, 213 F.R.D. at 12 n.5 (distinguishing Garner because "the entities involved in these cases were corporations and their shareholders, not trustees and beneficiaries"). As Rule 26 requires, it is defendant who must demonstrate the applicability of privileges. RCFC 26(b)(5); see Cobell I, 212 F.R.D. at 27 ("[W]here the 'fiduciary exception' is at issue, the proponent of the privilege retains the burden to demonstrate the applicability of the privilege."). Defendant has not carried that burden.

## III. Conclusion

The court's review of the remaining documents discloses none that either appear to be exclusively related to the trustee's personal liability or that concern matters wholly unrelated to trust administration. All of the remaining documents designated by defendant as qualifying for work product protection concern, in whole or in part, trust administration. Pursuant to RCFC 26(b)(1) and pursuant to the fiduciary exceptions to attorney-client privilege and the work product doctrine articulated in this Opinion and Order, in the Shoshone Order, and in Cobell I and Cobell II, defendant shall PRODUCE the remaining documents to plaintiff on or before Tuesday, July 12, 2005.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge