# EXHIBIT 9

# Policies and Procedures Guide

Bureau of Indian Affairs
Osage Agency
P. O. Box 1539
Pawhuska, OK 74056

# Table of Contents

Overview of Lease Management

CHAPTER 1
General Information

| | |
|---|---|
| Leases | 1 |
| Leases Sales | 2 |
| Bonds | 3 |
| Escrow Agreements | 4 |
| Corporate Documents | 5 |

CHAPTER 2

| | |
|---|---|
| Assignments | 1 |
| Division Orders | 2 |
| Consolidations | 3 |
| Extensions | 4 |
| Combination Oil and Gas Leases | 5 |
| Bond Releases | 6 |
| Change Orders | 7 |
| Gas Contracts | 8 |
| Concession Agreements | 9 |
| Customer Service | 10 |
| Records – Trust | 11 |
| Damages | 12 |
| Commencement | 13 |
| SWD Easement | 14 |

CHAPTER 3
**NON-TRUST RECEIPTS**

| | |
|---|---|
| Sample of Filing Fees | 1 |
| Sample of Production History | 2 |
| Salt Water Renewal Permits | 3 |
| $5.00 Handling Fees | 4 |
| Sample of Copies | 5 |
| Weekly Operations and Lease Changes | 6 |
| Oil and Gas Monthly Report Diskette | 7 |
| 1996 Accumulated Production History | 8 |

**TRUST RECEIPTS**

| | |
|---|---|
| Sample of Lease Bonus Payments | 1 |
| Sample of Sale of Maps | 2 |
| Sample of E-logs | 3 |
| Sample of SWD Annual Rental | 4 |
| Sample of Annual Delayed Rental | 5 |
| Sample of Combinations | 6 |
| Sample of Partial Assignments | 7 |
| Sample of Extensions | 8 |
| Sample of Damages | 9 |
| Sample of Commencement | 10 |
| Sample of Bond Forfeiture | 11 |

# OVERVIEW OF THE LEASE MANAGEMENT SECTION

The Lease Management Section is responsible for the Minerals leasing program. We administer new leases that are bought at lease sales, leases negotiated with the Tribe, and exploration and development agreements. We are responsible for reviewing the documents to set up the new leases, which includes the terms of the lease, royalty rates, bonuses, bonding and resolutions numbers. At times some leases will have an effective date, which must be reviewed and typed on the leases, which indicates the primary term date of the lease. We review the bonus section of the lease making sure that all bonus money is paid to the Bureau of Indian Affairs for the benefit of the Osage Tribe. Also the royalty rate is checked to make sure the royalty of the lease is set up to be paid correctly when the lease becomes productive.. The new exploration and development agreements are between the Osage Tribe and various Lessees. The concession agreements, explores and develops coal bed methane gas in the coal seams. The leases are gas leases with coal bed methane gas rights only. The agreement specifies the requirements to meet in order to continue to the next Phase of the agreement. The lease management section monitors the acreage, bonus and leases. According to the terms of the exploration agreements, the lessee must lease a certain amount of acreage and pay a certain amount of money to be able to continue to the next phase of the agreement.

This section is also responsible for the assignments, reviewing the ownership, bonding, corporate documents, trust records, limited liability documents, and Form E, (Evidence of Authority to Sign Documents). Filing fees must be paid before we start the process of reviewing the assignments. The Engineering Staff does a bond review to determine the bonding requirements, they also check for completion reports are up to date. The assignments are sent to the Accounting Staff to check for minimum royalty and late reports. When the assignment meets all requirements of each department it is sent to the Superintendent for approval.

Division orders put the lessee in pay status and must be reviewed and approved by this office. When ownership changes or a new lease becomes active, the lessee must contact the purchaser for a division order. We check the ownership or working interest of the person on the division order matches what our records indicate. The name on the division order must be the same as on the lease. The working interest and royalty interest must be checked to see that the Tribe is being paid correctly. Overrides are between the working interest owners and individuals who have part of the interest, which will affect the net working interest. These amounts must be shown on the division orders, but are not approved through this office. If a lessee consolidates leases into one tank battery this must be shown on the division order what legal descriptions are going through the tank battery. Consolidations must have the same ownership, royalty rate (if there are two different royalty rates the lessee must accept the higher royalty rate in writing). If a lessee changes purchasers a new division order must be put into affect.

Our section makes all the changes to every lease file and updates the computer dbase system from the change orders. These changes include assignments (working interest), new leases, division orders, terminations, permits, salt water easements, lease sales,

termination of acreage from blanket leases, and all lease changes such as well-plugging, completions, re-completions, locations, and permits.

We process the bonding requirements of the leases. We also process bond releases when the bond is no longer needed. If minimum royalty is due and the lessee does not pay, the bond is then used to pay for the minimum royalty or to plug the wells. This involves written notification to the insurance companies of the non-compliance of the directives to the lessee. The bonding company will investigate the claim and make payments to the Bureau of Indian Affairs for money that is due.

The Lease Management Section also provides customer service to the lessees, tribal officials, employees and other entities such as banks, insurance agencies, lawyers and others.

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Osage Agency
P.O. Box 1539
Pawhuska, Oklahoma 74056-1539

TAKE PRIDE IN AMERICA

The following is general information pertinent to the oil and gas operations in Osage County, Oklahoma:

Osage Agency is the Federal Repository of Record for all Osage Leases.

All documents such as oil and gas leases, bonds, assignments, division orders, transfer orders, gas contracts, concession agreements, other minerals permits, saltwater easements, drilling permits, completion reports, work-over, plugging reports, etc., are approved and maintained on record in the Branch of Minerals, Osage Agency.

The Branch of Minerals also retains legal records to include, but is not limited to Articles of Incorporations, Domestication Certification, Affidavits, Partnership Agreements, Trust Agreements, Probates, and etc.

Recording of Osage documents at the Osage County Clerk's Office and/or the Oklahoma Corporation Commission is not a requirement. It is mandatory they be filed with this office and optional with the County. Documents filed with this Federal Agency take precedence over all others.

