**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: July 25, 2005 |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS, IN PART, PLAINTIFF'S TRANCHE ONE CLAIMS**

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . 2

A. PLAINTIFF HAS FAILED TO IDENTIFY A SOURCE OF LAW THAT CREATES THE SPECIFIC MONEY-MANDATING DUTIES TO CALCULATE AND COLLECT OIL AND GAS ROYALTIES . . . . . . . . . . 2

1. The sources of law do not create a specific duty to calculate and collect oil and gas royalties . . . . . . . . . . 3

2. Activities undertaken by the Government do not provide a basis for imposing money-mandating duties related to those activities because a money-mandating duty must be grounded in identified sources of law . . . . . . . . . . 9

3. The Court should reject Plaintiff's assertion that it can establish a money-mandating duty through common law pursuant to *White Mountain Apache* . . . . . . . . . . 14

4. Although Plaintiff cannot maintain an action for damages against the Government for failure to calculate and collect royalties, it is not left without recourse . . . . . . . . . . 16

B. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS THAT ARE BEFORE ANOTHER COURT . . . . . . . . . . 18

C. PLAINTIFF'S ROYALTY CALCULATION CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS . . . . . . . . . . 20

D. PLAINTIFF HAS STILL FAILED TO ARTICULATE A MONEY-MANDATING DUTY REQUIRING THE PAYMENT OF INTEREST PAST THE DATE OF DISBURSEMENT UNTIL THE MOMENT THAT THE FUNDS COME UNDER PLAINTIFF'S CONTROL . . . . . . . . . . 21

III. CONCLUSION . . . . . . . . . . 22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amoco Production Company v. Southern Ute Indian Tribe*, 526 U.S. 865 (1999) . . . . . . . . . -17-

*Ashley v. Department of the Interior,* 408 F.3d 997 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . -5-

*Brown v. United States,* 86 F.3d 1554 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . -4-, -5-, -11-, -21-

*Chrysler Corp. v. Brown,* 441 U.S. 281 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Emery Worldwide Airlines, Inc. v. United States,* 49 Fed. Cl. 211 (2001) . . . . . . . . . . . . . . . -22-

*Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . -17-

*Jicarilla Apache Tribe v. Supron Energy Corp.,* 728 F.2d 1555 (10th Cir. 1984) . . . . . . . . . -17-

*Mitchell v. United States,* 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Navajo Nation v. United States,* 263 F.3d 1325 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . -7-, -8-

*Navajo Nation v. United States,* 46 Fed. Cl. 217 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Navajo Nation v. United States,* 537 U.S. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . -2-, -7-, -9-

*Pawnee v. United States,* 830 F.2d 187 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . -4-, -21-

*Poafpybitty v. Skelly Oil Company,* 390 U.S. 372 (1968) . . . . . . . . . . . . . . . . . . -12-, -16-, -17-

*Prestex, Inc. v. United States,* 3 Cl. Ct. 373 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Public Citizen v. United States Dep't of Justice,* 491 U.S. 440 (1989) . . . . . . . . . . . . . . . . . . -22-

*Shoshone Indian Tribe v. United States,* 364 F.3d, 1339 (Fed. Cir. 2004) . . . . . . . . . . . . -9-, -20-

*Shoshone Indian Tribe v. United States,* 52 Fed. Cl. 614 (2002) . . . . . . . . . . . . . . . . . . -10-, -11-

*Shoshone-Bannock Tribes v. Reno,* 56 F.3d 1476 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . -17-

*Steel Co. v. Citizens for Better Environment,* 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . -19-

*Taylor v. Commonwealth of Virginia,* 170 F.R.D. 10 (E.D. Va. 1996) . . . . . . . . . . . . . . . . . . -19-

*United States v. Koch Indus.,* 57 F. Supp. 2d 1122 (N.D. Okla. 1999) . . . . . . . . . . . . . . . . . . -6-

*United States v. Mason,* 412 U.S. 391 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*United States v. Mitchell,* 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . -2-, -4-, -9-, -10-, -21-

*United States v. White Mountain Apache,* 537 U.S. 465 (2003) . . . . . . . . -2-, -9-, -12-, -14-, -15-

FEDERAL STATUTES

25 U.S.C. § 348 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

25 U.S.C. § 415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

25 U.S.C. § 415(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

Act of March 2, 1929, Pub. L. 70-919, 45 Stat. 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

30 U.S.C. §§ 1701(b)(3), 1711(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

25 U.S.C. § 396 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

Pub. L. No. 86-392, 74 Stat. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -15-

25 U.S.C. § 175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Act of June 28, 1906, 34 Stat. 539 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

FEDERAL REGULATIONS

25 C.F.R. Part 162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

25 C.F.R. Part 211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

25 C.F.R. § 211.40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

25 C.F.R. § 226.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -8-

25 C.F.R. § 226.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -12-

25 C.F.R. § 226.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

25 C.F.R. § 226.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

25 C.F.R. § 226.42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -12-

30 C.F.R. Part 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -14-

25 C.F.R. § 226.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

**APPENDIX TO DEFENDANT'S EXHIBIT IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS, IN PART, PLAINTIFF'S TRANCHE ONE CLAIMS**


| Exhibit No. | Description | Beginning Page Number in Appendix |
|---|---|---|
| 1 | Defendant's Motion for Reconsideration of Consolidation Order | 1 |

## I. INTRODUCTION

Plaintiff has failed to identify a specific statutory or regulatory source that imposes a duty on the Department of the Interior ("Interior") to calculate and collect royalties on oil and gas leases. Neither the 1906 Act nor its implementing regulations places such a duty on the Government, nor do they give the Government sufficient control over this activity from which such a duty may be inferred. Rather, these sources specifically place the duty to calculate and pay royalties on the lessees or purchasers of the oil and gas, and limit the actions that Interior may take in the event that a lessee violates its lease – including through failure to pay the correct royalties in a timely manner – to imposing late fees or fines or canceling the lease.

The Osage Agency's actions to protect the interests of the Osage Tribe by following a practice of verifying royalty payments and pursuing underpayments of royalties from purchasers or lessees does not create money-mandating duties. It is not the Agency's actions such as these that can give rise to plenary control that creates a money-mandating duty. Rather, it is the statutes and regulations that must confer the authority and responsibility in such a manner as to establish plenary control over the activity to create a money-mandating duty. Here, those sources of law do not establish the necessary control. In any event, the Osage Agency can undertake these activities, without creating duties that are compensable if breached, to assist it in performing other roles under the regulations or pursuant to its general fiduciary relationship with the Tribe.

Despite Plaintiff's insistence to the contrary, the statutory and regulatory scheme does not leave it without recourse if lessees or purchasers fail to pay the correct royalty in a timely manner. It plainly can seek to enforce the payment terms against the entity that should be liable for underpayments or late payments, the purchasers or lessees. Short of seeking judicial enforcement

of the lease terms, it also can seek, and has sought, the assistance of the Agency in obtaining underpaid royalties.

