**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: August 22, 2005 |
| v. | ) | No. 169-00L |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER AGAINST PLAINTIFF'S RULE 30(b)(6) NOTICES OF DEPOSITION AND SUBPOENAS**

As set out below, the deposition topic that requires Defendant to designate a person or persons to testify concerning the trust duties, responsibilities, and obligations of Defendant under the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") ("Legal Trust Duties Topic") is not appropriate for an RCFC 30(b)(6) deposition because it concerns complex legal issues that are currently pending before the Court and the Court will eventually decide the extent of Defendant's duties under the 1906 Act and other statutes and regulations. The parties have already filed extensive briefs on the Legal Trust Duties Topic and the Court has scheduled oral argument for September 13, 2005. Further, due to the complicated nature of the legal issues and the request for legal conclusions involved in this topic, Defendant would likely have to designate a Government attorney (or attorneys) closely involved with this litigation as a 30(b)(6) witness, a practice heavily disfavored by federal courts.

## I. INTRODUCTION

On May 4, 2005, pursuant to RCFC 30(b)(6), Plaintiff served Deposition Subpoenas ("Subpoenas") and Notices of Deposition ("Deposition Notices") on the Department of the Interior ("Interior") and the Department of the Treasury ("Treasury"). *See* Interior Deposition Notice (attached as Exhibit 1) and Treasury Deposition Notice (attached as Exhibit 2) (May 4, 2005). The Deposition Notices requested that Interior and Treasury identify an individual to testify regarding:

> The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

Interior Deposition Notice (Exhibit 1) at 11, ¶ 17; Treasury Deposition Notice (Exhibit 2) at 8, ¶ 6. Defendant's contentions related to the 1906 Act involve legal issues which likely could not be addressed by anyone other than an attorney.

On May 13, 2005, per the Court's April 15, 2005, Order, Plaintiff provided further explanation of its claims, asserting that the 1906 Act and its implementing regulations, as well as lease terms, establish in Interior specific fiduciary duties to calculate and collect royalties on oil and gas leases ("Royalty Claims"). *See* The Osage Nation's Statement of Trust Fund Mismanagement Claims for Tranche One at 1-5. Additionally, Plaintiff contends that 25 U.S.C. §§ 155, 161a, 161b, and 162a establish specific fiduciary duties to deposit the collected royalties in a trust fund and to invest those funds according to law.

In response to Plaintiff's assertions, on June 14, 2005, the United States filed Defendant's Motion to Dismiss, In Part, Plaintiff's Tranche One Claims, asserting, inter alia, that the Court

lacked jurisdiction over Plaintiff's Royalty Claims. *See* Defendant's Motion to Dismiss, In Part, Plaintiff's Tranche One Claims (June 14, 2005) (hereinafter "Def.'s Mot. to Dismiss"). More than twenty-pages of Defendant's fifty-page brief were devoted to this complicated, threshold legal issue. *See id*. at 8.-30.

Essentially, Defendant disputes Plaintiff's contentions that the 1906 Act, its implementing regulations, or the Tranche One leases, impose money-mandating duties on Interior. Rather, Defendant contends that nothing in the 1906 Act, its implementing regulations, or leases imposes any specific duties on the Secretary of the Interior with respect to calculating royalties, collecting royalties, or imposing or collecting late fees because the 1906 Act is silent as to the calculation of royalties, their collection, and imposition and collection of late fees. The regulations implementing the 1906 Act, and the lease terms that mirror and incorporate the regulations, require the lessees, not Interior, to calculate and pay royalties by dates certain. The Defendant contends that these sources of law do not, when considered together, give the Defendant full management responsibility or plenary or pervasive control of the royalty calculation or collection process. Consequently, absent a money-mandating duty, Defendant has asserted that Plaintiff's Royalty Claims should be dismissed.

In response, Plaintiff's filed an opposition brief on July 11, 2005, asserting that Defendant has a duty to calculate and collect oil and gas royalties based on: the 1906 Act and its implementing regulations, which, Plaintiff asserts, give Defendant pervasive authority over oil and gas resources; Defendant's exercise, in fact, of control over the oil and gas resources; and in light of the terms of the trust and the common law obligations of a trustee. Defendant's filed a

reply brief on July 25, 2005, and the Court has scheduled oral argument on Def.'s Mot. to Dismiss, and the responsive briefing, for September 13, 2005.

Prior to the filing of this Motion, Defendant recently contacted Plaintiff's counsel via telephonic conference and electronic mail in an attempt to resolve their disagreement as to the scope of the depositions. Further, Defendant previously memorialized its objection to the Deposition Notices and Subpoenas in a letter to the Plaintiff and provided its written objections to Plaintiff in an attachment. *See* Defendant's Objections and Responses to Subpoenas Issued by Plaintiff's Counsel on May 4, 2005 (May 23, 2005) (attached as Exhibit 3). Unfortunately, Plaintiff and Defendant were unable to reach a resolution on the Legal Trust Duties Topic, and therefore, Defendant is requesting the Court to issue a protective order limiting the scope of Plaintiff's Deposition Notice. Specifically, Defendant requests that the Court order Plaintiff to restate its Deposition Notices and strike the Legal Trust Duties Topic.

## II. ARGUMENT

### A. PLAINTIFF'S LEGAL TRUST DUTIES TOPIC IS NOT APPROPRIATE FOR AN RCFC 30(B)(6) DEPOSITION AND THE DEPOSITION NOTICES SHOULD BE RESTATED TO STRIKE THIS TOPIC

By its Legal Trust Duties Topic, Plaintiff seeks to depose representatives from Treasury and Interior about complicated legal issues. Plaintiff's request that both Interior and Treasury designate an individual to testify about the Legal Trust Duties Topic is inappropriate for an RCFC 30(b)(6) deposition because Plaintiff seeks deposition testimony about Defendant's legal theories related to this topic. Indeed, as set out above, the Legal Trust Duties Topic concerns threshold legal issues that are currently being reviewed by this Court in response to the Def.'s Mot. to Dismiss and responsive briefing thereto. Furthermore, the legal issues associated with

this topic are exceedingly complex, as demonstrated by the lengthy briefs[1] in this case. To address this complex legal topic, Defendant would likely have to designate a Government attorney (or attorneys)[2] closely associated with this litigation as a 30(b)(6) witness, a practice heavily disfavored by federal courts. Accordingly, the Court should issue a protective order precluding Plaintiff from deposing Defendant with respect to the Trust Duties Topic.

