**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 00-169 L<br>Judge Emily C. Hewitt |

**NOTICE OF DEPOSITION**

Pursuant to Rules 26, 28, and 30 of the Rules of the United States Court of Federal Claims ("RCFC"), the Osage Nation, by its undersigned counsel, intends to take the oral deposition of the United States Department of Treasury on Wednesday, May 18, 2005, or on such date as the parties may agree. The deposition shall commence at 9:00 a.m. at the Osage Agency Office in Pawhuska, Oklahoma, or at other such time and place as the parties may agree. The deposition will be recorded by stenographic means and will be taken before an officer authorized to administer oaths by the laws of the United States. Pursuant to RCFC 30(b)(6), the United States Department of Treasury shall designate the person or persons most knowledgeable to testify on its behalf concerning the subjects set forth on Exhibit A, and if more than one person is so named, designate for each person the subject or subjects on which that person will testify.

The oral examination will continue from day to day until completed. This deposition is being taken for the purpose of discovery, for use at trial, and all other purposes permitted under the rules of this Court and all applicable statutes and laws.

Dated this 4th day of May, 2005

Respectfully submitted,

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

# EXHIBIT A

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the United States Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee

meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication,

and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

**TOPICS TO BE COVERED**

The following are topics to be covered by deponent(s) designated by the United States Department of Treasury pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD, all of the following:

a. The receipt, collection, handling, deposit, investment, distribution, and accounting of all payments owed to the Osage Nation and made and/or received by the

United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. The identity of any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited.

c. The identity of any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted.

d. The rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for any and all royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. The names and positions of all persons involved in or responsible for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to

the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made and/or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

5. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to, made, or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

6. The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by hand delivery, this 4th day of May, 2005 on:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Wilson K. Pipestem

FORM 6

**SUBPOENA**

# United States Court of Federal Claims

THE OSAGE NATION AND/OR
TRIBE OF INDIANS
OF OKLAHOMA

*vs.*

No. 00-169L

*THE UNITED STATES*

**SUBPOENA**

To: Person(s) designated by the United States Department of Treasury as being the most knowledgeable about the topics identified in Exhibit A.

1. **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify in the above case.
   *Place of Testimony:*
   *Date and Time:*
2. **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.
   *Place of Deposition:* Osage Agency Office, Pawhuska, Oklahoma
   *Date and Time:* Wednesday, May 18, 2005 at 9:00 a.m.
3. **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit B.
   *Place:* Osage Agency Office, Pawhuska, Oklahoma
   *Date and Time:* Wednesday, May 18, 2005 at 9:00 a.m.
4. **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.
   *Premises:*
   *Date and Time:*

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] Attorney for Plaintiff 5/4/05

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

Wilson K. Pipestem 202 419 3526

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Pipestem Law Firm, P.C.
1333 New Hampshire Ave, NW
Washington, DC 20036



8/01/04

**NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance, notwithstanding the distance of travel.** In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| DATE | PLACE |
|---|---|

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

☐ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

RCFC 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible

**EXHIBIT A**

**DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the United States Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-

roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above

information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication, and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

## TOPICS TO BE COVERED

The following are topics to be covered by deponent(s) designated by the United States Department of Treasury pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD, all of the following:

a. The receipt, collection, handling, deposit, investment, distribution, and accounting of all payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. The identity of any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited.

c. The identity of any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted.

d. The rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for any and all royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. The names and positions of all persons involved in or responsible for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and

natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made and/or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

5. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or unwritten policies relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to, made, or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

6. The trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto, and any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relevant to those trust duties, responsibilities, or obligations.

# EXHIBIT B

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1. The "Osage Nation" or "Plaintiff" shall mean or refer to the Osage Nation and/or Osage Tribe of Indians in the State of Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

2. "Defendant" or "United States" shall mean or refer to the United States of America, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

3. "Treasury" shall mean or refer to the Department of Treasury, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

4. "Osage Agency Office" shall mean or refer to the Bureau of Indian Affairs' Agency Office located in Pawhuska, Oklahoma, including its officers, directors, employees, agents, representatives, and any other person presently or formerly acting or authorized to act on its behalf.

5. "Tranche one" shall mean or refer to the definition of tranche one provided in the Court's Order dated April 15, 2005, which states that tranche one "will encompass those of plaintiff's trust fund mismanagement claims falling within the parameters described in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990."

