**U.S. Department of Justice**

Environment and Natural Resources Division

90-2-20-09922

*General Litigation Section*
*P.O. Box 663*
*Ben Franklin Station*
*Washington, DC 20044-0663*

*Telephone (202) 305-0212*
*Facsimile (202) 353-2021*

May 23, 2005

**VIA HAND DELIVERY:**

Wilson K. Pipestem, Esquire
Jerry Rothrock, Esquire
Pipestem Law Firm, PC
1333 New Hampshire Ave., NW
Washington, DC 20036

**Re: Osage Nation v. U.S. (CFC Case No. 00-169L)**
**30(b)(6) Subpoenas, Notices, and Written Objections**

Mr. Pipestem and Mr. Rothrock:

The purpose of this letter is to memorialize our conversation on May 17, 2005, and to set out the Government's initial concerns with the Tribe's 30(b)(6) deposition notices and subpoenas, issued by the Tribe's counsel on May 4, 2005. Pursuant to RCFC 45(c)(2)(B), I have also attached the Government's written objections to the subpoenas, which request that designated documents be produced at the taking of the 30(b)(6) depositions.[1/] Based on our past and on-going conversations, the Government is optimistic that the parties will be able to resolve potential issues regarding these 30(b)(6) depositions informally. However, in order to protect the Government's rights in the event the parties cannot resolve particular issues, and to prevent any potential misunderstandings, the Government serves the Tribe with this letter and the attached written objections.

During our conversation on May 17, 2005, I raised some of the following initial concerns with the Tribe's 30(b)(6) Deposition Notice for the Department of the Interior ("Interior") and corresponding subpoena. First, it is possible that few, if any, current Interior employees will have personal knowledge of the topics listed in the subpoena and the notice for the five leases during the relevant time period - 1976 to 1990.[2/] Second, although Interior may designate an individual as a 30(b)(6) witness who does not have personal knowledge of the topics listed in the subpoena, this individual need only "testify to matters known or reasonably available to the organization." RCFC 30(b)(6). As you are aware, many, if not all, of the "matters" or documents pertinent to the 1976 to 1990 time period are no longer stored at Interior Offices, such as the Osage Agency, but rather they are primarily stored at Federal Records Centers, such as the American Indian Records Repository ("AIRR"), in Lenexa, Kansas. As set out in the attached

---

[1/] Tribe's counsel consented to an extension until May 23, 2005, for service of these objections.

[2/] According to the notice and subpoena, "relevant months" consist of January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

objections, literal compliance with the Interior deposition notice and subpoena would require the Government to inspect thousands of boxes, previously made available for Plaintiff's inspection, for documents that relate to particular topics, five leases, and the time period 1976 to 1990. To the extent the Government has not obtained copies of these documents due to Plaintiff's inspection, they are not "reasonably available" to the Government. Third, the 30(b)(6) Deposition Notice and subpoena set out overly broad topics, such as audits that do not appear to be relevant to tranche one; manuals and audits related to non-Osage Indian and federally-owned oil and gas leases; manuals related to the collection and management of payments owed to non-Osage Indian Tribes or the United States (produced under federally-owned leases) for royalties; and the Arthur Andersen Reconciliation Report.

In response to the Government's concerns about the scope of the 30(b)(6) notice and subpoena, Tribe's counsel indicated, on a preliminary basis, that he realizes it is not possible for a 30(b)(6) witness to get completely up to speed on all prior procedures by June 1 to June 10, 2005. In issuing their 30(b)(6) notice and subpoena, Tribe's counsel has stated that they seek to depose individuals who have personal knowledge as to how royalty was computed or valued for the five leases for oil produced during the relevant months or, in the event there are no individuals with personal knowledge, they seek to depose a witness designated by Interior who, to the best of his or her ability, can discuss the same issues. The types of information that Tribe's counsel seeks during the deposition include: the amount of royalties received by the Government for the five leases for oil produced during the relevant months; the post-collection management of royalties; the identify of individuals who have actual knowledge of the five leases during the relevant months (or other periods); the location of documents associated with those leases; and the most efficient way to locate such documents, such as lessee reports, associated with the five leases for a relevant production month. On this last item, Tribe's counsel indicated that it would be most efficient for both parties to jointly look for documents associated with the five leases and the relevant production months. Government counsel stated that many of these documents may have already been imaged and provided to the Tribe.