This Agency also maintains all well data including electric logs to include density, gamma ray, radioactivity, induction, as well as Core Analysis and Drill Stem tests.

Osage Agency holds three (3), oil and gas leases sales annually, every February, June and October. Leases are for a primary term of three (3) years, and if not on production at the end of the primary term, said leases will terminate. (Reference CFR 226.9 (a)).

The Branch of Minerals maintains current working ownership on all Osage leases, and also maintains up-dated plat books and various maps of Osage County for the use and benefit of our operators.

Lessees/Operators should provide the purchasing company with copies of their approved leases as well as all assignments and other relevant documents as Title Opinions are not required on Osage leases. The courthouse records should be checked for other interest such as overrides, production payments, etc.

Osage assignments are prepared on 100% working interest, the royalty due the Osage Tribe of Indians is not considered when filing assignments.

Upon receipt of Osage leases and/or assignments to the purchasing company, division orders and/or transfer orders should be implemented. Should the Division Order Department questions ownership and/or royalty on Osage leases, it is requested the Branch on Minerals be contacted for confirmation by calling (918) 287-5710.

The purchasing companies are requested to prepare division orders and/or transfer orders precisely as the working interest owner took title in said lease. No variation of title as carried on record in the Branch of Minerals will be accepted. Do not include "Before" and "After" payout agreements for approval by Agency.

Purchaser instruction sheets which are mailed along with division orders and/or transfer orders to the lessee/operator should state that each working interest owner must execute said document, and further state that these documents be sent to the Osage Agency for approval before returning an executed copy to the purchasing company. Division orders/transfer orders should be sent in triplicate to this Agency for approval. (Reference CFR 226.14)

Payout to working interest owners should be held in suspense by the Purchaser until such time as a division order, approved by the Branch of Minerals, is returned to them. At no time shall the royalty due the Osage Tribe of Indians, be held in suspense by a Purchaser.

Osage Agency has jurisdiction only in Osage County. Purchasers are requested not to prepare division orders with Exhibits attached covering locations in other counties, documents with other counties cannot be processed for approval by the Branch of Minerals.

Change in lease ownership as a result of corporate mergers, marriages, deaths, receiverships, etc., affecting Osage leases should not be made by the purchasing company until transfer orders reflecting said changes together with the proper legal documentation are submitted to the Branch of Minerals for approval.

As the Osage Agency is the representative royalty collector, all royalties due the Osage Tribe of Indians are accounted for by the oil and gas accounting sections within the Branch of Minerals.

Lessees/Operators within Osage County are required to send in monthly lessee reports, which are verified against the purchaser's run statements. (Reference CFR 226.13).

All run statements are due in the Branch of Minerals on or before the 15th of each month, and all royalties and monthly lessee reports are due in the Branch of Minerals on or before the 25th of each month.

Purchasers in Osage County use the wire transfer method of payment (EFT), which the Branch of Minerals verifies with the Albuquerque Area Office, Branch of Minerals Accounting Section before data is posted to computer.

Accounting records are verified and re-verified by the Branch of Minerals Accounting Section before data is posted to computer.

The Branch of Minerals is composed of the Lease Management, Petroleum Engineering Section and the Field Operations Section. The reorganization has separated the accounting section from the Lease Management section. All sections are located in the Osage Agency.

The Office of Special Trustee is located at the Osage Agency and that section is accountable for the deposit of money into the Albuquerque Office. The separate branches are responsible for the correct accounting string on the DI 1040s.

The Office of the Field Solicitor, Pawhuska, Oklahoma, provides the Branch of Minerals with legal expertise as needed.

Form A – Gas Mining Lease
Form A – (Coal Bed Methane Gas Rights Only)
Form B – Oil Mining Lease
Form C – Oil & Gas Mining Lease

Blank forms are NEVER handed out to individuals. We provide a copy of the sample form to them upon their request.

Leases are mailed only after lease sales with a packet on the Friday following the lease sale. The lessee is responsible for completing the lease and having their corporation or individual notarized. The lessee will need to return the lease with all supporting documents to the Bureau of Indian Affairs for approval.

When leases are negotiated, we complete all the information as to referencing the Osage Tribal Council (OTC) Resolution No., at the top of the lease and completing the lease as mentioned-above. All leases must be signed and notarized and completed in duplicate and transmitted with any other pertinent documents by letter for execution and further instructions.

ITEMS TO CHECK ON THE LEASE FORMS AFTER BEING EXECUTED:

1. Make sure all blanks on page 1 are completed as to the Osage Tribal Resolution.
2. Make sure page three has been properly executed; by all parties and that a notary has completed the individual or corporation acknowledgement.
3. Make sure the lessee has paid a $10 filing fee to process the lease.
4. If an effective date is specified on the Osage Tribal Resolution for negotiated leases it in shown on Page 4 with EFFECTIVE DATE type before the date and will serve as the approval date.
5. A surname should be stamped on Page 4 with the person's name who initiated the lease and who is following through with the approval of the lease.
6. When the lessee returns the lease with all supporting documents then lease is sent to the Principal Chief's office for his signature. It is then returned to the Bureau of Indian Affairs for the Superintendent's approval.

If a corporation is the lessee, you need a FORM E, (Evidence of Authority) for officers to Execute Papers. A Form E is needed for each document.

ITEMS TO CHECK WHEN A FORM E IS SUBMITTED:

1. Make sure all blanks are completed.
2. Make sure that the form has been properly executed by the officers of the corporation and notarized properly.