For these reasons, as fully explained below, the Court should find that it lacks jurisdiction under the Tucker Act and Indian Tucker Act to entertain Plaintiff's royalty calculation and collection claims and should, therefore, dismiss these claims. Alternatively, it should dismiss these claims because they are before another court in an earlier-filed action or should dismiss Plaintiff's royalty calculation claim as barred by the statute of limitations. Finally, because Plaintiff has failed to identify a duty-imposing source of law, the Court should dismiss Plaintiff's lost-income claim related to disbursement lag time.

## II. ARGUMENT

### A. PLAINTIFF HAS FAILED TO IDENTIFY A SOURCE OF LAW THAT CREATES THE SPECIFIC MONEY-MANDATING DUTIES TO CALCULATE AND COLLECT OIL AND GAS ROYALTIES

Plaintiff claims it has established that the Government has a duty to calculate and collect oil and gas royalties based on three lines of reasoning. First, under *United States v. Mitchell*, 463 U.S. 206 (1983) ("*Mitchell II*"), it claims that sources of law, namely the 1906 Act and its implementing regulations, gave the Government pervasive authority over the oil and gas resource and, as part of this authority, it had the duty to calculate and collect oil and gas royalties. Second, under *Mitchell II*, it argues that the Government's exercise, in fact, of complete control over the oil and gas resource creates the money-mandating duty. Third, under *United States v. White Mountain Apache*, 537 U.S. 465 (2003), it asserts that the duty arose as a necessary incident of the trust, in light of the terms of the trust and the common law obligations of a trustee. Plaintiff's claims do not withstand scrutiny and appear to ignore the import of the Supreme Court's conclusions in *Navajo Nation v. United*

*States*, 537 U.S. 488 (2003).

### 1. The sources of law do not create a specific duty to calculate and collect oil and gas royalties

In an attempt to identify a fiduciary duty to calculate and collect royalties, Plaintiff relies heavily on the 1906 Act provision that states "all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States . . . ." 1906 Act § 4. This language does not itself create specific fiduciary duties. Indeed the Supreme Court in *Mitchell v. United States*, 445 U.S. 535 (1980) ("*Mitchell I*"), concluded that similar language in the General Allotment Act – "the United States does and will hold the land thus allotted . . . in trust for the sole use and benefit of the Indian to whom such allotment shall have been made . . . " 25 U.S.C. § 348 – created only a bare or limited trust and did not impose any duty upon the Government. 445 U.S. at 542.

Nevertheless, the Government is not asserting that the 1906 Act creates only a bare trust. The analysis of the issue does not, of course, end with this one provision. Other provisions of the 1906 Act and its implementing regulations do, indeed, impose duties – although not to calculate and collect royalties – on the Government, the breach of which would require compensation. But the general language quoted above is insufficient to create those duties. Moreover, simply because, as Defendant admits, these sources of law establish more than a bare or limited trust, does not mean, as Plaintiff contends, that all possible duties related to the management of the trust asset can be imposed on the Government. It is well-established that those duties must be grounded in the statute or regulations.

In *Mitchell II*, the Court concluded that statutes and regulations "establish[ed] the 'comprehensive' responsibilities of the [Government] in managing the harvesting of Indian timber,"

with "[v]irtually every stage of the process . . . under federal control." 463 U.S. at 222 (citation omitted). The Court stated that "the statutes and regulations now before us clearly give the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians. They thereby establish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities." *Id.* at 224. Subsequent Federal Circuit decisions have also identified sources of law that established a fiduciary relationship, but concluded that the claims plaintiffs asserted were not within the contours of the fiduciary responsibilities.

In *Pawnee v. United States*, 830 F.2d 187 (Fed. Cir. 1987), the Court considered the Tribe's claim that the Government had breached its fiduciary obligation to obtain appropriate royalties for oil and gas leases. The Court stated that the Indian Long-Term Leasing Act, 25 U.S.C. § 396, put the Secretary of the Interior "at the center of the leasing of Indian mineral lands," 830 F.2d at 189, and that regulations demonstrated the government's involvement in all aspects of the leasing arrangement, *id.* at 190. Based on this statute and regulations, the Court concluded "that the United States has a general fiduciary obligation toward the Indians with respect to the management of [the] oil and gas leases." *Id.* The Court noted, however, that the existence of this general fiduciary relationship "does not mean that any and every claim by the Indian lessor necessarily states a proper claim for breach of the trust – a claim which must be fully tried in the Claims Court." *Id.* at 191. The Court stated that "the fiduciary relationship springs from the statutes and regulations" that define the fiduciary or trust relationship and that the Tribe had failed to identify a violation of a specific statute or regulation. *Id.* at 192.

In *Brown v. United States*, 86 F.3d 1554 (Fed. Cir. 1996), the Federal Circuit considered individual Indians' claims that the government breached a fiduciary duty imposed by 25 U.S.C. §

415 and 25 C.F.R. Part 162 by failing to compel the Indians' lessees to fulfill their reporting and payment obligations or by failing to cancel the leases. 86 F.3d at 1557. The Court concluded that "the Secretary [of the Interior] acts as a fiduciary with respect to leases granted under 25 U.S.C. § 415(a)." 86 F.3d at 1563. But the Court also concluded that the Tribe had not identified a money claim against the Tribe:

> That the commercial leasing regime . . . imposes general fiduciary duties on the government in its dealings with the Indian allottee-lessors "does *not* mean that any and every claim by the Indian lessor necessarily states a proper claim for breach of trust." . . . The validity of a breach of trust claim grounded on section 415(a) must be assessed according to the general principle that "[t]he scope and extent of the fiduciary relationship" alleged to have been breached "is established by the regulation[s]" that control this type of leasing. . . . In other words, where no specific statutory requirement or regulation is alleged to have been breached by the Secretary, the money claim against the government must fail.

*Id.* (emphasis in original) (citations omitted)*; see also Ashley v. Department of the Interior*, 408 F.3d 997, 1002 (8th Cir. 2005) ("There is a 'general trust relationship between the United States and the Indian People.' [] But that relationship alone does not suffice to impose an actionable fiduciary duty on the United States.") (citations omitted).

In summary, even if the statutes and regulations establish a fiduciary or trust relationship – as the 1906 Act and Osage regulations admittedly do – the Tribe must still point to specific statutory or regulatory requirements giving rise to the fiduciary duty forming the basis of its claim, the breach of which mandates compensation. The Tribe cannot because no such source of law exists.