The frequency or extent of the use of discovery methods may be limited if

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery...to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive."

RCFC 26(b)(2); *see also Capital Props. v. United States*, 49 Fed. Cl. 607, 611 (Cl. Ct. 2001) (citing *Hickman v. Taylor*, 329 U.S. 495, 507-8 (1947)). Such limits may be imposed by a protective order, issued pursuant to RCFC 26(c), which provides that the Court may, for good cause, "make any order which justice requires to protect a party or persons from annoyance, embarrassment, oppression, undue burden or expense, including . . . that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery." RCFC 26(c)(3). Good cause exists if a party can demonstrate that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden. *Capital Props.*, 49 Fed. Cl. at 611; *St. Matthew Publishing, Inc. v. United States*, 41 Fed. Cl. 142, 147 (Cl. Ct. 1998).

A motion for protective order is directed to the broad discretion of the Court and decided upon the facts of each case. *St. Matthew*, 41 Fed. Cl. at 145 (citing *Heat & Control, Inc. v.*

---

[1] Def.'s Mot. to Dismiss is 50 pages; Pl. Osage Nation's Opp. To Def.'s Mot. to Dismiss is 40 pages; and Def.'s Reply in Supp. Of Mot. to Dismiss, is 23 pages.

[2] The "legal work of [Interior] [is] performed under the supervision and direction of the Solicitor of [Interior}…." 43 U.S.C. § 1455.

*Hester Indus., Inc.*, 785 F.2d 1017, 1023 (Fed. Cir. 1986)); *Exxon Research*, 44 Fed. Cl. at 601.[3] In determining whether to grant a motion for protective order, the Court must balance and accommodate the conflicting discovery needs of the parties. *Id.*; *see also Exxon Research and Eng'g. Co. v. United States*, 44 Fed. Cl. 597, 601 (Fed. Cl. 1999) (articulating three reasons for its conclusion that depositions were not the appropriate form of discovery for claims construction).

Generally, an RCFC 30(b)(6) deposition that seeks the disclosure of a complex legal issue or topic is not appropriate for a deposition. *See e.g., id.* at 601-602*; McCormick-Morgan,* 134 F.R.D. at 287*; Taylor v. United States,* 166 F.R.D. 356, 362 n. 7 (M.D. N.C. 1996). Because the complexity of an issue depends, at least in part, upon the experience an individual has with a particular topic, invariably, it would be difficult for a non-attorney to provide a competent response to questions about legal issues and conclusions of law. *Exxon Research,* 44 Fed. Cl. at 602. Moreover, it would be highly inefficient and burdensome to prepare a non-attorney to testify on such topics, which may implicate privileged information. *In re Independent Serv. Organ. Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996) (citing *United States v. District Council of New York City*, No. 90 CIV 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992) (aside from the issues of privilege, it would be highly inefficient and burdensome to marshal facts and prep a witness to testify on a legal issue. Therefore, RCFC 30(b)(6) depositions are not designed to discover contentions or legal theories. *See, e.g., St. Matthew*, 41 Fed. Cl. at 147 (requiring Plaintiff to restate its deposition notice to exclude requests for legal

[3] The Court may consider a variety of factors in determining whether good cause exists, including: (1) whether a less expensive and less invasive method of discovery would provide the necessary information; and (2) whether it would be difficult for one deponent to testify about the issue; and (3) whether disclosure will violate any privacy interests;. *See, e.g., id.* at 601-602; *see also Forest Prod. Northwest, Inc. v. United States*, 62 Fed. Cl. 109, 114 n. 9 (Fed. Cl. 2004) (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

opinions and conclusions of law); *see also JPMorgan Chase Bank v. Liberty Mutual Insur. Co*., 209 F.R.D. 361, 362 (S.D.N.Y. 2002); *In re Independent*, 168 F.R.D. at 654.

And whereas attorneys may be capable of responding to questions about complex legal issues, the Court should hesitate to order the deposition of an attorney. *Exxon Research*, 44 Fed. Cl. at 602. In fact, the deposition of an attorney should be avoided until all other possible discovery methods have proven unsuccessful. *Id.* at 601; *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 566 (Fed. Cl. 1999) (when a party seeks to depose a witness, such party must, at least, make a "modest showing that the deposition is of significant utility or practical necessity"); *see also Securities Exchange Commission v. Buntrock,* No. 02 C 2180, 2004 WL 1470278, *5-6 (June 29, 2004 N.D. Ill.) (noting that certain courts are critical of deposition notices that seek, if not the deposition opposing counsel, then the practical equivalent thereof).

In sum, topics involving legal opinions or conclusions of law should not be addressed in depositions, as it would be highly inefficient and burdensome to prepare a witness to testify on such topics and a deposition of attorneys should be avoided until all other methods for discovery have been attempted*.* *See, e.g., Exxon Research*, 44 Fed. Cl. at 601 (hesitating to order the deposition of one of Exxon's attorneys); *see also In re Independent*, 168 F.R.D. at 654; *Lance, Inc. v. Ginsburg,* 32 F.R.D. 51 (E.D. Pa. 1962); *Arkwright Mutual Insur. Co. v. National Union Fire Insur. Co*., No. 90 Civ. 7811 (KC), 1993 U.S. Dist. LEXIS 1163, *7-8 (S.D. N.Y. Feb. 4, 1993).