6. "Relevant months" shall mean or refer to the months identified in the Court's Order dated April 15, 2005, which are as follows: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

7. "Record" shall mean or refer to any document, writing, or record of any type or description in your possession, custody and/or control which includes, without limitation every tangible thing from which information can be obtained, perceived, or reproduced, and includes any written, recorded, electronic or electronically stored, graphic matter, computerized printout, however produced or reproduced, whether or not now in existence, and also includes the original, and all drafts prepared in connection with such document, whether used or not. "Record" further includes but is not limited to papers, agendas, analyses, appraisals, acknowledgements, statements, bills, books, bulletins, cables, cassettes, charts, certificates, circulars, closing binders, comparisons, confirmations, consents, contracts, correspondence, deeds, diaries, discs, drawings, estimates, facsimiles, financial statements, guarantees, instructions, interoffice and intraoffice communications, invoices, journals, leases, ledgers, memoranda (including any type or form of notes, memoranda, or sound recordings of personal thoughts, recollections, or reminders, or of telephone or other conversations, or of facts, activities, agreements, meetings, or conferences), messages, microfiche, microfilm, notes, notices, offers, opinions, pamphlets, photographs, promissory notes, purchase orders, receipts, records, reports, summaries, wire transfers, working papers, work orders, catalogs, price lists, periodicals, letters, e-mails or other electronic transmissions, scrap books, notebooks, forms, post cards, telegrams, titles, deposition transcripts, agreements, studies, specifications, bids, proposals, graphs, sketches, diagrams, indexes, maps, statistical records, results of investigations, reviews, balance sheets, accounts, books of accounts, vouchers, videotapes, computer disks, cd-

roms, computer files or other computed data, electrical recordings, magnetic recordings, photostats, instruction lists, minutes of director or committee meetings, calendar or desk pads, stenographers' notes, appointment books, and other papers or materials similar to any of the foregoing, however denominated, whether or not received by you or prepared by you for your own use or transmittal. "Record" also includes drafts, non-identical copies, revisions and amendments (including any attachments or appendices), and is to be construed in its broadest possible sense so as not to exclude any category of written or recorded information. If a document has been prepared in several copies or additional copies have been made, and the copies are not identical (or by reason of subsequent modification or notation, are no longer identical), each nonidentical copy is a separate "record."

8. "File" shall mean or refer to any collection or group of records maintained, held, stored, or used together, including, without limitations, all collections or records maintained, held or stored in folders, notebooks, or other devices for separating or organizing records relating to or concerning the relevant leases.

9. "Identification," "identify," or "identity," when used in reference to the following underlined terms, are defined as follows:

(a) a natural person— for each person, as much of the following information as is available: (1) his or her full name, (2) last known residential and business addresses, (3) last known residential and business telephone numbers (including area codes), (4) present or last known position or title and business or employee affiliation, business address, and business telephone number (including area code), and (5) position, job title, and official duties at the time or times relevant to this matter.

(b) a record— for each record, as much of the following information as is available: (1) date, (2) author or originator, (3) recipient, (4) the individual and/or entity to whom it pertains, (5) the type of document (*e.g.*, letter, memorandum, telegram, electronic correspondence, facsimile, etc., or some other means of identifying the same) and the number of pages, (6) title and subject matter, and (7) present location and the name and address of its present or last known custodian. If any of the above

information is not available, state any other means of identifying such record.

(c) a communication— for each communication, as much of the following information as is available: if any part of the communication was written, to identify the record or records which refer to or evidence the communication, and, to the extent that the communication was not written, to identify the person participating in the communication, and to state the date, manner, place, and substance of the communication.

10. "Relating" to or "concerning" a given subject matter shall mean constitutes, contains, comprises, consists of, embodies, identifies, specifies, states, pertains to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, involves, touches upon, concerns, addresses or otherwise is in any way logically or factually connected with the subject matter of tranche one, whether in whole or in part.

11. "Person" shall mean or refer to a natural person, organization, governmental body, agency, foundation, corporation, partnership, firm, association, trust, or any other form of business or charitable organization or entity (including for- and not-for-profit organizations and entities).

12. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted.

**RECORDS TO BE MADE AVAILABLE**

The following documents or objects are to be made available at the place, date, and time specified on the attached Subpoena:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and records relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

b. Any and all records relating to any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including but not limited to account statements and transaction records for each such transaction.

c. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

d. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

2. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

5. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by hand delivery, this 4th day of May, 2005 on:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Wilson K. Pipestem