The parties ultimately agreed on the following procedure for Interior deponents in an attempt to narrow the scope of the Tribe's 30(b)(6) deposition notices and document requests and to resolve any potential issues informally. From June 1 to June 10, 2005, the Tribe will depose the fact witnesses noticed in several previous Notices of Deposition.[3] Based on information provided by the Government, the Tribe will initially depose those employees that likely have the most relevant information for tranche one. Theses depositions should assist the Tribe in narrowing its 30(b)(6) deposition topics and document requests regarding Interior witnesses. The parties will subsequently schedule Interior 30(b)(6) depositions, perhaps during the week of June 20, 2005.

The parties will continue to discuss the Government's objections to the 30(b)(6)

---

[3] The noticed deponents include: Charles Hurlbert, Carma Jensen, Richard Winlock, Angela Toineeta, Lorraine Wilcox, Melissa Currey, Carol Revard, Joy Oakes, Heather Little, Jeanette Hanna, Newell Barker, and Judy Hill. We understand that the Tribe may be able to eliminate some of the requested deponents after it receives basic job description information from the Government.

deposition notice and subpoena concerning Treasury and will work together to arrive at a mutually agreeable scope, time and place in Washington, DC, for the deposition of a Treasury witness or witnesses. As set out in the attached written objections, since the 1973 consolidation of individual tribal fund accounts, Treasury has not maintained any individual accounts for the Osage Nation (or other federally-recognized tribes). Since that time, as a general rule, Treasury records do not contain information that would link Interior deposits, investments, and payment transactions to oil and gas royalty revenue to the Osage Nation or other tribes. Moreover, after 1973, there would be no individual Osage accounts which track receipts and disbursements of Osage royalty income. Additionally, as a general rule, there are no Osage or tribe-specific Treasury manuals, guidelines, or instructions relating to the collection, depositing, disbursing, investing, or accounting of payments owed to the Osage Nation or non-Osage Tribes and received by the United States as royalty payments on crude oil and natural gas leasing. Treasury would have knowledge of any procedural sources, including guidelines and instructions, governing the depositing , disbursement, and investment as a general matter during the relevant time periods. Under the foregoing circumstances, any specific testimony by a Treasury 30 (b)(6) witness regarding Osage royalty payments, disbursements, and investments would require, at a minimum and as a prerequisite, individual transaction identification.

The Government intends to continue to make good-faith efforts to resolve any potential issues informally with the Tribe. Please contact me at (202) 305-0212 if you have any questions or concerns or if this is not your understanding of our conversation or agreement.

Sincerely,

Brett D. Burton
Attorney

Enclosure

cc (w/encl.): Stephen Simpson, Attorney, Office of the Solicitor
Alan Woodcock, Field Solicitor
Teresa E. Dawson

cc (w/o encl.): Tony Hoang
Martin LaLonde
John Martin

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 00-169 L<br>Judge Emily C. Hewitt |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO SUBPOENAS ISSUED BY PLAINTIFF'S COUNSEL ON MAY 4, 2005**

Pursuant to RCFC 26 and 45, Defendant provides these objections and responses to the subpoenas issued by Plaintiff's counsel on May 4, 2005, for persons designated by the Department of the Interior ("Interior") and the Department of the Treasury ("Treasury") pursuant to RCFC 30(b)(6). The objections and responses herein are based upon the information known as of the date of this response and are subject to correction, modification and supplementation when and if additional relevant information becomes known to the United States.