LEASES:

Sale of Leases – CFR-226.2
(See Lease Sale)

Concession Agreements – Authority Osage Tribal Resolutions

Negotiated Leases – Authority Osage Tribal Resolutions

PROCEDURES FOR PROCESSING A LEASE

1. The leases are obtained through the Osage Tribal Council's resolutions and prepared by the terms pursuant to the OTC Resolution. The Realty Specialist will type the lease with the correct name of the individual or company requesting the lease. The term of the lease (usually 3 years) is typed along with the bonus amount on the lease. If an effective date is specified in the resolution it is typed on the back with the words "Effective Date" and the date it be used for the primary term. If an effective date is not in the resolution, then the approval date serves as the date of the primary term.
2. After the above lease is typed and proofed it is sent to the lessees for signature and to have their company or individual notarized. The lessee will return the lease for approval with all supporting documents, corporate documents, bonds, bonus and filing fees.
3. Upon receipt of the lease, it is checked for all requirements and sent to the Principal Chief for signature and "Acknowledgement of Principal Chief" and returned to the Realty Specialist.
4. The Realty Specialist will assign an Osage Contract Number to the lease and document that number is the contract book. Stamp the surname stamp on the lease.
5. The final approval is the Superintendent signature under the authority delegated by 209 DM 8, 230 DM 1, 3 IAM 4.1 and Muskogee Area Addendum 9901 to 3 IAM 4 issued June 22, 1999.
6. After approval, the Bureau of Indian Affairs' copy is routed through the change order process.
7. The lease is set up in a new lease file and file in the vault by legal description. The Record Schedule for leases is TR-4618-P5.

LEASE SALES:

All nominations are made by letter to the Superintendent and should contain the following information:

1. Legal description of the tract being nominated.
2. Name of the individual or corporation who is making the nomination. This is how the name of the successful bidder is determined.
3. Telephone number of a contact person if verification is needed on the nomination.

Upon the receipt of the letter, the tract availability is verified by checking the plat map, to see if the tract is open for leasing. The computer database is also checked for any leases on contact. Also, checked are concession agreements entered into with the Osage Tribe and the dbase for leases under contract.

If the tract is available for leasing the following procedures are followed:

BEFORE THE LEASE SALE:

1. Enter all nominations (in pencil) on work sheets showing tract nominated, nominee, minimum bid, and acreage as to gas, oil, and oil and gas based on NE, NW, SE, and SW lowest to the highest as to section, township, and range.
2. Do not number tracts entered on worksheet until after the nominations close and tracts have been verified and re-verified.
3. Number tracts in consecutive order as to gas, oil and oil and gas combination. Now it is time to enter map no., based on township and range.
4. Prepare comment sheets to be given to Petroleum Engineers as soon as possible after nominations close as this will provide sufficient time for comments and review by Engineering Staff and Tribal Engineer.
5. Realty Specialist should be provided with any additions or address changes from letters of nomination for up-dating the mailing list on computer.
6. Usually, one week in advance of mailing bulletin, comments and list of tracts are typed, proofed, and rechecked for availability before being printed.
7. Realty Specialist prepares the "Scheduled of Bid Authority" (10 copies).
8. When all tracts are verified the tracts are given to the Lead Accounting Technician to prepare a worksheet for the Lease Sale for all money and acreage is calculated on an excel spreadsheet which is put on a lap top computer with amounts and acreage are calculated immediately after the sale.
9. Lease Sale Bulletin cover should also be prepared by Realty Specialist.
10. Bulletins must be printed in time for the scheduled mailing.

11. Labels must be printed and checked before they are applied to the mail-out. NOTE: The print shop will collate and tab the bulletins for mailing.
12. Bulletins are prepared for mailing.
13. If an auctioneer is needed the Realty Specialist will contact the selected auctioneer being sure all documentation is sent in for the auctioneer to be paid.
14. Notice of Sale to sent to newspaper announcing the sale.
15. Bidder list is typed, proofed and compile for the sale.
16. Confidential bidders list are prepared for the Osage Tribal Council, Bureau of Indian Affairs staff, and auctioneer.
17. Draft or work copy of the resolution is prepared and taken to the sale to be completed immediately after the sale.
18. The Supervisory Realty Specialist will prepare the Superintendent's speech concerning the tracts for sale.
19. The Realty Specialist will notified the successful bidders not present at Lease Sale that the remaining 15% bonus money is due at the close of business on Sale day.
20. The Realty Specialist will designate the Realty Clerks to assist with the typing of receipts for the 25% bonus.
21. Realty Clerks will assist the Realty Specialist with the typing of leases (2 per lease) and the cover letters indicating the balance of bonus due.
22. The Realty Clerks will assist the Realty Specialist with compiling all documents such as, lease forms, bonds, Form E, if applicable and any other information to be mailed the Friday after the sale. NOTE: Letter will clarify the amount due and the date (on the 20th day after the sale) all documents and balance of bonus is due with **no exceptions.**
23. The day following sale, resolution _____ number & vote obtained from the administrative secretary/OTC for final resolution (10 original copies) to the Chief's office for signing.
24. Realty Specialist will track all lease documents for proper execution, bonding requirements and if corporate documents have been obtained. (Time is allotted for return of leases if necessary, and to obtain additional documents).
25. The leases approval date is the first working day of the second month after the sale. All leases should be sent to the Chief's office for signature and "Acknowledgement of the Principal Chief, and returned to the Realty Specialist for approval.
26. The approved and signed Osage Tribal Resolution approving the Lease Sale is the document to verify that the lease sale is final and the money can be transferred from the non-trust account to the tribal trust account.

BONDS:

With each lease a surety bond should be approved for the operator. The surety bond should be in the same name as title is held in the lease. A surety bond is in the amount of $5,000 per 160 acres or fraction thereof.

The bonding company also has to be one that has been approved as acceptable by the U. S. Treasury. The approved sureties are provided to the Lease Management staff for verification of that the surety is approved.

ITEMS TO CHECK ON THE BOND FORM:

1. Make sure the correct lessee's name and legal description is shown.
2. Make sure the Lessee's name shown on the bond is how title is held in the lease.
3. On the reverse side of the form, make sure the lessee (or corporate officials) have executed properly.
4. Make sure the Attorney-in-fact for the surety company has executed properly.
5. When all the above have been checked you need to stamp the document with a surname stamp of who is processing the document. Be sure and date when the Superintendent signs the bond.

BOND FORMS:

Form D – Osage Mining Leases Bond is utilized when a new lease, permit, etc is approved. On this form the amount line should be completed with the appropriate amount. Oil, Gas and Combination Oil and Gas leases are in the amount of $5,000 each for 160 acres or fraction thereof.

Form H – Osage Mining Leases, Assignment bond is utilized for all Assignments when the operators are conveyed to new ownership. You may also utilize the Form D for this purpose.