The 1906 Act does not constitute this source. In addition to the provision quoted above, it provides, *inter alia*, "[t]hat the royalty received from oil, gas, coal, and other mineral leases . . . shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act. . . ." 1906

Act § 4. This provision contains sufficient specificity to create a fiduciary duty. It also defines the contours of that duty: to place royalties received in Treasury. It does not define the Government's duty as calculating the royalties owed, which duty, under the 1906 Act implementing regulations, is placed squarely with the lessee or purchaser of the oil and gas. 25 C.F.R. § 226.13.[1/] It also does not place a duty on the Government to collect royalties owing – the implementing regulations require the lessee or purchaser to pay the royalties.[2/] *Id.*

The Osage regulations also fall short of providing a source for a Governmental duty to calculate and collect royalties. Lacking a regulatory provision on point, Plaintiff asserts that, because the sources of law provide the Government with plenary control over several aspects of the management of the oil and gas resource, the duty to calculate and collect royalties should also be imputed to the Government. This assertion should also fail.

Plaintiff provides a list of regulatory provisions related to the oil and gas leasing process that, it claims, establishes extensive control over the process. It states that, by regulation, the Government has established the methodology by which oil or gas is valued for royalty purposes, 25 C.F.R. § 226.11; drafted and mandated the use of the lease form for Osage oil and gas, *id.* § 226.7; exercised approval authority over all aspects of oil and gas leases, *id.* §§ 226.2, .5, .10, .14, .15; directed that royalty payments are to be made to the Government, *id.* § 226.4; controlled lessees'

---

[1/] Following Plaintiff's convention, regulatory citations are to Part 226, which superceded Part 183.

[2/] The statement in *United States v. Koch Indus.*, 57 F. Supp. 2d 1122, 1124 (N.D. Okla. 1999), that "[t]he Osage Agency is responsible for collecting royalty payments on" Osage leases provides meager support for plaintiff's claim that the Government has this duty. This statement lacks any foundation, support, or analysis by the Court of statutory or regulatory sources for such a responsibility.

conduct and operations under leases, *id.* §§ 226.16-.41; and enforced the provisions of the oil and gas leases, *id.* §§ 226.42-.46. Plf.'s Opp. at 6-7, 22-23. Notably, none of these provisions provide for the Government to calculate or collect royalties. To remedy this want of specific statutory or regulatory prescriptions, the Tribe turns to the common law, arguing that "the Government has an affirmative duty to collect amounts due the trust." Plf.'s Opp. at 16, *citing* Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* § 177 (4th Ed. 1987); *Restatement (Second) of Trusts* § 174, cmt. a (1959); *see also* Plf.s' Opp. at 25, 28.

The Federal Circuit followed a similar analysis in *Navajo Nation v. United States*, 263 F.3d 1325 (Fed. Cir. 2001), *rev'd*, 537 U.S. 488 (2003). It examined the Indian Minerals Leasing Act, listed and explained several provisions of 25 C.F.R. Part 211 relating to mineral leasing, and then stated that

> [i]t is quite clear that the statute and regulations assign to the Secretary of the Interior and other government officials the authorization, supervision, and control of Indian mineral leasing activities. The statute and regulations leave no significant authority in the hands of the Indian tribes whose reservation land contains the minerals, and all procedures, responsibilities, and even details are prescribed by Act of Congress and in the regulations promulgated by the Secretary of the Interior. The statutory purpose is to protect the natural resources of the Indians and manage them in a manner that maximizes their benefit to the Indians.

263 F.3d at 1331. The Court concluded that the "[s]tatutes, regulations, and precedent place on the federal official a clear and unqualified fiduciary responsibility to manage the mineral resources for the benefit of the Indians." *Id.* at 1332. To identify the specific breach of fiduciary duty for which the Government was liable, the Court then imported common law principles. The Court explained that the Secretary's actions of suppressing and concealing a decision of the Deputy Assistant Secretary for Indian Affairs approving an increase in royalty rates, which led the Tribe and lessee to negotiate an agreement with a reduced royalty rate increase, violated "the most basic common law

fiduciary duties owed to the Navajo Nation." *Id.* at 1332 (citing *Navajo Nation v. United States*, 46 Fed. Cl. 217, 219 (2000)).

The Supreme Court in *Navajo Nation v. United States*, 537 U.S. 488 (2003), rejected this analysis and conclusion of the Federal Circuit. The Court stated that "there is no textual basis for concluding that the Secretary's approval function includes a duty, enforceable in an action for money damages, to ensure a higher rate of return for the Tribe concerned." *Id.* at 511. It concluded that "the Tribe's assertions are not grounded in a specific statutory or regulatory provision that can fairly be interpreted as mandating money damages." *Id.* at 513. This Court should also reject the reasoning and analysis of the Federal Circuit discredited by the Supreme Court and employed by Plaintiff in this case.

In any event, Plaintiff overstates the level of control that the 1906 Act and the regulations provide to the Government. As Plaintiff notes, Interior's regulations establish the methodology for valuing oil and gas for royalty purposes. 25 C.F.R. § 226.11. But the promulgation of the valuation methodology was pursuant to notice and comment rulemaking, which involved the Tribe. *See, e.g.,* 59 Fed. Reg. 22104 (April 28, 1994). Moreover, to the extent that any changes to the regulations have affected the term of a lease or rate of royalty, such changes have been subject to the approval of the Tribe. 25 C.F.R. § 226.5. In addition, although Interior exercises approval authority over oil and gas leases, it is the Tribe that originally had the responsibility, in the first instance, to enter the leases and continues to share that responsibility. 1906 Act § 3; 25 C.F.R. § 226.2; *see also* Act of March 2, 1929, Pub. L. 70-919, 45 Stat. 1478, 1479 ("The Secretary of the Interior *and the Osage tribal council* are hereby authorized and directed to offer for lease for oil, gas, and other mining purposes any unleased portion of said land. . . .") (emphasis added). In any event, the Supreme

Court in *Navajo* established that approval authority does not give rise to a money-mandating duty. *Navajo,* 537 U.S. at 509 & 510 n.13. Finally, while the Government possesses authority to enforce the terms of the leases through levying fines or cancelling leases if their terms, including those related to the payment of royalties, are violated, 25 C.F.R. § 226.42, that control is not exclusive as the Tribe can also enforce the terms of the leases. *See infra* Part II.A.4.[3/]

Because Plaintiff cannot identify a specific statutory or regulatory prescription requiring the Government to calculate and collect royalties, the Court should conclude that there is no fiduciary duty imposed on the Government to do so.