In this case, the Legal Trust Duties Topic seeks deposition testimony about Defendant's legal theories and conclusions of law related to the Plaintiff's Royalty Claims. Specifically, the information Plaintiff is seeking relates to threshold issues regarding this Court's jurisdiction over

Plaintiff's Royalty Claims. *See, e.g.,* Def's Mot. to Dismiss (asserting that that Plaintiff has failed to demonstrate that the Court has jurisdiction over Plaintiff's Royalty Claims under the 1906 Act, its implementing regulations, or the leases ). The legal theories and contentions related to this issue are currently pending before this Court and are complex, as evidenced by the parties' lengthy briefs, which total in excess of 100 pages. It would be highly inefficient, duplicative, and burdensome to prepare a witness to testify on the Trust Duties Topic because, in order to respond to Plaintiff's questions, Defendant would have to articulate its interpretation of the terms of the 1906 Act and its implementing regulations.

Defendant also contends that due to the complexity of the legal issues involved, only a Government attorney closely associated with the litigation and briefing in this case would have the appropriate experience to respond to questions about the Legal Trust Duties Topic. Yet, as this Court has acknowledged, the deposition of attorneys should be avoided.[4] Thus, Plaintiff should not be permitted to depose Defendant regarding the Legal Trust Duties Topic. The reasoning is obvious - whereas Defendant would be heavily burdened, and possibly prejudiced if Plaintiff were permitted to depose a Government attorney closely associated with this litigation, Plaintiff has essentially already received the information it seeks in Def.'s Mot. to Dismiss and Def.'s Reply.

In light of the foregoing, Defendant requests that this Court order Plaintiff to restate its Deposition Notice, striking the Legal Trust Duties Topic.

[4] Although Defendant believes that the briefing referenced above sufficiently articulates Defendant's contentions regarding Defendant's trust duties under the 1906 Act and its implementing regulations, it would have been more appropriate for Plaintiff to have served Defendant with contention interrogatories requesting the factual basis for Plaintiff's contentions regarding its trust duties under the 1906 Act.

## III. CONCLUSION

For the aforementioned reasons, the Court should require Plaintiff to restate its Deposition Notices, striking the Legal Trust Duties Topic.

Respectfully submitted, on August 22, 2005

KELLY A. JOHNSON
Acting Assistant Attorney General

By:

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

Martin J. LaLonde
Kevin Webb
Jennifer Allaire
John H. Martin

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |

**NOTICE OF DEPOSITION**

Pursuant to Rules 26, 28, and 30 of the Rules of the United States Court of Federal Claims ("RCFC"), the Osage Nation, by its undersigned counsel, intends to take the oral deposition of the United States Department of Treasury on Wednesday, May 18, 2005, or on such date as the parties may agree. The deposition shall commence at 9:00 a.m. at the Osage Agency Office in Pawhuska, Oklahoma, or at other such time and place as the parties may agree. The deposition will be recorded by stenographic means and will be taken before an officer authorized to administer oaths by the laws of the United States. Pursuant to RCFC 30(b)(6), the United States Department of Treasury shall designate the person or persons most knowledgeable to testify on its behalf concerning the subjects set forth on Exhibit A, and if more than one person is so named, designate for each person the subject or subjects on which that person will testify.

The oral examination will continue from day to day until completed. This deposition is being taken for the purpose of discovery, for use at trial, and all other purposes permitted under the rules of this Court and all applicable statutes and laws.

Dated this 4th day of May, 2005

Respectfully submitted,

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

**EXHIBIT A**

**DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the United States Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee

meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication,

and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

**TOPICS TO BE COVERED**

The following are topics to be covered by deponent(s) designated by the United States Department of Treasury pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD, all of the following:

a. The receipt, collection, handling, deposit, investment, distribution, and accounting of all payments owed to the Osage Nation and made and/or received by the

United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. The identity of any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited.

c. The identity of any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted.

d. The rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for any and all royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. The names and positions of all persons involved in or responsible for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to

the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made and/or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

5. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to, made, or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

6. The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by hand delivery, this 4th day of May, 2005 on:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Wilson K. Pipestem

FORM 6

**SUBPOENA**

# United States Court of Federal Claims

THE OSAGE NATION AND/OR
TRIBE OF INDIANS
OF OKLAHOMA

*vs.*

No. 00-169L

*THE UNITED STATES*

**SUBPOENA**

To: Person(s) designated by the United States Department of Treasury as being the most knowledgeable about the topics identified in Exhibit A.

1. **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify in the above case.
   *Place of Testimony:* __________
   *Date and Time:* __________
2. **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.
   *Place of Deposition:* Osage Agency Office, Pawhuska, Oklahoma
   *Date and Time:* Wednesday, May 18, 2005 at 9:00 a.m.
3. **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit B.
   *Place:* Osage Agency Office, Pawhuska, Oklahoma
   *Date and Time:* Wednesday, May 18, 2005 at 9:00 a.m.
4. **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.
   *Premises:* __________
   *Date and Time:* __________

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] Attorney for Plaintiff — 5/4/05

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

Wilson K. Pipestem 202 419 3526

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Pipestem Law Firm, P.C.
1333 New Hampshire Ave, NW
Washington, DC 20036



8/01/04

**NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance, notwithstanding the distance of travel.** In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

DATE PLACE

SERVED

SERVED ON (PRINT NAME) MANNER OF SERVICE

☐ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

RCFC 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible

**EXHIBIT A**

**DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the United States Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-

roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above

information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication, and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

## TOPICS TO BE COVERED

The following are topics to be covered by deponent(s) designated by the United States Department of Treasury pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD, all of the following:

a. The receipt, collection, handling, deposit, investment, distribution, and accounting of all payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. The identity of any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited.

c. The identity of any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted.

d. The rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for any and all royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. The names and positions of all persons involved in or responsible for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and

natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made and/or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

5. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to, made, or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