The subpoena for Interior, dated May 4, 2005, ("Interior subpoena"), includes 16 document requests, with sub-categories, while the subpoena for the Department of the Treasury, dated May 4, 2005 ("Treasury subpoena"), includes 5 document requests, with subcategories.

These general objections are objections that apply to every request and are to be read as forming a part of the response to each of the individual requests.

## STATEMENT OF NON-WAIVER

This response and any subsequent productions or inspections of documents are made expressly subject to, without waiver of and while fully preserving (1) all questions regarding authenticity, genuineness, competence, relevance, materiality, privilege, and admissibility of any produced document as evidence for any purpose in any proceeding in this action, including trial, and in any other action; (2) the right to object to the use of any response or produced document, or the subject matter thereof, on any ground and in any proceeding in this action, including trial, and in any other action; and (3) the right at any time to revise, modify, correct, add to, supplement or clarify any response or production. In no case shall the inadvertent production of any information protected by one or more privileges, doctrines, or rights be deemed a waiver of the protections of the corresponding privileges, doctrines, or rights involved, and Defendant reserves the right to demand the return and confidentiality of any such inadvertently produced document.

## GENERAL OBJECTIONS

1. Defendant objects to the Interior and Treasury subpoenas in their entirety because the subpoenas seek the production of documents from a party as opposed to a nonparty. In order to obtain documents from a party at the taking of a deposition, the notice to a party may be "accompanied by a request made in compliance with RCFC 34 for the production of documents and tangible things at the taking of the deposition. The procedure of RCFC 34 shall apply to this request." RCFC 30(b)(5). Consequently, Plaintiff should have served a request pursuant to RCFC 34 with the notice of deposition as opposed to a subpoena. Subject to and without

waiving this objection, Defendant will treat this subpoena as if it were a request for production of documents pursuant to RCFC 34.

2. Defendant objects to the requests as unreasonably cumulative and duplicative to the extent they request the production of documents previously produced to Plaintiff, previously made available for Plaintiff's inspection, or in Plaintiff's possession, custody, control, or possession. As Plaintiff is aware, Defendant has arranged and permitted Plaintiff to inspect thousands of boxes and documents on numerous occasions at the American Indian Records Repository ("AIRR"), in Lenexa, Kansas, and at the Office of Trust Records ("OTR"), in Albuquerque, New Mexico. These inspections are still on-going and the parties pre-2005 efforts are detailed in the *Joint Status Report Pursuant to the Court's of the Court's Order of October 22, 2004.*[1/] Defendant has also permitted and arranged for Plaintiff to inspect documents at the Osage Agency in Pawhuska, Oklahoma, on several occasions from February to April 2005. Subject to and without waiving the foregoing objections, Defendant will make available for inspection at the taking of the depositions potentially responsive documents not previously provided to Plaintiff or made available for Plaintiff's inspection, known or reasonably available to the Department of the Interior.

3. Defendant objects to the requests as unduly burdensome because they do not allow reasonable time for compliance and they request documents in addition to the procedure set out in the Court's March 25, 2005, and April 15, 2005, Orders. In these Orders, the Court set

---

[1/]Defendant has also allowed Plaintiff to use the Box Index Search System ("BISS") at the AIRR and OTR in order to locate boxes that contain potentially relevant documents.

out a process for tranche one document discovery, which includes interim deadlines for Plaintiff to designate boxes and documents for expedited imaging and production and for Defendant to produce the documents designated by Plaintiff from boxes prioritized by Plaintiff for tranche one. Since April 2005, Defendant has produced 213,683 document images to Plaintiff under this expedited process and Defendant will produce the additional documents designated by Plaintiff on May 13, 2005, on or before June 17, 2005, in accordance with the April 15, 2005, Order. Plaintiff has had ample opportunity under these expedited procedures, and previous discovery efforts referenced above, to obtain any documents pertinent to tranche one. Subject to and without waiving the foregoing objections, Defendant will make available for inspection at the taking of the deposition potentially responsive documents not previously provided to Plaintiff or made available for Plaintiff's inspection, known or reasonably available to the Department of the Interior.