Bonds for all other mining purposes, depends upon the amount of acreage being leased and/or the well count. See 25 CFR Part 226.6. The bonding amount is determined by the well count on the lease and the Engineering Department verifies the amount of the bond.

Form G – Osage Mining Leases Collective Bond is for the amount of $50,000 and covers 10,240 acres and the well count of all leases covered under the collective bond. The minimum amount for the collective bond is $50,000.

ESCROW AGREEMENT:

If a lessee cannot obtain a surety bond from an insurance agency, they can utilize the Escrow Agreement in the appropriate amount needed. The Escrow Agreements have sample forms and instructions to assist the banks in completing the forms.

The lessee will submit an executed escrow agreement with their financial institution signatures, before submitting for the Superintendent's approval. Upon receipt of the Escrow Agreement, the following items must be checked:

1. Make sure all blanks are completed properly.
2. Make sure all appropriate individuals have executed properly and the Agreement is submitted in triplicate.
3. Stamp a surname on the original copy and submit all three copies to the Superintendent for approval.
4. After the Superintendent has approved the Escrow Agreement, you need to retain the surnamed copy for the safety deposit box at the Bureau of Indian Affairs' depository. However, you should make a copy of the Agreement for the lease file, the financial institution and the lessee.

NOTE: One percent (1%) is the smallest amount of working interest to hold a bond.

NOTE: Copies of Bond forms and Escrow and sample are provided here.

OTHER DOCUMENTS NEEDED FOR THE CORPORATION ARE:

1. Certified copy of the "Articles of Incorporation"
2. Certificate of Incorporation, if an Oklahoma corporation and a "Certificate of Domestication", if a foreign corporation.
3. Certificate of Good Standing with the State of Oklahoma

NOTE: The Certificate of Good Standing is obtained from the Secretary of the State of Oklahoma and is due annually for all corporations. The corporations are listed on a Dbase file maintained by the Realty Clerk.

The Realty Clerk catalogs all the corporate documents and sets up a 328.1 legal file. These files are kept in the vault. The files may include collective bonds, or escrow agreements, all corporate documents, correspondence, and legal opinions.

JOINT TENANTS WITH RIGHTS OF SURVORSHIP:

Upon the termination of the joint tenancy other than by judicial determination, the surviving party must file in the office of the Osage County Clerk a certified copy of the certificate of death and a notarized affidavit stating that the decedent named in the certificate is one and the same person as the joint tenant, and that the parties were in fact husband and wife and state the date of death.

The attached information will help in explaining to the party what is required.

- Last Will and Testament
- Petition for letters of administration or for probate of will
- Order fixing date of hearing petition
- Notice of hearing petition
- WR – Affidavit of mailing and/or publication of notice
- WR – Deposition of subscribing witness
- Order admitting will to probate
  Order appointing special administrator, administrator or executor
  Letter testamentary or letters of administration
  If required by the Court, Bond for special administrator, administrator or executor.
  (In Osage Estates, bonds should include the statement: "This bond is made subject to all of the provision of the Act of October 21, 1978, Pub. L. No. 95-496, 5(b), 92 Stat amendatory to the Osage Indian Allotment Act of June 28, 1906, Ch. 3572, 34 Stat. 539, and acts amendatory thereof." Statement not required in non-Osage Estates).
- Notice to creditors
- Affidavit of publishing notice to creditors
- Order appointing appraisers
- General inventory and appraisement
- WR -Petition to sell real or personal property
- Order to sell real or personal property, and order confirming sale
- Additional papers regarding sale of real or personal property
- Appeal Bond
- Oklahoma tax releases
- WR - Federal estate tax closing letter
- Annual or final account of administrator or executor
- Petition for hearing final account and petition
- Affidavits of publishing notice and mailing notice
- Decree allowing final account, determining heirs and ordering distribution
- Copy of final decree recorded by County Clerk of Osage County, Pawhuska, Oklahoma (A certificate from County Clerk stating that same is being recorded will be acceptable pending receipt of recorded copy)
- Transcript (this may exclude creditor's claim, petitions, and orders concerning disbursements)

- 30 day certificate of no appeal from Court Clerk
- Supplemental final account
- Final discharge of administrator or executor.

**WR – When Requested**

ASSIGNMENTS:

A sample of the Form F – Assignment form is attached. When an assignment is submitted be sure and check to make sure that all blank lines are completed. The signature of the Assignor (person making the Assignment) has been properly notarized. If the Assignor is a corporation, the corporate officials should be executed.

The signature of the Assignee (one accepting the Assignment) does not have to be notarized.

ITEMS TO CHECK ON ASSIGNMENTS:

1. The name of the Assignor should be shown on the assignment exactly as it is shown on the lease records. There should be no variances. If any discrepancies, you must obtain an Affidavit of Identity is needed to clarify the discrepancy. The Affidavit of Identity has to be made by someone who is acquainted with the person but not a part of the transaction. The statement must also clarify that the two names are one and the same person and the statement must be notarized.
2. If two Assignees are taking title in the lease and they do not indicate that they are receiving it in equal shares, be sure and question them about this. Otherwise, title will be shown as "undivided" unless specified.
3. Always be sure and have the Assignee put their current mailing address and phone number where indicated on the first page of the Assignment.
4. If the Assignee is taking over the lease operations, they need to submit a surety bond with the Assignment. Always check the current surety bond in the lease file when you check the Assignment for the contract number, original lessee, legal description and the name and amount of interest owned by the Assignor.
5. The stamps used on the Assignments are a surname stamp, date stamp and environmental stamp. The Superintendent approves the original assignment and her stamp can be used on the copies of the assignments for the lessee and purchasers.
6. A $10 filing fee is owed for each set of Assignments.

INFORMATION ON THE TRANSFER OF INTEREST:

In most cases, when a lessee dies, the families of individuals who own interest in leases do not notify our office when this occurs. We usually do not hear of the death, until we receive a division order or the family is trying to sell the interest. We work with the family or their attorney to inform them what is required in order to transfer the interest to an estate status and then to the heirs. The attached list of court documents is provided for what is required. If at anytime you have problems, you need to talk with the Field Solicitor's office or refer the party to his office for further advise.