**2. Activities undertaken by the Government do not provide a basis for imposing money-mandating duties related to those activities because a money-mandating duty must be grounded in identified sources of law**

Plaintiff states that the Osage Agency actually exercises significant control over the calculation and collection process and argues that this control, in fact, imposes a duty on the Government. Defendant does not deny that the Agency historically has verified that the proper royalty amount is paid and has sought additional royalty payments from purchasers or lessees. These actions by the Agency, however, do not bind the agency[4/] and do not give rise to a money-

---

[3/] The regulations also direct that payment of royalties is to be made to the Osage Agency. 25 C.F.R. § 226.4. Of course, such a provision is necessary in this instances because Interior is charged with depositing receipts of royalties into Treasury and with distributing on a quarterly basis the royalties to the headright owners. 1906 Act § 4. Plaintiff asserts that this provision mirrors the provision that, in *Shoshone Indian Tribe v. United States*, 364 F.3d, 1339, 1350 (Fed. Cir. 2004), the Federal Circuit found to be sufficient to impose a duty to collect. As fully explained in Defendant's opening brief, that provision, 25 C.F.R. § 211.40, requires revenues to be paid to the Minerals Management Service ("MMS") and incorporates regulations relating to MMS duties, which are substantially more directive than those applying to the BIA in the Osage regulations. Def.'s Opp. at 29-30.

[4/] The actions or statements of the Agency personnel cannot bind the agency beyond the authority provided in the regulations or statute. *See Prestex, Inc. v. United States*, 3 Cl. Ct. 373,

mandating duty.

Citing *Mitchell II*, Plaintiff asserts that a fiduciary duty arises over tribal funds or assets if the Goverrnment "takes on" control or supervision over the funds or assets. Plf.'s Opp. at 13, *citing Mitchell II*, 463 U.S. at 225. But *Mitchell II* did not conclude that the Government had fiduciary duties based on its management actions. Rather, it concluded that "the statutes and regulations now before us clearly give the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians. They thereby establish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities." 463 U.S. at 224. To establish a fiduciary duty, the Government must "take on" control or supervision of funds or assets through statutes and regulations, not through actions that are not required by these sources of law. *See Navajo*, 537 U.S. at 504-05 (noting that a *network of statutes and regulations* imposed judicially enforceable fiduciary duties in *Mitchell II*).

Nor, as Plaintiff suggests, should this Court's statement in *Shoshone Indian Tribe v. United States*, 52 Fed. Cl. 614 (2002), be deemed as requiring Plaintiff's conclusion that the Agency's activities, irrespective of the requirements of the 1906 Act or the Osage regulations, serve to create a fiduciary duty to calculate and collect royalties. There, the Court stated "that actual control or supervision by the government with respect to the Indians' resources may provide an independent basis for fiduciary responsibility in the absence of a clear statutory or regulatory directive

377 (1983), *citing Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). In addition, the Osage Agency's Policies and Procedures Guide, published in 2004, does not create binding duties on the Agency. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 301-04 (1979) (to have the force and effect of law, a guideline would have to prescribe substantive rules, not merely general statements of policy or rules of agency organization, procedure, or practice, and would have to be promulgated pursuant to a specific statutory grant of authority and conform with procedural requirements imposed by Congress).

prohibiting such conclusion." 52 Fed. Cl. at 620-21. As subsequently noted by the Federal Circuit in the appeal of this Court's earlier statute of limitations ruling, the Government's duty to collect proceeds for sand and gravel contracts arose from the Indian Minerals Leasing Act implementing regulations, which place the responsibility for collecting the proceeds on the MMS under its regulations by specifically obligating MMS to calculate and collect proceeds. 30 C.F.R.§§ 201.100, 211.3 , 218.200, 218.202; *see* Def.'s Mem. In Support of Mot. to Dismiss at 29-30. Accordingly, the actual control or supervision in *Shoshone* arose from the statutory and regulatory regime applicable there, but not applicable here.

The Supreme Court's opinion in *Navajo*, which post-dated this Court's opinion in *Shoshone, supra*, should put to rest Plaintiff's assertion that an enforceable duty can be implied from the actions of the Agency rather than statutory or regulatory prescriptions. In *Navajo* the Court emphasized that "the analysis [of whether a fiduciary duty exists] must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." 537 U.S. at 506. The role of implications or inference only arises when determining whether the specific prescriptions provide for damages: "[t]hose prescriptions need not, however, expressly provide for money damages; the availability of such damages may be inferred." *Id.*; *see also Brown v. United States*, 86 F.3d 1554, 1563 (Fed. Cir. 1996).

Accordingly, even if, as Plaintiff suggests, the Government acted as a volunteer when it calculated and collected royalties, such gratuitous action by the Government would not give rise to a fiduciary duty because of the absence of "specific rights-creating or duty-imposing statutory or regulatory prescriptions." 537 U.S. at 506. In any event, Defendant is not claiming that it acted as a volunteer when it verified royalty payments and collected underpayments, although these activities

were not undertaken pursuant to a money-mandating fiduciary duties. Such activities were undertaken to assist the Agency in performing other functions under the regulations, such as to determine whether to cancel a lease or levy a fine, or were undertaken pursuant to the Government's general fiduciary relationship with the Tribe.

Specifically, the regulations provide that the "[v]iolation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or Lessee to a fine of not more than $500 per day for each day of such violation or noncompliance with the orders of the Superintendent, or to both. . ." 25 C.F.R. § 226.42 (1975). To determine if it should take action under this provision, the Osage Agency could legitimately seek to verify whether the correct royalties have been paid without assuming a duty to do so.[5/] Once the Agency determines that an underpayment has occurred, it could choose to enforce the terms of section 226.42 by imposing fines or cancelling the underlying lease. The drastic action of cancelling the lease, which could work to the Tribe's detriment (*see Poafpybitty v. Skelly Oil Company*, 390 U.S. 372, 374 (1968)), can be avoided through the Agency's collection of the underpayment, and any late fees under 25 C.F.R. § 226.13, in order to bring the purchaser or lessee into compliance with the regulations.[6/]

Section 226.42 does not, however, impose a duty on the Agency to recalculate and collect

---

5/ The Agency could also be spurred to action under this provision through the Tribe's prompting or through outside investigations conducted by the Inspector General, MMS, or congressional committees.

6/ By virtue of the verifications that the Osage Nation undertakes in support of its role under the regulations, including Section 226.42, the Government would presumably identify a circumstance where a purchaser pays 1¢ instead of the $500.00 that is due. Plf.'s Opp. at 24. It is also likely that the Tribe's auditors would discovery such a discrepancy.

royalties. This provision, along with other provisions of the regulations requiring the purchaser to calculate and pay royalties, plainly establish a regulatory scheme whereby the purchasers or lessees are responsible for paying the correct royalties with Interior policing but not insuring those payments or indemnifying the Tribe for underpayments. *See United States v. Mason*, 412 U.S. 391, 398 (1973) ("it has long been recognized that a trustee is not an insurer of trust property"). If more of an obligation were contemplated – one that could give rise to a money-mandating duty – Congress could have specifically required Interior to calculate and collect the royalties, as it has done in the Federal Oil and Gas Royalties Management Act ("FOGRMA"), 30 U.S.C. §§ 1701(b)(3), 1711(a) for other tribes, or Interior could have promulgated regulations taking on that duty, such as it has done with the regulations governing collection of royalties on oil and gas under the regulations implementing FOGRMA, 30 C.F.R. Part 206.