6. The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

**EXHIBIT B**

**DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-

roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above

information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication, and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

**RECORDS TO BE MADE AVAILABLE**

The following documents or objects are to be made available at the place, date, and time specified on the attached Subpoena:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and records relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. Any and all records relating to any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including but not limited to account statements and transaction records for each such transaction.

c. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

d. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

5. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by hand delivery, this 4th day of May, 2005 on:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Wilson K. Pipestem

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**NOTICE OF DEPOSITION**

Pursuant to Rules 26, 28, and 30 of the Rules of the United States Court of Federal Claims ("RCFC"), the Osage Nation, by its undersigned counsel, intends to take the oral deposition of the United States Department of Treasury on Wednesday, May 18, 2005, or on such date as the parties may agree. The deposition shall commence at 9:00 a.m. at the Osage Agency Office in Pawhuska, Oklahoma, or at other such time and place as the parties may agree. The deposition will be recorded by stenographic means and will be taken before an officer authorized to administer oaths by the laws of the United States. Pursuant to RCFC 30(b)(6), the United States Department of Treasury shall designate the person or persons most knowledgeable to testify on its behalf concerning the subjects set forth on Exhibit A, and if more than one person is so named, designate for each person the subject or subjects on which that person will testify.

The oral examination will continue from day to day until completed. This deposition is being taken for the purpose of discovery, for use at trial, and all other purposes permitted under the rules of this Court and all applicable statutes and laws.

Dated this 4th day of May, 2005

Respectfully submitted,

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

**EXHIBIT A**

**DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the United States Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee

meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication,

and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

**TOPICS TO BE COVERED**

The following are topics to be covered by deponent(s) designated by the United States Department of Treasury pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD, all of the following:

a. The receipt, collection, handling, deposit, investment, distribution, and accounting of all payments owed to the Osage Nation and made and/or received by the

United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. The identity of any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited.

c. The identity of any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted.

d. The rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for any and all royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. The names and positions of all persons involved in or responsible for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to

the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made and/or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

5. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to, made, or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

6. The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by hand delivery, this 4th day of May, 2005 on:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Wilson K. Pipestem

FORM 6

SUBPOENA

# United States Court of Federal Claims

THE OSAGE NATION AND/OR
TRIBE OF INDIANS
OF OKLAHOMA

vs.

No. 00-169L

THE UNITED STATES

SUBPOENA

To: Person(s) designated by the United States Department of Treasury as being the most knowledgeable about the topics identified in Exhibit A.

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.
   *Place of Testimony:*
   *Date and Time:*
2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.
   *Place of Deposition:* Osage Agency Office, Pawhuska, Oklahoma
   *Date and Time:* Wednesday, May 18, 2005 at 9:00 a.m.
3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit B.
   *Place:* Osage Agency Office, Pawhuska, Oklahoma
   *Date and Time:* Wednesday, May 18, 2005 at 9:00 a.m.
4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
   *Premises:*
   *Date and Time:*

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] Attorney for Plaintiff

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE 5/4/05

Wilson K. Pipestem 202 419 3526

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Pipestem Law Firm, P.C.
1333 New Hampshire Ave, NW
Washington, DC 20036

**NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance, notwithstanding the distance of travel.** In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| DATE | PLACE |
|---|---|

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

□ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

RCFC 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible

## EXHIBIT A

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the United States Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-

roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above

information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication, and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

## TOPICS TO BE COVERED

The following are topics to be covered by deponent(s) designated by the United States Department of Treasury pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD, all of the following:

a. The receipt, collection, handling, deposit, investment, distribution, and accounting of all payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. The identity of any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited.

c. The identity of any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted.

d. The rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for any and all royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. The names and positions of all persons involved in or responsible for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and

natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made and/or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

5. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to, made, or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

6. The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

# EXHIBIT B

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-

roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above

information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication, and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

**RECORDS TO BE MADE AVAILABLE**

The following documents or objects are to be made available at the place, date, and time specified on the attached Subpoena:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and records relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. Any and all records relating to any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including but not limited to account statements and transaction records for each such transaction.

c. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

d. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

5. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by hand delivery, this 4th day of May, 2005 on:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Wilson K. Pipestem

**U.S. Department of Justice**

Environment and Natural Resources Division

90-2-20-09922

*General Litigation Section*
*P.O. Box 663*
*Ben Franklin Station*
*Washington, DC 20044-0663*

*Telephone (202) 305-0212*
*Facsimile (202) 353-2021*

May 23, 2005

**VIA HAND DELIVERY:**

Wilson K. Pipestem, Esquire
Jerry Rothrock, Esquire
Pipestem Law Firm, PC
1333 New Hampshire Ave., NW
Washington, DC 20036

**Re: Osage Nation v. U.S. (CFC Case No. 00-169L)**
**30(b)(6) Subpoenas, Notices, and Written Objections**

Mr. Pipestem and Mr. Rothrock:

The purpose of this letter is to memorialize our conversation on May 17, 2005, and to set out the Government's initial concerns with the Tribe's 30(b)(6) deposition notices and subpoenas, issued by the Tribe's counsel on May 4, 2005. Pursuant to RCFC 45(c)(2)(B), I have also attached the Government's written objections to the subpoenas, which request that designated documents be produced at the taking of the 30(b)(6) depositions.[1] Based on our past and on-going conversations, the Government is optimistic that the parties will be able to resolve potential issues regarding these 30(b)(6) depositions informally. However, in order to protect the Government's rights in the event the parties cannot resolve particular issues, and to prevent any potential misunderstandings, the Government serves the Tribe with this letter and the attached written objections.