4. Defendant objects to the requests to the extent they seek to impose obligations upon Defendant beyond those permitted or required under the Rules of the Court of Federal Claims.

5. Defendant objects to the requests to the extent they seek information that is beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to the requests to the extent they seek, or could be construed as seeking, information or documents protected by the attorney-client privilege, work product privilege, deliberative process privilege, or any other applicable privilege, doctrine or right that

would make the information or documents immune from discovery. Any inadvertent production of information protected by any of these privileges, doctrines, or rights shall not be deemed a waiver of the protections that those privileges, doctrines, or rights afford.

7. Defendant objects to the requests as unduly burdensome and oppressive to the extent they seek to require Defendant to search for or produce documents, particularly documents located at the AIRR or OTR, according to criteria the Defendant and its component Departments do not use in maintaining or organizing their files or records for storage and retrieval.

8. Defendant objects to requests that seek production of "all" records or "all" records "relating to" a particular topic or type of document on the grounds that such requests are over broad, vague, ambiguous and impose an undue burden and expense. Defendant does not organize its records or files according to such categorization and it poses an undue burden and expense to conduct a search for responsive records. Such a request would essentially require Defendant to inspect thousands boxes, previously made available for Plaintiff's inspection, for documents that relate to particular topics, leases, or a very limited time frame.

9. Defendant objects to the request as oppressive and unduly burdensome to the extent that it seeks to require Defendants to compile, summarize, index, research or otherwise analyze voluminous historical information.

10. Defendant objects to the request to the extent they demand production of a document in a form or at a location different from that in which the document currently exists or can readily be made available.

**SPECIFIC OBJECTIONS TO INTERIOR SUBPOENA RECORDS REQUEST**

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTR FLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT N/2 11-25-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and all records relating to the computation, calculation, and valuation of any and all royalties paid for crude oil produced during the relevant months.

Response to Subpoena Request No. 1a.: Defendant objects to the request as unreasonably cumulative and duplicative to the extent it requests the production of documents previously produced to Plaintiff, previously made available for Plaintiff's inspection, or in Plaintiff's possession, custody, or control. Defendant also objects to the request for production of "all records relating to" a particular topic "during the relevant months" on the grounds that such a request is over broad and imposes an unduc burden and expense. Defendant does not organize its records or files according to such categorization and it poses an undue burden and expense to conduct a search for responsive records. Such a request would essentially require Defendant to inspect thousands boxes at various locations, previously made available for Plaintiff's inspection, and locate documents that relate to particular topics, the five designated leases, and the "relevant months." Subject to and without waiving the foregoing objections, Plaintiff will make available for inspection at the taking of the deposition potentially responsive documents not previously provided to Plaintiff or made available for Plaintiff's inspection, and known or reasonably available to Interior.

b. With respect to crude oil, any and all records relating to the highest posted

market price in the Mid-Continent oil field on the day of sale or removal, the highest posted price in the Kansas-Oklahoma area, the highest offered price by a major purchaser in the Kansas-Oklahoma area, the gross proceeds received by purchasers in the Kansas-Oklahoma area, the highest bona fide selling price by a major purchaser in Osage County, Oklahoma, the highest posted price by a major purchaser in Osage County, Oklahoma, the highest offered price by a major purchaser in Osage County, Oklahoma, and the gross proceeds received by purchasers in Osage County, Oklahoma, during the relevant months.

Response to Subpoena Request No. 1b.: See response to Request No. 1a.

c. Any and all records relating to the computation, calculation, and valuation of any and all royalties on natural gas produced under the leases during each of the relevant months, including but not limited to records relating to the value and market value of all natural gas and liquids extracted therefrom during the relevant months and records relating to any and all amounts exempted from royalty payment for the reasonable and prudent operation and development of the lease or for manufacture or processing during the relevant months.