ASSIGNMENTS:

CFR –226.15 (b)

PROCEDURES FOR PROCESSING AN ASSIGNMENT

A Form F Assignment is an instrument to convey working interest in an oil and gas mining lease to another party.

1. Make sure a $10 filing fee is made payable to the Bureau of Indian Affairs. The filing fee is an administrative fee account of G06100/2004-2005/96530/5000. (See examples of receipts).
2. The Form F Assignment must be verified with the Original Lease. You will need to check the contract number; type of lease, and ownership of the assignor making sure the name is exactly the same as the recorded lease. Be sure and check the amount of interest the assignor is conveying matches the amount of interest our records indicate he owns.
3. The signature of the assignor must be notarized and the date of the assignor signature must match the date of the notary acknowledges his signature.
4. The assignee must sign the back of the assignment form under "Acceptance by Assignee". They must also date the assignment above his name. **NOTE:** Under the CFR 226.15 (b) A fully executed assignment must be filed with the Superintendent 30 days after the date of execution by all parties. If requested within the 30-day period, the Superintendent may grant an extension of 15 days.
5. If the assignor is conveying 100% working interest the back of the assignment will be stamped with the **Change of Operator** stamp. This means that the new lessee will furnish a new bond and will make the monthly production reports. He will also be assigned a new Lessee Identification Number (Lessee ID). The Supervisory Accounting Specialist assigns the identification number. If the assignor is conveying only portion of working interest the assignment is stamped with **No Change of Operator**.
6. A surname stamp is used for the minimum royalty to be checked and signed by the Lead Accounting Technician and the reports are checked and signed by the Accounting Technician. NOTE: If the assignor owes minimum royalty, the assignment will not be approved until the minimum royalty is paid. All monthly reports will need to be sent by the assignor and completion reports if any are not turned in at this point.
7. The assignment is stamped with the environmental stamp, signed by the engineering department along with the number of wells on that lease.
8. Bond must accompany this assignment on Change of Operator or 100% assignments.
9. The final approval is the Superintendent signature and date that the Superintendent signs are the approval date.

DIVISION ORDERS:

Approved division orders are required before a purchasing company may purchase the oil or gas from any lease. However, in an emergency situation we have given verbal permission to the purchaser to pick up oil without the approved division order.

The names of the working interest owners on the division order should be shown exactly as they appear on the lease records. If there are any discrepancies, the division order needs to be corrected or you can accept a notarized Affidavit of Identity, which clarifies that the two names are one and the same person.

Division orders are made for first runs, consolidations, or de-consolidations. When a division order is approved, you need to put a surname stamp near the approval stamp and indicate why the division order is being approved, I. e., consolidation, first run, etc., the contract number, type of lease and royalty rate of the lease should be shown near the legal(s) description.

In the situation where there is a consolidation, you need to also include the location of the tank battery in addition to the aforementioned information.

All transfer orders are identified as "Supplemental". The transfer order will reflect only the interest being transferred from one individual to another. A surname stamp and approval stamp are the only two stamps used on this document. The Superintendent will sign the original document and the copies will be stamped with the signature stamp.

DIVISION ORDERS:

CFR –226.14 (a)

PROCEDURES FOR PROCESSING A DIVISION ORDER

The division order is an instrument used to put the lessee in pay status with a purchaser of the product being produced and sold.

1. The division order should be checked that the correct owner matches the owner of record in the lease files.
2. The division order working interest should match the amount of interest our records indicate in the current ownership in the lease file.
3. The division order must have the correct legal descriptions that pertain the division order. You may have consolidated lease and all must be on the division order and the location of the tank battery.
4. The royalty rate must be checked in the lease file and making sure that the division order is calculated using the correct royalty rate. NOTE: Any overrides will affect the amount of net interest to the lessee. The Osage Tribe's royalty interest is taken out before any calculations.
5. You will need to specify the purpose of the division order such as 1st run of oil/gas, change of purchaser (list previous purchaser), 1st run after consolidation, 1st run after deconsolidation (list the legal being deconsolidated), or if a transfer by assignment it would be a supplemental.
6. Be sure and check the assignment date and the effective date on the division order so that the party owned the amount of interest by the time the effective date indicates.
7. A surname stamp is used along with the approval stamp for the Superintendent signature.
8. Three copies are required the Superintendent signs the Bureau of Indian Affairs' copy and then the other two have the Superintendent's stamp. One copy is mailed to the lessee and the other to the purchaser.

CONSOLIDATIONS:

A lessee must submit a written request to consolidation their leases into one tank battery. The letter must include the legal descriptions of the leases and the tank battery location and the name of the purchaser.

If a lessee has a combination oil and gas lease, they must submit separate requests to consolidate the oil or the gas.

The requirements for consolidating are that the ownership must be exactly the same and the royalty rates the same. NOTE: You need to review the division orders to see whether there are any differences and not any overriding royalties, etc.

If one lease has an overriding royalty interest then all the other leases being consolidated with it will also be affected by the override.

There have been situations where there were two different royalty rates. If the lessee agrees in writing that he will pay the higher royalty on all production from the consolidated leases, we will grant them permission to consolidate. However, you need to reflect the royalty to be paid in the consolidation letter. (See example)

Examples of a consolidation letter and a de-consolidation letter, is also provided for your information. A written request must also be submitted to de-consolidation, too.

A copy of the consolidation/de-consolidation letter is mailed to the purchaser to help them formulate a new division order. Upon approval of the division orders, the information is routed through changes orders. It is from this information that the Monthly Lessee Report reflects the new consolidation/de-consolidation.

EXTENSIONS:

Authority Osage Tribal Resolution 25-278, dated September 19, 1979.

A 60-day extension can be granted to a lessee when the lease is at the end of the primary term and a well has been spudded.

The field-man is required to go out and inspect the site to make sure that the well has been spudded and then we proceed with the paperwork to grant the extension.

A sample of an extension letter and memorandum is attached.