In addition, the Government can undertake activities, such as the verification and collection of royalties for the Osage Tribe, to fulfill its general trust duties to the Tribe. As explained *supra*, it is well-established that a court can conclude that a trust relationship exists without imposing money-mandating duties. *See, e.g., Navajo, Mitchell I*, *Brown, Pawnee, supra*. The Government can undertake activities in fulfillment of its general fiduciary relationship with the Tribe, but an action for damages must be based on more than the existence of the general fiduciary, or trust, relationship. It must be based on specific statutory or regulatory requirements, which are absent here.

### 3. The Court should reject Plaintiff's assertion that it can establish a money-mandating duty through common law pursuant to *White Mountain Apache*

Plaintiff argues that, under *White Mountain Apache*, so long as a trust relationship exists

between the Tribe and the Government, a fiduciary duty may be imposed as an incident of the trust, in light of both the terms of the trust and the common law obligations of a trustee. Plf.'s Opp. at 14-15. Plaintiff explains that the 1906 Act expressly establishes a trust over all funds due or that may become due to the Osage; that the 1906 Act requires the Government to place royalties received in Treasury; and that the regulations require royalty payments to be made to the Government. *Id.* at 16. Plaintiff asserts that these statutory provisions create the trust and that common law then imposes on this trust the affirmative duty to collect amounts due to the trust. *Id.*, *citing* Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* § 177 (4th Ed. 1987); *Restatement (Second) of Trusts* § 174, cmt. A (1959).

Plaintiff is construing the import of *White Mountain Apache* in a manner that makes it inconsistent with the Supreme Court's holding, on the same day, in *Navajo*. It is plain in *Navajo* that, to find a fiduciary duty, Plaintiff must point to "specific rights-creating or duty-imposing statutory or regulatory prescriptions," not to general statutory and regulatory prescriptions coupled with specific common law duties. 537 U.S. at 506. The Supreme Court in *White Mountain Apache* also deemed that the relevant statute created a specific duty. The statute there provided that the "former Fort Apache Military Reservation" would be "held by the United States in trust for the White Mountain Apache Tribe, subject to the right of the Secretary of the Interior to use any part of the land and improvements for administrative or school purposes for as long as they are needed for the purpose," Pub. L. No. 86-392, 74 Stat. 8, and made the United States the "sole manager and trustee" of the property, 537 U.S. at 481 (Ginsburg, J., concurring).

The Court did turn to what it termed "elementary trust law" and fundamental common-law duties of a trustee" in its analysis of whether there was a money-mandating duty. *Id.* at 475. But

it appears that it examined the common law to determine whether the statutory duty entailed a right to damages in the event the duty was breached. In rejecting what it deemed to be the Government's demand that there be "an explicit provision for money damages to support" the claim, the Court clarified the role of common law. *Id.* at 477. The Court noted that, in *Mitchell II*, once a specific duty was identified "to provide focus for the trust relationship . . . general trust law was considered in drawing the inference that Congress intended damages to remedy a breach of obligation." *Id.* This construction allows the holdings in *Navajo* and *White Mountain Apache* to be reconciled.

In order to ensure that *White Mountain Apache* does not broadly modify the well-established standard followed in *Navajo* – which requires explicit statutory or regulatory sources, not common law, to create fiduciary duties – the holding in *White Mountain Apache* should be narrowly limited to the statutory language it considered and the relatively extreme facts of that case, which diverge significantly from those before this Court. In *White Mountain Apache*, the Court considered an instance where the United States had sole possession and complete and plenary control over the property of the Tribe; possession of the property was for the exclusive and sole use of the Government; and the Government in exclusively using the property allowed it to fall into ruin. 537 U.S. at 469. In contrast, the case before this Court does not involve exclusive, complete, and plenary control and authority over the assets and funds of the Tribe. The money due and owing to the Tribe is within the control of the purchaser or lessee, which has the obligation under the leases and regulations to calculate and pay oil and gas royalties. The Government does not have control over the amounts due and owing or over the purchasers or lessees such as the complete control it

possessed over the property held in trust at issue in *White Mountain Apache*. [7]

For these reasons, the Court should decline to allow the Plaintiff's, pursuant to *White Mountain Apache*, to establish fiduciary duties by looking to the common law when no statutory or regulatory source establishes those duties.[8]

**4. Although Plaintiff cannot maintain an action for damages against the Government for failure to calculate and collect royalties, it is not left without recourse**

Plaintiff claims that, without a damage action against the Government, it is left without recourse. Plaintiff claims that it has no role in enforcing the leases; that, even if it has such a role, it does not absolve the Government of its trust obligation to enforce lease obligations; and that the Government controls the information that it would presumably need to bring a case. Plf.'s Opp. at 30-31. Plaintiff's objections are either incorrect or fail to rebut the Government's point that it does not possess exclusive control over the enforcement of lease terms and that Plaintiff has recourse directly against purchasers or lessees for unpaid royalties.

First, the Tribe is not barred from seeking to enforce the terms of the leases. *Poafpybitty*, 390 U.S. at 374. Although the Osage Tribe has apparently not availed itself of the courts to enforce the terms of its leases, other Tribes have done so under regulations that give these Tribes even less

---

[7] The function of collecting royalties would, at times, rest on seeking payment through litigation, which would involve the vagaries and uncertainties inherent in seeking judicial relief. Because the collection function faces such uncertainties, no party can be deemed to fully control collections in the same sense that the Government controlled the property at issue in *White Mountain Apache*.

[8] If the Court is nevertheless inclined to look to the common law to establish or evaluate the Government's duties, then the Government reserves its right to raise traditional common law defenses against Plaintiff's claims, including consent of the beneficiary and laches. George Taylor Bogert, *Trusts* §§ 168, 169 (6th ed. 1987).

of a role in the management of their resources. *See, e.g., id.*; *Amoco Production Company v. Southern Ute Indian Tribe*, 526 U.S. 865 (1999); *Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555 (10th Cir. 1984); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982).