During our conversation on May 17, 2005, I raised some of the following initial concerns with the Tribe's 30(b)(6) Deposition Notice for the Department of the Interior ("Interior") and corresponding subpoena. First, it is possible that few, if any, current Interior employees will have personal knowledge of the topics listed in the subpoena and the notice for the five leases during the relevant time period - 1976 to 1990.[2] Second, although Interior may designate an individual as a 30(b)(6) witness who does not have personal knowledge of the topics listed in the subpoena, this individual need only "testify to matters known or reasonably available to the organization." RCFC 30(b)(6). As you are aware, many, if not all, of the "matters" or documents pertinent to the 1976 to 1990 time period are no longer stored at Interior Offices, such as the Osage Agency, but rather they are primarily stored at Federal Records Centers, such as the American Indian Records Repository ("AIRR"), in Lenexa, Kansas. As set out in the attached

[1] Tribe's counsel consented to an extension until May 23, 2005, for service of these objections.

[2] According to the notice and subpoena, "relevant months" consist of January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

objections, literal compliance with the Interior deposition notice and subpoena would require the Government to inspect thousands of boxes, previously made available for Plaintiff's inspection, for documents that relate to particular topics, five leases, and the time period 1976 to 1990. To the extent the Government has not obtained copies of these documents due to Plaintiff's inspection, they are not "reasonably available" to the Government. Third, the 30(b)(6) Deposition Notice and subpoena set out overly broad topics, such as audits that do not appear to be relevant to tranche one; manuals and audits related to non-Osage Indian and federally-owned oil and gas leases; manuals related to the collection and management of payments owed to non-Osage Indian Tribes or the United States (produced under federally-owned leases) for royalties; and the Arthur Andersen Reconciliation Report.

In response to the Government's concerns about the scope of the 30(b)(6) notice and subpoena, Tribe's counsel indicated, on a preliminary basis, that he realizes it is not possible for a 30(b)(6) witness to get completely up to speed on all prior procedures by June 1 to June 10, 2005. In issuing their 30(b)(6) notice and subpoena, Tribe's counsel has stated that they seek to depose individuals who have personal knowledge as to how royalty was computed or valued for the five leases for oil produced during the relevant months or, in the event there are no individuals with personal knowledge, they seek to depose a witness designated by Interior who, to the best of his or her ability, can discuss the same issues. The types of information that Tribe's counsel seeks during the deposition include: the amount of royalties received by the Government for the five leases for oil produced during the relevant months; the post-collection management of royalties; the identify of individuals who have actual knowledge of the five leases during the relevant months (or other periods); the location of documents associated with those leases; and the most efficient way to locate such documents, such as lessee reports, associated with the five leases for a relevant production month. On this last item, Tribe's counsel indicated that it would be most efficient for both parties to jointly look for documents associated with the five leases and the relevant production months. Government counsel stated that many of these documents may have already been imaged and provided to the Tribe.

The parties ultimately agreed on the following procedure for Interior deponents in an attempt to narrow the scope of the Tribe's 30(b)(6) deposition notices and document requests and to resolve any potential issues informally. From June 1 to June 10, 2005, the Tribe will depose the fact witnesses noticed in several previous Notices of Deposition.[3] Based on information provided by the Government, the Tribe will initially depose those employees that likely have the most relevant information for tranche one. Theses depositions should assist the Tribe in narrowing its 30(b)(6) deposition topics and document requests regarding Interior witnesses. The parties will subsequently schedule Interior 30(b)(6) depositions, perhaps during the week of June 20, 2005.

The parties will continue to discuss the Government's objections to the 30(b)(6)

---

[3] The noticed deponents include: Charles Hurlbert, Carma Jensen, Richard Winlock, Angela Toineeta, Lorraine Wilcox, Melissa Currey, Carol Revard, Joy Oakes, Heather Little, Jeanette Hanna, Newell Barker, and Judy Hill. We understand that the Tribe may be able to eliminate some of the requested deponents after it receives basic job description information from the Government.

deposition notice and subpoena concerning Treasury and will work together to arrive at a mutually agreeable scope, time and place in Washington, DC, for the deposition of a Treasury witness or witnesses. As set out in the attached written objections, since the 1973 consolidation of individual tribal fund accounts, Treasury has not maintained any individual accounts for the Osage Nation (or other federally-recognized tribes). Since that time, as a general rule, Treasury records do not contain information that would link Interior deposits, investments, and payment transactions to oil and gas royalty revenue to the Osage Nation or other tribes. Moreover, after 1973, there would be no individual Osage accounts which track receipts and disbursements of Osage royalty income. Additionally, as a general rule, there are no Osage or tribe-specific Treasury manuals, guidelines, or instructions relating to the collection, depositing, disbursing, investing, or accounting of payments owed to the Osage Nation or non-Osage Tribes and received by the United States as royalty payments on crude oil and natural gas leasing. Treasury would have knowledge of any procedural sources, including guidelines and instructions, governing the depositing , disbursement, and investment as a general matter during the relevant time periods. Under the foregoing circumstances, any specific testimony by a Treasury 30 (b)(6) witness regarding Osage royalty payments, disbursements, and investments would require, at a minimum and as a prerequisite, individual transaction identification.

The Government intends to continue to make good-faith efforts to resolve any potential issues informally with the Tribe. Please contact me at (202) 305-0212 if you have any questions or concerns or if this is not your understanding of our conversation or agreement.

Sincerely,

Brett D. Burton
Attorney

Enclosure

cc (w/encl.): Stephen Simpson, Attorney, Office of the Solicitor
Alan Woodcock, Field Solicitor
Teresa E. Dawson

cc (w/o encl.): Tony Hoang
Martin LaLonde
John Martin

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 L |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO SUBPOENAS ISSUED BY PLAINTIFF'S COUNSEL ON MAY 4, 2005**

Pursuant to RCFC 26 and 45, Defendant provides these objections and responses to the subpoenas issued by Plaintiff's counsel on May 4, 2005, for persons designated by the Department of the Interior ("Interior") and the Department of the Treasury ("Treasury") pursuant to RCFC 30(b)(6). The objections and responses herein are based upon the information known as of the date of this response and are subject to correction, modification and supplementation when and if additional relevant information becomes known to the United States.