Response to Subpoena Request No. 1c.: See response to Request No. 1a.

d. Any and (Sic) records relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 1d.: See response to Request No. 1a. Further, Defendant objects to this request as not relevant because this request seeks records for

distribution, which is not listed as a claim in the *Osage Nations's Statement of Trust Fund Mismanagement Claims for Tranche One.*

e. Any and all records relating to any and all account into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including by not limited to account statements and transaction records for each such transaction.

Response to Subpoena Request No. 1e.: See response to Request No. 1a.

f. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

Response to Subpoena Request No. 1f.: See response to Request No. 1a.

g. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

Response to Subpoena Request No. 1g.: See response to Request No. 1a.

2. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relating to the methodology for computing, calculating, verifying, or valuing royalties on crude oil and natural gas (including liquids extracted therefrom) that were in effect or otherwise used with respect to the five leases identified in Topic 1 in any way during the relevant months.

Response to Subpoena Request No. 2.: See response to Request No. 1a.

3. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relating to the methodology for computing, calculating, verifying or valuing royalties on crude oil and natural gas (including liquids extracted therefrom) that were in effect or otherwise used with respect to non-Osage Indian-owned oil and natural gas leases during the relevant months.

Response to Subpoena Request No. 3: See response to Request No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to any non-Osage Indian tribe.

4. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or other records relating to the methodology for computing, calculating, verifying or valuing royalties on crude oil and natural gas (including liquids extracted therefrom) that were in effect or otherwise used with respect to federally-owned oil and natural gas leases during the relevant months.

Response to Subpoena Request No. 4: See response to Request No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because

this request seeks documents relating to federally-owned oil and natural gas leases.

5. Any and all audits conducted by, for, or on behalf of DOI relating to, discussing, or addressing in any way the volume for crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used or considered in conducting the audit.

Response to Subpoena Request No. 5: See response to Request No. 1a.

6. Any and all audits conducted by, for, or on behalf of DOI relating to, discussing, or addressing in any way the computation, calculation, valuation, collection, and/or payment of royalties on crude oil and natural gas (including liquids extracted therefrom) produced under the five leases identified in Topic 1 during the relevant months, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used or considered in conducting the audit.

Response to Subpoena Request No. 6: See response to Request No. 1a.

7. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or unwritten policies or procedures, relating to the performance of audits that were proposed, planned, or conducted by, for, or on behalf of DOI and that relate to the audits identified in Topics 5 and 6 above.

Response to Subpoena Request No. 7: See response to Request No. 1a. Further, Defendant objects to the phrase "performance of audits" as unclear and objects to this request as

overly broad and unduly burdensome because this request seeks documents related to proposed audits.

8. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or unwritten policies or procedures, relating to the performance of audits that were proposed, planned, or conducted by, for, or on behalf of DOI and that relate to non-Osage Indian-owned oil and gas mining leases.

Response to Subpoena Request No. 8: See response to Requests No. 1a and 7. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to any non-Osage Indian tribe.

9. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, and/or unwritten policies or procedures, relating to the performance of audits that were proposed, planned, or conducted by, for, or on behalf of DOI and that relate to federally-owned oil and gas mining leases.

Response to Subpoena Request No. 9: See response to Requests No. 1a and 7. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to federally-owned oil and gas mining leases.

10. Any and all records relating to the audit conducted by the United States Department of the Interior Office of Inspector General that resulted in the "Final Audit Report," dated April 24, 1990, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used in conducting the audit.

Response to Subpoena Request No. 10: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because the referenced Audit discusses issues outside the scope of tranche one, such as the conduct of lease operators in discontinuing oil and gas operations (asset management issues).

11. Any and all records relating to the audit of royalty payments made by Phillips Petroleum Company and its subsidiary GPM Gas Corporation that was conducted by the United States Department of the Interior Minerals Management Service and that resulted in the audit report dated February 8, 1994, including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used in conducting the audit.

Response to Subpoena Request No. 11: See response to Requests No. 1a.