The letter mentions the date of expiration of the primary term. This date is located on the last page of the lease document at the top of the page. You grant the extension for 60-days from the date of expiration. A $500 fee is accessed for this extension. After the extension the lessee must have the lease on production.

NOTE: Copies of the extension letter is provided.

COMBINATION OIL AND GAS LEASES:

Authority Osage Tribal Resolution NO. 25-173, dated June 1, 1979.

The lessee must make a written request to combine, an oil and gas leases and submit it with a payment of $50 for administrative fee. Leases are combined pursuant to Osage Tribal Council Resolution NO. 25-173, dated June 1, 1979.

The effective date of the combination will be the same as the date of the letter of the lessee. The royalty rates on the individual oil and gas leases will be the same on the combination oil and gas lease. Example: The oil lease has been established back in 1910 and the royalty rate is 1/6 and the gas lease was established in 1990, and the royalty rate is 3/16. On the combination oil and gas lease, you would change the royalty rate for the oil production to 1/6 and the gas to 3/16.

Upon receipt of the written request, you need to pull the lease files and check the following:

1. There must be active production on at least on of the leases before you can combine.
2. Check the lease files to make sure the ownership is exactly the same.

Steps for the preparation of the combination oil and gas lease.

1. Use Form C Oil and Gas Lease.
2. At the top of the form under the heading "Oil and Gas Mining Lease" refer to the Resolution No. OTC 25-173.
3. On the left-side under the line "Interior" reference the contract numbers of the individual oil and gas leases.
4. On the line where the bonus is to be shown you should type "NONE".
5. X out the years.
6. Change the royalty rate(s) is necessary.

The lessee will have two individual bonds covering the individual oil and gas leases. One bond from either of these leases will be sufficient to cover the combination oil and gas leases.

You must them to obtain a rider or letter from the bonding company which states that the individual bond will cover the combination oil and gas leases. Then action can be taken to release the other individual bond.

COMBINATION OIL AND GAS LEASE:

Osage Tribal Resolution 25-173, dated June 1, 1979

PROCEDURES FOR PROCESSING A COMBINATION OIL AND GAS LEASE

1. The lessee must have a written request to combine and oil and gas leases into combination oil and gas lease.
2. A $50 administrative fee is assessed for this procedure.
3. There must be production on one or both of the leases. Check the production history or the field-man in that area will need to check out the lease.
4. The ownership must be review on the lease files and must be exactly the same on the combination oil and gas lease.
5. The Form C is typed after the review process and under the heading "Oil and Gas Mining Lease" reference the OTC Res. No. 25-173, dated June 1, 1979. NOTE: This is the authority to combine leases.

BOND RELEASE:

## PROCEDURES FOR RELEASING BONDS

I. A bond or Escrow is released when there is:

A. Assignment of lease (change of operator), a replacement bond is filed.

1. Important that new Lessee has a bond, it should be with the assignment, unless it is covered under a blanket, collective bond, or large escrow agreement.

   a. Collective and copy of large escrow agreements can be found in the 328.1 files.
   b. Nationwide bonds can be found in the 328.1 files titled nationwide bonds. Might be more than one file.
   c. The back of the assignment will show the bond-holder amount. This information will be written in by one of the Realty Specialist. . If you have any questions check with the Supervisory Realty Specialist or the Realty Specialist, whichever surnamed the assignment.

2. The bond will show the bond holder, main principal, surety agent, amount of bond, and legal description (individual bonds).

3. Effective date of bond release will be the approval date of bond and assignment. They should have the same date.

B. Termination of lease. Must receive an office memo from the field section stating the bond can be released.

1. Lease will be stamped terminated or canceled with a date.
2. If date of termination and date of office memo are different, then use the date of the office memo, for effective date of release of bond.

C. Replacement bond or escrow agreement.

1. Effective date of release for the old bond will be the approval date of replacement bond.

II. Individual bonds are $5,000; Nationwide, Collective and large Escrows at or beyond $50,000.

III. Have the Cartographic Technician check plat book for any saltwater disposal (SWD) or injection wells.

A. If lease has a SWD or injection well then you must get approval from the Dallas EPA office.

1. Prepare letter to the Dallas EPA office requesting their concurrence. Insert in form letter:
   a. Legal description
   b. State the new bond holder, except for terminated leases, then leave out the paragraph concerning the new bond holder.

2. Print out the original letter on letterhead, your copy (plain white paper) use your copy for; file copy (yellow paper), chrono copy (green paper), cc to Lessee (letterhead). Surname stamp on file copy.

3. Prepare 2 envelopes, one addressed to Mr. Jerry Saunders (EPA) and one addressed to the Lessee. Paper-clip the envelopes behind the last sheet. Double-check the Lessee's address by checking the lease file or Lessee's oil or gas card.

4. Use the plastic executive cover sheet for routing.

5. Route letter to the Supervisory Realty Specialist for surname, and the Minerals Branch Chief signs the letter.

B. Enter in Log File the specifics (company/lessee, legal, date mailed). The sheet is titled **Letters to EPA – for Approval to release bond.** When you receive a concurrence enter it into the log file.

*Note: This is a very important step. We rely on this log to check the status of all bond releases.

C. After the Branch Chief signs the letter fax a copy to Ron Van Wyk who is the contact person at the Dallas EPA office. He has stated that he would like for us to fax him a copy of the signed original letter. If the letter concerns a terminated lease they your can state as such in the fax cover sheet.

D. Wait on EPA concurrence. Hold on to the lease file.

E. When you receive concurrence, then begin bond release letter.

IV. You can start bond release procedures after getting concurrence from EPA if there are no injectors or SWD wells on the lease.

A. Bond to be released will be clipped with a colored paperclip.

B. Each of the bonds have there own form letter, by main principal. Examples are available of all the different letters.

1. When you retrieve the form letter, you need to insert the Bond holders name, legal description, and effective date, (see Roman Numeral IA3, IB2, and IC1).

2. Attach original bond letter to main principal, cc to surety agent and Lessee, and their envelopes.

3. See IIIA2, and also the bottom of the letter for further copies to be made.

4. Enter the specifics of the bond release in the Log file titled **All types of bond release letters.**
*Note: This is a very important step. We rely on this log to check the status of all bond releases.