Second, the Government is not obligated to bring lawsuits to enforce the terms of the leases.[9/] Although the Court in *Poafpyitty* suggested that the Government, when faced with a violation of a lease, would "of course satisfy its trust obligations by filing the necessary court action," this dicta was written prior to the *Mitchell* cases and their progeny, which have established that duties of the government must be grounded in specific statutory or regulatory sources. *See Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995) ("While it is true that the United States acts in a fiduciary capacity in its dealings with Indian property, . . . it is also true that the goverrnment's responsibilities necessarily depend on the substantive laws creating those duties.") (citations omitted). Nowhere in the 1906 Act or the Osage regulations are there prescriptions requiring the Government to sue to enforce the terms of the leases. Nor does the statutory provision establishing the Government's authority to represent Tribes, 25 U.S.C. § 175, require the Government to bring suit. 56 F.3d at 1482 (concluding that "§ 175 is one of those statutes 'drawn in such broad terms that in a given case there is no law to apply.'. . . The provision does not withdraw discretion from the Attorney General, and it offers no standards for judicial evaluation of the Attorney General's litigating decisions to pursue or not to pursue particular claims.") (citations omitted). In short, the Government may bring suit pursuant to section 175 and the general fiduciary duties owed to Tribes,

---

[9/] Contrary to Plaintiff's assertions (Plf.'s Opp. at 31), the Government is not asserting that the efforts of the beneficiary to protect its interests – e.g., to ensure proper payment of royalties – absolves the trustee of responsibility for its breaches of an alleged duty – e.g., collection of royalties. Rather, the Government maintains that it does not have the responsibility to calculate or collect royalties that can be breached, whether or not Plaintiff seeks to protect its interests.

but it does not have to do so and is not liable for damages if it declines to do so.[10]

Finally, the Tribe does have access to the necessary information to vindicate its rights under the leases. As amply demonstrated in Defendant's opening brief, tribal auditors have historically had access to information regarding tribal assets and funds, including lease and royalty records. Def.'s Mem. in Support of Mot. to Dismiss at 26-27. The information was available to the Tribe at its request. *See, e.g.,* Hill Depo at 360:11-14, Plf.'s App., Exh. 3.

For these reasons, the Court should reject Plaintiff's call to impose damages on the Government because, as Plaintiff claims, it would be left without recourse otherwise. The Plaintiff has various means to seek relief from the entities that are responsible for making correct and timely royalty payments – the lessees or purchasers.

## B. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS THAT ARE BEFORE ANOTHER COURT

Until Plaintiff submitted its proposed scope and schedule for tranche one, it was clear that the Tribe was prosecuting its claims related to the calculation and collection of royalties in Case No. 99-550L, before another Judge in the Court of Federal Claims. Def.'s Mem. in Support of Mot. to Dismiss at 30-33. Rather than responding to Defendant's Motion to Dismiss in that case, Plaintiff has moved to dismiss it under RCFC 41(a)(2). Based on that motion, Plaintiff asserts that "the case will be dismissed" and the source of the Government's concerns will be removed.

Plaintiff's assurances that this issue will be cleared up are misplaced. Defendant intends to

---

[10] That the United States has brought suit under the False Claims Act and pursuant to its trust responsibilities against oil and gas purchasers with lease obligations owed to the Osage Tribe does not support Plaintiff's assertion that the Government must bring such actions (there is no statutory or regulatory basis in the False Claims Act or elsewhere requiring the Government to bring suit) or that the Tribe is precluded from bringing its own action to enforce lease obligations.

oppose Plaintiff's motion in Case No. 99-550L on the grounds that it is in disregard of the order denying its earlier motion to consolidate the cases. Plaintiff's motion is tantamount to seeking to relitigate its rejected motion to consolidate, which was denied based on the Government's arguments that Case No. 00-169L, a trust fund management action, and Case No. 99-550L, a royalty-valuation case, almost entirely involve different aspects of federal operations, different documents, different potential witnesses, and different statutory and regulatory authority, differences that have been borne out during the course of discovery in Case No. 00-169L. *See* Def.'s Mot. to Reconsider Consolidation Order, No. 99-550L & No. 00-169L at 3-6 (attached as Exhibit 1).

In addition, Defendant will also request that the Court in Case No. 99-550L consider the Government's pending motion to dismiss prior to entertaining Plaintiff's Motion to Voluntarily Dismiss the case. By filing its Motion for Voluntary Dismissal pursuant to Rule 41(a)(2), the Tribe hopes to avoid a ruling by the court in Case No. 99-550L on Defendant's statute of limitations argument, which is jurisdictional in nature. It is a fundamental premise of federal jurisdiction that the first question in any case is whether the court has jurisdiction to hear the case (*see Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998)) and, thus, Defendant's first-filed and pending Motion to Dismiss, which challenges, in part, the court's jurisdiction, should be considered before the Tribe's Motion for Voluntary Dismissal. *See Taylor v. Commonwealth of Virginia*, 170 F.R.D. 10 (E.D. Va. 1996).

Accordingly, for the reasons Defendant explained in its opening brief, this Court should reject Plaintiff's attempt to litigate the royalty valuation claims in this latter-filed case. *See* Def.'s Opp. at 33.

**C. PLAINTIFF'S ROYALTY CALCULATION CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

Contrary to Plaintiff's assertion, Defendant is not seeking to have the Court relitigate its previous Motion to Dismiss based on the running of the statute of limitations. Defendant's previous motion related to Plaintiff's claims for "money damages for breach of fiduciary duty in the management of tribal trust funds and for failure to account." Def.'s Mot. to Dismiss at 3-4 (Jul 25, 2001) (citing Compl. ¶ 4). Since the Court's consideration of that motion, Plaintiff has expanded its claims in this case to also include the failure to calculate and collect royalties, claims that were not addressed in Defendant's earlier motion because these claims were understood to be part of a separate case. Pursuant to *Shoshone*, 364 F.3d at 1350, Defendant now seeks to dismiss these new claims as barred by the statute of limitations.

In *Shoshone*, the Court drew a line between claims that are timely and those that are untimely under provisions in successive Appropriations Acts. It explained that claims related to "losses to . . . trust funds" are timely and include claims for failure to collect "amounts *due and owing*" to the Tribe. 364 F.3d at 1350 (emphasis added). It also explained that claims related to asset mismanagement, including failure to maximize the return on the Tribe's mineral leases, were not timely. The latter untimely claims would not be revealed by an accounting but would require resort to other evidence such as historical market prices. *Id.* at 1351.

The distinction that the Court drew can be clarified through considering whether the payments at issue are disputed. If the Tribe is disputing the payment through, for example, asserting that the revenue was not maximized under the terms of the lease or the applicable statutes or regulations, then it is not claiming that there has been a failure to collect amounts due and owing, which amounts would be disclosed by an accounting. Rather, it would be claiming that there was a failure to collect some other amount that would have to be determined through, for example, a

comparison with historical market prices. Since the Osage Tribe's calculation claim is disputing the amounts due and owing and is the equivalent of a failure-to-maximize claim, it falls outside the scope of the Appropriations Acts and are subject to the statute of limitations. For this reason, and those explained in Defendant's opening brief, Plaintiff's tranche one royalty calculation claims should be dismissed as having accrued six years prior to the initiation of this case.