The subpoena for Interior, dated May 4, 2005, ("Interior subpoena"), includes 16 document requests, with sub-categories, while the subpoena for the Department of the Treasury, dated May 4, 2005 ("Treasury subpoena"), includes 5 document requests, with subcategories.

These general objections are objections that apply to every request and are to be read as forming a part of the response to each of the individual requests.

**STATEMENT OF NON-WAIVER**

This response and any subsequent productions or inspections of documents are made expressly subject to, without waiver of and while fully preserving (1) all questions regarding authenticity, genuineness, competence, relevance, materiality, privilege, and admissibility of any produced document as evidence for any purpose in any proceeding in this action, including trial, and in any other action; (2) the right to object to the use of any response or produced document, or the subject matter thereof, on any ground and in any proceeding in this action, including trial, and in any other action; and (3) the right at any time to revise, modify, correct, add to, supplement or clarify any response or production. In no case shall the inadvertent production of any information protected by one or more privileges, doctrines, or rights be deemed a waiver of the protections of the corresponding privileges, doctrines, or rights involved, and Defendant reserves the right to demand the return and confidentiality of any such inadvertently produced document.

**GENERAL OBJECTIONS**

1. Defendant objects to the Interior and Treasury subpoenas in their entirety because the subpoenas seek the production of documents from a party as opposed to a nonparty. In order to obtain documents from a party at the taking of a deposition, the notice to a party may be "accompanied by a request made in compliance with RCFC 34 for the production of documents and tangible things at the taking of the deposition. The procedure of RCFC 34 shall apply to this request." RCFC 30(b)(5). Consequently, Plaintiff should have served a request pursuant to RCFC 34 with the notice of deposition as opposed to a subpoena. Subject to and without

waiving this objection, Defendant will treat this subpoena as if it were a request for production of documents pursuant to RCFC 34.

2. Defendant objects to the requests as unreasonably cumulative and duplicative to the extent they request the production of documents previously produced to Plaintiff, previously made available for Plaintiff's inspection, or in Plaintiff's possession, custody, control, or possession. As Plaintiff is aware, Defendant has arranged and permitted Plaintiff to inspect thousands of boxes and documents on numerous occasions at the American Indian Records Repository ("AIRR"), in Lenexa, Kansas, and at the Office of Trust Records ("OTR"), in Albuquerque, New Mexico. These inspections are still on-going and the parties pre-2005 efforts are detailed in the *Joint Status Report Pursuant to the Court's of the Court's Order of October 22, 2004.*[1] Defendant has also permitted and arranged for Plaintiff to inspect documents at the Osage Agency in Pawhuska, Oklahoma, on several occasions from February to April 2005. Subject to and without waiving the foregoing objections, Defendant will make available for inspection at the taking of the depositions potentially responsive documents not previously provided to Plaintiff or made available for Plaintiff's inspection, known or reasonably available to the Department of the Interior.

3. Defendant objects to the requests as unduly burdensome because they do not allow reasonable time for compliance and they request documents in addition to the procedure set out in the Court's March 25, 2005, and April 15, 2005, Orders. In these Orders, the Court set

---

[1]Defendant has also allowed Plaintiff to use the Box Index Search System ("BISS") at the AIRR and OTR in order to locate boxes that contain potentially relevant documents.

out a process for tranche one document discovery, which includes interim deadlines for Plaintiff to designate boxes and documents for expedited imaging and production and for Defendant to produce the documents designated by Plaintiff from boxes prioritized by Plaintiff for tranche one. Since April 2005, Defendant has produced 213,683 document images to Plaintiff under this expedited process and Defendant will produce the additional documents designated by Plaintiff on May 13, 2005, on or before June 17, 2005, in accordance with the April 15, 2005, Order. Plaintiff has had ample opportunity under these expedited procedures, and previous discovery efforts referenced above, to obtain any documents pertinent to tranche one. Subject to and without waiving the foregoing objections, Defendant will make available for inspection at the taking of the deposition potentially responsive documents not previously provided to Plaintiff or made available for Plaintiff's inspection, known or reasonably available to the Department of the Interior.

4. Defendant objects to the requests to the extent they seek to impose obligations upon Defendant beyond those permitted or required under the Rules of the Court of Federal Claims.

5. Defendant objects to the requests to the extent they seek information that is beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to the requests to the extent they seek, or could be construed as seeking, information or documents protected by the attorney-client privilege, work product privilege, deliberative process privilege, or any other applicable privilege, doctrine or right that

would make the information or documents immune from discovery. Any inadvertent production of information protected by any of these privileges, doctrines, or rights shall not be deemed a waiver of the protections that those privileges, doctrines, or rights afford.

7. Defendant objects to the requests as unduly burdensome and oppressive to the extent they seek to require Defendant to search for or produce documents, particularly documents located at the AIRR or OTR, according to criteria the Defendant and its component Departments do not use in maintaining or organizing their files or records for storage and retrieval.

8. Defendant objects to requests that seek production of "all" records or "all" records "relating to" a particular topic or type of document on the grounds that such requests are over broad, vague, ambiguous and impose an undue burden and expense. Defendant does not organize its records or files according to such categorization and it poses an undue burden and expense to conduct a search for responsive records. Such a request would essentially require Defendant to inspect thousands boxes, previously made available for Plaintiff's inspection, for documents that relate to particular topics, leases, or a very limited time frame.

9. Defendant objects to the request as oppressive and unduly burdensome to the extent that it seeks to require Defendants to compile, summarize, index, research or otherwise analyze voluminous historical information.

10. Defendant objects to the request to the extent they demand production of a document in a form or at a location different from that in which the document currently exists or can readily be made available.

**SPECIFIC OBJECTIONS TO INTERIOR SUBPOENA RECORDS REQUEST**

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and all records relating to the computation, calculation, and valuation of any and all royalties paid for crude oil produced during the relevant months.