12. Any and all records relating to the report prepared by Arthur Andersen LLP, entitled the "U.S. Department of the Interior Bureau of Indian Affairs Tribal Trust Funds Reconciliation Project," and relating to the period July 1, 1972 (Fiscal Year 1973) through September 30, 1992 (Fiscal Year 1992), including but not limited to any and all preliminary, initial, and intermediate reports, related work papers, and related policies or procedures used in any way in preparing this report or reconciling the accounts.

Response to Subpoena Request No. 12: See response to Request No. 1a. Further, Defendant objects to this request as duplicative to the extent Plaintiff has already received these documents from Defendant or Arthur Andersen. In 1996, Plaintiff was provided with a Reconciliation Report for the Osage Tribe, which was accompanied with several CDs containing

images of documents referred to in the Reconciliation Report. Plaintiff's previous counsel inspected documents from the collection of Arthur Andersen work papers at the storage facility in Phoenix, Arizona. On July 18, 2002, Plaintiff's previous counsel deposed Bradley Preber, a former employee of Arthur Andersen, on many topics, including the location of potentially relevant records and, prior to that deposition, Plaintiff's former counsel served Arthur Andersen with a subpoena duces tecum. In addition, Defendant provided Plaintiff with inventories associated with the Arthur Andersen work papers on January 18, 2005. Defendant also objects to this request as overly broad and unduly burdensome because this collection of documents is very voluminous and Plaintiff has had ample opportunity to inspect these records at the storage facility in Phoenix, Arizona.

13. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 13: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to distribution.

14. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to

any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 14: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to distribution and to any non-Osage Indian tribe.

15. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

Response to Subpoena Request No. 15: See response to Requests No. 1a. Further, Defendant objects to this request as overly broad, unduly burdensome, and not relevant because this request seeks documents relating to distribution and to federally-owned leases.

16. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments there to, or by the regulations implementing the 1906 Act and any amendments thereto.

Response to Subpoena Request No. 16: Defendant objects to this request in its entirety because it seeks Defendant's legal opinions and conclusions, including attorney-client and

attorney work-product privileged material.

**SPECIFIC OBJECTIONS TO TREASURY SUBPOENA RECORDS REQUEST**

Defendant's General Objection: Defendant objects to the Treasury subpoena on the ground that it disregards the Court's Order of March 26, 2004, which specifically provided that, "[a]fter reviewing documents in the possession of the Department of the Interior, ITAD and NARA, plaintiff *shall contact the court to schedule a status conference* if plaintiff believes the Department of the Treasury possesses non-duplicative relevant documents." Order of March 26, 2004, ¶ D (emphasis added). Plaintiff neither scheduled the status conference ordered by the Court, nor raised with the Court at any other scheduled status conference any belief that the Department of Treasury possesses non-duplicative relevant documents. Subject to and without waiving this objection, Defendant objects and responds to the specific requests made in the Treasury subpoena as follows:

1. For each of the following five leases: (1) North Burbank Unit; (2) Avant WTRFLD: NW 05-23N-12E; (3) Stanley Stringer WTR FLD; (4) E Hardy UT MISS CHAT 1'4/2 1125-3; and (5) Osage Hominy Unit WTR FLD:

a. Any and records (Sic) relating to the receipt, collection, handling, deposit, investment, distribution, and accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response To Subpoena Request No. 1a.: Treasury does not possess records specific to the leases identified. Since the 1973 consolidation of tribal fund accounts, Treasury has not

maintained separate accounts for the Osage Nation or for any other tribe. As a general rule, Treasury records do not contain information that would link Interior's deposit, investment and payment transactions to oil and gas revenue from the Osage Nation's oil and gas estate. Based on the foregoing, Defendant objects to the request as overbroad, unduly burdensome, and oppressive in that any Osage-specific response would require the production of material related to virtually every deposit, investment, and payment transaction made on behalf of Interior for the months identified. Further, Defendant objects to this request as not relevant because this request seeks records for distribution, which is not listed as a claim in the *Osage Nation's Statement of Trust Fund Mismanagement Claims for Tranche One*.

b. Any and all records relating to any and all accounts into which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were deposited, wired, transferred, or otherwise credited, including but not limited to account statements and transaction records for each such transaction.