5. Send lease files along with the letter when routing. Routing slips will begin with Supervisory Realty Specialist, Supervisory Petroleum Engineer Tech., Engineer, Supervisory Accounting Tech., Lead Accounting Tech., and Accounting Tech.. You'll need to type up a sheet with these names for routing.

C. After everyone has surnamed, send letter to the Superintendent for signature, do not send the lease file with the letter.

D. After bond has been released, please write on the side of the bond **Released as of effective date.**

V. Escrow Releases

A. Same as bond release, except:

1. You use the bank as main principal, the Osage Account number or CD number, and date of Escrow.

B. After approval of letter and signed by Superintendent (keep letter)

1. Have the Realty Specialist retrieve the original Escrow Agreement from the bank. Give her the name of the Lessee, legal description, and account number.
2. When she brings back the original Escrow Agreement, send the original letter and Escrow Agreement to the bank. The bank will call

& have Lessee sign the **Receipt and Release** on the back of the escrow and will send back to us.

   a. Enclose a self-addressed envelope along with the Escrow Agreement.

3. After the bank returns the released escrow, mark across the escrow released and also mark the copy of the escrow in the lease file.
4. File original released escrow in 328.1 file if applicable, if not file in the appropriate lease file.

CHANGE ORDERS

PROCEDURES FOR PROCESSING CHANGE ORDERS AFTER THE REPORTS HAVE BEEN MADE

I. All the documents that were included in the Weekly Lease Changes Report are given to a Realty Clerk, where they are encoded into the Minerals D-Base computer system, this is very important to keep updated, because the Minerals and Accounting Departments rely on this information to be able to help the Lessee's quickly and correctly.

II. After the Weekly Lease Changes are encoded into the Minerals D-Base computer system, they are then given to another Realty Clerk in which they are numbered for the Transaction Numbering System.

III. When the Weekly Lease Changes are numbered, a Realty Clerk goes through all the documents to find:

A. If there are assignments, they will be checked to see if there is a new bond-holder, if there is a new bond-holder the Realty Clerk will pull the lease file from the vault and research to see if the old bond can be released. If the same bond is staying in place, then the assignment is ready to be filed in the lease file.

B. If there are Division Orders where Lessee's are changing purchasers then the Realty Clerk will write the old purchaser a letter stating that the Lessee's has changed purchasers and to cancel their division order.

C. When there are terminations, the Realty Clerk will go through all of them to see if they had approved division orders, if so then the Realty Clerk will write a letter to the purchaser stating that the Lessee's lease has been terminated and to cancel their division order.

IV. After all the documents have been processed they are now ready to be filed in the lease files. This process continues on a weekly basis.

CHANGE ORDERS

PROCEDURES FOR PROCESSING CHANGE ORDERS

I. Weekly Lease Change Orders

A. Weekly lease change orders is compiled of various information from original documents that were approved on a weekly basis. The original documents that are categorized as Weekly Lease Changes are as follows:

a. Assignments
b. Division Orders
c. New Leases
d. Mining Permits (sand, gravel, ect.)
e. Saltwater Disposal Easements
f. Extensions
g. Terminations
h. Name Changes
i. Field Solicitor Memos
j. In-House Memos

B. With the prominent information gathered from all these original documents an actual report and a duplicate in-house form is made. There are other original documents that are accounted for but not reported such as:

a. Supplemental Division Orders
b. Transfer Orders

II. Weekly Operations Report

A. Weekly Operations Report is compiled of various information from original documents that were approved on a weekly basis. The original documents that are categorized as Weekly Operations are as follows:

a. Form 139 which is a dual form for permitting the following:
   1. Drilling Permits (Locations)
   2. Location Corrections
   3. Location Cancellations
   4. Location Cancellation Corrections
   5. Conversions
   6. Plugging Reports
   7. Plugging Corrections
   8. Work-Over Same Status Report
   9. Deepening Permits
   10. Deepening Cancellations
b. Completions (Form 208)
c. Completion Corrections

B. With the prominent information gathered from all these original documents an actual report and a duplicate in-house form is made. There are other original documents that are accounted for but not reported such as:

a. Plugging Permits
b. Work-Over Permits

III. After the reports are made the duplicate in-house form has to cut and separated into Original Documents and Duplicate, then the Original Documents form has to be copied to make an 8X11 sheet after they are all copied the Cartographer gets a copy for him to up-date the plat map.

IV. All the Original Documents are copied and a packet is made for the EPA office.

V. There are two mailing lists in which Lessee's pay for either or both reports to be mailed to them. Then copies are made for in-house distribution.

GAS CONTRACTS:

The gas contracts are reviewed by the Engineering staff in verifying the terms are advantageous for the Osage Tribe. The lease management Realty Specialist will complete a check list from the contract checking the pricing, pressure base, term of the contract, location, will also be checked with the gas accounting technician to compare with other contracts making sure this contract is the best for the Osage Tribe. The Accounting Supervisor also checks the terms of the contract and all will sign the surname stamp on the checklist.

A letter approving the gas contract is sent to the purchaser and a similar letter is sent to the lessee for their files.

ITEMS TO CHECK ON GAS CONTRACTS:

1. Complete all information on the check list verifying all information is correct with the ownership of the lease, contract number, royalty rate.
2. If the contract is an Amendment to the original contract, you should complete all the aforementioned steps and the Accounting Technician will file the amendment in the original gas contract. An amendment will change the original contract terms, add acreage to an existing gas contract, or the purchasing company has changed the original contract.
3. The Superintendent will approve the gas contract and it will be sent to the accounting technician to set the file up for the gas contract.
4. The Realty Specialist will send the contracts to the purchaser and the lessee.

NOTE: A copy of the checklist and the letter is provided.

EXPLORATION AND DEVELOPMENT AGREEMENTS

Authority (Osage Tribal Council Resolutions)
CFR 25, Part 226, Indians

The concession agreements are between the Osage Tribal Council and the lessee. The Superintendent, Bureau of Indian Affairs, approves the agreement as to the leasing and field operations that will be covered in the agreement. The lessee will select an "Area of Interest" and a map indicating the area of interest. Under the agreements, licenses and rights and privileges, are granted by an Advanced Option Payment being paid to the Bureau of Indian Affairs, for the benefit of the Osage Tribe. Usually the payment is $4.00 per acre and will be considered as Licensed Acreage.