### D. PLAINTIFF HAS STILL FAILED TO ARTICULATE A MONEY-MANDATING DUTY REQUIRING THE PAYMENT OF INTEREST PAST THE DATE OF DISBURSEMENT UNTIL THE MOMENT THAT THE FUNDS COME UNDER PLAINTIFF'S CONTROL

Plaintiff has still failed to identify a duty explicitly set out in Sections 161a or 162a. All that Plaintiff points to thus far is the basic premise that the United States has a duty to invest Indian trust funds under those statutes. However, the mere existence of a statutory regime imposing general fiduciary duties does not necessarily mean that each and every claim asserted by the beneficiary necessarily states a cognizable claim for breach of fiduciary duties. *Brown*, 86 F.3d at 1563; *see also Pawnee,* 830 F.2d at 190 n.5 (existence of a general fiduciary obligation does not necessarily mean "that every Government action disliked by the Indians is automatically a violation of that trust"). The allegations of a breach must be tied to a specific duty grounded in the statutes or the governing regulations. 830 F.2d at 190*; see also Mitchell II,* 463 U.S. at 224 (governing statutes and regulations "establish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities").[11/]

Plaintiff has not tied its allegations of breach to a specific statutory or regulatory duty and must point to more than just a general duty to invest for the very specific claims it asserts. Plaintiff's

---

[11/] As explained in Defendant's opening brief, Plaintiff has also failed to demonstrate that the Government has a duty to maximize returns on investments of Tribal funds held in trust.

claims reach beyond a general duty to invest Osage funds held in trust. What Plaintiff apparently alleges is the breach of a duty to pay interest that continues up to the point when the funds come under the Tribe's control, *i.e.* until the Plaintiff actually presented a check for payment or until the funds were actually deposited in its private account. No such obligation is specified in any statute or regulation that Plaintiff has identified. To the extent that it attempts to rely on a general duty to invest trust funds set out in Sections 161a or 162a, the obligation that it seeks to impose would require an unreasonable interpretation of those statutes that presumes that Congress intended to ignore the fact that all funds transfers require some period of time to occur.[12/] *See generally Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454 (1989) (where the literal reading of a statutory term would "compel an odd result . . . we must search for other evidence of congressional intent to lend the term its proper scope.") (citation omitted); *Emery Worldwide Airlines, Inc. v. United States,* 49 Fed. Cl. 211, 224 (2001) ("A statute is ambiguous when the plain language leads to absurd consequences or to results not in concert with Congress's policy.")

Thus, Plaintiff cannot rely on Sections 161a or 162a as the basis for the interest-paying duty they seek to impose, and having identified no other basis for such a duty, their claim should be dismissed.

**III. CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims.

---

[12/] For wire transfers, this time period may have been quite brief – however long it took to issue and process the instructions; for physical checks, the time period was longer.

Respectfully submitted, on July 25, 2005,

KELLY A. JOHNSON
Acting Assistant Attorney General

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:
Kevin Webb
U.S. Department of Justice

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627

RECEIVED
MAY 26 2000
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

DEPARTMENT OF JUSTICE
GENERAL LITIGATION
SECTION
00 MAY 30 PM 4:37

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA )
)
)
Plaintiff, )
)
v. )
)
THE UNITED STATES OF AMERICA, )
)
Defendant. )
)

No. 99-550 L
No. 00-169 L
Judge John P. Wiese

FILED MAY 26 2000

## DEFENDANT'S MOTION TO RECONSIDER CONSOLIDATION ORDER

Defendant respectfully moves the Court to reconsider its Order, dated May 5, 2000, consolidating the two captioned cases. In support of this motion, defendant states the following:

### STATEMENT OF THE TWO CONSOLIDATED CASES

*Docket No. 99-550 L.*

In Docket No. 99-550 L, filed on August 2, 1999, the Osage Nation ("the Osage" or "the Nation") is seeking money damages related to the collection by the Bureau of Indian Affairs of allegedly undervalued royalties on oil and gas income from plaintiff's mineral properties. The Osage also seek equitable and declaratory relief to challenge the validity and require the amendment of both federal statute and regulation governing defendant's royalty collection for plaintiff, as well as to reform other related administrative practices and procedures, and to mandate that defendant perform an accounting of Osage oil and gas revenues. Complaint, ¶¶ 15, 17, and 27-44. The Nations' complaint and their attorney's explanation at the March 2, 2000, status conference with the Court both emphasize that the central issue is de

90-2-20-09634
RECORD DEPARTMENT OF JUSTICE RECEIVED
MAY 30 2000
(1) ENRD
Gen. Lit. Sec.

failure to collect royalty income based upon the highest possible price. Complaint, ¶¶ 12-14, 18, and 21-23; Transcript of Status Conference, March 2, 2000 ("Tr."), pp. 8-9.

Plaintiff's requested relief in Docket 99-550 L for monetary, declaratory, injunctive and accounting remedies is focused exclusively on *collection of oil and gas royalties*, that is, defendant's asserted *failure to bring into the Nation's trust fund accounts in the first place* the full value for tribal income-generating properties or interests

***Docket No. 00-169 L.***

The Osage Nation in this docket asks first and foremost for an accounting of *all moneys already received into its trust fund accounts*. Filed on March 31, 2000, following the March 2 status conference in Docket No. 99-550 L, this case alleges defendant mismanaged tribal trust funds *after they had been received* into plaintiff's accounts.[1]

**LEGAL STANDARDS REGARDING CONSOLIDATION**

A trial court has broad discretion in ordering consolidation of cases for trial, where there is a common question of law or fact. *Gillette Motor Transport v. Northern Oklahoma Butane Co.*, 179 F.2d 711 (10th Cir. 1950); *Rando v. Luckenbach Steamship Co.*, 155 F.Supp. 220 (E.D.N.Y.1957). Existence of common questions of law and fact, however, is *prerequisite* for any consolidation. *Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 209 U.S.P.Q. 1094 (N.D. Ill. 1980).

The Court of Federal Claims has its own rule respecting related cases for the purpose of

---

[1]To the extent that a limited portion of the Complaint in Docket No. 00-169 L can be read to allege federal failure to collect full value for tribal income-generating properties or interests, *e.g.*, ¶ 21, the charges appear to be duplicative of issues raised in the Nation's Docket No. 99-550 L Complaint.

contemplating the appropriateness of consolidating actions or not in the interests of judicial economy or other factors. RCFC 77(f), as amended in 1994 by General Order 36, deems cases related if they "(A) involve the same parties *and* are based on the same or similar claims; or (B) involve the same contract, property or patent." (Emphasis added.)

Although defendant is mindful that this Court has initially determined, based upon plaintiff's motion to amend or consolidate, to grant that request, the government respectfully suggests that this case does not involve common questions of law or of fact.[2] We further suggest that, while the two consolidated actions involve the same parties, they do not involve the same or even similar claims. Finally, defendant suggests that the two cases do not even ultimately involve the same property of plaintiff, even though both cases involve plaintiff's money. The property in Docket No. 99-550 L is oil and gas royalty income; the property in Docket No. 00-169 L is moneys received not only from oil and gas production but from other sources, as well.