Response to Subpoena Request No. 1a.: Defendant objects to the request as unreasonably cumulative and duplicative to the extent it requests the production of documents previously produced to Plaintiff, previously made available for Plaintiff's inspection, or in Plaintiff's possession, custody, or control. Defendant also objects to the request for production of "all records relating to" a particular topic "during the relevant months" on the grounds that such a request is over broad and imposes an undue burden and expense. Defendant does not organize its records or files according to such categorization and it poses an undue burden and expense to conduct a search for responsive records. Such a request would essentially require Defendant to inspect thousands boxes at various locations, previously made available for Plaintiff's inspection, and locate documents that relate to particular topics, the five designated leases, and the "relevant months." Subject to and without waiving the foregoing objections, Plaintiff will make available for inspection at the taking of the deposition potentially responsive documents not previously provided to Plaintiff or made available for Plaintiff's inspection, and known or reasonably available to Interior.

b. With respect to crude oil, any and all records relating to the highest posted

market price in the Mid-Continent oil field on the day of sale or removal, the highest posted price in the Kansas-Oklahoma area, the highest offered price by a major purchaser in the Kansas-Oklahoma area, the gross proceeds received by purchasers in the Kansas-Oklahoma area, the highest bona fide selling price by a major purchaser in Osage County, Oklahoma, the highest posted price by a major purchaser in Osage County, Oklahoma, the highest offered price by a major purchaser in Osage County, Oklahoma, and the gross proceeds received by purchasers in Osage County, Oklahoma, during the relevant months.

<u>Response to Subpoena Request No. 1b.:</u> See response to Request No. 1a.

c. Any and all records relating to the computation, calculation, and valuation of any and all royalties on natural gas produced under the leases during each of the relevant months, including but not limited to records relating to the value and market value of all natural gas and liquids extracted therefrom during the relevant months and records relating to any and all amounts exempted from royalty payment for the reasonable and prudent operation and development of the lease or for manufacture or processing during the relevant months.

<u>Response to Subpoena Request No. 1c.:</u> See response to Request No. 1a.

d. Any and (Sic) records relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

<u>Response to Subpoena Request No. 1d.:</u> See response to Request No. 1a. Further, Defendant objects to this request as not relevant because this request seeks records for

distribution, which is not listed as a claim in the *Osage Nations's Statement of Trust Fund Mismanagement Claims for Tranche One.*

e. Any and all records relating to any and all account into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including by not limited to account statements and transaction records for each such transaction.

Response to Subpoena Request No. 1e.: See response to Request No. 1a.

f. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

Response to Subpoena Request No. 1f.: See response to Request No. 1a.

g. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

Response to Subpoena Request No. 1g.: See response to Request No. 1a.

2. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relating to the methodology for computing, calculating, verifying, or valuing royalties on crude oil and natural gas (including liquids extracted therefrom) that were in effect or otherwise used with respect to the five leases identified in Topic 1 in any way during the relevant months.

Response to Subpoena Request No. 2.: See response to Request No. 1a.

3. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relating to the methodology for computing, calculating, verifying or valuing royalties on crude oil and natural gas (including liquids extracted therefrom) that were in effect or otherwise used with respect to non-Osage Indian-owned oil and natural gas leases during the relevant months.

Response to Subpoena Request No. 3: See response to Request No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to any non-Osage Indian tribe.

4. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relating to the methodology for computing, calculating, verifying or valuing royalties on crude oil and natural gas (including liquids extracted therefrom) that were in effect or otherwise used with respect to federally-owned oil and natural gas leases during the relevant months.

Response to Subpoena Request No. 4: See response to Request No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because

this request seeks documents relating to federally-owned oil and natural gas leases.

5. Any and all audits conducted by, for, or on behalf of DOI relating to, discussing, or addressing in any way the volume for crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used or considered in conducting the audit.

Response to Subpoena Request No. 5: See response to Request No. 1a.

6. Any and all audits conducted by, for, or on behalf of DOI relating to, discussing, or addressing in any way the computation, calculation, valuation, collection, and/or payment of royalties on crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used or considered in conducting the audit.

Response to Subpoena Request No. 6: See response to Request No. 1a.

7. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or unwritten policies or procedures, relating to the performance of audits that were proposed, planned, or conducted by, for, or on behalf of DOI and that relate to the audits identified in Topics 5 and 6 above.

Response to Subpoena Request No. 7: See response to Request No. 1a. Further, Defendant objects to the phrase "performance of audits" as unclear and objects to this request as

overly broad and unduly burdensome because this request seeks documents related to proposed audits.

8. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or unwritten policies or procedures, relating to the performance of audits that were proposed, planned, or conducted by, for, or on behalf of DOI and that relate to non-Osage Indian-owned oil and gas mining leases.

Response to Subpoena Request No. 8: See response to Requests No. 1a and 7. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to any non-Osage Indian tribe.

9. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or unwritten policies or procedures, relating to the performance of audits that were proposed, planned, or conducted by, for, or on behalf of DOI and that relate to federally-owned oil and gas mining leases.

Response to Subpoena Request No. 9: See response to Requests No. 1a and 7. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to federally-owned oil and gas mining leases.

10. Any and all records relating to the audit conducted by the United States Department of the Interior Office of Inspector General that resulted in the "Final Audit Report," dated April 24, 1990, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used in conducting the audit.

Response to Subpoena Request No. 10: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because the referenced Audit discusses issues outside the scope of tranche one, such as the conduct of lease operators in discontinuing oil and gas operations (asset management issues).

11. Any and all records relating to the audit of royalty payments made by Phillips Petroleum Company and its subsidiary GPM Gas Corporation that was conducted by the United States Department of the Interior Minerals Management Service and that resulted in the audit report dated February 8, 1994, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used in conducting the audit.

Response to Subpoena Request No. 11: See response to Requests No. 1a.