Response To Subpoena Request No. 1 b : See Request No. 1a.

c. Any and all records relating to any and all accounts from which payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months were withdrawn, disbursed, wired, transferred, or otherwise deducted, including but not limited to account statements and transaction records for each such transaction.

Response To Subpoena Request No. 1c : See Request No. 1a..

d. Any and all records relating to the rates of return obtained on investments of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months, including but not limited to account statements, transaction records, and any records describing or explaining the discussions, analysis, considerations, comments, deliberations, alternatives, and/or conclusions relating to such investments.

Response To Subpoena Request No. 1d : See Request No. 1a. Subject to and without waiving its objections, and to the extent it is able to locate any, Treasury will provide records identifying rates of return on investments made at the direction of Interior during the six relevant time periods.

2. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or processes for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the Osage Nation and made and/or received by the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 2. : Treasury has no material as described above and related to the specific leases included in Tranche 1. As a general rule, Treasury manuals and/or other materials do not relate to particular tribes, leases or to particular deposit, investment, and payment transactions by Interior or any other federal program agency. As noted in Response 1a above, since the 1973 consolidation of tribal accounts, Treasury has not maintained separate accounts for the Osage Nation or for any other tribe. Based on the foregoing, Defendant objects

to Request No. 2 as overbroad, ambiguous, and unduly burdensome. Subject to and without waiving the foregoing objections and to the extent it is able to locate any, Treasury will make available manuals, guidelines, and instructions in its possession explaining the general procedures or processes during the time periods in question for depositing, investing, and /or accounting for payments collected by the federal program agencies, including Interior.

3. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to any non-Osage Indian tribe and made or received by the United States, as trustee for such tribe, for royalties on crude oil and natural gas (including liquids extracted therefrom) produced during the relevant months.

Response to Subpoena Request No. 3: See response to Request No. 2. In addition to the objections included therein, Defendant objects on relevance grounds because Request No. 3 seeks records regarding distributing and regarding"non-Osage tribes."

4. Any and all manuals, guidelines, regulations, publications, instructions, internal memoranda, and/or other records relating to the procedures or process for receiving, collecting, handling, depositing, investing, distributing, and/or accounting of payments owed to the United States for royalties on crude oil and natural gas (including liquids extracted therefrom) produced under federally-owned leases during the relevant months.

Response to Subpoena Request No. 4: Defendant objects to Request No. 4 as irrelevant, overbroad, ambiguous, and unduly burdensome because Request No. 4 seeks records regarding

distribution and regarding "federally-owned" leases.

5. Any and all guidelines, manuals, regulations, publications, instructions, internal memoranda, or other records relating to or implementing the trust duties, responsibilities, and obligations of the United States established by the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") and any amendments thereto, or by the regulations implementing the 1906 Act and any amendments thereto.

Response to Subpoena Request No. 5: Defendant objects to Request No. 5 in its entirety because it seeks Defendant's legal opinions and conclusions including attorney-client and attorney work product privileged material.

Respectfully submitted,

KELLY A. JOHNSON
Assistant Attorney General

By:

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

Martin J. LaLonde
John H. Martin
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Jason R. Baron
Director of Litigation
Office of General Counsel
National Archives and Records Administration
8601 Adelphi Road
Room 3110, NGC
College Park, Maryland 20740-6001
Telephone: (301) 837-1499
Fax: (301) 837-0293

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2005, I caused the foregoing *Defendant's Objections and Responses to Subpoenas Issued by Plaintiff's Counsel on May 4, 2005*, to be hand-delivered upon the attorney of record for the Plaintiff:

Wilson K. Pipestem, Esquire
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Fax: 202-659-4931