The leases will be from the licensed acreage that is established for Phase I, and will be re-accessed if they qualify for Phase II and so on. The coal bed methane rights only leases are prepared with "Coal Bed Methane Rights Only" typed or stamped at the top of the leases.

These agreements usually cover the coal bed methane gas, but if available, the lessee may choose to add oil, conventional gas, or both to an existing coal bed methane rights only lease. This is accomplished by the terms stated in the agreement.

EXPLORATION AND DEVELOPMENT AGREEMENTS
(Concession Agreement)

Authority is the Osage Tribal Resolution (# explicit to each agreement)

**PROCEDURES FOR PROCESSING A CONCESSION AGREEMENT**

1. The lessee will request a lease in the concession area.
2. The Realty Specialist will review the agreement as to the available acreage making sure the acreage is available for leasing for the commodity requested.
3. Leases are prepared according to the agreement to the terms, royalty rates, acreage and bonus. Coal Bed Methane leases are on Form A, with "Coal Bed Methane Rights Only" typed or stamped on the lease. (See leases for examples)
4. The Osage Tribal Resolution will specify the terms and acreage of each agreement. The Supervisory Realty Specialist will monitor the agreement for the acreage and bonuses paid to the Bureau of Indian Affairs.
5. The concession agreement will specify the amount of bonus for the coal bed methane leases. If the acreage is available for other leasing, the bonus to add another commodity such as oil, conventional gas or both oil and gas to an existing coal bed method lease is monitored for the correct amounts.
6. The Supervisory Realty Specialist keeps an accumulated spreadsheet on the bonus and acreage. The spreadsheet will also monitor the legal description, type of lease, contract numbers and approval dates the lessee requested.
7. The Realty staff will type the DI 1040 for bonuses collected on each lease. (See example of receipts for bonus).
8. The concession is set up in Phases, according to the agreement. The lessee must meet all qualifications in Phases 1, before proceeding to Phase II, and so on. This usually consists of the lessee drilling a specific number of wells during a specific timeframe.
9. If the lessee cannot meet the qualifications, the lessee may have the concession revised by the Osage Tribal Resolution, or the concession is terminated.

## CUSTOMER SERVICE

Daily duties consist of answering the phone and taking messages. Customers come to the door and check out Well Data Files, Plat Maps, Production History Books and request to see Lease Files. A employee has to be with a customer at all times when viewing Lease Files for there is information on the corresponding side of the Lease Files that subject to the Privacy Act. We make copies of information from our files and books at the customer's request.

All of our trust records are kept secured in the vault in the Branch of Minerals. The Realty Clerks that provide the clients with privileged information from the files are with the client at all times. Clients may be the oil and gas lessees, lawyers, tribal personnel, other federal employees, and the field solicitor. All information is documented that the client's request and the name of the client is required. If the client needs to see certain personnel to conduct their business, that person must stay with the client until business is resolved.

RECORDS:

16 BIAM
File Maintenance and Disposition Plan

TR-4618-P5

Indian Land Lease Case Files

Minerals, Oil and Gas, business, home-site, and surface land farming, and other surface land leases; Also, contain land description, heir-ship and current ownership of Indian trust lands, identification of owners. Subject to the Privacy Act (BIA-5). Land lease case files documenting Mineral Oil and Gas Leases.

Damages:

After completion of drilling operations, the lessee or his authorized representative shall pay for all damages due to drilling operations on the land. Such damages shall be paid to the surface owner.

When the surface is restricted land damages is paid to the Bureau of Indian Affairs for the landowner(s). All other surface owners are paid directly.

DAMAGES:

CFR 226.20

PROCEDURE FOR PROCESSING DAMAGE MONEY

1. Receive from Trust Collector a DI-1040 receipt.
2. Check with Supervisor Petroleum Engineer or Field Secretary for damage letters (generated from their office).
3. Distribution interest should be the same as the commencement money for that particular well and tract. If this is not the case then double check the distribution amount with the Branch of Realty.
4. Type the receipt under the 4844 account (see attachments) and return the entire receipt to the Trust Collector. Attach supporting documents to Realty Specialist copy of green receipt.

Commencement Money:

Before a lessee commences to drill they must pay or tender to the surface owner(s) commencement money in the amount of $25 per seismic shot hole and commencement money in the amount of $300 for each well and will be credited toward the settlement of the total damages (damage settlement made after completion of drilling operations). Lessee will be entitled to immediate possession of the drilling site.

When the surface is restricted land, commencement money is paid to the Bureau of Indian Affairs for the landowner(s). All other surface owners are paid directly, unless the non-restricted landowner(s) will not accept the commencement money.

The Superintendent under CFR 226.19(c) may accept the money in their behalf (see attachment). Money will be deposited into the SDS under the 60270 damages. When the money is to be paid out, Eastern Oklahoma Regional Office will manually disperse the money to third party by public voucher.

COMMENCEMENT MONEY:

CFR 226.19

PROCEDURE FOR PROCESSING COMMENCEMENT MONEY

1. Receive from Trust Collector a DI-1040 receipt along with the drilling application (Osage Form 139, blue paper). Submitted drilling application should be in triplicate.
2. Take one (1) drilling application to the Branch of Realty for:
    a. landowners name
    b. distribution of interest
    c. account numbers (IIM numbers)
    d. all stated information to be written on the side of the drilling application and signed by Realty Specialist and/or Supervisory Realty Specialist
3. Type the receipt (see attachments) and return the entire receipt to trust collector.
4. Make two (2) copies of receipt and three (3) copies of drilling application.
    a. One copy of receipt and drilling application to Supervisor Petroleum Engineer.
    b. One copy of receipt and drilling application to Field Secretary.
    c. One copy of drilling application to be attached to Realty Specialist copy of green receipt and attach any other supporting documents.

5. Submit application to Engineers office.