**THE DIFFERENCES BETWEEN THE TWO CONSOLIDATED CASES**

Docket No. 99-550 L, being a royalty-collection case, and docket no. 00-169 L, being a trust fund management action, will necessarily and almost entirely involve different aspects of federal operations, different documents, different potential witnesses and, of special importance,

---

[2] It should be stressed that it was plaintiff's decision to file separately these two distinct actions, involving separate statutory and factual predicates. Defendants's attorney of record in Docket 99-550 L never consented to consolidation, nor does plaintiff's motion reflect that defense counsel agreed that consolidation had merit or that any motion to consolidate would not be opposed. When consulted on whether defendant would agree to an amended Docket 99-550 L Complaint, defendant's counsel indicated his opposition. He informed plaintiff's attorney that amendment would be inappropriate because the actions were separate claims involving separate factual and legal predicates. That is precisely the same basis on which defendant now opposes consolidation.

different statutory and regulatory authority. In essence, except for involving the same plaintiff and the same defendant, the two suits have nothing in common. This essential distinction is specifically acknowledged in plaintiff's own Motion to Amend and Consolidate and Brief in Support, filed herein on or about May 1, 2000, ¶¶ 1 and 2.[3]

***Differences in Controlling Statute and Regulation.***

Taking first the difference deemed the most significant, at least in defendant's view, the Court should consider the two separate statutory-regulatory schemes involved in a royalty-collection suit and in a trust funds management suit.

On their faces, the two Complaints in these cases make clear the two operative sets of laws at issue in each. In the royalty-collection suit, the Osage refer to and focus the issues on the Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396-396g, as well as cite various oil and gas laws (Complaint, ¶¶ 6-7) and to federal oil and gas leasing regulations contained in 25 C.F.R. Part 226 (Complaint ¶¶ 8-9 and 13) and 30 C.F.R. Part 206 (Complaint, ¶ 17) because they are the legal structure governing Indian oil and gas issues generally or Osage oil and gas issues specifically.

In the new trust funds accounting suit, the Osage refer to and focus the issues on the Indian Trust Funds Management Act of 1994, 25 U.S.C. § 4011 and, more generally, 25 U.S.C. § 162a(d) (Complaint, ¶ 8).

---

[3]The points at issue concerning consolidation will, of course, be discussed herein, *infra*. Of immediate and central disagreement, however, are plaintiff's assertion in its Motion that "the two cases are extremely interrelated" (¶ 4) and that "consolidation, in fact, will conserve the judicial resources of Defendant" (¶ 5) and that "Defendant's counsel suggested a Motion to Consolidate would be. . . appropriate" (¶ 7).

The two statutory-regulatory structures deal with different Secretarial responsibilities, obviously quite distinct from one another. So distinct in fact that by Congressional decision, the responsibilities are carried out by two separate offices of the Department of the Interior – the Superintendent, Osage Agency, Bureau of Indian Affairs, for minerals and minerals royalty matters (25 C.F.R. Part 226) and the Office of Trust Funds Management, Office of the Special Trustee for American Indians ("OST/OTFM") for handling moneys already received into tribal accounts (U.S. Department of the Interior Manual,110 DM 28 (copy attached hereto is located at http://elips.doi.gov/ELIPS/toc/ACT_MAN.htm); *see also, e.g.*, 25 C.F.R. Part 1200).

***Differences in Management of the Presently Consolidated Cases.***

For purposes of this litigation, these two sets of separate federal responsibilities translate directly into two distinct case management tasks for both parties and for the Court itself. Arising under two different structures, the royalty-accounting case and the trust funds management case will quickly and permanently involve two different sets of documents and exhibits. Those papers produced by the Superintendent, Osage Agency, will not relate at all to the papers produced by the OST/OTFM. Thus, whatever discovery takes place and whatever exhibits are prepared will proceed as they would with two different cases. For the same reasons, the personnel knowledgeable in the two areas will be entirely different groups of people. Thus, the witnesses that may be deposed or eventually called will not be the same people in each case.

Given this condition, there is no reason to think that the cases will necessarily proceed on the same schedule, unless the progress on one is artificially halted awaiting completion of the other. Defendant submits that consolidation is wholly adverse to the general interests of judicial economy and may be prejudicial to the efficient resolution of the separate actions that have

separate attorneys of record for the defendant. Docket No. 99-550 L is already in the discovery stage, while the defendant has yet to receive a litigation report, yet alone file an answer in Docket No. 00-169 L. Indeed, defendant foresees on the not-too-distant horizon the further complicating specter of plaintiff moving to amend the two complaints in an attempt to fuse together distinct claims that the Osage initially chose to keep separate. Even if such an effort does not materialize, the consolidation itself forces into one proceeding two stand-alone actions that were not pled together originally and that involve varying jurisdictional issues, such as different statute of limitations periods.

Defendant reminds the Court that during the May 9, 2000, telephone status conference among the parties to both cases and the Court, plaintiff's counsel stated that when he filed Docket No. 99-550 L, he had not then been authorized by the Osage Nation to file the claims now present in Docket No. 00-169 L. Clearly, plaintiff itself viewed the cases as entirely different ones to such a degree that it first withheld approval of proceeding on the more recent filing.

Finally, and of great significance, given the two different areas of trust responsibility law in play here and the two different factual situations that certainly exist between royalty supervision by BIA over third-party oil and gas companies, on the one hand, and OST/OTFM management of funds directly and solely within that agency's own responsibility, it is almost impossible to conceive that the Court would be making findings of fact or rulings of law that would overlap. Therefore, the chance of two different judges reaching conflicting findings or rulings is virtually non-existent.

## CONCLUSION

For the foregoing reasons, the Court should vacate its Order of March 5, 2000, and separate Docket Nos. 99-550 L and 00-169 L into two individual cases.

Dated this 26th day of May, 2000.

Respectfully submitted,

EDWARD J. PASSARELLI
Attorney of Record for Defendant in Docket No. 99-550 L
Telephone: (202) 305-0468

R. ANTHONY ROGERS
Attorney of Record for Defendant in Docket No. 00-169 L
RENITA Y. FORD

General Litigation Section
Environment and Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D. C. 20044-0663
Telephone: (202) 305-0483
Fax: (202) 305-8273/0506

Of Counsel:

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2000, I caused the foregoing **Defendant's Motion to Reconsider Consolidation Order** to be served upon the attorney of record for the plaintiff by placing a copy in the United States Mail, first-class postage prepaid, addressed to:

Bradley D. Brickell, Esquire
Richard J. Gore, Esquire
Mahaffey & Gore
Two Leadership Square, Suite 1100
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 236-0478
Fax: (405) 236-1520

R. Anthony Rogers

R. ANTHONY ROGERS