12. Any and all records relating to the report prepared by Arthur Andersen LLP, entitled the "U.S. Department of the Interior Bureau of Indian Affairs Tribal Trust Funds Reconciliation Project," and relating to the period July 1, 1972 (Fiscal Year 1973) through September 30, 1992 (Fiscal Year 1992), including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used in any way in preparing this report or reconciling the accounts.

Response to Subpoena Request No. 12: See response to Request No. 1a. Further, Defendant objects to this request as duplicative to the extent Plaintiff has already received these documents from Defendant or Arthur Andersen. In 1996, Plaintiff was provided with a Reconciliation Report for the Osage Tribe, which was accompanied with several CDs containing

images of documents referred to in the Reconciliation Report. Plaintiff's previous counsel inspected documents from the collection of Arthur Andersen work papers at the storage facility in Phoenix, Arizona. On July 18, 2002, Plaintiff's previous counsel deposed Bradley Preber, a former employee of Arthur Andersen, on many topics, including the location of potentially relevant records and, prior to that deposition, Plaintiff's former counsel served Arthur Andersen with a subpoena duces tecum. In addition, Defendant provided Plaintiff with inventories associated with the Arthur Andersen work papers on January 18, 2005. Defendant also objects to this request as overly broad and unduly burdensome because this collection of documents is very voluminous and Plaintiff has had ample opportunity to inspect these records at the storage facility in Phoenix, Arizona.

13. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 13: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to distribution.

14. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to

any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 14: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to distribution and to any non-Osage Indian tribe.

15. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

Response to Subpoena Request No. 15: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to distribution and to federally-owned leases.

16. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments there to, or by the regulations implementing the 1906 Act and any amendments thereto.

Response to Subpoena Request No. 16: Defendant objects to this request in its entirety because it seeks Defendant's legal opinions and conclusions, including attorney-client and

attorney work-product privileged material.

**SPECIFIC OBJECTIONS TO TREASURY SUBPOENA RECORDS REQUEST**

Defendant's General Objection: Defendant objects to the Treasury subpoena on the ground that it disregards the Court's Order of March 26, 2004, which specifically provided that, "[a]fter reviewing documents in the possession of the Department of the Interior, ITAD and NARA, plaintiff *shall contact the court to schedule a status conference* if plaintiff believes the Department of the Treasury possesses non-duplicative relevant documents." Order of March 26, 2004, ¶ D (emphasis added). Plaintiff neither scheduled the status conference ordered by the Court, nor raised with the Court at any other scheduled status conference any belief that the Department of Treasury possesses non-duplicative relevant documents. Subject to and without waiving this objection, Defendant objects and responds to the specific requests made in the Treasury subpoena as follows:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTRFLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT 1'4/2 1125-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and records (Sic) relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response To Subpoena Request No. 1a.: Treasury does not possess records specific to the leases identified. Since the 1973 consolidation of tribal fund accounts, Treasury has not

maintained separate accounts for the Osage Nation or for any other tribe. As a general rule, Treasury records do not contain information that would link Interior's deposit, investment and payment transactions to oil and gas revenue from the Osage Nation's oil and gas estate. Based on the foregoing, Defendant objects to the request as overbroad, unduly burdensome, and oppressive in that any Osage-specific response would require the production of material related to virtually every deposit, investment, and payment transaction made on behalf of Interior for the months identified. Further, Defendant objects to this request as not relevant because this request seeks records for distribution, which is not listed as a claim in the *Osage Nation's Statement of Trust Fund Mismanagement Claims for Tranche One*.

b. Any and all records relating to any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including but not limited to account statements and transaction records for each such transaction.

Response To Subpoena Request No. 1 b : See Request No. 1a.

c. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

Response To Subpoena Request No. 1c : See Request No. 1a..

d. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

Response To Subpoena Request No. 1d : See Request No. 1a. Subject to and without waiving its objections, and to the extent it is able to locate any, Treasury will provide records identifying rates of return on investments made at the direction of Interior during the six relevant time periods.

2. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 2. : Treasury has no material as described above and related to the specific leases included in Tranche 1. As a general rule, Treasury manuals and/or other materials do not relate to particular tribes, leases or to particular deposit, investment, and payment transactions by Interior or any other federal program agency. As noted in Response 1a above, since the 1973 consolidation of tribal accounts, Treasury has not maintained separate accounts for the Osage Nation or for any other tribe. Based on the foregoing, Defendant objects

to Request No. 2 as overbroad, ambiguous, and unduly burdensome. Subject to and without waiving the foregoing objections and to the extent it is able to locate any, Treasury will make available manuals, guidelines, and instructions in its possession explaining the general procedures or processes during the time periods in question for depositing, investing, and /or accounting for payments collected by the federal program agencies, including Interior.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 3: See response to Request No. 2. In addition to the objections included therein, Defendant objects on relevance grounds because Request No. 3 seeks records regarding distributing and regarding"non-Osage tribes."

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

Response to Subpoena Request No. 4: Defendant objects to Request No. 4 as irrelevant, overbroad, ambiguous, and unduly burdensome because Request No. 4 seeks records regarding

distribution and regarding "federally-owned" leases.

5. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto.

Response to Subpoena Request No. 5: Defendant objects to Request No. 5 in its entirety because it seeks Defendant's legal opinions and conclusions including attorney-client and attorney work product privileged material.

Respectfully submitted,

KELLY A. JOHNSON
Assistant Attorney General

By: 

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

Martin J. LaLonde
John H. Martin
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Jason R. Baron
Director of Litigation
Office of General Counsel
National Archives and Records Administration
8601 Adelphi Road
Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2005, I caused the foregoing *Defendant's Objections and Responses to Subpoenas Issued by Plaintiff's Counsel on May 4, 2005*, to be hand-delivered upon the attorney of record for the Plaintiff:

Wilson K. Pipestem, Esquire
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Fax: 202-659-4931

_______________________